Stephen H.M. Bloch (#7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

Mitch M. Longson (#15661)
MANNING CURTIS BRADSHAW
& BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
mlongson@mc2b.com

Trevor J. Lee (#16703)
HOGGAN LEE HUTCHINSON
257 E 200 S, #1050
Salt Lake City, UT 84111
Telephone: (435) 615-2264
trevor@hlh.law

### IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**,<br><br>Plaintiff,<br><br>v.<br><br>**GARFIELD COUNTY, UTAH**, a political subdivision, the **STATE OF UTAH**, the **UNITED STATES BUREAU OF LAND MANAGEMENT**, and the **UNITED STATES DEPARTMENT OF THE INTERIOR**,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Case No. 2:26-cv-00096<br><br>Judge |

## INTRODUCTION

1. This lawsuit challenges Garfield County, Utah's and the State of Utah's (collectively, "Garfield County" or "the County") willful disregard for and failure to follow binding Tenth Circuit precedent that required them to consult with the United States Bureau of

Land Management ("BLM") before engaging in road improvement activities on the Hole-in-the-Rock Road.  It also challenges BLM's decision not to comply with its obligations under the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701 *et seq*. ("FLPMA") to, at the bare minimum, prevent unnecessary or undue degradation of the public lands.

2. The Hole-in-the-Rock Road is a 62-mile rugged, scenic dirt/gravel road that traverses through the heart of Grand Staircase-Escalante National Monument. The last five miles of the road are within the Glen Canyon National Recreation Area ("NRA"). For nearly its entire length, the road is bounded on each side by BLM Wilderness Study Areas ("WSA") and/or BLM-identified lands with wilderness characteristics ("LWC").

3. The County's R.S. 2477 right-of-way ("ROW") claim for the Hole-in-the-Rock Road has been partially adjudicated. *Kane Cnty., Utah v. United States*, 2025 U.S. Dist. LEXIS 141248, *9 (D. Utah 2025). The ROW is only partially adjudicated because the *Kane County* court resolved the title portion of the claim, but "reserved for future proceedings" any decision "pertaining to scope" for the road. *Id.* at *8. That issue remains unresolved.

4. The County's partially adjudicated ROW came with many strings attached, including limitations on how, when, and where it can engage in road improvements on the Hole-in-the-Rock Road. Controlling here, in *Southern Utah Wilderness Alliance v. Bureau of Land Management* ("*SUWA*"), the Tenth Circuit held that a R.S. 2477 ROW—even one fully adjudicated in the County's favor—"is not tantamount to fee simple ownership of a defined parcel of territory. Rather, it is an entitlement to use certain land in a particular way." 425 F.3d 735, 747 (10th Cir. 2005) (emphasis added). Specifically, the ROW holder "may sometimes be entitled to change the character of the roadway when needed to accommodate traditional uses,

2

but even legitimate changes in the character of the roadway <u>require consultation</u> when those changes go beyond routine maintenance." *Id.* at 748 (emphasis added). Thus,

> when the holder of an R.S. 2477 [ROW] across federal land proposes to undertake <u>any improvements</u> in the road along its [ROW], beyond mere maintenance, it <u>must</u> advise the federal land management agency of that work <u>in advance</u>, affording the agency a fair opportunity to carry out its own duties to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the [ROW], to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands. <u>The initial determination of whether the construction work falls within the scope of an established [ROW] is to be made by the federal land management agency</u>, which has an obligation to render its decision in a timely and expeditious manner.

*Id.* (emphases added).

5.  Road "improvements" that require pre-work consultation with BLM—that is, activities that go beyond routine maintenance—include

> the widening of the road, the horizontal or vertical realignment of the road, the installation . . . of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any "improvement," "betterment," or any change in the nature of the road that may significantly impact [public] lands, resources, or values.

*Id.* at 749 (citation omitted).

6.  The requirement that the ROW holder first consult with BLM before engaging in road improvements is mandatory "and the failure to do so will provide a basis for prompt injunctive relief." *Id.*

7.  The County—like any ROW holder—is bound by Tenth Circuit precedent. Nonetheless, as discussed below, the County admits that it is, among other things, actively and intends to continue until completed:

- "Grading and reshaping the existing roadway";

3

- "Install[ing] . . . drainage features including culverts";

- "Plac[ing] . . . gravel where needed to stabilize the road surface"; and

- "Surfacing [the dirt road] with a double chip seal treatment . . . [for] approximately ten miles of the roadway."

