# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br> Plaintiff, <br><br> v. <br><br> **GARFIELD COUNTY, UTAH**, a political subdivision, the **STATE OF UTAH**, the **UNITED STATES BUREAU OF LAND MANAGEMENT**, and the **UNITED STATES DEPARTMENT OF THE INTERIOR**, <br><br> Defendants. | **DECLARATION OF KYA MARIENFELD** <br><br> Case No. 2:26-cv-00096 <br><br> Judge |

I, **KYA MARIENFELD**, declare as follows:

1. This declaration is filed in support of the Southern Utah Wilderness Alliance's ("SUWA") lawsuit in the above-captioned matter. I have personal knowledge of each of the facts set forth below, and if called upon to do so, could and would testify regarding the following.

2. I am a Wildlands Attorney for SUWA, where I have worked since 2015

3. I am also an active member of SUWA and have been since 2015.

4. SUWA, based in Salt Lake City, Utah, has approximately 12,000 members, many of whom reside in Utah. SUWA's mission is the preservation of the outstanding wilderness and other sensitive public lands across Utah, and the management of these lands in their natural state for the benefit of all Americans. SUWA promotes local and national recognition of the region's unique character through research and public education; supports both administrative and

legislative initiatives to permanently protect Utah's wild places within the National Wilderness Preservation System or by other protective designations where appropriate; builds support for such initiatives on both the local and national levels; and provides leadership within the conservation movement through its advocacy for wilderness preservation.

5.　　SUWA also works to ensure that areas already designated as wilderness, or which are proposed for such designation, are managed appropriately. SUWA seeks to ensure that the wild federal public lands implicated by this case are managed to preserve their natural and cultural values. SUWA also advocates for other protective designations, for example, in resource management plan development or in connection with individual agency decisions regarding specific project proposals.

6.　　SUWA is a vocal advocate for the protection of federally managed wilderness-quality lands in Utah and is widely recognized as a leader in the national effort to designate, over eight million acres of Bureau of Land Management ("BLM") land in the state as wilderness through proposed legislation titled "America's Red Rock Wilderness Act," ("ARRWA"),[1] including the lands traversed by or bordered by the Hole-in-the-Rock Road. BLM frequently solicits SUWA's input and participation in the land use planning process for a variety of resource decisions, and SUWA actively participates in all levels of BLM's decision-making process regarding the management of public lands.

7.　　SUWA has been engaged and involved in the management and protection of public lands encompassed by Grand Staircase-Escalante National Monument since before the

---

[1] H.R. 2467, S. 1193, 119th Cong. (2025).

Monument's designation 30 years ago. Protection of these lands is a top priority for both our organization and individually to our staff who work and recreate there.

8. SUWA has a particular interest in federally managed wilderness-quality lands and the threats to their wilderness character, including Grand Staircase-Escalante National Monument and lands that encompass and are affected by activities on the Hole-in-the-Rock Road. SUWA's concerns include but are not limited to the impacts of motorized vehicles and roads on lands managed by BLM, the growth-inducing effects of road upgrading and expansion, and the effects of these impacts on the opportunities for solitude in the remote and rugged country where we work—including Grand Staircase-Escalante National Monument.

9. As a Wildlands Attorney with SUWA, I am required to spend considerable time on the ground visiting public lands throughout Utah. In this capacity and on my own time, I have traveled extensively throughout the public lands in Utah, including those at issue in this case.

10. My current work involves, among other things, site visits to identify and document the characteristics of certain tracts of BLM lands to determine whether the areas qualify for wilderness protection or are suitable for other types of protection. I also frequently meet with BLM staff to gather information about the resources present on the land and to gather information relating to the impacts of various proposals for use of the land, and engage during public participation periods on project proposals for activities on BLM lands throughout the state, with a particular emphasis on site-specific activities and land use planning in Grand Staircase-Escalante National Monument. I spend considerable time on the ground documenting intrusions such as roads, road maintenance and expansion, dispersed camping impacts, vegetation treatment proposals and projects, and off-road vehicle ("ORV") impacts on lands

considered by the BLM to have wilderness characteristics and other important public land resources. I have expertise in map reading, route finding, and land navigation using both paper and electronic maps, and have been traveling at least bi-annually in Grand Staircase-Escalante National Monument, including on and around the Hole-in-the-Rock Road for over a decade.

