Stephen H.M. Bloch (#7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

Mitch M. Longson (#15661)
MANNING CURTIS BRADSHAW
& BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
mlongson@mc2b.com

Trevor J. Lee (#16703)
HOGGAN LEE HUTCHINSON
257 E 200 S, #1050
Salt Lake City, UT 84111
Telephone: (435) 615-2264
trevor@hlh.law

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE,**<br><br>     Plaintiff,<br><br>v.<br><br>**GARFIELD COUNTY, UTAH**, a political subdivision, the **STATE OF UTAH**, the **UNITED STATES BUREAU OF LAND MANAGEMENT**, and the **UNITED STATES DEPARTMENT OF THE INTERIOR**<br><br>     Defendants. | **EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT**<br><br>Case No. 2:26-cv-00096-AMA<br><br>Judge Ann Marie McIff Allen |

Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiff Southern Utah Wilderness Alliance ("SUWA") hereby moves the Court for an ex parte temporary restraining order and preliminary injunction enjoining Defendants Garfield County, Utah, the State of Utah, (collectively "Garfield County" or "the County") and the Bureau of Land Management ("BLM")

from authorizing or constructing improvements to the Hole-in-the-Rock Road (G9000) until

Defendants have adhered to all consultation requirements mandated by *Southern Utah*

*Wilderness Alliance v. Bureau of Land Management* ("*SUWA v. BLM*"), 425 F.3d 735 (10th Cir.

2005). Alternatively, SUWA seeks emergency relief under the All Writs Act, 28 U.S.C §

1651(a).

### GROUNDS FOR EX PARTE TEMPORARY RESTRAINING ORDER

The Court

may issue a temporary restraining order without written or oral notice to the adverse
party only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate
and irreparable injury, loss, or damage will result to the movant before the adverse
party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and
the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). Here, immediate and irreparable injury, loss, and harm will result to

SUWA from the ongoing unlawful road work described herein before the Court will have an

opportunity to hear from Defendants. Specifically, Mr. Jack Hanley's attached declaration

clearly demonstrates that "immediate and irreparable injury" to SUWA will occur, and, in fact,

already is occurring "before the [Defendants] can be heard in opposition." *Id.*; *see generally*

Declaration of Jack Hanley (attached as Ex. 1).

For instance, on February 4, 2026, Mr. Hanley observed on the Hole-in-the-Rock Road:

large vehicles and machinery actively widening the road, tractors trenching the
edges of the road, recently installed culverts and other drainage structures, staging
areas full of various construction-related equipment including culverts and large
tractors, and countless vehicle tracks that extended well-beyond and off the existing
road into the surrounding landscape, crushing the native vegetation.

*Id.* ¶ 15; The photos included in Mr. Hanley's declaration show that Defendant Garfield County

"has (1) widened the road, (2) horizontally and/or vertically realigned the road, (3) installed culverts and other drainage structures where these did not previously exist, and (4) destroyed the vegetation that existed adjacent to and near the road." *id.* ¶¶ 16 (photos 1-6), 17. A subset of the photos in Mr. Hanley's declaration are included below:

*Photo 1 (tracks well beyond road surface)*    *Photo 2 (damaged vegetation)*




*Photo 2 (new culvert)*          *Photo 3 (installation of a new culvert)*

 

As explained in more detail in Argument Section I.B., these actions, as well as Garfield County's plans to chip seal ten miles of the Hole-in-the-Rock Road, have caused and will continue to cause SUWA irreparable harm absent an immediate ex parte temporary restraining order. *See generally* Argument Section I.B., *infra*.

There is no question that, absent an immediate court-ordered injunction, Garfield County will not cease its operations. Indeed, SUWA sent a cease-and-desist letter to Garfield County and the State of Utah on February 3, 2026. Declaration of Hanna Larsen ¶ 5 (attached as Ex. 2). In response, Utah Assistant Attorney General Ms. Tess Davis stated, "The work presently being undertaken by Garfield County on the G9000 Hole-in-the-Rock Road does not differ from its historical maintenance and operation of the road." *Id.* ¶ 8. Not only is this statement inaccurate

(for instance, among other reasons, the road surface has <u>never</u> been upgraded to a chip seal), but it reflects the County's intent to continue work on the Hole-in-the-Rock Road until told not to by this Court, despite the fact that, as outlined in SUWA's Letter, such work clearly constitutes unauthorized "improvements" and not "maintenance." *See* Larsen Decl. Ex. B.

Defendants are aware of this lawsuit and service of process in accordance with Federal Rule of Civil Procedure 4 is in progress. Larsen Decl. ¶ 10. SUWA learned of the County's plans to improve the Hole-in-the-Rock Road late afternoon on February 2, 2026 and, as noted above, SUWA's counsel sent a cease-and-desist letter to Garfield County on February 3, 2026. *Id.* ¶¶ 4-5. The next day, SUWA discussed the situation with Bureau of Land Management ("BLM") personnel and received a copy of BLM's official response to Garfield County's actions. *Id.* ¶¶ 6-7. The following day, on February 5, SUWA notified counsel for all Defendants of this lawsuit and included "true and correct copies of SUWA's complaint, motion for temporary restraining order and preliminary injunction, supporting exhibits and other case initiation documents." *Id.* ¶ 9. Those documents are currently in the process of being personally served under Rule 4. *Id.* ¶ 10. Concurrently with the filing of this Motion, SUWA's counsel will email copies of the filing, including all exhibits, to counsel for all Defendants. *Id.* ¶ 11.

