# EXHIBIT 1

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br> Plaintiff, <br><br> v. <br><br> **GARFIELD COUNTY, UTAH**, a political subdivision, the **STATE OF UTAH**, the **UNITED STATES BUREAU OF LAND MANAGEMENT**, and the **UNITED STATES DEPARTMENT OF THE INTERIOR**, <br><br> Defendants. | **DECLARATION OF JACK HANLEY** <br><br> Case No. 2:26-cv-00096 <br><br> Judge |

I, **JACK HANLEY**, declare as follows:

1.      I have personal knowledge of each of the facts set forth below and, if called upon to do so, could and would testify regarding the following. This declaration is filed in support of Southern Utah Wilderness Alliance's ("SUWA") lawsuit in the above-captioned matter.

2.      I am the Field Specialist for SUWA and have worked for SUWA since 2019. My position requires that I spend considerable time on the ground visiting federal public lands throughout Utah observing their condition and working with land management agencies, including the Bureau of Land Management ("BLM"), to preserve the naturalness and other values of these lands.

3.      SUWA, based in Salt Lake City, Utah, has more than 12,000 members and activists, many of whom reside in Utah. SUWA's mission is the preservation of the outstanding

wilderness and other sensitive public lands at the heart of the Colorado Plateau and to advocate for management of these lands, and the associated natural and cultural resources, in their natural state for the benefit of all Americans. SUWA promotes local and national recognition of the region's unique character though research and public education; supports both administrative and legislative initiatives to permanently protect Utah's wild places within the National Park and National Wilderness Preservation System or by other protective designations where appropriate; builds support for such initiatives on both the local and national level; and provides leadership within the conservation movement through uncompromising advocacy for wilderness preservation.

4.     SUWA members and staff have a well-demonstrated interest in the preservation and protection of Utah's remarkable BLM-managed public lands and resources, as well as in BLM's compliance with federal laws and regulations. SUWA also benefits from Garfield County, Utah's ("the County") and the State of Utah's compliance with state and federal laws and regulations. SUWA has taken an active role in providing critical information to the BLM, the County, and State of Utah regarding their management activities in Utah including R.S. 2477 rights-of-way decisions and road maintenance and improvement projects on federal public lands.

5.     SUWA members and staff also participate in information gathering and dissemination, education and public outreach, commenting upon proposed government actions, and other activities relating to the management of and impacts to BLM-managed lands and resources, including for Grand Staircase-Escalante National Monument and the Hole-in-the-Rock Road and the surrounding public lands.

6.     SUWA members and staff's recreational, aesthetic, health and other interests are directly affected and harmed by the ongoing road improvements to the Hole-in-the-Rock Road, which is located within the Grand Staircase-Escalante National Monument and Glen Canyon National Recreation Area.

7.     As SUWA's Field Specialist, I am responsible for organizing (alongside other SUWA staff and the BLM) volunteer projects to restore and prevent damage to natural resources such as biological soil crusts, vegetation, riparian areas, wildlife habitat, and cultural resources. The damage to these resources can usually be attributed to activities such as off-road vehicles ("OHV"), energy and mineral development (*e.g.*, oil, natural gas, potash), and high volumes of recreational use. I am also responsible for monitoring the condition of BLM lands, especially wilderness study areas (WSAs), BLM-identified lands with wilderness characteristics, and Wilderness areas, for the purpose of partnering with the BLM to manage these resources.

8.     I am an active member of SUWA.

9.     For years, I have traveled on public lands throughout Utah for personal, recreational, and aesthetic enjoyment. This includes sightseeing, bird and wildlife watching, hiking, camping, climbing, canyoneering, rafting, and visiting cultural sites, among other activities. I truly enjoy the clean air and expansive vistas, remarkable geologic formations, stunning slot canyons, spring fed riparian areas, silent Pinon-Juniper forests, lush hanging gardens, sacred cultural sites, rich paleontological records, and many other wonders of the Grand Staircase-Escalante National Monument. My life has been deeply enriched by the opportunities to engage in quiet contemplation and appreciate the solitude that certain federal public lands

provide, including those in the Grand Staircase-Escalante National Monument and along and
near the Hole-in-the-Rock Road.

10.     I have visited the Grand Staircase-Escalante National Monument countless times
and driven the Hole-in-the-Rock Road on at least 30 separate occasions. Most recently, I drove
the road on February 4, 2026. I thoroughly enjoy my visits to the monument as well as the Hole-
in-the-Rock Road due to the vast, expansive landscape, and the overall remoteness of the region.

11.     While the Hole-in-the-Rock Road is a rough and bumpy dirt road, it rewards those
individuals willing drive it to with outstanding solitude and remarkable access to hiking trails
such as the Devil's Garden, Dry Fork slot canyons, Zebra Canyon, and all the incredible canyons
leading into the Escalante River corridor. Not to mention the access to the remote canyons and
backcountry of Glen Canyon National Recreation Area. The condition of the road requires a
slower speed, and I find that to have a positive effect on my sense of place in this vast landscape.
The rugged road is a fitting portal into a rugged backcountry.

