Stephen H.M. Bloch (#7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

Mitch M. Longson (#15661)
MANNING CURTIS BRADSHAW
& BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
mlongson@mc2b.com

Trevor J. Lee (#16703)
HOGGAN LEE HUTCHINSON
257 East 200 South, #1050
Salt Lake City, UT 84111
Telephone: (435) 615-2264
trevor@hlh.law

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br> Plaintiff, <br><br> v. <br><br> **GARFIELD COUNTY, UTAH** *et al.*, <br><br> Defendants. | **PLAINTIFF'S REPLY IN SUPPORT OF IT'S MOTION TO STAY PROCEEDINGS** <br><br> Case No. 2:26-cv-00096-AMA-PK <br><br> District Judge Ann Marie McIff Allen <br> Magistrate Judge Paul Kohler |

Plaintiff Southern Utah Wilderness Alliance ("SUWA") respectfully submits this Reply Memorandum in support of its Motion to Stay Proceedings ("Motion") (ECF No. 37).

### INTRODUCTION

In its Motion, SUWA demonstrated that good cause exists to stay this litigation until the Defendants complete the now-ongoing consultation process over improvements to the Hole-in-the-Rock Road (the "Road"). Since this lawsuit was filed, Defendants have changed course and

are now willing to consult regarding Garfield County's proposed chip-sealing before beginning such work, and the outcome of such consultation may resolve all or some of SUWA's claims. Mot. 4-5. A stay would, therefore, allow consultation to proceed without the added burden of simultaneously (and potentially unnecessarily) litigating a case that may ultimately be resolved without judicial action. Nonetheless, Defendants State of Utah and Garfield County (collectively, "the County") oppose such a stay. *See generally* Garfield Cnty. and State of Utah's Opp. to Mot. to Stay (ECF No. 40 ("County Opp.")). Federal Defendants (collectively "BLM") take no position. *See* Fed. Defs.' Resp. (ECF No. 45).

## ARGUMENT

The County's Opposition is premised on factual misrepresentations, unfounded claims of prejudice, and misplaced reliance on *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477 (10th Cir. 1983) that together culminate in the County arguing that additional briefing, rather than a stay, somehow promotes judicial economy. *See generally* County Opp. As an initial matter, the County argues that there is not good cause for a stay because SUWA misinterpreted the County's intentions. *See id.* at 3. The County further claims that a stay would be inefficient because (1) of "threshold jurisdictional issues that must be addressed;" (2) staying this case would add an unspecified "administrative burden" to the County's proposed road work; and (3) not litigating this case interferes with the proceedings in *Kane County v. United States*, 2:10-cv-1073-CW (D. Utah) and *Garfield County v. United States*, 2:11-cv-1045-CW (D. Utah) (together, the "Bellwether case"). *Id.* at 4-6.

The County's arguments are unpersuasive, and its suggested approach would prematurely force the Court and the parties to expend additional time and resources addressing issues that

have the potential to be resolved through the consultation process and BLM's final decision on the County's proposed improvements. Therefore, the Court should grant SUWA's Motion to Stay.

## I.     The County's Version of Events is Not Supported by the Factual Record.

The County first asserts that there is not good cause for a stay because SUWA misinterpreted the information in the County's January 27, 2026 letter. County Opp. 3. Specifically, the County claims that the January 27 letter "did not…state that it intended to upgrade the surface of [the Road] absent further consultation with the BLM," and that the County's February 5, 2026 letter simply "reiterated its willingness to meet with the BLM for further discussion regarding the proposed work." *Id.* These claims are belied by the County's own language in those letters.

*First*, the County's January 27 letter was styled as a "Notice" that indicated a clear intention to chip-seal the Road. For instance, the letter states "Garfield County provides this notice to inform [BLM] of planned…upgrades…on [the Road] within Garfield County" and "[p]lanned work includes the following activities:…[s]urfacing with a double chip seal treatment." Compl. Ex. 1, *1-2 (ECF No. 1-1) (emphasis added). The County further explained that it "provid[ed] this notice as a consolation." *Id.* at *2 (emphasis added). But crucially, the January 27 letter does not even mention the consultation process, let alone ask BLM to consult on the planned "upgrades" (*i.e.*, improvements).