*See generally* Letter from David Dodds, Garfield Cnty., Utah to Adé Nelson, Bureau of Land Mgmt., *Re: Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)* (Jan. 27, 2026) ("Notice") (attached as Ex. 1).

8. Pursuant to Tenth Circuit law, these actions are road improvements, not routine maintenance, and therefore even if the County had a fully adjudicated ROW, which it does not, the County was required to consult with BLM before starting work. However, the County did not consult with BLM. Likewise, BLM has not demanded or required that the County immediately halt all road improvement activities until the consultation process is initiated and completed. Instead, BLM is idly standing by while the County engages in activities that BLM acknowledges are improvements, but without determining whether the County's improvements are reasonable and necessary, whether there are alternatives to the County's proposed improvements, and whether the BLM is meeting its obligation to ensure that the County's actions do not lead to unnecessary or undue degradation.

9. The County's "bulldoze first, talk later" road improvements are in direct violation of Tenth Circuit precedent, and BLM's failure to order the County to halt all road improvements and initiate pre-work consultation regarding those improvements violates its duties under FLPMA.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief), and 5 U.S.C. §§ 501-706 (Administrative Procedure Act, or "APA").

11. Venue is proper in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(e)(1) because the statutory violations alleged herein all occurred within the state of Utah.

## PARTIES

12. Plaintiff SOUTHERN UTAH WILDERNESS ALLIANCE ("SUWA") is a nonprofit environmental membership organization dedicated to the preservation of outstanding wilderness found throughout Utah, including in Grand Staircase-Escalante National Monument, the Glen Canyon NRA and the Hole-in-the-Rock Road and surrounding wilderness-caliber lands, and the management of wilderness-quality lands in their natural state for the benefit of all Americans. SUWA is headquartered in Salt Lake City, Utah with offices in Moab, Utah and Washington, D.C. SUWA's members use and enjoy public lands throughout Utah for a variety of purposes, including scientific study, recreation, wildlife viewing, aesthetic appreciation, viewing cultural and historic artifacts, and financial livelihood. This is particularly true in the Grand Staircase-Escalante National Monument where SUWA members enjoy and undertake all of these activities and often visit the public lands comprising the Monument. SUWA promotes local and national recognition of the region's unique character through research and public education and supports administrative and legislative initiatives to permanently protect Utah's wild places. SUWA brings this action on its own behalf and on behalf of its members.

13. Defendant GARFIELD COUNTY, UTAH is a county in south central Utah. The county encompasses large segments of federal public lands in the Grand Staircase-Escalante National Monument, the Glen Canyon NRA, and the Hole-in-the-Rock Road. The Garfield County Public Works Department (a county-entity) and/or its contractors are actively undertaking road improvements on the Hole-in-the-Rock Road.

14. Defendant STATE OF UTAH is one of fifty sovereign states forming the United States of America, having been admitted to the Union on January 4, 1896. Under state law, Utah is a co-owner of all R.S. 2477 rights-of-way, including for the Hole-in-the-Rock Road. Utah is aware and supportive of Garfield County's road improvements on the Hole-in-the-Rock Road.

15. Defendant UNITED STATES DEPARTMENT OF THE INTERIOR ("Interior Department") is the federal agency responsible for managing approximately five hundred million acres of federal public land across the United States for a variety of competing resources, including the protection of the natural and human environment.

16. Defendant UNITED STATES BUREAU OF LAND MANAGEMENT is an agency within the Interior Department that is responsible for the management of approximately twenty-three million acres of federal public land in Utah, including the lands at issue in this litigation. All BLM authorizations and actions must be in accordance with FLPMA.

17. Garfield County, Utah, the Interior Department, and BLM are referred to herein collectively as, "Defendants."

## FACTS GIVING RISE TO SUWA'S CAUSES OF ACTION

18. On January 27, 2026, Garfield County Public Works Director David Dodds sent a letter to Adé Nelson, the Grand Staircase-Escalante National Monument manager, notifying her that the County intended to imminently begin road improvement and maintenance activities on the Hole-in-the-Rock Road. *See generally* Notice.