11.     Through this work, I am very familiar with the federal public lands managed by the BLM Grand Staircase-Escalante National Monument Field Office and governed by the 2025 Grand Staircase-Escalante National Monument Management Plan ("MMP").[2]

12.     I have traveled down the Hole-in-the Rock Road numerous times, seeking opportunities for solitude, night sky viewing, primitive dispersed camping, and wildlife and geologic feature photography. I have personally visited and enjoyed the federal public lands on and immediately surrounding the Hole-in-the-Rock Road on numerous occasions, most recently in April 2025. I take great pleasure from my visits to this area and intend to return as often as possible, but certainly in the next year.

13.     Currently, the Hole-in-the-Rock Road is a dirt road with pockets of gravel and infrequent culverts at wash crossings along its length, from its north end on Highway 12 in Garfield County to where it enters Glen Canyon National Recreation Area in Kane County.

14.     On my visits to Grand Staircase-Escalante National Monument, I have used the Hole-in-the-Rock Road to access and explore numerous remote and scenic areas including, but not limited to: Zebra Slots, Left Hand Collet Road, the Devil's Garden Instant Study Area, Harris

---

[2] Bureau of Land Mgmt., *Grand Staircase-Escalante National Monument Record of Decision and Approved Resource Management Plan*, 2-70 (Jan. 2025), available at https://eplanning.blm.gov/Documents/?id=91d264cd-a7f2-f011-8406-001dd80ef717&spid=8fe7277f-a8f2-f011-8407-001dd80db62a (last visited February 5, 2026).

Wash, the Cosmic Eye, Early Weed Bench, the Egypt trailhead, the Peekaboo and Spooky slot canyons at Dry Fork, Dance Hall Rock, Sunset Arch and Fortymile Ridge, Chimney Rock, Sooner Rocks, and the Fiftymile Ridge Road. I use and enjoy these areas for health, spiritual, educational, recreational, aesthetic, and other purposes. I take great pleasure from my visits to this area and intend to return as often as possible, but certainly in the next year, when my infant son is old enough for a late-spring camping trip.

15. My enjoyment of these activities, and that of SUWA's members, is dependent on quiet, natural settings without the sights, sounds and impacts associated with chip sealed/paved roads, including large vehicles like tour buses and ensuing crowds, and high speeds characteristic of chip sealed/paved backcountry roads. If the Hole-in-the-Rock Road is chip sealed/paved, widened beyond its current disturbed width, and/or otherwise improved to accommodate more frequent large vehicle traffic, the wilderness-quality public lands bordering the Hole-in-the-Rock Road will be degraded and my and SUWA's members' enjoyment of these areas will be significantly reduced or eliminated.

16. I have observed that once a road is chip sealed (or improved from a graveled or dirt travel surface), traffic dramatically increases, thereby diminishing the area's primitive and wild character. I have seen the difference in travel speeds between a gravel road and one that has a chip sealed surface, and am particularly concerned that a more remote road in what is essentially the backcountry like Hole-in-the-Rock will have virtually no enforcement of speed limits, presenting a significant danger to drivers and wildlife. I have also observed negative, indirect impacts from newly improved roads including the spread of weeds, collisions with

wildlife, and vehicle noise. All these effects detract from and degrade the natural beauty and wilderness character of the public lands.

17. Road improvement activities such as chip sealing and widening could result in the intrusion and expansion of road-related impacts into areas which are proposed for wilderness designation and/or are currently protected as wilderness study areas, which are significant along the full length of the route, causing unavoidable resource damage to the vegetation, soils, and other resources in newly disturbed areas. Such activities would also dramatically impact the primitive, remote character of the surrounding lands, where public lands are characterized by the lack of roads, ORV use, and other impacts, and which I prize for their primitive nature.

Pursuant to 28 U.S.C. § 1746, I DECLARE, under penalty of perjury, that the foregoing is true and correct.

Signed this 4th day of February, 2026.

*Kya Marienfeld*

Kya Marienfeld