For these reasons, the Court is authorized to, and should, grant SUWA's Ex Parte Motion for a Temporary Restraining Order to enjoin Garfield County from continuing to irreparably harm the Grand Staircase-Escalante National Monument and surrounding public lands and SUWA's interests.

## STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR MOTION

Garfield County is the co-owner of a partially adjudicated Revised Statute 2477 ("R.S. 2477") right-of-way ("ROW") for a 15-mile stretch of the Hole-in-the-Rock Road, running from the junction with State Highway 12 south to the Kane County line. *See Kane County, Utah v. United States*, 2025 U.S. Dist. LEXIS 141248, *9 (D. Utah 2025) ("*HITR Decision*"). The scope of the County's ROW has not yet been determined, and the case is still pending before the court. *Id.* at *8. Despite not owning a fully adjudicated ROW, Garfield County has already begun to conduct extensive improvements on the Hole-in-the-Rock Road, including work that extends beyond the current footprint of the road surface, such as widening and grading the road, adding new road base, and installing new culverts and other drainage features. Garfield County also plans to improve the surface of the road from dirt and gravel to chip seal (similar to pavement). The County started this work without first consulting with BLM—the federal agency responsible for managing the public lands across which the Hole-in-the-Rock Road traverses.

For its part, BLM has known that Garfield County has been actively working on the Hole-in-the-Rock Road since at least January 30, 2026, has recognized that at least a portion of the road work qualifies as "improvements," not "maintenance" (triggering the obligation to consult) and is aware of its consultation obligations under *SUWA v. BLM* but has done nothing to stop the County from constructing improvements to the Hole-in-the-Rock Road. *See* Letter from Adé Nelson, Bureau of Land Mgmt., to David Dodds, Garfield Cnty. (Feb. 4, 2026) ("BLM Letter") (ECF No. 1-6). As a result, BLM has violated the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.*, and its implementing regulations, by failing to

6

prevent unnecessary and undue degradation of the Grand Staircase-Escalante National Monument and the objects protected within the Monument.

Indeed, in the context of road work involving R.S. 2477 ROWs, the Tenth Circuit has recognized that the failure to consult "provide[s] a basis for prompt injunctive relief." *SUWA v. BLM*, 425 F.3d at 749 (emphasis added). Without immediate injunctive relief or relief under the All Writs Act, the improvements to the Hole-in-the-Rock Road will certainly be completed before the Court can hear and resolve the merits of SUWA's complaint. The improved road will come at the cost of permanent harm to wilderness-quality lands in Grand Staircase-Escalante National Monument and other monument resources and values. In particular, expanding the width of the road surface and adding ditches and drainage features on the sides of the road will result in permanent damage to the BLM-identified lands with wilderness characteristics ("LWC") surrounding the Hole-in-the-Rock Road that are managed to minimize impacts to wilderness values.[1] In addition, improved road surfaces such as chip seal or pavement lead to increased visitation and unauthorized off-road travel, resulting in illegal motorized incursions and a loss of naturalness and solitude in the adjacent Devils Garden Instant Study Area and nearby North Escalante Canyons/The Gulch Wilderness Study Area and LWC that is managed to protect wilderness qualities. These impairments are precisely the type of environmental damage the Supreme Court has held "can seldom be adequately remedied by money damages and is often

---

[1] The Grand Staircase-Escalante National Monument Management Plan divides BLM-identified LWC into three categories: LWC managed to protect wilderness characteristics, LWC managed to minimize impacts to wilderness characteristics, and LWC managed for other discretionary uses. *See* Bureau of Land Mgmt., *Grand Staircase-Escalante National Monument Record of Decision and Approved Resource Management Plan*, 2-15 (Jan. 2025) ("GSENM RMP"), available at https://eplanning.blm.gov/Documents/?id=91d264cd-a7f2-f011-8406-001dd80ef717&spid=8fe7277f-a8f2-f011-8407-001dd80db62a (last visited February 5, 2026).

permanent or at least of long duration, *i.e.*, irreparable." *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 545 (1987); *see also Davis v. Mineta*, 302 F.3d 1104, 1115 (10th Cir. 2002).

As demonstrated below, SUWA meets each of the four elements necessary for a temporary restraining order and preliminary injunction. *First*, SUWA is likely to succeed on the merits because Defendants have failed to engage in, let alone complete consultation over the proposed road improvements prior to Garfield County beginning work on the Hole-in-the-Rock Road and, as a result, BLM has failed to prevent unnecessary and undue degradation to the Grand Staircase-Escalante National Monument. *Second*, SUWA will suffer irreparable harm if the road work is not enjoined and the Hole-in-the-Rock Road is widened, resurfaced, and otherwise improved as planned. *Third*, the balance of harms weighs heavily in SUWA's favor, and *fourth* the public interest strongly favors an injunction.

SUWA, in the alternative, respectfully requests the Court exercise its authority pursuant to the All Writs Act, 28 U.S.C § 1651(a), to preserve the status quo and enjoin Defendants from authorizing or constructing improvements to the Hole-in-the-Rock Road until the parties have an opportunity to litigate and the Court to decide the merits of SUWA's claims.