12.     I am aware of and have reviewed the January 27, 2026, letter that the County sent
BLM regarding its planned road improvements on the Hole-in-the-Rock Road.

13.     I am aware of and have reviewed SUWA's cease-and-desist letter sent to Garfield
County on February 3, 2026, regarding the unauthorized road improvements on the Hole-in-the-
Rock Road.

14.     I am aware that BLM has lightly objected, to the County's road improvements but
that the agency has refused to direct the County to halt those improvements and/or require that
the County consult BLM before re-commencing those improvements. I have also reviewed the
letter BLM sent to the County on February 4, 2026, expressing these concerns.

15.     On February 4, 2026, I traveled to the Hole-in-the-Rock Road to document and fully understand the scope and extent of the County's road improvement activities. On this visit, I observed large vehicles and machinery actively widening the road, tractors trenching the edges of the road, recently installed culverts and other drainage structures, staging areas full of various construction-related equipment including culverts and large tractors, and countless vehicle tracks that extended well-beyond and off the existing road into the surrounding landscape, crushing the native vegetation.

16.     On this visit, I took the following photographs along the first 3.5 miles of the Hole-in-the-Rock Road, which is where I observed active road construction taking place:

*Photo 1*



*Photo 2*



*Photo 3*



*Photo 4*



*Photo 5*



*Photo 6*



17.    As these photographs show and as I observed and confirmed on my field visit, the County has (1) widened the road, (2) horizontally and/or vertically realigned the road, (3) installed culverts and other drainage structures where these did not previously exist, and (4) destroyed the vegetation that existed adjacent to and near the road.

18.    Additionally, during my February 4 field visit, I was stopped and waited as a culvert was being installed and construction vehicles blocked the road. As I documented the road construction activities (as seen in the photos above) a worker for the County road crew - driving the road grader - approached me and said, " we're going to get in trouble or this." He also stated that "they don't like it when we do upgrades." He then told me to move along, so I continued down (south) approximately 3.5 miles to the intersection of the Hole-in-the-Rock Road and Cedar Wash Road, where the the County's recent work appeared to have stopped. I saw several dump trucks delivering gravel from the gravel pits on Cedar Wash Road, along with other equipment. Having seen the extent of the road work, I turned around to head back to Highway 12. Two of the County staff and/or their contractors, including the man driving the road grader quoted above, forced me to stop my vehicle by parking the road grader and dump truck in the middle of the road and denying me further passage along the road. They approached my vehicle and began to accuse me of "telling the SUWA what we're doing" and aggressively asked why I had taken photos. During this encounter I felt threatened and unsafe, and while they blocked the road and began making a phone call, I had to drive off of the road to get around the road grader to continue north back to Hwy 12.

19.    As stated above, I have visited and traveled on the Hole-in-the-Rock Road dozens of times, including the segments on which the County has—and currently is—engaged in road

improvements (the areas depicted above in my photographs). Based on those prior visits, I can say with confidence that the recent County road improvements that I observed on my February 4 field visit go well beyond the longstanding *status quo* of regular maintenance to the road (for example, road grading or cleaning out culverts). Quite simply, the road is now much wider, and contains many new culverts and other drainage features that have been installed underneath the road.

20.    The County's road improvements have degraded and will continue to degrade naturalness, destroy vegetation and soils, destroy BLM-identified LWCs and WSAs, and increase ambient background noise and pollution. This is a result of the large vehicles and machinery and ongoing construction activities and increased vehicle activities in the area.

21.    These activities have affected and will continue to affect and irreparably harm my health, recreational, and aesthetic interests. I do not want to see more development activities in this area and I do not want to see an engineered, high-speed chip sealed road. Based on my experience monitoring and remedying public land impacts, a widened and chip sealed road will increase the number of motor vehicles, traveling faster, and overall increase visitation on the Hole-in-the-Rock Road and in the countless areas that can be accessed from that road. These improvements will also lead to an increase in illegal off-road vehicle ("ORV") travel on areas of public lands that will become more accessible from the Hole-in-the-Rock Road—resulting in further off-route travel impacts, increased dispersed campsites, more graffiti in slot canyons, and social trails through fragile soil communities will certainly follow;-- impacts that I have worked for years to remedy and mitigate.

22.     Increased public visitation and access, including for ORVs, will reduce my opportunities to view and observe wildlife and to enjoy the quiet, untrammeled wilderness in and around the Hole-in-the-Rock Road. Increased vehicle traffic will also negatively affect wildlife with more noise and light pollution I have worked for years to protect these resource values.

23.     My injuries and harms discussed herein will be remedied by a decision by the Court to order the County to halt its unauthorized road improvements and consult with the BLM prior to engaging (or reengaging) in in any additional improvements.


I DECLARE, under penalty of perjury, that the foregoing is true and correct.

DATED:          February 5, 2026

Jack Hanley