*Second*, the County's February 5 letter lists a series of events since 2022 that the County believes "constitutes meaningful and sufficient consultation regarding the proposed surfacing [chip-seal] improvement." Mot. Ex.1, *2-3 (ECF No. 37-1). Considering these events, the County reiterated that it "has provided notice and intends to proceed with the activities identified

3

in its January 27, 2026 notice." *Id.* at *3 (emphasis added). But, as all parties now agree, consultation is incomplete and BLM has not issued a decision on whether the proposed chip-seal treatment is a reasonable and necessary improvement. *See S. Utah Wilderness All. v. Bureau of Land Mgmt.* ("*SUWA v. BLM*"), 425 F.3d 735, 745, 748 (10th Cir. 2005). In other words, the County has changed course. It now appears to recognize that until BLM adheres to its consultation obligations (*e.g.*, BLM's reasonable and necessary determination, analysis of potential effects and alternatives) and makes such a decision, consultation is incomplete and the County cannot move forward with the chip-sealing project.[1] *Id.* at 748.

*Finally*, the County argues that there is not good cause for a stay because it was SUWA's decision to initiate litigation and "[a]ny inefficiencies that may be associated with continued prosecution are of Plaintiff's own making." *Id.* at 3-4. But as SUWA has explained, it filed this case based on the County's own statements that, before consultation was completed, it intended to move forward with chip-sealing the Road. Mot. 2. SUWA did not learn of and was not provided with a copy of the County's February 5 letter until February 11, 2026, despite being in frequent contact with the County's counsel about the proposed improvements to the Road since February 3, 2026. *See* Mot. 4 n.4. Indeed, the County provided this information only after the Court inquired about the status and nature of the County's plans at the February 11 status conference. Put differently, the County did <u>not inform</u> SUWA until nearly a week after the case was filed that, contrary to the plain language of the January 27 letter, it was aware of its consultation duties for the proposed chip-seal treatment.

---

[1] Even if consultation were complete, the County would only be authorized to proceed with its proposed chip-sealing if BLM approved the project after determining it was both reasonable and necessary.

In short, SUWA has not misinterpreted the County's position. The County's own actions demonstrate that good cause exists to stay this litigation until consultation concludes.

II.     **There is No Need to Resolve Any Jurisdictional Issues Until it is Determined Whether Consultation Resolves All or Some of SUWA's Claims.**

The very purpose of the Court's power to stay proceedings—to efficiently manage its docket—contravenes the County's argument that jurisdictional issues must be imminently addressed. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to grant a stay the Court considers the following factors: "(1) whether granting a stay would likely simplify the issues before the court; (2) the stage of the litigation; and (3) a balancing of prejudice to the parties." *Greer v. Moon*, 2024 U.S. Dist. LEXIS 46025, *4 (D. Utah Mar. 13, 2024) (quoting *Menchacha-Estrada v. Synchrony Bank*, 2017 U.S. Dist. LEXIS 180381, *3 (D. Utah Oct. 30, 2017)); *Lifetime Prods. In. v. Russell Brands, LLC*, 2013 U.S. Dist. LEXIS 137795, *6 (D. Utah Sept. 24, 2013). Here, all factors support a stay.

*First*, granting the stay until consultation has concluded is likely to simplify, <u>if not fully resolve</u>, the issues before this Court. As SUWA explained, Defendants have now agreed to consult on the County's proposal to chip-seal the Road. Mot. 4-5. Depending on how consultation proceeds and BLM's final decision on the proposal, the dispute in this case may either be fully resolved (in the event BLM does not authorize the chip-sealing) or substantially narrowed. The notion of briefing complex jurisdictional issues before the consultation process concludes defeats the purpose of a stay.

*Second*, the early stage of this litigation further supports a stay. If BLM's final decision ultimately resolves SUWA's claims, it will have been unnecessary for the parties to brief and the Court to decide any jurisdictional concerns. Similarly, if consultation partially resolves SUWA's

claims, the Court will benefit from a clarified, narrower set of legal issues when addressing threshold jurisdictional questions.

  *Third*, contrary to the County's assertions, it will not be prejudiced by a stay. The County indicated that it intends to file a motion to dismiss based on a lack of subject matter jurisdiction but that "staying these proceedings would deprive…the County a timely opportunity to brief these issues for the Court." County Opp. 2, 4-5. The County never explains why this is so despite knowing about this lawsuit since February 5, 2026, the same day it was filed. It could have filed a motion to dismiss anytime between then and now but has chosen not to. Furthermore, contradicting its own Opposition, the County has also requested (and the Court granted) [2] an extension to file its answer or other responsive pleading until "one week from the date that the Motion to Stay is decided." State Defs.' Mot. for Extension of Time to File Compl., 2 (ECF No. 43); *contra* County Opp. 2, 4-5. The County does not reconcile how it will purportedly be prejudiced by a stay that effectively extends the time the County has to prepare and file a motion to dismiss while simultaneously moving for an extension of time to file a responsive pleading (*i.e.*, a motion to dismiss). But regardless, a motion to dismiss for lack of subject matter jurisdiction may be raised at any time, *see Harris v. Illinois-California Exp., Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982), and staying this case while consultation is ongoing does not deprive the County from later arguing, after the stay is lifted, that the Court does not have jurisdiction.[3]