19. On February 2, 2026, SUWA received a copy of the County's letter and over the course of the next two days – February 3-4 – SUWA confirmed that in fact the County was actively engaged in road improvement activities on the Hole-in-the-Rock Road, including road widening, changing the vertical and horizontal alignment of the road, and installing culverts where none previously existed.

20. In its January 27 letter, the County wrongly claimed that all of its road-related activities were "maintenance" but then described the nature and scope of the work to include:

- Grading and reshaping the existing roadway and road prism to restore and maintain a proper running surface and drainage, including removal and reshaping of accumulated edge berms and restoration of proper cross slope[;]

- Placement and cleaning of bar ditches[;]

- Installation, replacement, and maintenance of drainage features including culverts[;]

- Maintenance of lead off ditches . . . to direct runoff away from the road prism[; and]

- Placement of gravel where needed to stabilize the road surface[.]

*Id.* at *1-2.

21. Additionally, the County explained that the "roadway grading and road prism improvements described above will extend to the Garfield County and Kane County line. Surfacing with a double chip seal treatment will be applied to approximately ten miles of the roadway." *Id.* at *2.

7

22. Many of these road construction activities—specifically chip sealing, installation of culverts where none previously existed, and changing the road's alignment—are textbook examples of improvements, not maintenance. *See SUWA*, 425 F.3d at 749 (improvements include, *inter alia*, "widening of the road, . . . installation [of] culverts and other drainage structures, [and] . . . change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal. . .)").

23. When the County proposes to undertake "any improvements in the road along its right of way, beyond mere maintenance" it must advise the BLM and provide BLM the opportunity to "carry out its own duties" and determine whether the improvement is reasonable and necessary." *SUWA*, 425 F.3d at 748; *see also Kane Cnty., Utah v. United States*, 772 F.3d 1205, 1224-25 (10th Cir. 2014) (the holder of a R.S. 2477 ROW must consult with BLM before it undertakes improvements to the ROW).

24. On February 3, 2026, SUWA sent a cease-and-desist letter to the County. *See generally* Letter from Hanna Larsen, *et al.*, S. Utah Wilderness All. to David Dodds, *et al.*, Garfield County, *Re: Garfield County's January 27, 2026 "Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)"* (Feb. 3, 2026) (attached as Ex. 2). Among other things, SUWA explained that (1) the road construction activities were "improvements," not "maintenance," and (2) the County held only a partially adjudicated ROW because the *Kane County* court had deferred a decision as to scope of the ROW, and therefore the improvements were unauthorized and unlawful. *See id.* On February 4, Ms. Tess Davis, an assistant Attorney General with the state of Utah, responded with a single sentence email to SUWA's letter: "The work presently being undertaken by Garfield County on the G9000 Hole-in-

8

the-Rock Road does not differ from its historic maintenance and operation of the road." Email from K. Tess Davis, State of Utah, to Hanna Larsen *et al.*, S. Utah Wilderness All., *Re: G9000 Hole-in-the-Rock Road Maintenance & Improvements* (Feb. 4, 2026) (attached as Ex. 3). Ms. Davis's statement is incorrect at least insofar as the fact that Garfield County has <u>never</u> chip sealed the Hole-in-the-Rock Road, whose surface is dirt and gravel.

25. On February 4, SUWA sent an email to the acting BLM State Director, Mr. Tom Heinlein, which forwarded SUWA's February 3 letter to Garfield County, summarized the points raised therein, and identified that by not directing the County to immediately cease its work BLM had, among other things, failed to fulfill its statutory duties and acted contrary to law. Email from Stephen Bloch, S. Utah Wilderness All., to Thomas Heinlein *et al.*, Bureau of Land Mgmt., *Re: Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road* (Feb. 4, 2026) (attached as Ex. 4). Mr. Bloch explained that "BLM must direct the county to cease its work immediately and consult with BLM before taking any further action." *Id.*

26. Later in the day on February 4, Mr. Heinlein instructed Mr. Joseph Kim, an attorney with the United States Department of Justice, to forward a copy of a February 4 letter from Ms. Nelson—which responded to the County's January 27 letter—to Mr. Bloch. *See generally* Email from Joseph Kim, U.S. Dep't of Justice, to Stephen Bloch *et al.*, S. Utah Wilderness All., *Re: Hole in the Rock Road* (Feb. 4, 2026) ("Kim Email") (attached as Ex. 5); Letter from Adé Nelson, Bureau of Land Mgmt., to David Dodds, Garfield Cnty. (Feb. 4, 2026) ("BLM Letter") (attached as Ex. 6). Mr. Kim's email conveyed BLM's decision rejecting SUWA's request that BLM comply with FLPMA and other federal laws and obligations. It states in full: "BLM has received your email about the Hole in the Rock Road, and asked me to

9

forward you their attached response to the County's January 27 letter. Please let us know if you have any questions." *See* Kim Email.