## FACTUAL BACKGROUND

## I.    Grand Staircase-Escalante National Monument and the Hole-in-the-Rock Road

Grand Staircase-Escalante National Monument was first designated as a national monument in 1996 to protect the incredible scientific, ecological, and paleontological resources within its 1.9 million acres. *See generally* Proclamation No. 6920, 61 Fed. Reg. 50223 (Sept. 18, 1996); Proclamation No. 10286, 86 Fed. Reg. 57335 (Oct. 21, 2021). This crown jewel of our

nation's public lands was the first monument managed by BLM, *ids.*, and the first unit in the agency's now robust and expansive "National Conservation Lands" program. Since its establishment, the Monument has preserved a remarkable ecosystem at the landscape-level and set the stage for continued scientific discoveries about human, paleontological, and geologic history on the Colorado Plateau.

Grand Staircase-Escalante National Monument is "perhaps the richest floristic region in the Intermountain West, spanning five life zones and supporting diverse, rare, and endemic populations of plants and a diversity of animals, as well as unusual and diverse soils that support communities of mosses, lichens, and cyanobacteria." 86 Fed. Reg. at 57335 (internal quotation marks omitted). Its "rich mosaic of objects of historic and scientific interest" include "fossil-rich formations in the Kaiparowits Plateau" and remnants of "the area's rich human history, spanning from the indigenous people and cultures who made this area home to Anglo-American explorers and early Latter-day Saint pioneers." *Id.*

The Hole-in-the-Rock Road is one of the historical objects protected in the Grand Staircase-Escalante National Monument that runs through the heart of the Kaiparowits Plateau, connecting Escalante, Utah to the Hole-in-the-Rock historic marker in Glen Canyon National Recreation Area. It "follows the route that Latter-day Saint pioneers constructed between 1879 and 1880 when crossing southern Utah to establish a wagon route between Escalante and southeast Utah settlements." *Id.* The Garfield County portion of the road is approximately twenty miles long, sixteen of which are within the Monument. *See* S. Utah Wilderness All., Map of Wilderness Quality Lands and the Hole-in-the-Rock Road (Feb. 4, 2026) (attached as Ex. 3); Declaration of Delaney Callahan (attached as Ex. 4). Within the Monument, the road is

surrounded by BLM-identified LWC and the North Escalante Canyons/The Gulch WSA is a mere half mile east of the road. *See id.*

## II.     The Hole-in-the-Rock Road R.S. 2477 Claim

Garfield County and the State of Utah first alleged an R.S. 2477 claim to the Hole-in-the-Rock Road in 2011. *See generally*, Complaint, *Garfield County v. United States*, 2:11-cv-1045 (D. Utah) (ECF No. 2). For the majority of the time since then, the case has been stayed pending a "Bellwether" process to resolve R.S. 2477 claims in Kane County, Utah. However, the G9000 Hole-in-the-Rock Road was subsequently added to the Bellwether process. *HITR Decision* at *6. In 2025, the district court granted title to claimants Garfield County and the State of Utah, affirming that they were joint title holders to the R.S. 2477 ROW for the Garfield County portion of the Hole-in-the-Rock Road.[2] *Id.* at 9. However, the court expressly declined to make a determination as to the scope of the ROW at that time, instead reserving "[i]ssues pertaining to scope" for "future proceedings." *Id.* Such proceedings have not yet happened and thus, the State and County's R.S. 2477 ROW is not fully adjudicated.

## III.    The Present Notice and Construction of Improvements to the Hole-in-the-Rock Road

Despite not holding a fully adjudicated ROW to the Hole-in-the-Rock Road, and thus not knowing the scope of the ROW, Garfield County notified BLM on January 27, 2026 of its intent to perform "maintenance, upgrades, and restoration activities" on the road. Letter from David Dodds, Garfield Cnty., Utah to Adé Nelson, Bureau of Land Mgmt., *Re: Notice of Maintenance*

---

[2] The requirements for adjudicating and quieting title to a claimed R.S. 2477 ROW involve both a title determination and a scope determination and are explained in detail in Argument Section I.A.i, *infra*.

*Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)*, 1 (Jan. 27, 2026) ("Notice")

(ECF No. 1-1).[3] Such activities include grading the roadway, reshaping the roadway, placing and

cleaning bar ditches, installing, replacing, and maintaining drainage features such as culverts,

maintaining lead off ditches, placing gravel to stabilize the road surface, and upgrading the

surface of the road to a chip seal. *See id.* at *1-2.

Importantly, although the Notice purports to describe all of these activities as

"maintenance," many are, in fact, improvements" under Tenth Circuit law,[4] including but not

limited to "reshaping the existing roadway and road prism," "[i]nstallation…of drainage features

including culverts," and "[s]urfacing with a double chip seal treatment." *Id.* at 1-2. As explained

in more detail in Argument Section I.A.i, *infra*, the County, even if it had a fully-adjudicated

ROW over the route, is not authorized to conduct improvement activities without first consulting

with BLM. No such consultation has occurred. *See* BLM Letter. Yet, Garfield County is actively

working on the road and, in fact, conducting such illegal improvement activities. *See* Hanley

Decl. ¶¶ 15-19. BLM is aware of this ongoing road work and its duty to consult with Garfield

County over the proposed improvements but has done nothing to stop the County from

continuing to work on the road. *See generally* BLM Letter.

---

[3] SUWA learned of this Notice on February 2, 2026.

[4] "Improvements" are defined to include

> the widening of the road, the horizontal or vertical realignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.)

*SUWA v. BLM*, 725 F.3d at 749.