---

[2] *See generally* Order Granting Mot. for Extension of Time to Answer Compl. (ECF No. 44).
[3] The County further alleges it is prejudiced because a stay will "add layers of administrative burden" and interfere with the proceedings in the Bellwether case. County Opp. 5-6. These allegations are also unfounded but will be separately addressed in sections III and IV, respectively.

Thus, the County's jurisdictional arguments are not time-sensitive, and there is simply no need to force briefing on those arguments when it is unknown how the consultation process the County has now agreed to undertake will change the nature of this lawsuit. Based on these factors, a defined pause in this litigation—specifically tied to the Defendants' consultation process—weighs in SUWA's favor and serves the judicial efficiency interests recognized in *Landis*.

### III. Staying This Litigation Will Not Administratively Burden the County

The County next argues that staying this litigation would "administrative[ly] burden" the County because a stay would "not allow[] the County to proceed with its…Road project," even though the County has, in its view, complied with all the requirements necessary to perform the needed work" on the Road. County Opp. 5-6. These claims are demonstrably false. The County <u>has not</u> complied with all requirements necessary to perform the work at issue (including completing consultation), which is the very reason for this lawsuit. Moreover, the fact that the County apparently wishes to "proceed with its . . . Road project" is precisely why this case should remain open (but stayed) while consultation continues. The County's "administrative burden" argument is simply a veiled argument that it merely disagrees with the merits of SUWA's claims and seeks to become unburdened by them.

The County apparently misunderstands both the nature of SUWA's Motion and the Tenth Circuit's consultation requirements. *First*, granting a stay of the litigation does not enjoin the County from continuing to do maintenance work on the Road. *See SUWA v. BLM*, 425 F.3d at 749 (explaining there is no obligation to consult over maintenance "that preserves the existing state of the road"). Staying this case simply allows consultation on proposed <u>improvements</u> to

7

proceed without the added burden and expense of simultaneously litigating issues that may ultimately be mooted once consultation is complete. *See* Mot. 4-5. *Second*, as SUWA explained in its Motion and above, it is the County's own change in position—the subsequent acknowledgment that consultation over the proposed improvements is still ongoing—that forms the basis for the stay. County Opp. 5. Unless and until consultation has <u>concluded</u>, the County has not (and cannot have) "complied with all the requirements necessary to perform the needed work." County Opp. 6; *see SUWA v. BLM*, 425 F.3d at 748 (explaining the County's and BLM's obligations during consultation). The fact that the County waited until after this litigation was initiated to resume consulting with BLM shows that any "burdens" the County may suffer because of the incomplete consultation process are self-inflicted and not caused by temporarily staying this case.

**IV.   This Case, Whether Stayed or Not, Will Not Interfere with Proceedings in the Bellwether Case.**

Lastly, the County alleges that staying this case "would interfere with other federal proceedings," namely, the Bellwether case, because the scope of the County's right-of-way for the Road is yet to be determined. County Opp. 6. This allegation is baseless for two reasons: (1) this litigation and the Bellwether case do not involve the same legal issues; and (2) the *Chilcott* decision is inapplicable to this case because nothing here is preventing the County from pursuing its claims in the Bellwether case.

**A.   This case and the Bellwether case are not "parallel proceedings" that involve the same legal issues.**

A parallel proceeding is where "substantially the same parties litigate substantially the same issues in different forums." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). Those

are not the circumstances here. Although the County, BLM, and SUWA are presently litigating another case involving the Road—the Bellwether case—that is where the similarities end. Not only are the parties oppositely situated in the Bellwether case (the County is plaintiff and SUWA is a defendant-intervenor), but the nature of the lawsuit, and the specific legal issues to be decided, are different as well.