27. For its part, Ms. Nelson's February 4 letter correctly notes that the County's proposed actions "seem to propose both maintenance and improvements," and stated that the County had not consulted with the BLM prior to beginning this work. *See* BLM Letter at 2. However, BLM took no action to stop the County's improvement activities on federal lands. On information and belief, the County has not responded to BLM's letter. BLM has not satisfied its duty "to determine whether the proposed improvement [was] reasonable and necessary in light of the traditional uses of the [ROW], to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands." *SUWA*, 425 F.3d at 748.

28. The County continues to brazenly ignore these warnings and objections and to actively engage in road improvements on the Hole-in-the-Rock Road. The County's activities constitute trespass on public lands. *See SUWA*, 425 F.3d at 747-48 (explaining that unilaterally making improvements to an R.S. 2477 ROW constitutes trespass). Based on information and belief, these activities are ongoing today, February 5, 2026, and are causing immediate and irreparable harm to SUWA and its members.

29. BLM's failure to satisfy these duties violates FLPMA. FLPMA requires BLM to "take any action necessary to prevent unnecessary or undue degradation of the [public] lands." 43 U.S.C. § 1732(b). Here, BLM has not taken any action at all, aside from sending a softly worded letter to the County expressing the agency's disappointment with the lack of pre-work consultation.

30. Because BLM decided not to require the County to halt all road improvements until the parties have consulted, BLM has effectively authorized and endorsed the County's trespass on public lands and the accompanying road improvements' significant environmental impact to Grand Staircase-Escalante National Monument and its outstandingly remarkable objects and values, as well as BLM-identified LWC areas, among other resource values. And BLM has done so without first determining whether the improvements are reasonable and necessary or analyzing the impacts of those improvements and any alternatives thereto that would reduce the impacts to public lands and resources.

31. The County's ongoing Hole-in-the-Rock Road improvements have destroyed—and continue to destroy—these public lands and public resource values.

## FIRST CAUSE OF ACTION
*Violation of Federal Common Law Against All Defendants*

32. SUWA incorporates by reference all the preceding paragraphs.

33. Pursuant to principles of federal common law, Defendants are not free to ignore binding Tenth Circuit precedent. *See Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 641 (1981) ("federal common law exists . . . [in] areas as those concerned with the rights and obligations of the United States").

34. The County holds a partially adjudicated R.S. 2477 ROW in the Hole-in-the-Rock Road and does not have any right to make improvements to the road. Moreover, even if the County's ROW was fully adjudicated in the County's favor, "the holder of an R.S. 2477 [ROW] across federal land must consult with [BLM] before it undertakes any improvements to an R.S. 2477 [ROW] beyond routine maintenance. *SUWA*, 425 F.3d at 746. In other words, "[j]ust

because a proposed change falls within the scope of a [ROW] does not mean that [road construction activities] can be undertaken unilaterally." *Id.* at 748.

35. Despite its legal obligation to do so, the County did not consult with BLM and, by its own statements and facts, is actively engaged in road construction activities that, pursuant to the Tenth Circuit's holding in *SUWA*, qualify as "improvements." These activities include:

- Reshaping the roadway (*e.g.*, widening the road or horizontally/vertically realigning the road);

- Placement of bar ditches (*e.g.*, change in the nature of the road);

- Installation of drainage features including culverts;

- Surfacing with a double chipseal treatment for 10 miles of the roadway (*e.g.*, upgrading the road surface from dirt or gravel to chipseal).

Notice at *1-2.

36. Contrary to binding law, the County asserted that all of its proposed construction activities were maintenance when in fact many of them constitute improvements. *See SUWA*, 425 F.3d at 747-48. As such, the County was required to consult with BLM <u>before</u> beginning any improvements; it did not do so.