On February 3, the day after SUWA learned of the County's plans, SUWA sent a letter via email to Garfield County and the State of Utah explaining how and why the County's planned road work violates federal law and demanding they stop all road work unless and until they complete consultation with BLM. *See generally* Letter from Hanna Larsen, *et al.*, S. Utah Wilderness All. to David Dodds, *et al.*, Garfield County, *Re: Garfield County's January 27, 2026 "Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)"* (Feb. 3, 2026) (ECF No. 1-2). SUWA's letter also warned the recipients of SUWA's intent to pursue legal action if Garfield County did not cease all road work. *Id.* at 4. The State and County's sole response to SUWA's letter effectively declined to cease all road work, stating "[t]he work presently being undertaken by Garfield County on the G9000 Hole-in-the-Rock Road does not differ from its historical maintenance and operation of the road." Email from K. Tess Davis, State of Utah, to Hanna Larsen *et al.*, S. Utah Wilderness All., *Re: G9000 Hole-in-the-Rock Road Maintenance & Improvements* (Feb. 4, 2026) (ECF No. 1-3). This statement is factually inaccurate because, *inter alia*, the Hole-in-the-Rock Road has <u>never</u> been chip sealed but is instead a mix of dirt road with spot gravel. As of the date of this filing, to the best of SUWA's knowledge, Garfield County's road crew is continuing to work on the Hole-in-the-Rock Road as described in the Notice.

This lawsuit and Motion for a Temporary Restraining Order and Preliminary Injunction follows.

## **ARGUMENT**

### I.    SUWA Meets the Test of Issuance of a Temporary Restraining Order and Preliminary Injunction

To obtain a preliminary injunction, a plaintiff must show the following:

> (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999) (citations omitted); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). The final two "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This same test applies to a request for a temporary restraining order. *See, e.g., Bauchman v. W. High Sch.*, 900 F. Supp. 248, 250 (D. Utah 1995). SUWA meets each prong of this test. The Court should therefore enjoin Defendants from improving the Hole-in-the-Rock Road until consultation consistent with *SUWA v. BLM* is initiated and completed and BLM makes an informed decision as to whether and to what extent the improvements may be made.

## A.    SUWA is Likely to Succeed on the Merits

A plaintiff seeking a temporary restraining order or preliminary injunction "must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co.*, 480 U.S. at 546, n.12. Conclusions of law in such circumstances are based on "procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). SUWA need not "prove its case in full," and conclusions of law "are not binding at trial on the merits." *Id.*

SUWA is likely to succeed on the merits of both of its claims because Defendants are clearly and unequivocally in violation of the black letter law set forth in *SUWA v. BLM* and the Federal Defendants have failed to prevent unnecessary and undue degradation in violation of FLPMA.

i.    *Defendants Failed to Consult on the Proposed Improvements to the Hole-in-the-Rock Road in Violation of Federal Caselaw.*

Quieting title to an R.S. 2477 ROW under the Quiet Title Act, 28 U.S.C. § 2409a, requires both a title determination in favor of the claimant and a scope determination before the ROW is deemed adjudicated. *Kane Cnty. v. United States*, 928 F.3d 877, 894 (10th Cir. 2019) (explaining that "scope is inherent in the quiet title process… [b]ut the district court must determine title and scope in separate steps."); *see also Kane Cnty. v. United States*, 772 F.3d 1205, 1225 (10th Cir. 2014) (remanding for the district court to reexamine the scope of three ROWs while leaving the title determinations of those ROWs undisturbed). Without the necessary scope determination, there is no way to know the extent of the title determination. Until both title and scope have been adjudicated, "[t]he United States shall not be disturbed in possession or control of any real property involved in any action . . ." 28 U.S.C. § 2409a(b).

Moreover, even with a scope determination, an R.S. 2477 ROW holder does not have unilateral authority to make road improvements. *SUWA v. BLM*, 725 F.3d at 746 (explaining that even fully adjudicated R.S. 2477 ROWs "across federal lands are subject to regulation by the relevant federal land management agencies."). Tenth Circuit precedent requires that the State and County consult with the United States over any desired improvements to the road. *Id.* at 748. Under this framework, there are three steps to the consultation process the R.S. 2477 ROW holder must take:

(1) advise "the federal land management agency of [such] work in advance";

(2) permit the agency a chance "to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the [ROW] as of October 21, 1976" [when R.S. 2477 was repealed]; and

(3) allow the agency the opportunity to study the "potential effects" of the improvements, and if needed, to "formulate alternatives" that protect the land.

14

*S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 44 F.4th 1264, 1269 (10th Cir. 2022)

(quoting *SUWA v. BLM*, 425 F.3d at 748). If, after consulting with the ROW holder, the federal

land management agency (*i.e.*, BLM) determines the proposed improvements are <u>not</u> reasonable

and necessary in light of traditional uses, the ROW holder is not authorized to proceed with

implementing those improvements. *See SUWA v. BLM*, 425 F.3d at 748 ("[i]n the event of

disagreement, the parties may resort to the courts.").

 Importantly, the Tenth Circuit has also clearly defined what types of road work activities

constitute "improvements" (which requires advance consultation) and what are considered

"routine maintenance" (which does not require advance consultation). "Improvements" are

defined to include

> the widening of the road, the horizontal or vertical realignment of the road, the
> installation (as distinguished from cleaning, repair, or replacement in kind) of
> bridges, culverts and other drainage structures, as well as any significant change in
> the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to
> chipseal, from chipseal to asphalt, etc.)