The Bellwether case is brought under the Quiet Title Act, 28 U.S.C. § 2409a, to determine whether the County holds an R.S. 2477 right-of-way for the Road, whereas the above-captioned matter is grounded in federal caselaw and the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.*, to determine whether the Defendants acted unlawfully when constructing improvements to the Road. Thus, the Bellwether court is tasked with determining whether the County holds a right-of-way for the Road and, if so, the scope of the right-of-way. But the Bellwether court's scope determination will be based on how the Road existed and was used prior to October 21, 1976. *SUWA v. BLM*, 425 F.3d at 746 ("the scope of an R.S. 2477 right-of-way is limited by the established usage as of the date of repeal of the statute [October 21, 1976]"). The proposed 2026 improvements at the heart of this case have no bearing on how the Road existed and was used prior to October 21, 1976—the issue before the Bellwether court. After October 21, 1976, the repeal of R.S. 2477 and the enactment of the Federal Land Policy and Management Act created a precise order of actions that an adjudicated right-of-way holder must follow before a court can determine if post-1976 proposed improvements are within the scope of the right-of-way. This is the Tenth Circuit's "consultation" requirement. *Id.* at 746-48. Challenges to the consultation process (or lack thereof) and outcome may subsequently be resolved by judicial review, but the court cannot find that any post-1976 improvement to the

right-of-way is permissible unless and until the right-of-way holder and federal land manager first complete consultation. *Id.* at 748; *Kane Cnty. v. United States*, 772 F.3d 1205, 1225 (10th Cir. 2014). These are the circumstances present in this case.

Simply put, this Court and the Bellwether court are tasked with resolving two distinct legal questions arising under different causes of action and based on entirely separate factual bases. The Bellwether court is focused on facts and evidence from before 1976 pertaining to the initial construction and use of the Road. This Court, on the other hand, must look at the facts and evidence specific to the County's planned improvements to the Road, which, according to the February 5 letter, started in 2022. *See* Mot. Ex.1, *2-3. As a result, any decision in this litigation does not affect the Bellwether court's pending scope determination for the Road.

      **B.**      **The County's reliance on *Chilcott* is misplaced because the requested stay is limited to proceedings in this case.**

In *Chilcott*, the Tenth Circuit opined that "the right to proceed in court should not be denied except under the most extreme circumstances," and "where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." 713 F.2d at 1484. The County cites this language to support its argument that staying the above-captioned matter will somehow interfere with the long-running Bellwether case. County Opp. 6. But the County's reliance on *Chilcott* is misplaced because the County ignores the specific context in which that case applies.

The primary concern in *Chilcott* is whether a stay in one case would restrain other courts' proceedings. 713 F.2d at 1484 (holding that "the movant for an order staying the prosecution of nine [other federal actions] was required to make a strong showing that remedy was necessary for the movant"); *MAI Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978, 96-87 (10th Cir. 1992)

(explaining that *Chilcott's* precautions "are of particular importance where…restraints on other courts are contemplated"). If so, then the court should exercise heightened caution.

That is not the case here. Unlike the movants in *Chilcott* and *MAI Basic Four*, SUWA is not asking this Court to issue a stay that would prohibit or delay the Bellwether court from adjudicating the scope of the Road's right-of-way. Rather, SUWA requests only that this Court stay the proceedings in <u>this</u> case pending the outcome of Defendants' consultation. Staying this litigation does not prevent the parties from litigating the scope of the right-of-way in the Bellwether case and does not prevent the Bellwether court from issuing a scope determination. The legal issues in this case focus entirely on the County's proposal to improve the Road and the Defendants' actions in response to that proposal. And, as explained above, the court's R.S. 2477 right-of-way scope determination is limited to what had been established as of October 21, 1976; the court may not consider post-1976 improvements, like those at issue in this case, when making its determination. Therefore, SUWA's Motion does not implicate the comity and interference concerns underlying *Chilcott's* holding and the County's reliance on that case is mistaken.

## **CONCLUSION**

For the foregoing reasons, in addition to those articulated in SUWA's Motion, there is good cause to stay this case and require regular status reports until Defendants complete consultation on the County's proposed improvements to the Road. SUWA's Motion should be granted.

DATED:  March 10, 2026

               Respectfully,

               */s/ Hanna Larsen*
               Stephen H.M. Bloch
               Hanna Larsen
               SOUTHERN UTAH WILDERNESS ALLIANCE

               Trevor J. Lee
               HOGGAN LEE HUTCHINSON

               Mitch M. Longson
               MANNING CURTIS BRADSHAW
               & BEDNAR PLLC

               *Attorneys for Plaintiff Southern Utah Wilderness Alliance*

## CERTIFICATE OF COMPLIANCE

In accordance with DUCivR 7-1(a)(4)(D)(i), I hereby certify that Plaintiff Southern Utah Wilderness Alliance's Reply in Support of its Motion to Stay Proceedings contains a total of 3,098 words.

                                                    /s/ *Hanna Larsen*
                                                    Hanna Larsen