37. For its part, "BLM has obligations to protect the land over which the [R.S. 2477 ROW] here pass[es]." *Id.* at 747. Specifically, "[u]nless it knows in advance when [ROW] holders propose to change the width, alignment, configuration, surfacing, or type of roads across federal land, the BLM cannot effectively discharge its responsibilities to determine whether the proposed changes are reasonable and necessary, whether they would impair or degrade the surrounding lands, and whether modifications in the plans should be proposed." *Id.*

38. BLM has decided not to comply with these duties and responsibilities and instead has stood by and spectated while the County conducts these unauthorized improvements. As a result, BLM has effectively endorsed the County's illegal conduct on federal public lands. This is unlawful. The Tenth Circuit could not have been clearer: "[I]f changes [to the R.S. 2477 ROW] are contemplated, it is necessary to consult, and the failure to do so will provide a basis for prompt injunctive relief." *Id.* at 749.

## SECOND CAUSE OF ACTION
*Violation of FLPMA and the APA Against Federal Defendants*

39. SUWA incorporates by reference all the preceding paragraphs.

40. Pursuant to FLPMA, "[i]n managing the public lands [BLM] shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

41. Here, BLM took no affirmative action to prevent unnecessary or undue degradation. At a minimum, the agency was required to "determine whether the proposed improvement [was] reasonable and necessary in light of the traditional uses of the [ROW], to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands." *SUWA*, 425 F.3d at 748.

42. However, the agency failed to do so. Without taking these actions, BLM had no way of complying with FLPMA. As the Tenth Circuit has held:

> Unless [the agency] knows in advance when [ROW] holders propose to change the width, alignment, configuration, surfacing, or type of roads across federal land, the BLM cannot effectively discharge its responsibilities to determine whether the proposed changes are reasonable and necessary, whether they would impair or degrade the surrounding lands, and whether modifications in the plans should be proposed.

*Id.* at 747 (emphasis added).

43.     BLM's decision not to act means it has not properly discharged its responsibilities under FLPMA. Because it has not properly discharged its responsibilities, BLM has failed "to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands." *Id.* at 748. Because BLM failed to understand the environmental impacts of the County's road improvements or to formulate alternatives thereto that would reduce those impacts, it has sanctioned environmental degradation and destruction that otherwise would not have occurred and thus the agency failed to "take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

## **PRAYER FOR RELIEF**

WHEREFORE, SUWA respectfully requests that the Court enters judgment in SUWA's favor and against Defendants, and that the Court:

(1)     Declare that Defendant Garfield County violated federal common law when it undertook road improvement activities on the Hole-in-the-Rock Road without first consulting with the BLM;

(2)     Declare that Defendants BLM and Interior Department violated federal common law when it decided not to require consultation before permitting the County to engage in road improvement activities on the Hole-in-the-Rock Road;

(3)     Declare that Defendants BLM and Interior Department violated FLPMA when it failed to take any action necessary to prevent unnecessary or undue degradation of the public lands;

(4) Award injunctive relief prohibiting the County from continuing any additional road improvements on the Hole-in-the-Rock Road until it has consulted with BLM and BLM has (a) determined whether the improvements are reasonable and necessary in light of the traditional uses of the partially adjudicated R.S. 2477 ROW, (b) studied the potential effects of the road improvements, and (c) if necessary, formulated alternatives that serve to protect the public lands.

(5) Award injunctive relief instructing the County to remove any unauthorized improvements including, but not limited to, any newly installed culverts and chip seal installed on the 10-mile segment of the Hole-in-the-Rock Road or other such equitable relief as the Court deems proper;

(6) Enjoin the County from proceeding with further road improvements on the Hole-in-the-Rock Road pursuant to the Court's authority under the All Writs Act, 28 U.S.C. § 1651.

(7) Retain jurisdiction of this action to ensure compliance with its decree;

(8) Award SUWA costs incurred in pursuing this action, including attorney's fees, as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable provisions; and

(9) Grant such other and further relief as is proper.

DATED:    February 5, 2026          Respectfully,

                                                          */s/ Hanna Larsen*
                                                          Stephen H.M. Bloch
                                                          Hanna Larsen
                                                          SOUTHERN UTAH WILDERNESS ALLIANCE

Trevor J. Lee
HOGGAN LEE HUTCHINSON

Mitch M. Longson
MANNING CURTIS BRADSHAW
& BEDNAR PLLC

*Attorneys for Plaintiff Southern Utah Wilderness Alliance*