*SUWA v. BLM*, 725 F.3d at 749. "Maintenance," on the other hand "preserv[es] the status quo"

of the "existing road, including the physical upkeep or repair of wear or damage whether from

natural or other causes, maintaining the shape of the road, grading it, making sure that the shape

of the road permits drainage [, and] keeping drainage features open and operable." *Id.*

(alternations in original).

 Drawing the line between maintenance and improvements "based on preserving the status

quo…protects existing uses without interfering unduly with federal land management and

protection." *Id.* (cleaned up). In short, if changes to an R.S. 2477 road "are contemplated, it is

necessary to consult, and <u>the failure to do so will provide a basis for prompt injunctive relief</u>.

'Bulldoze first, talk later' is not a recipe for constructive intergovernmental relations or intelligent land management." *Id.* (emphasis added).

Here, Garfield County, as discussed, does not have a fully adjudicated ROW over the Hole in the Rock Road. That means it is not entitled to undertake improvements on the road, regardless of consultations requirements. *See* 28 U.S.C. § 2409a(b). SUWA is likely to prevail on this basis alone.

Alternatively, even if the County had a fully adjudicated ROW, it has only met one of the three consultation elements—advising BLM of such work in advance. Garfield County's Notice outlines several planned upgrades to the Hole-in-the-Rock Road that clearly constitute improvements. Specifically, Garfield County intends to reshape the road (*e.g.*, widening the road and/or horizontally/vertically realigning the road), place bar ditches (*i.e.*, change the nature of the road), install new drainage features, including culverts, and upgrade ten miles of the road surface from dirt/gravel to a double chip seal. *See* Notice at 1-2. However, Garfield County has proceeded to ignore the latter two consultation requirements by promptly beginning construction activities without working with BLM "to determine whether the propose improvement is reasonable and necessary in light of the traditional uses" of the Hole-in-the-Rock Road, let alone "allow the agency the opportunity to study the 'potential effects' of the improvements, and if needed, to 'formulate alternatives' that protect the lands." *SUWA v. BLM*, 425 F.3d at 748.

For example, on February 4, 2026, a representative of SUWA, Mr. Jack Hanley, visited the road and saw that the road surface had very recently been widened. Hanley Decl. ¶¶ 15-17, 19. Mr. Hanley observed several new culverts with evidence of machinery extending well beyond the width of the road and saw the Garfield County road crew actively installing another

culvert. *Id.* ¶¶ 15-17, 19. When three members of the road crew approached Mr. Hanley, they told him "we are going to get in trouble for this," referring to the road work, and "they don't like it when we do <u>upgrades</u>." *Id.* ¶ 18 (emphasis added). These statements demonstrate that Garfield County is not only aware that the work they are doing constitutes improvements to the Hole-in-the-Rock Road, but that they are knowingly constructing the improvements in violation of the law.

Lastly, although BLM has been aware of the County's on-the-ground impacts and improvements to the Hole-in-the-Rock Road since January 30, 2026, BLM has not taken action to stop the road work happening on the ground. BLM Letter at 1. BLM's February 4 letter simply asked for more details and suggested that "[p]roposed improvements should wait until after…consultation has occurred." *Id.* at 2. Notably, the letter recognized that at least some of the County's road work constituted "improvements" but nonetheless BLM did <u>not</u> demand that the County cease the construction of improvements to the Hole-in-the-Rock Road unless and until consultation is complete and BLM has made a determination as to whether the proposed improvements are reasonable and necessary. *See generally id.* Absent such a demand (and enforcement of that demand), BLM is effectively complicit in the County's unlawful activities and therefore also in violation of *SUWA v. BLM*.

> ii.    *BLM Has Failed to Prevent Unnecessary and Undue Degradation in Violation of FLPMA.*

In addition to Defendants' failure to consult discussed above, BLM has failed to prevent unnecessary or undue degradation in violation of FLPMA, a separate basis for injunctive relief.

FLPMA is the "organic act" of BLM and governs the agency's management of public lands and resources. In FLPMA, Congress declared that is the policy of the United States to

manage the public lands "in a manner that will protect the quality of scientific, scenic, historical,

ecological, environmental, air and atmospheric, water resource, and archeological values" and

that, "where appropriate, will preserve and protect certain public lands in their natural

condition." 43 U.S.C. § 1701(a)(8). FLPMA requires that BLM, in managing the public lands,

"by regulation or otherwise, take any action necessary to prevent unnecessary or undue

degradation of the lands." *Id.* § 1732(b).

In the context of R.S. 2477 ROW consultation, as explained above, BLM is required to

"determine whether the proposed improvement [was] reasonable and necessary in light of the

traditional uses of the right-of-way, to study potential effects, and if appropriate, to formulate

alternatives that serve to protect the lands." *SUWA*, 425 F.3d at 748. This is because

> [u]nless [the agency] knows in advance when right-of-way holders propose to
> change the width, alignment, configuration, surfacing, or type of roads across
> federal land, the BLM cannot effectively discharge its responsibilities to determine
> whether the proposed changes are reasonable and necessary, <u>whether they would
> impair or degrade the surrounding lands</u>, and whether modifications in the plans
> should be proposed.

*Id.* at 747.

Here, because BLM has declined to prevent Garfield County from engaging in road

improvements to the Hole-in-the-Rock Road prior to consulting over the road, BLM has not

properly discharged its responsibilities. In particular, BLM has failed "to study potential effects,

and if appropriate, to formulate alternatives that serve to protect the lands." *SUWA v. BLM*, 425

F.3d 748. Because BLM failed to analyze and understand the environmental impacts of the

County's road improvements or to formulate alternatives thereto that would reduce those

impacts, it has sanctioned environmental degradation and destruction that otherwise would not

have occurred. Consequently, the agency failed to "take any action necessary to prevent

unnecessary or undue degradation" of Grand Staircase-Escalante National Monument. 43 U.S.C.
§ 1732(b).

***

In sum, Defendants have willfully violated both Tenth Circuit precedent (*i.e.*, *SUWA v. BLM*) mandating consultation over improvements to R.S. 2477 ROWs and, with respect to Federal Defendants, FLPMA's duty to prevent unnecessary or undue degradation of Grand Staircase-Escalante National Monument. It is therefore likely that SUWA will succeed on the merits of this lawsuit.

**B.     SUWA Will Suffer Irreparable Harm Absent an Injunction**

Harm is irreparable when a court would be unable to compensate the plaintiff or otherwise remedy the injury before a determination on the merits. *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016). The immediate damage to the environment from the County's road work is precisely the type of irreparable harm that courts routinely enjoin. The Supreme Court has stated that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Amoco Prod. Co.*, 480 U.S. at 545; *see also Catron Cnty. v. U.S. Fish & Wildlife Serv.*, 75 F.3d 1429, 1440 (10th Cir. 1996) (stating that "environmental injury usually is of an enduring or permanent nature, seldom remedied by money damages and generally considered irreparable"); *Davis*, 302 F.3d at 1115 (same) (quoting *Amoco Prod. Co.*, 480 U.S. at 545).

In this case, Garfield County's unauthorized improvements to the Hole-in-the-Rock Road will result, and in fact have already resulted, in permanent harm to wilderness-quality lands in Grand Staircase-Escalante National Monument and monument objects and resources. In

19

particular, expanding the width of the road surface and adding ditches and drainage features on

the sides of the road will result in permanent incursions into the adjacent BLM-identified LWC

surrounding the Hole-in-the-Rock Road that are managed to minimize impacts to the LWC. The

improvements that are planned and currently being constructed require the use of heavy

machinery (*e.g.*, bulldozers, road graders, tractors) that have already ripped out or otherwise

damaged mature juniper trees near the side of the road. *See* Hanley Decl. ¶ 16 (photos 2 & 3).

Likewise, widening the road and driving the heavy machinery significantly off the roadway

destroys other native vegetation and biological soil crusts—two components of the healthy and

diverse ecosystem that is, itself, a protected object under the Grand Staircase-Escalante National

Monument proclamation. 86 Fed. Reg. at 57335-36. On its face, these activities constitute

significant, long term environmental damage. Hanley Decl. ¶¶ 20-21.

  In addition, improved road surfaces such as chip seal or pavement are essentially

permanent changes to the road. These permanent changes lead to increased visitation and

unauthorized off-road travel, resulting in illegal motorized incursions and a loss of naturalness

and solitude in the nearby North Escalante Canyons/The Gulch Wilderness Study Area and LWC

that is managed to protect wilderness qualities. Hanley Decl. ¶¶ 20-22; Declaration of Kya

Marienfeld ¶¶ 16-17 (attached as Ex. 5). Improved road surfaces also cause detrimental impacts

to wildlife due to faster travel speeds that increase the risk of animal-vehicle collisions and

habitat fragmentation resulting from the unnatural appearance and surface of the road. *Id.* ¶ 16;

*see also* U.S. Fed. Highway Admin., *Wildlife Crossing Structure Handbook Design and*

*Evaluation in North America, Chapter 2 – Wildlife Populations and Road Corridor Intersections*

(2011)[5] ("Road construction and expansion result in loss of wildlife habitat by transforming

natural habitats to pavement, dirt tracks, and cleared roadsides or [ROWs].").

SUWA members will be—and are currently—irreparably harmed by the ongoing

unauthorized improvements to the Hole-in-the-Rock Road, as well as the long term irreversible

damage to the character of the road and surrounding wilderness-quality lands. *See, e.g.*, Hanley

Decl. ¶¶ 20-22; Marienfeld Decl. ¶¶ 15-17. As the Tenth Circuit recognized, an immediate

injunction halting Garfield County's work on the Hole-in-the-Rock Road is necessary to preserve

the *status quo* while the Court considers the merits of SUWA's claims. *See SUWA v. BLM*, 725

F.3d at 749 (explaining that unauthorized road improvements "provide[s] a basis for prompt

injunctive relief.").

C.      **The Balance of Harms and Public Interest Weigh Strongly in Favor of SUWA**

"Environmental injury, by its nature, can seldom be adequately remedied by money

damages and is often permanent or at least of long duration, *i.e.*, irreparable. If such injury is

sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction

to protect the environment." *Amoco Prod. Co.*, 480 U.S. at 545. Here, the balance of harms

strongly favors SUWA's motion for a temporary restraining order and preliminary injunction

that maintains the status quo—protecting the remaining undisturbed, public wilderness-quality

lands and objects in the Grand Staircase-Escalante National Monument adjacent to the Hole-in-

the-Rock Road—pending resolution of the merits of SUWA's complaint. Without such relief,

Garfield County will continue to work on, and almost certainly complete its planned permanent

---

[5] Available at: https://www.fhwa.dot.gov/clas/ctip/wildlife_crossing_structures/ch_2.aspx (last
visited Feb. 4, 2026).

alterations and improvements to the Hole-in-the-Rock Road. As explained above, widening and chip sealing the road will, *inter alia*, permanently degrade naturalness, reduce opportunities for solitude, increase vehicular activity and visitation, increase noise and pollution, destroy and impair wildlife habitat, and adversely affect the objects protected in the Grand Staircase-Escalante National Monument. The threat of this type of environmental harm weighs heavily in favor of an injunction. *See Amoco Prod.*, 480 U.S. at 545 (explaining that when environmental injury is "sufficiently likely…the balance of harms will usually favor the issuance of an injunction to protect the environment"). And, here, the threat is even more real because Garfield County has already begun the destructive activities and BLM has done nothing to stop them. Injury is not just likely, it is occurring.

On the other hand, Defendants cannot establish any harm that counterbalances the immediate environmental damage that will continue to occur here. The Hole in the Rock Road has largely been a dirt road for over a century. Any purported need by Garfield County to add drainage features, upgrade the road surface, and/or reduce maintenance costs without first consulting with BLM is not pressing, and certainly pales in comparison to the serious, irreparable injury to wilderness-quality lands, wildlife habitat, and the Monument's objects. Allowing Defendants to continue to willfully ignore federal law is not in the public interest. To put it succinctly, Defendants have "jumped the gun" by proceeding with the road improvements before going through the requisite consultation process. *Davis*, 302 F.3d at 1116. Consequently, to the extent Defendants are harmed at all by waiting a few months to commence work, "[D]efendants are largely responsible for their own harm." *Cf. id.* (holding that "entering into contractual

obligations that anticipated a pro forma result" without first adequately analyzing the proposed project under NEPA weighed in favor of granting the preliminary injunction).

The public interest also warrants issuing an injunction to prevent Garfield County from continuing to make improvements to the Hole-in-the-Rock Road until Defendants complete consultation. In particular, the public interest warrants an injunction when faced with the government's failure to follow federal law including the failure to consider environmental impacts prior to engaging in activities that threaten the environment. Indeed, there is a strong public interest in preserving the status quo pertaining to public land and the environment. *Wyo. Outdoor Coordinating Council v. Butz*, 484 F.2d 1244, 1250 (10th Cir. 1973) ("[T]here is an overriding public interest in preservation of the undeveloped character of the area . . ..  This public interest in preserving the character of the environment is one that the plaintiffs may seek to protect by obtaining equitable relief."); *Sierra Club. v. Bosworth*, 510 F.3d 1016, 1033 (9th Cir. 2007) ("The preservation of our environment…is clearly in the public interest."); *see also Davis*, 302 F.3d at 1116 (issuing a preliminary injunction because "plaintiffs assert a strong public interest in NEPA compliance.").

Here, SUWA seeks to compel Defendants to adhere to the consultation requirements in *SUWA v. BLM*, which, as explained in Argument Section I.A.i, includes ensuring that BLM complies with all environmental review requirements and "effectively discharge[s] its responsibilities to determine whether the proposed [improvements]…would impair or degrade the surrounding lands." *SUWA v. BLM*, 425 F.3d at 747, 748. This necessarily includes BLM's obligation under FLPMA to prevent unnecessary or undue degradation. 43 U.S.C. § 1732(b). Therefore, because the issuance of an emergency injunction would in fact preserve the

environment, granting this temporary restraining order and injunction will serve the public

interest. *See Alaska v. Andrus*, 580 F.2d 465, 485 (D.C. Cir. 1978) ("[I]n most cases . . . it is

possible and reasonable for the courts to insist on strict compliance with NEPA [or FLPMA], and

actions can, consistently with the public interest, be enjoined until such compliance is

forthcoming . . . ." (citation omitted)).

    For the foregoing reasons, the Court should find that the balance of harms and public

interest both weigh heavily in SUWA's favor.

### D.    This Court Should Waive the Bond Requirement

    If a temporary restraining order or preliminary injunction is granted, Plaintiff respectfully

requests that the Court waive the bond requirements or impose a nominal bond. Under Federal

Rule of Civil Procedure 65(c), courts have such discretion. As the Tenth Circuit has held:

"Ordinarily, where a party is seeking to vindicate the public interest served by NEPA, a minimal

bond amount should be considered." *Davis*, 302 F.3d at 1126 (citation omitted); *see also Colo.*

*Wild v. U.S. Forest Serv.*, 299 F. Supp. 2d 1184, 1191 (D. Colo. 2004) (no bond). In cases where

plaintiffs are public interest organizations or individual citizens seeking a preliminary injunction

to protect the environment, courts routinely waive the bond requirement or impose a nominal

bond. *Davis*, 302 F.3d at 1126; *see also Friends of the Earth v. Brinegar*, 518 F.2d 322, 323 (9th

Cir. 1975) (same).

    Congress intended that private citizens be able to enforce environmental statutes like

FLPMA and ensure that governmental agencies are held to account when they violate the law.

*People of the State of Cal. v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985)

("special precautions to ensure access to the courts must be taken where Congress has provided

for private enforcement of a statute"). Requiring a substantial bond would "seriously undermine the mechanisms in [federal laws] for private enforcement" of law and likely would have a chilling effect on litigation to protect the environment and the public interest. *Id*. (requiring no bond); *see also Colo. Wild v. U.S. Forest Serv.*, 299 F. Supp. 2d 1184, 1191 (D. Colo. 2004) (no bond).

## II.  Alternatively, The Court Should Issue an Injunction Pursuant to the All Writs Act to Preserve the Status Quo

As explained above, the Rule 65 requirements for an injunction are met, and an injunction should issue. But if the Court disagrees, it should enjoin Defendants under the All Writs Act to preserve the status quo pending a determination of SUWA's claims.

The All Writs Act allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The Act has long been recognized to encompass a federal court's power 'to preserve [its] jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels.'" *AstraZeneca Pharms. LP v. Burwell*, 197 F. Supp. 3d 53, 56 (D.D.C. 2016) (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 604 (1966)).[6] As the D.C. Circuit has explained,

> If the court may eventually have jurisdiction of the substantive claim, the court's incidental equitable jurisdiction, despite the agency's primary jurisdiction, gives the court authority to impose a temporary restraint in order to preserve the status quo pending ripening of the claim for judicial review.

[6] To the best of SUWA's knowledge, the Tenth Circuit has not addressed a court's use of the All Writs Act to maintain the status quo by injunction. Therefore, SUWA points the Court to caselaw from the Supreme Court of the United States and circuits that have addressed the All Writs Act in this context.

*Wagner v. Taylor*, 836 F.2d 566, 571 (D.C. Cir. 1987); *see also Trump v. Comm. on Ways & Means*, 415 F. Supp. 3d 38, 50 (D.D.C. 2019).

Importantly, "[t]he requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the [All Writs] Act, is grounded in entirely separate concerns." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004). Thus, to obtain an All Writs Act injunction, a party "must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *Id.*

The circumstances in this case are analogous to those in *AstraZeneca Pharmaceuticals LP v. Burwell*. There, the court acted pursuant to its authority under the All Writs Act to enjoin the Food and Drug Administration ("FDA") from approving or denying pending applications from generic drug manufacturers to sell their versions of AstraZeneca's drug, Crestor, until AstraZeneca had an opportunity right to be heard on its claims and "before it suffers an irretrievable loss of …exclusivity" (*i.e.*, before generic versions of Crestor are allowed to enter the market). *AstraZeneca*, 197 F. Supp. 3d at 56, 58. The *AstraZeneca* court did so without applying the traditional four factor test required to grant preliminary injunctive relief. *Id.* Instead, the court pointed to an ongoing proceeding (AstraZeneca's federal litigation and the opportunity to obtain meaningful relief) that was being threatened by the FDA's actions (imminent approval of other drug manufacturers' applications to flood the market with generic versions of Crestor). Other courts have taken the same approach. *See, e.g.*, *Trump*, 415 F. Supp. 3d at 44, 50 (invoking the All Writs Act to issue temporary injunctive relief without mention or analysis of the

traditional four factor test); Order, *S. Utah Wilderness All. v. Bernhardt*, 1:20-cv-03654-RC

(D.D.C. Dec. 22, 2020) (ECF No. 25) (same).

Here, as explained above, BLM is aware of Garfield County's contemporaneous road

work on the Hole-in-the-Rock Road, noted the duty to consult on the planned improvements,

requested additional information about these plans, and asked that the County engage in such

consultation with BLM. *See generally* BLM Letter. Notably absent, however, was a demand by

BLM that Garfield County abstain from constructing improvements until consultation is

complete. Hence, this lawsuit. Stated differently, just like in *AstraZeneca*, this litigation is an

ongoing proceeding that gives SUWA the opportunity to obtain meaningful relief. However, the

integrity of this lawsuit, and thus SUWA's opportunity for relief is being threatened by (1)

Garfield County's illegal construction of improvements on the Hole-in-the-Rock Road and (2)

BLM's decision to <u>not</u> demand the County cease work on the road. *See Klay*, 376 F.3d at 1100.

As explained in Argument Section I.B, SUWA and its members are irreparably harmed

by the County and BLM's conduct regarding these improvements. Without an injunction,

Garfield County will continue to make improvements to the Hole-in-the-Rock Road, culminating

in an upgraded road surface from dirt and gravel to chip seal well before SUWA's claims will be

resolved by this Court. In other words, SUWA's claims are at significant risk of becoming moot

"almost instantaneously." *See Trump*, 415 F. Supp. 3d at 50.

***

For these reasons, an injunction is necessary, pursuant to either Rule 65 and application

of the preliminary injunction factors or the All Writs Act, to preserve the *status quo* and prevent

further irreparable harm to SUWA, its members, and the Grand Staircase-Escalante National Monument.

## <u>CONCLUSION</u>

SUWA respectfully requests that this Court grant its motion for a temporary restraining order and preliminary injunction or, in the alternative, relief under the All Writs Act, enjoining the Defendants from proceeding with any further road improvements on the Hole-in-the-Rock Road until they complete consultation in accordance with Tenth Circuit precedent and BLM complies with FLPMA.

Respectfully submitted, this 6th day of February, 2026.

*/s/ Hanna Larsen*
Stephen H.M. Bloch
Hanna Larsen
SOUTHERN UTAH WILDERNESS ALLIANCE

Mitch M. Longson
MANNING CURTIS BRADSHAW
& BEDNAR PLLC

Trevor J. Lee
HOGGAN LEE HUTCHINSON

*Attorneys for Plaintiff Southern Utah*
*Wilderness Alliance*

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with DUCivR 7-1(a)(4)(C)(i), I certify that Plaintiff's **EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT** contains a total of 7,383 words.

*/s/ Hanna Larsen*
Hanna Larsen