# EXHIBIT 1

*to SUWA's Motion for Leave to Amend and Supplement its Complaint*

Stephen H.M. Bloch (#7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

Mitch M. Longson (#15661)
MANNING CURTIS BRADSHAW
& BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
mlongson@mc2b.com

Trevor J. Lee (#16703)
HOGGAN LEE HUTCHINSON
257 E 200 S, #1050
Salt Lake City, UT 84111
Telephone: (435) 615-2264
trevor@hlh.law

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES BUREAU OF LAND MANAGEMENT**, and the **UNITED STATES DEPARTMENT OF THE INTERIOR**, <br><br> Defendants.[1] | **[PROPOSED]AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Case No. 2:26-cv-00096-AMA-PK <br><br> District Judge Ann Marie McIff Allen <br> Magistrate Judge Paul Kohler |

## INTRODUCTION

1.      This lawsuit challenges the Bureau of Land Management's and the Department of

the Interior's (collectively, "BLM") failure to comply with its obligations under the Federal Land

---

[1] This Amended and Supplemental Complaint does not bring any claims against Garfield County, Utah or the State of Utah. As such, both entities are no longer named defendants in this lawsuit.

Policy and Management Act, 43 U.S.C. §§ 1701 *et seq*. ("FLPMA"), the National Environmental

Policy Act, 42 U.S.C. §§ 4321 *et seq.* ("NEPA"), and binding Tenth Circuit precedent prior to

issuing its Reasonable and Necessary Determination (the "Determination") (attached as Ex. 1)

that authorizes Garfield County, Utah's road improvement activities on the Hole-in-the-Rock

Road. Consequently, BLM's Determination violates its duties to comply with its governing land

use plan, prevent unnecessary or undue degradation, and study the environmental impacts of and

alternatives to improving the Hole-in-the-Rock Road.

2.      The Hole-in-the-Rock Road is a 62-mile rugged, scenic dirt/gravel road that

traverses through the heart of Grand Staircase-Escalante National Monument. The last five miles

of the road are within the Glen Canyon National Recreation Area ("NRA"). For nearly its entire

length, the road is bounded on each side by BLM Wilderness Study Areas ("WSA") and/or

BLM-identified lands with wilderness characteristics ("LWC").

3.      As required by the Antiquities Act, 54 U.S.C. § 320321 *et seq.*, FLPMA, and their

implementing regulations, BLM manages the Hole-in-the-Rock Road and the surrounding lands

according to Presidential Proclamation 10286 and the Grand Staircase-Escalante National

Monument Approved Resource Management Plan, respectively. *See generally* Proclamation No.

10286, 86 Fed. Reg. 57335 (Oct. 15, 2021); Bureau of Land Mgmt., *Grand Staircase-Escalante*

*National Monument Record of Decision Approved Management Plan* (Jan. 2025) ("GSENM

RMP");[2] *see also* 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3(a). Among other things, a resource

management plan like the GSENM RMP establishes allowable resource uses, resource condition

---

[2] Available at: https://eplanning.blm.gov/Documents/?id=91d264cd-a7f2-f011-8406-001dd80ef717&spid=8fe7277f-a8f2-f011-8407-001dd80db62a# (last visited May 8, 2026). For convenience, relevant excerpts are attached as exhibits.

goals and objectives, program constraints and management practices needed to achieve such goals and objectives, and support actions such as resource protection that are needed to achieve resource condition goals and objectives. 43 C.F.R. § 1610.0-5(n).

4.      Garfield County holds a partially adjudicated R.S. 2477 right-of-way ("ROW") claim for the Hole-in-the-Rock Road. *Kane Cnty., Utah v. United States*, 2025 U.S. Dist. LEXIS 141248, *9 (D. Utah 2025). The ROW is only partially adjudicated because the *Kane County* court resolved the title portion of the claim, but "reserved for future proceedings" any decision "pertaining to scope" for the road. *Id.* at *8. That issue remains unresolved.

5.      The County's partially adjudicated ROW comes with many strings attached, including limitations on how, when, and where it can engage in road improvements on the Hole-in-the-Rock Road. Such limitations are informed by a mandatory consultation process between the County and BLM.

6.      Here, the County has completed or is intending to complete the following road work on the Hole-in-the-Rock Road:

- "Grading and reshaping the existing roadway";

- "Install[ing] . . . drainage features including culverts";

- "Plac[ing] . . . gravel where needed to stabilize the road surface"; and

- "Surfacing [the dirt road] with a double chip seal treatment . . . [for] approximately ten miles of the roadway."

*See generally* Letter from David Dodds, Garfield Cnty., Utah to Adé Nelson, Bureau of Land Mgmt., *Re: Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)* (Jan. 27, 2026) ("Notice") (attached as Ex. 2).

7.    These actions are road improvements, not routine maintenance, and therefore, even if the County had a fully adjudicated ROW, which it does not, the County was required to consult with BLM before starting work. It did not do so. However, after this lawsuit was filed, Garfield County and BLM changed course, representing to the Court that, at least with respect to chip sealing, consultation was ongoing and Garfield County did not plan to initiate the chip seal treatment until consultation with BLM concluded. *See* Hr'g Tr. 13-14 (Feb. 11, 2026).

8.    Neither Garfield County nor BLM made these same representations with respect to the County's other then-ongoing and planned improvements, such as the installation of culverts where none previously existed. In that regard, BLM idly stood by, allowing the County to engage in and complete activities that BLM acknowledges are improvements before determining whether the County's improvements are reasonable and necessary, whether there are alternatives to the County's proposed improvements, and whether BLM has met its obligation to ensure that the County's actions do not lead to unnecessary or undue degradation.

9.    BLM issued its Determination on May 7, 2026. This Determination is a final agency action that represents BLM's decision to allow the Hole-in-the-Rock Road to be chip sealed and authorizes Garfield County to do so.

10.    The Determination does not address Garfield County's other improvements to the Hole-in-the-Rock Road that were completed prior to the completion of consultation.

## **JURISDICTION AND VENUE**

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief), and 5 U.S.C. §§ 501-706 (Administrative Procedure Act, or "APA").

12. Venue is proper in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(e)(1) because the statutory violations alleged herein all occurred within the state of Utah.

**PARTIES**

13. Plaintiff SOUTHERN UTAH WILDERNESS ALLIANCE ("SUWA") is a nonprofit environmental membership organization dedicated to the preservation of outstanding wilderness found throughout Utah, including in Grand Staircase-Escalante National Monument, the Glen Canyon NRA and the Hole-in-the-Rock Road and surrounding wilderness-caliber lands, and the management of wilderness-quality lands in their natural state for the benefit of all Americans. SUWA is headquartered in Salt Lake City, Utah with offices in Moab, Utah and Washington, D.C. SUWA's members use and enjoy public lands throughout Utah for a variety of purposes, including scientific study, recreation, wildlife viewing, aesthetic appreciation, viewing cultural and historic artifacts, and financial livelihood. This is particularly true in the Grand Staircase-Escalante National Monument where SUWA members enjoy and undertake all of these activities and often visit the public lands comprising the Monument. SUWA promotes local and national recognition of the region's unique character through research and public education and supports administrative and legislative initiatives to permanently protect Utah's wild places. SUWA brings this action on its own behalf and on behalf of its members.

14. Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is the federal agency responsible for managing approximately five hundred million acres of federal public land across the United States for a variety of competing resources, including the protection of the natural and human environment.

15.     Defendant UNITED STATES BUREAU OF LAND MANAGEMENT is an agency within the Department of the Interior that is responsible for the management of approximately twenty-three million acres of federal public land in Utah, including the lands at issue in this litigation. All BLM authorizations and actions must be in accordance with FLPMA.

## LEGAL FRAMEWORK

### I.     Administrative Procedure Act

16.     Judicial review of agency actions under NEPA, FLPMA, and their implementing regulations and policies is governed by the APA, which provides judicial review for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Review is limited to "final agency action for which there is no other adequate remedy in a court." *Id.* § 704.

17.     Under the APA, a reviewing court "shall…hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency actions may also be set aside where the action is "without observance of procedure required by law." *Id.* § 706(2)(D).

### II.     National Environmental Policy Act

18.     Congress enacted NEPA "to promote efforts which prevent or eliminate damage to the environment." 42 U.S.C. § 4321.

19.     NEPA "ensures that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental effects." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). Thus, NEPA requires

that, for any "major Federal action[]³ significantly affecting the quality of the human environment," federal agencies prepare an environmental impact statement ("EIS") addressing, among other things, reasonably foreseeable environmental impacts, a range of reasonable alternatives, and whether the proposed action will result in any irreversible and irretrievable commitments of resources. *Id.* § 4332(2)(C). Where a federal action "does not have a reasonably foreseeable significant effect on the quality of the human environment, or if the significance of such effect is unknown," federal agencies shall prepare a more concise environmental assessment ("EA"). *Id.* § 4336(b)(2). An agency is not exempt from preparing an EIS or EA unless the agency action is excluded pursuant to one of the agency's identified categorical exclusions. *Id.*

20.     An agency violates NEPA when it authorizes an action prior to completing its NEPA analysis. *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1162 (10th Cir. 2002); *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C. Cir. 1983).

## III.    Federal Land Policy and Management Act

21.     FLPMA is the organic act governing BLM-managed lands. Congress enacted FLPMA to provide a comprehensive framework for the management, use, and protection of federal public lands. *See* 43 U.S.C. § 1701.

22.     FLPMA requires that BLM manage public lands under the principles of "multiple use and sustained yield" for a combination of uses, including recreation, range, timber, minerals, watershed, wildlife, fish, and natural, scenic, scientific, and historical values. 43 U.S.C. §§

---

³ A "major Federal action" is defined as an action that the agency "determines is subject to substantial Federal control and responsibility." 42 U.S.C. § 4336e(10)(A). While there are several exclusions to this definition, none apply to BLM's Determination. *See id.* § 4336e(10)(B).

1702(c), 1732(a). In doing so, BLM must balance competing uses in a manner that best meets the present and future needs "to ensure a high level of valuable uses in the future." *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 58 (2004).

23.     To achieve these objectives, FLPMA mandates that BLM develop, maintain, and periodically revise land use plans, commonly referred to as resource management plans, to govern the public lands it manages. 43 U.S.C. §§ 1712(a), 1732(a). Indeed, "[a]ll future resource management authorizations and actions…shall conform to the approved [resource management] plan." 43 C.F.R. § 1610.5-3(a); *Utah Shared Access All. v. Carpenter*, 463 F.3d 1125, 1129 (10th Cir. 2006). An action conforms with the approved plan if it is "clearly consistent with the terms, conditions, and decision of the approved plan." *W. Watersheds Proj. v. Bureau of Land Mgmt.*, 721 F.3d 1264, 1268 (10th Cir. 2013).

24.     Actions that are not in conformance with the governing management plan are unlawful unless BLM issues a land use plan amendment addressing the proposed action. 43 C.F.R. § 1610.5-3(c); *Utah Shared Access All.*, 463 F.3d at 1129.

25.     Independent of the land use planning process, FLPMA imposes a non-discretionary duty on BLM to "take any action necessary…to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

**IV.     R.S. 2477 Right-of-Way Improvements**

26.     In *Southern Utah Wilderness Alliance v. Bureau of Land Management* ("*SUWA*"), the Tenth Circuit held that a R.S. 2477 ROW "is not tantamount to fee simple ownership of a defined parcel of territory. Rather, it is an entitlement to use certain land in a particular way." 425 F.3d 735, 747 (10th Cir. 2005). A ROW holder "may sometimes be entitled to change the

character of the roadway when needed to accommodate traditional uses, but even legitimate changes in the character of the roadway require consultation when those changes go beyond routine maintenance." *Id.* at 748 (emphasis added). Thus,

> when the holder of an R.S. 2477 [ROW] across federal land proposes to undertake any improvements in the road along its [ROW], beyond mere maintenance, it must advise the federal land management agency of that work in advance, affording the agency a fair opportunity to carry out its own duties to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the [ROW], to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands. The initial determination of whether the construction work falls within the scope of an established [ROW] is to be made by the federal land management agency, which has an obligation to render its decision in a timely and expeditious manner.

*Id.* (emphases added).

27.    Road "improvements" that require pre-work consultation with BLM—that is, activities that go beyond routine maintenance—include

> the widening of the road, the horizontal or vertical realignment of the road, the installation . . . of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any "improvement," "betterment," or any change in the nature of the road that may significantly impact [public] lands, resources, or values.

*Id.* at 749 (citation omitted).

28.    The requirement that the ROW holder first consult with BLM before engaging in road improvements is mandatory "and the failure to do so will provide a basis for prompt injunctive relief." *Id.* Importantly, the consultation process requires (1) that BLM determine whether the proposed improvements are reasonable and necessary, and thus, within the scope of the ROW; (2) analyze the environmental impacts of the proposed improvements; and (3) "if appropriate, formulate alternatives that serve to protect the lands." *Id.* at 745-46, 748.

9

**FACTS GIVING RISE TO SUWA'S CAUSES OF ACTION**

29.    On January 27, 2026, Garfield County Public Works Director David Dodds sent a letter to Adé Nelson, the Grand Staircase-Escalante National Monument manager, notifying her that the County intended to imminently begin road improvement and maintenance activities on the Hole-in-the-Rock Road. *See generally* Notice.

30.    On February 2, 2026, SUWA received a copy of the County's letter and over the course of the next two days— February 3-4—SUWA confirmed that in fact the County was actively engaged in road improvement activities on the Hole-in-the-Rock Road, including road widening, changing the vertical and horizontal alignment of the road, and installing culverts where none previously existed.

31.    In its January 27 letter, the County wrongly claimed that all of its road-related activities were "maintenance" but then described the nature and scope of the work to include:

- Grading and reshaping the existing roadway and road prism to restore and maintain a proper running surface and drainage, including removal and reshaping of accumulated edge berms and restoration of proper cross slope[;]

- Placement and cleaning of bar ditches[;]

- Installation, replacement, and maintenance of drainage features including culverts[;]

- Maintenance of lead off ditches . . . to direct runoff away from the road prism[; and]

- Placement of gravel where needed to stabilize the road surface[.]

*Id.* at *1-2.

32.    Additionally, the County explained that the "roadway grading and road prism improvements described above will extend to the Garfield County and Kane County line.

Surfacing with a double chip seal treatment will be applied to approximately ten miles of the roadway." *Id.* at *2.

33.    Many of these road construction activities—specifically chip sealing, installation of culverts where none previously existed, and changing the road's alignment—are textbook examples of improvements, not maintenance. *See SUWA*, 425 F.3d at 749 (improvements include, *inter alia*, "widening of the road, . . . installation [of] culverts and other drainage structures, [and] . . . change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal. . .)").

34.    When the County proposes to undertake "any improvements in the road along its right of way, beyond mere maintenance" it must advise the BLM and provide BLM the opportunity to "carry out its own duties" and determine whether the improvement is reasonable and necessary." *SUWA*, 425 F.3d at 748; *see also Kane Cnty., Utah v. United States*, 772 F.3d 1205, 1224-25 (10th Cir. 2014) (the holder of a R.S. 2477 ROW must consult with BLM before it undertakes improvements to the ROW).

35.    On February 3, 2026, SUWA sent a cease-and-desist letter to the County. *See generally* Letter from Hanna Larsen, *et al.*, S. Utah Wilderness All. to David Dodds, *et al.*, Garfield County, *Re: Garfield County's January 27, 2026 "Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)"* (Feb. 3, 2026) (attached as Ex. 3). Among other things, SUWA explained that (1) the road construction activities were "improvements," not "maintenance," and (2) the County held only a partially adjudicated ROW because the *Kane County* court had deferred a decision as to scope of the ROW, and therefore the improvements being undertaken by the County were unauthorized and unlawful. *See id.* On

11

February 4, Ms. Tess Davis, an assistant Attorney General with the state of Utah, responded with a single sentence email to SUWA's letter: "The work presently being undertaken by Garfield County on the G9000 Hole-in-the-Rock Road does not differ from its historic maintenance and operation of the road." Email from K. Tess Davis, State of Utah, to Hanna Larsen *et al.*, S. Utah Wilderness All., *Re: G9000 Hole-in-the-Rock Road Maintenance & Improvements* (Feb. 4, 2026) (attached as Ex. 4). Ms. Davis's statement is incorrect at least insofar as the fact that Garfield County has never chip sealed the Hole-in-the-Rock Road, whose surface is dirt and gravel.

36.    On February 4, SUWA sent an email to the acting BLM State Director, Mr. Tom Heinlein, which forwarded SUWA's February 3 letter to Garfield County, summarized the points raised therein, and identified that by not directing the County to immediately cease its work BLM had, among other things, failed to fulfill its statutory duties and acted contrary to law. Email from Stephen Bloch, S. Utah Wilderness All., to Thomas Heinlein *et al.*, Bureau of Land Mgmt., *Re: Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road* (Feb. 4, 2026) (attached as Ex. 5). Mr. Bloch explained that "BLM must direct the county to cease its work immediately and consult with BLM before taking any further action." *Id.*

37.    Later in the day on February 4, Mr. Heinlein instructed Mr. Joseph Kim, an attorney with the United States Department of Justice, to forward a copy of a February 4 letter from Ms. Nelson—which responded to the County's January 27 letter—to Mr. Bloch. *See generally* Email from Joseph Kim, U.S. Dep't of Justice, to Stephen Bloch *et al.*, S. Utah Wilderness All., *Re: Hole in the Rock Road* (Feb. 4, 2026) ("Kim Email") (attached as Ex. 6); Letter from Adé Nelson, Bureau of Land Mgmt., to David Dodds, Garfield Cnty. (Feb. 4, 2026) ("BLM Letter") (attached as Ex. 7). Mr. Kim's email conveyed BLM's decision rejecting

SUWA's request that BLM comply with FLPMA and other federal laws and obligations. It states in full: "BLM has received your email about the Hole in the Rock Road, and asked me to forward you their attached response to the County's January 27 letter. Please let us know if you have any questions." *See* Kim Email.

38.    For its part, Ms. Nelson's February 4 letter correctly notes that the County's proposed actions "seem to propose both maintenance and improvements," and stated that the County had not consulted with the BLM prior to beginning this work. *See* BLM Letter at 2. However, BLM took no action to stop the County's improvement activities on federal lands.

39.    On February 11, 2026 the Court held a status conference wherein SUWA learned the following:

- The County responded to Ms. Nelson's February 4 letter on February 5, 2026 reiterating that it believes the work it was conducting constituted maintenance, not improvements. *See* Letter from David Dodds, Garfield Cnty., to Adé Nelson, Bureau of Land Mgmt., *Re: Response to Request for Additional Information – G9000 Hole-in-the-Rock Road*, *1 (Feb. 5, 2026) ("County Response") (attached as Ex. 8).[4] The County admitted that "[s]urfacing treatments" such as chip seal, constitute an improvement. *Id.* at *3.

- BLM and the County were meeting on February 11, 2026 to learn more and discuss whether the County's activities were maintenance, improvements, or both.

40.    Since that hearing, Garfield County has continued to actively engage in road improvements on the Hole-in-the-Rock Road. On information and belief, BLM did nothing to prevent the County from continuing to improve the Hole-in-the-Rock Road while consultation was ongoing; most of the County's planned improvements other than chip sealing (*e.g.*, widening, realigning, installing culverts) were completed prior to the Determination; and

---

[4] SUWA requested, and counsel for Garfield County provided, a copy of the letter on February 11, 2026.

Garfield County is prepared to immediately begin chip sealing the Road, if it has not already begun. These actions have caused and are causing immediate and irreparable harm to SUWA and its members.

41.     The Determination found that the proposed chip sealing was reasonable and necessary in light of the traditional uses of the Hole-in-the-Rock Road (*i.e.*, chip sealing is within the scope of the County's ROW). Determination at 2. Though BLM stated that it "prepared an impacts analysis to assess the potential effects of the proposed project" and ultimately determined "the proposed project would not adversely affect the surrounding public lands or resources," the impacts analysis is not included in the Determination letter. *Id.* Nor does it appear on ePlanning, BLM's National NEPA Register.[5] On information and belief, BLM did not prepare any NEPA documents to inform or support its decision in the Determination.

42.     The Determination does not address BLM's compliance with FLPMA at all, let alone assert that BLM adhered to its mandate to prevent unnecessary or undue degradation of the lands. Importantly, FLPMA's unnecessary or undue degradation standard is separate and distinct from BLM's obligation to determine whether a proposed improvement is reasonable and necessary within the traditional uses of an R.S. 2477 road. *See SUWA*, 425 F.3d at 746 (explaining that the consultation process ensures that "both the County and the BLM may be satisfied that the proposed work on the R.S. 2477 highway is reasonable and necessary and that no unnecessary or undue degradation to the public lands would occur thereby" (emphasis added)).

---

[5] *See generally* https://eplanning.blm.gov/ (last visited May 8, 2026).

43.     Likewise, the Determination does not explain how BLM's decision complies with the governing land use plan, the GSENM RMP, in accordance with FLPMA.

44.     Even assuming Tenth Circuit precedent allowed BLM to retroactively consult on already-completed improvements (it does not), BLM's Determination cannot cure its unlawful actions. The Determination does not address, at all, whether the improvements Garfield County completed before consultation concluded (*e.g.*, widening, realigning, and installing new culverts) are reasonable and necessary, and therefore within the (undefined) scope of the County's ROW, nor the does it analyze impacts to the surrounding public lands or resources or formulate alternatives that may better protect the surrounding lands, in violation of NEPA. Indeed, BLM's only effort to prevent Garfield County from constructing these improvements was to send a softly worded letter to the County expressing the agency's disappointment with the lack of pre-work consultation.

45.     And, for the one improvement BLM's Determination does address (chip sealing), BLM has failed to analyze the environmental impacts of chip sealing the Hole-in-the-Rock Road in violation of NEPA, failed to analyze alternatives to minimize such impacts in violation of NEPA and FLPMA, and failed to adhere to the requirements of the GSENM RMP, in violation of FLPMA.

46.     Directly owing to BLM's Determination regarding the chip seal treatment and its deliberate inaction with respect to other improvements, the County's ongoing work on Hole-in-the-Rock Road has resulted in and will continue to result in significant environmental impact to Grand Staircase-Escalante National Monument and its outstandingly remarkable objects and values, as well as BLM-identified LWC areas, among other resource values.

15

47.     Consequently, BLM has violated NEPA and its implementing regulations, FLPMA and its implementing regulations, and the APA.

## FIRST CAUSE OF ACTION
### *Violation of NEPA and the APA: Failure to Prepare NEPA Analysis*

48.     SUWA incorporates by reference all the preceding paragraphs.

49.     The Determination is a federal action that is subject to NEPA. 42 U.S.C. § 4336e(10)(A).

50.     BLM violated NEPA when it passively allowed the County to widen, realign, and install culverts on the Hole-in-the-Rock Road without first analyzing the environmental effects of those improvements in an environmental document.

51.     BLM further violated NEPA when it issued its Determination authorizing the County's plan to chip seal the Hole-in-the-Rock Road without first analyzing the environmental impacts of the County's proposal in an environmental document.

52.     BLM is required to prepare an environmental document (either an EIS or an EA)[6] with respect to a proposed action unless (1) "the proposed action is not a final agency action;" (2) the proposed action is categorically excluded pursuant to one of BLM's categorical exclusions; (3) the preparation of an environmental document would "clearly and fundamentally conflict" with another provision of law; or (4) the proposed action is a nondiscretionary action with respect to which such agency does not have authority to take environmental factors into consideration in determining whether to take the proposed action." 42 U.S.C. § 4336(a)(1)-(4).

---

[6] "Environmental document" is defined as "an environmental impact statement, an environmental assessment, or a finding of no significant impact." 42 U.S.C. § 4336e(5).

16

53.     BLM must prepare an EA with respect to a proposed action "that does not have a reasonably foreseeable significant effect on the quality of the human environment, or if the significance of such effect is unknown." 42 U.S.C. § 4336(b)(2). An EIS is required for proposed actions "that [have] a reasonably foreseeable significant effect on the quality of the human environment." *Id.* § 4336(b)(1).

54.     In either case, BLM is required to consider a range of reasonable alternatives to the proposed action. 42 U.S.C. § 4332(2)(H).

55.     In this instance, none of the environmental document exemptions apply to the Determination, and the Determination itself does not meet the definition of an environmental document. Therefore, to comply with NEPA, BLM was required to prepare either an EA or an EIS analyzing the environmental effects of the County's proposal to widen, realign, install culverts, and chip seal ten miles of the Hole-in-the-Rock Road prior to authorizing the improvements. In that environmental document, BLM was required to analyze a range of reasonable alternatives to the County's proposed improvements.

56.     Indeed, BLM's own actions confirm that it is aware of its NEPA obligations for proposed improvements to roads encumbered by an R.S. 2477 ROW. Previously, BLM had prepared EAs in conjunction with its reasonable and necessary determinations for other roads in and near the Grand Staircase-Escalante National Monument that supported its decision to either authorize or deny the proposed improvements. *See, e.g.*, Bureau of Land Mgmt., *Garfield County – Burr Trail Chip Seal Project Environmental Assessment*, DOI-BLM-UT-C020-2019-0006-EA (April 2019) (analyzing Garfield County's proposal to chip seal 7.5 miles of the Burr Trail. BLM determined this proposal was reasonable and necessary in light of the traditional uses of the Burr

17

Trail thereby authorizing the chip sealing);[7] Bureau of Land Mgmt., *Skutumpah Paving Environmental Assessment*, DOI-BLM-UT-P020-2022-014-EA (Sept. 2022) (analyzing Kane County's proposal to pave 3.4 miles of the Skutumpah Road bordering Grand Staircase-Escalante National Monument. BLM determined that the proposed paving was reasonable but not necessary, thereby denying the proposed paving).[8]

57.    BLM's failure to analyze the County's proposed improvements (including but not limited to widening, realigning, installing new culverts, and chip sealing) to the Hole-in-the-Rock Road in an environmental document violates NEPA and is arbitrary, capricious, or otherwise not in accordance with law in violation of the APA. 5 U.S.C. § 706(2)(A).

## SECOND CAUSE OF ACTION
### *Violation of FLPMA, Presidential Proclamation 10286, and the APA: Failure to Prevent Unnecessary or Undue Degradation to Monument Objects*

58.    SUWA incorporates by reference all preceding paragraphs.

59.    FLPMA and its implementing regulations require BLM to regulate the use, occupancy, and development of public lands. 43 U.S.C. § 1732(b).

60.    FLPMA also mandates that, "[i]n managing the public lands [BLM] shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

61.    Presidential Proclamation 10286 directs BLM to protect Grand Staircase-Escalante National Monument objects in accordance with the terms, conditions, and management

---

[7] Available at: https://eplanning.blm.gov/Documents/?id=eb3e88ab-a7f2-f011-8407-001dd80c29f3&spid=7889ee65-a8f2-f011-8407-001dd80db62a# (last visited May 8, 2026).
[8] Available at: https://eplanning.blm.gov/Documents/?id=01b17dd2-a7f2-f011-8406-001dd8008d46&spid=cd192a85-a8f2-f011-8407-001dd80db62a# (last visited May 8, 2026).

direction of Proclamation 10286, Proclamation 6920, and the GSENM RMP. 86 Fed. Reg. 57345.

62.     Here, with respect to improvements other than chip sealing, BLM allowed the County to implement those improvements without taking any affirmative action to prevent unnecessary or undue degradation. At a minimum, the agency was required to "determine whether the proposed improvements [were] reasonable and necessary in light of the traditional uses of the [ROW], to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands," and to do so before the County acted. *SUWA*, 425 F.3d at 748.

63.     However, the agency failed to do so. Without taking these actions, BLM had no way of complying with FLPMA nor any way to ensure compliance with Proclamation 10286. As the Tenth Circuit has held:

> Unless [the agency] knows in advance when [ROW] holders propose to change the width, alignment, configuration, surfacing, or type of roads across federal land, the BLM cannot effectively discharge its responsibilities to determine whether the proposed changes are reasonable and necessary, whether they would impair or degrade the surrounding lands, and whether modifications in the plans should be proposed.

*Id.* at 747 (emphasis added).

64.     BLM's failure to prohibit the County from widening, vertically and horizontally realigning, and installing new culverts on the Hole-in-the-Rock Road before consultation was completed means it has not properly discharged its responsibilities under FLPMA. Because it did not properly discharge its responsibilities, BLM has failed "to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands." *Id.* at 748. And, because BLM failed to understand the environmental impacts of the County's road improvements or to formulate alternatives thereto that would reduce those impacts, it has sanctioned environmental

19

degradation and destruction that otherwise would not have occurred. Thus, the agency failed to "take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

65.     Likewise, with respect to chip sealing, BLM failed to "take any action necessary to prevent unnecessary or undue degradation of the lands" because BLM did not analyze alternatives to the proposed chip sealing that would avoid or minimize impacts to the surrounding environment and Monument objects prior to issuing its Determination and authorizing the County to chip seal the Hole-in-the-Rock Road. 43 U.S.C. § 1732(b); *SUWA*, 425 F.3d at 748.

66.     BLM's actions are arbitrary, capricious, or otherwise not in accordance with law in violation of the APA. 5 U.S.C. § 706(2)(A).

### THIRD CAUSE OF ACTION
***Violation of FLPMA, Presidential Proclamation 10286, and the APA: Failure to Conform to the Governing Land Use Plan***

67.     SUWA incorporates by reference all preceding paragraphs.

68.     FLPMA and its implementing regulations requires that, "[a]ll future resource management authorizations and actions…shall conform to the approved [resource management] plan." 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3(a); *Utah Shared Access All. v. Carpenter*, 463 F.3d 1125, 1129 (10th Cir. 2006).

69.     An action conforms with the approved plan if it is "clearly consistent with the terms, conditions, and decision of the approved plan." *W. Watersheds Proj. v. Bureau of Land Mgmt.*, 721 F.3d 1264, 1268 (10th Cir. 2013).

20

70. The GSENM RMP is the approved resource management plan governing Grand Staircase-Escalante National Monument. It includes management decisions that dictate what is and is not allowed within the Monument.

71. Management decision TTM-07 states

[i]mprovements to routes, including, but not limited to, Hole-in-the-Rock Road…to provide for public health and safety needs and/or to protect GSENM objects will be considered during plan implementation on a case-by-case basis, in accordance with applicable laws, regulations, and policy. The BLM's consideration of any proposed improvement will include an opportunity for public participation prior to the issuance of a final decision. For purposes of this management action, an "improvement" goes beyond preserving the status quo of the road or trail and includes the widening of the road or trail; the horizontal or vertical alignment of the road or trial; the installation of (as distinguished from cleaning, repair, or replacement in kind of already existing) bridges, culverts, and other drainage structures; and any significant changes in the surface composition of the road or trail.

GSENM RMP at 2-70 (emphases added) (excerpt attached as Ex. 9).

72. The County states that the purpose of its proposed improvements to the Hole-in-the-Rock Road is to improve the safety of the Road. *See* Notice at *2. Thus, TTM-07 applies.

73. As part of the consultation process, BLM considered the County's chip sealing proposal. The Determination authorized the County to commence chip sealing and represents BLM's final decision on that proposal.

74. However, in violation of TTM-07, BLM did not provide any opportunity for public participation prior to issuing the Determination, nor did it make any effort to notify the public of the County's proposal.

75. Consequently, BLM's actions are not in conformance with the GSENM RMP. As such, BLM has violated FLPMA and its implementing regulations, and Proclamation 10286. 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3(a); 86 Fed. Reg. 57345.

76.    BLM's actions are arbitrary, capricious, or otherwise not in accordance with law in violation of the APA. 5 U.S.C. § 706(2)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, SUWA respectfully requests that the Court enters judgment in SUWA's favor and against Defendants, and that the Court:

(1)    Declare that Defendants violated NEPA and the APA when they failed to conduct any NEPA analysis at all, including failing to, at a minimum, prepare an environmental assessment for Garfield County's planned improvements Hole-in-the-Rock Road;

(2)    Declare that Defendants violated FLPMA and its implementing regulations, Presidential Proclamation 10286, and the APA when they failed to take any action necessary to prevent unnecessary or undue degradation of the public lands;

(3)    Declare that Defendants violated FLPMA and its implementing regulations, and the APA when they failed to comply with the Grand Staircase-Escalante Approved Resource Management Plan;

(4)    Enjoin BLM's Determination and decision authorizing Garfield County to chip seal the Hole-in-the-Rock Road;

(5)    Award injunctive relief instructing BLM to prohibit Garfield County from proceeding with further road improvements on the Hole-in-the-Rock Road until BLM has complied with its duties under FLPMA, NEPA, federal common law, and the APA;

(6)    Award injunctive relief instructing BLM to remove any unauthorized improvements or other such equitable relief as the Court deems proper;

(7)    Retain jurisdiction of this action to ensure compliance with its decree;

(8)     Award SUWA costs incurred in pursuing this action, including attorney's fees, as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable provisions; and

(9) Grant such other and further relief as is proper.


DATED:        May 8, 2026            Respectfully,

                                    */s/Hanna Larsen*
                                    Stephen H.M. Bloch
                                    Hanna Larsen
                                    SOUTHERN UTAH WILDERNESS ALLIANCE

                                    Trevor J. Lee
                                    HOGGAN LEE HUTCHINSON

                                    Mitch M. Longson
                                    MANNING CURTIS BRADSHAW
                                    & BEDNAR PLLC

                                    *Attorneys for Plaintiff Southern Utah*
                                    *Wilderness Alliance*

Proposed Amended and Supplemental Complaint
# EXHIBIT 1




# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Paria River District
Grand Staircase-Escalante National Monument
669 S. Highway 89A
Kanab, UT  84741

May 7, 2026

In Reply Refer To:
2800 (UT-P01)

Garfield County
David Dodds
Public Works Director
55 S. Main Street
Panguitch, UT 84759

Mr. Dodds,

Garfield County (the County) notified the Bureau of Land Management (BLM) of its desire to chip seal an approximately 10-mile segment of the Hole in the Rock (HITR) Road beginning at Highway 12 and heading southeast to about two miles past the Zebra slot canyon trailhead. The map attached to this letter depicts the approximate location of the proposed project. Garfield County and the State of Utah hold an adjudicated Revised Statute (R.S.) 2477 right-of-way (ROW) for HITR Road, which crosses federal public lands managed by the BLM in Garfield County, Utah.[1] The district court's July 2025 decision quieting title in favor of Garfield County and the State of Utah, however, reserved any decision regarding the scope of the ROW for future court proceedings.[2]

Under Tenth Circuit case law, the holder of an R.S. 2477 ROW crossing public land, and the BLM, as the federal land manager of the servient estate, must exercise their respective rights and privileges in the spirit of mutual accommodation.[3] An R.S. 2477 holder is required to consult with the BLM "before making improvements 'beyond mere maintenance' to their rights-of-way."[4] Such consultation affords the BLM an opportunity to satisfy its obligation to evaluate the proposal, i.e., (1) "to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the rights of way as of October 21, 1976"; and (2) "to study the 'potential effects' of the improvements, and if needed, to 'formulate alternatives' that protect the land."[5]

---

[1] *Kane Cnty. v. United States*, 2025 U.S. Dist. LEXIS 141248 (D. Utah, July 23, 2025) (consolidated "Memorandum Decision and Order Re: House Rock Valley Road and Hole-in-the-Rock Road").

[2] *Id.* at *9.

[3] Applicable court decisions include *Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988), *Southern Utah Wilderness Alliance (SUWA) v. Bureau of Land Management*, 425 F.3d 735 (10th Cir. 2005), *Kane Cty, Utah v. United States*, 772 F.3d 1205 (10th Cir. 2014) ("*Kane (1)*"), and *SUWA v. Dep't of the Interior*, 44 F.4th 1264 (10th Cir. 2022).

[4] *SUWA v. DOI*, 44 F.4th at 1268-69 (quoting *SUWA v. BLM*, 425 F.3d at 748).

[5] *Id.* at 1269 (quoting *SUWA v. BLM*, 425 F.3d at 748).

INTERIOR REGION 7 • UPPER COLORADO BASIN

COLORADO, NEW MEXICO, UTAH, WYOMING

Garfield County                                                                                              2

This letter is to advise you that the BLM has completed its consultation process on the County's proposal to chip seal the 10-mile segment of HITR Road. Based on the relevant information provided by the County and other information available to the BLM, the BLM first determined that the proposed project is reasonable and necessary, and, thus, within the scope of the County's ROW for HITR Road. As part of this determination, the BLM identified the scope of HITR Road for its own purpose of narrowly considering this proposal. The BLM also prepared an impacts analysis to assess the potential effects of the proposed project. Based on the impacts analysis, it is the BLM's determination that the proposed project would not adversely affect the surrounding public lands or resources. As a result, there is no need for the BLM to formulate any alternatives or modifications to the proposed project that it should discuss with the County before the County commences the proposed chip seal project.

If you have any questions about these determinations, please contact me at (435) 644-1244 or by e-mail at aknelson@blm.gov.

Sincerely,

Adé K. Nelson
Monument Manager

Enclosure

cc:  Garfield County
      County Commissioners
      Leland Pollock
      Jerry Taylor
      David Tebbs
      55 S. Main Street
      Panguitch, UT 84759

      State of Utah
      Public Lands Policy Coordinating Office
      Redge B. Johnson
      Director
      1594 W. North Temple, #320
      Salt Lake City, UT 84116



# Garfield County Chip Seal Improvement

U.S. DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
PARIA RIVER DISTRICT OFFICE
No warranty is made by the Bureau of Land
Management as to the accuracy, reliability,
or completeness of these data for individual
use or aggregate use with other data.

Legend:
- GSENM Route
- Chip Seal Section HITR - Aprx 10 Miles
- WSA
- Bureau of Land Management (BLM)
- Private
- State of Utah

0    0.75    1.5 Miles

Paria River District

Proposed Amended and Supplemental Complaint

# EXHIBIT 2



55 South Main Street |·PO Box 77 |·Panguitch, Utah 84759
Phone: (435) 676-8826·| Fax: (435) 676-8239

Garfield County Public Works Department
P.O. Box 77
Panguitch, UT 84759

January 27, 2026

Adé Nelson
Monument Manager
Grand Staircase-Escalante National Monument
Bureau of Land Management
669 S. Highway 89A
Kanab, UT 84741

Re: Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)

Dear Ms. Nelson,

Garfield County provides this notice to inform the Bureau of Land Management of planned maintenance, upgrades, and restoration activities on the G9000 Hole-in-the-Rock Road within Garfield County.

On July 23, 2025, the United States District Court for the District of Utah issued a Memorandum Decision and Order, Case No. 2:11-cv-01045, quieting title to the G9000 Hole-in-the-Rock Road in favor of Garfield County, Utah, and the State of Utah as a valid RS 2477 right of way. The court granted summary judgment to Garfield County and the State of Utah pursuant to the Quiet Title Act, 28 U.S.C. § 2409a. That decision confirms Garfield County's ownership interest in and responsibility for the road corridor.

Consistent with that ruling and with Garfield County's responsibility to provide safe and functional transportation infrastructure, the County intends to conduct maintenance, upgrades, and restoration activities on this road to address the significant volume of public and recreational traffic.

Planned work includes the following activities:

• Grading and reshaping the existing roadway and road prism to restore and maintain a proper running surface and drainage, including removal and reshaping of accumulated edge berms and restoration of proper cross slope.

• Placement and cleaning of bar ditches

• Installation, replacement, and maintenance of drainage features including culverts

• Maintenance of lead off ditches, sometimes referred to as relief ditches, to direct runoff away from the road prism

• Placement of gravel where needed to stabilize the road surface

The roadway grading and road prism improvements described above will extend to the Garfield County and Kane County line. Surfacing with a double chip seal treatment will be applied to approximately ten miles of the roadway.

The overall purpose of this work is to improve safety, durability, and drainage performance of the road, reduce long term maintenance costs, and address sustained and increasing traffic volumes, while maintaining the road within its established alignment and use as a transportation corridor. This work is also intended to reduce environmental impacts through improved dust abatement and reduced erosion of the road and surrounding landscape.

Garfield County is providing this notice as a consolation and in the interest of interagency coordination. Please contact me if you have questions or would like additional information regarding the planned work.

Sincerely,

Public Works Director
Garfield County

---

*County Commissioners*
Leland F. Pollock
Jerry A. Taylor
David B. Tebbs

Camille A. Moore, *Auditor/Clerk*
Brayton Talbot, *Recorder/Surveyor*
Joseph Thompson, *Assessor*
Gina Peterson, *Treasurer*

Gary D. Owens, *Justice Court Judge*
Barry L. Huntington, *Attorney*
James D. Perkins, *Sheriff*

Proposed Amended and Supplemental Complaint
# EXHIBIT 3



February 3, 2026

**SENT VIA ELECTRONIC MAIL**

David Dodds, Public Works Director
(dave.dodds@garfield.utah.gov)
Barry Huntington, County Attorney
(barry.huntington@garfield.utah.gov)
Garfield County
55 S Main Street
P.O. Box 77
Panguitch, UT 84759

Kathy Davis (kathydavis@agutah.gov)
K. Tess Davis (kaitlindavis@agutah.gov)
Roger Fairbanks (rfairbanks@agutah.gov)
Utah Attorney General's Office
1594 W North Temple, Ste 320
Salt Lake City, UT 84116

Mark Boshell (mboshell@utah.gov)
Utah's Public Lands Policy Coordinating
Office
1594 W North Temple, Ste 320
Salt Lake City, UT 84116

> RE:   *Garfield County's January 27, 2026 "Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)"*

Dear Mr. Dodds and counsel:

The Southern Utah Wilderness Alliance ("SUWA") has become aware of Garfield County's January 27, 2026 notice informing the Bureau of Land Management ("BLM") of "planned maintenance, upgrades, and restoration activities on the G9000 Hole-in-the-Rock Road." Letter from David Dodds, Garfield Cnty., Utah to Adé Nelson, Bureau of Land Mgmt., *Re: Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)*, 1 (Jan. 27, 2026) ("Notice") (attached as Ex. 1).

Although the Notice purports to describe its anticipated activities as "maintenance," many of the activities described are, in fact, "improvements" under Tenth Circuit law,[1] including but not limited to "reshaping the existing roadway and road prism," "[i]nstallation…of drainage features including culverts," and "[s]urfacing with a double chip seal treatment." *Id.* at 1-2. Consequently, for the reasons explained below, the activities described in the Notice are unauthorized and violate federal law.

---

[1] "Improvements" are defined to include

> the widening of the road, the horizontal or vertical realignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.)

*S. Utah Wilderness All. v. U.S. Bureau of Land Mgmt.*, 725 F.3d 735, 749 (10th Cir. 2005) ("*SUWA v. BLM*").

*Letter from SUWA to Garfield County & the State of Utah*
*Proposed Maintenance & Improvements on the G9000 Hole-in-the-Rock Road*
*February 3, 2026*

*First*, title has not been <u>fully</u> quieted in favor of Garfield County and the State of Utah and therefore the work is not authorized. As the Tenth Circuit has made clear, quieting title to an R.S. 2477 right-of-way under the Quiet Title Act, 28 U.S.C. § 2409a, requires both a title determination in favor of the claimant and <u>a scope determination</u> before the right-of-way is deemed adjudicated. *Kane Cnty. v. United States*, 928 F.3d 877, 894 (10th Cir. 2019) (explaining that "scope is inherent in the quiet title process… [b]ut the district court must determine title and scope in separate steps."); *see also Kane Cnty. v. United States*, 772 F.3d 1205, 1225 (10th Cir. 2014) (remanding for the district court to reexamine the scope of three rights-of-way while leaving the title determinations of those rights-of-way undisturbed). Without the necessary scope determination, there is no way to know what the extent of the title determination is. Here, the district court's July 23, 2025 decision in *Kane County, Utah v. United States*, 2025 U.S. Dist. LEXIS 141248 (D. Utah 2025)[2] ("*HITR Decision*") only addressed title to the Hole-in-the-Rock Road while reserving a scope determination for an unspecified later date. *See HITR Decision*, 2025 U.S. Dist. LEXIS at *8 ("Issues pertaining to scope are reserved for later proceedings."). Thus, the G9000 Hole-in-the-Rock Road has not yet been fully adjudicated under the Quiet Title Act in Garfield County and the State of Utah's favor. Until then, Garfield County is not authorized to conduct the activities described in the Notice. *See* 28 U.S.C. § 2409a(b) ("[t]he United States shall not be disturbed in possession or control of any real property involved in any action . . . pending a final judgment or decree, the conclusion of any appeal therefrom, and [for] sixty days [thereafter]…").

*Second*, even if there had been a scope determination for the G9000 Hole-in-the-Rock Road, Garfield County and the State of Utah still do not have unilateral authority to make road improvements. Tenth Circuit precedent requires that the State and County consult with the United States over any desired improvements to the road and allow the United States to evaluate whether the proposed improvement(s) are "reasonable and necessary in light of the traditional uses of the rights of way as of October 21, 1976, to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands." *SUWA v. BLM*, 725 F.3d at 748.

Many of the activities proposed in the Notice constitute improvements under Tenth Circuit law, not mere maintenance as Garfield County purports to describe them. The following table clearly identifies, in accordance with *SUWA v. BLM*, which activities listed by Garfield County are considered maintenance and which fall under the definition of improvements.

---

[2] *Kane County v. United States* is the caption for the lead case. However, the court's decision was also filed in *Garfield County v. United States*, 2:11-cv-1045.

2

*Letter from SUWA to Garfield County & the State of Utah*
*Proposed Maintenance & Improvements on the G9000 Hole-in-the-Rock Road*
*February 3, 2026*

| **Proposed Activity** | **Activity Classification** |
| --- | --- |
| Grading the roadway | Maintenance |
| Reshaping the roadway | Improvement (*e.g.*, widening the road or horizontally/vertically realigning the road) |
| Placement of bar ditches | Improvement (change in the nature of the road) |
| Cleaning of existing bar ditches | Maintenance |
| Installation of drainage features including culverts | Improvement |
| Replacement and maintenance of existing drainage features including culverts | Maintenance |
| Maintenance of lead off ditches | Maintenance |
| Placement of gravel to stabilize the road surface | Maintenance |
| Surfacing with a double chip seal treatment for 10 miles of the roadway | Improvement (upgrading the road surface from gravel to chip seal) |

*See* Notice at 1-2; *SUWA v. BLM*, 425 F.3d at 749. This means Garfield County must consult with BLM and cannot proceed with any proposed improvements listed above until:

1. BLM determines that the improvements are reasonable and necessary in light of the traditional uses of the Hole-in-the-Rock Road as of Oct. 21, 1976, and

2. BLM complies with all environmental review requirements mandated by the National Environmental Policy Act ("NEPA"), 42 U.S.C. 4331, *et seq*, and other applicable federal laws and regulations.

*SUWA v. BLM*, 425 F.3d at 748; *S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 44 F.4th 1264, 1269 (10th Cir. 2022).

To be best of SUWA's knowledge, no such consultation has occurred, yet Garfield County has already unlawfully begun construction on improvements to the Hole-in-the-Rock Road and is therefore trespassing on federally managed public lands. *See SUWA v. BLM*, 425 F.3d at 747-48 (explaining that unilaterally making improvements to an R.S. 2477 right-of-way constitutes trespass). **Garfield County must immediately cease all road work and refrain from undertaking any of the aforementioned improvements on the G9000 Hole-in-the-Rock Road until consultation is complete.** If BLM ultimately determines the proposed improvements are <u>not</u> reasonable and necessary in light of the traditional uses of the Hole-in-the-Rock Road, then Garfield County will not be authorized to proceed with those improvements. *See SUWA v. BLM*, 425 F.3d at 748 ("[i]n the event of disagreement, the parties may resort to the courts.").

3

*Letter from SUWA to Garfield County & the State of Utah*
*Proposed Maintenance & Improvements on the G9000 Hole-in-the-Rock Road*
*February 3, 2026*

Please provide written confirmation by close of business on February 4, 2026 of Garfield County's and the State of Utah's assurances that it will abide by binding federal law and the demands in this letter. If Garfield County and the State are unwilling to provide such assurances, SUWA intends to pursue all available legal remedies that may be available to it. This letter is not intended to be a complete statement of SUWA's rights or remedies, all of which are expressly reserved.

SUWA appreciates your prompt attention to this matter.


Sincerely,


*Hanna Larsen*

Hanna Larsen
Steve Bloch
Southern Utah Wilderness Alliance
425 E 100 S
Salt Lake City, UT 84111
hanna@suwa.org
steve@suwa.org

Mitch Longson
Manning Curtis Bradshaw & Bednar PLLC
201 South Main Street, Ste. 750
Salt Lake City, UT 84111
mlongson@mc2b.com

Trevor Lee
Hoggan Lee Hutchinson
257 E 200 S, #1050
Salt Lake City, UT 84111
trevor@hlh.law


*Attorneys for the Southern Utah Wilderness Alliance*


Cc:
Joseph Kim, Trial Attorney
Environmental and Natural Resources Division
United States Department of Justice

Adé Nelson, Monument Manager
Grand Staircase-Escalante National Monument
United States Bureau of Land Management

SUWA Letter
# EXHIBIT 1



55 South Main Street |·PO Box 77 |·Panguitch, Utah 84759
Phone: (435) 676-8826·| Fax: (435) 676-8239

Garfield County Public Works Department
P.O. Box 77
Panguitch, UT 84759

January 27, 2026

Adé Nelson
Monument Manager
Grand Staircase-Escalante National Monument
Bureau of Land Management
669 S. Highway 89A
Kanab, UT 84741

Re: Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)

Dear Ms. Nelson,

Garfield County provides this notice to inform the Bureau of Land Management of planned maintenance, upgrades, and restoration activities on the G9000 Hole-in-the-Rock Road within Garfield County.

On July 23, 2025, the United States District Court for the District of Utah issued a Memorandum Decision and Order, Case No. 2:11-cv-01045, quieting title to the G9000 Hole-in-the-Rock Road in favor of Garfield County, Utah, and the State of Utah as a valid RS 2477 right of way. The court granted summary judgment to Garfield County and the State of Utah pursuant to the Quiet Title Act, 28 U.S.C. § 2409a. That decision confirms Garfield County's ownership interest in and responsibility for the road corridor.

Consistent with that ruling and with Garfield County's responsibility to provide safe and functional transportation infrastructure, the County intends to conduct maintenance, upgrades, and restoration activities on this road to address the significant volume of public and recreational traffic.

Planned work includes the following activities:

• Grading and reshaping the existing roadway and road prism to restore and maintain a proper running surface and drainage, including removal and reshaping of accumulated edge berms and restoration of proper cross slope.

• Placement and cleaning of bar ditches

• Installation, replacement, and maintenance of drainage features including culverts

• Maintenance of lead off ditches, sometimes referred to as relief ditches, to direct runoff away from the road prism

• Placement of gravel where needed to stabilize the road surface

The roadway grading and road prism improvements described above will extend to the Garfield County and Kane County line. Surfacing with a double chip seal treatment will be applied to approximately ten miles of the roadway.

The overall purpose of this work is to improve safety, durability, and drainage performance of the road, reduce long term maintenance costs, and address sustained and increasing traffic volumes, while maintaining the road within its established alignment and use as a transportation corridor. This work is also intended to reduce environmental impacts through improved dust abatement and reduced erosion of the road and surrounding landscape.

Garfield County is providing this notice as a consolation and in the interest of interagency coordination. Please contact me if you have questions or would like additional information regarding the planned work.

Sincerely,



Public Works Director
Garfield County

---

*County Commissioners*
Leland F. Pollock
Jerry A. Taylor
David B. Tebbs

Camille A. Moore, *Auditor/Clerk*
Brayton Talbot, *Recorder/Surveyor*
Joseph Thompson, *Assessor*
Gina Peterson, *Treasurer*

Gary D. Owens, *Justice Court Judge*
Barry L. Huntington, *Attorney*
James D. Perkins, *Sheriff*

Proposed Amended and Supplemental Complaint
# EXHIBIT 4

**Wednesday, February 4, 2026 at 4:29:44 PM Mountain Standard Time**

| | |
|---|---|
| **Subject:** | Re: G9000 Hole-in-the-Rock Road Maintenance & Improvements |
| **Date:** | Wednesday, February 4, 2026 at 4:05:53 PM Mountain Standard Time |
| **From:** | Tess Davis |
| **To:** | Hanna Larsen, dave.dodds@garfield.utah.gov, barry.huntington@garfield.utah.gov, Kathy Davis, Roger Fairbanks, mboshell@utah.gov |
| **CC:** | Steve Bloch, Trevor Lee, Mitch Longson |
| **Category:** | Privileged & Confidential |

-----This email originated from outside the organization-----

Hanna,

The work presently being undertaken by Garfield County on the G9000 Hole-in-the-Rock Road does not differ from its historical maintenance and operation of the road.

Thank you,

**K. Tess Davis**
*Assistant Attorney General*
*Deputy Director, Natural Resources Division*

State of Utah, Office of the Attorney General
Natural Resources Division, Public Lands Section
1594 W North Temple, 3rd Floor
Salt Lake City, UT 84116

C: (385) 261-0360 | E: kaitlindavis@agutah.gov

This e-mail message and all attachments transmitted with it are intended solely for the use of the addressee(s) and may contain legally privileged and confidential information. If the reader of the message is not the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or other use of the message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to the message and please delete it from your computer.

**From:** Hanna Larsen <hanna@suwa.org>
**Sent:** Tuesday, February 3, 2026 5:40 PM
**To:** dave.dodds@garfield.utah.gov <dave.dodds@garfield.utah.gov>;
barry.huntington@garfield.utah.gov <barry.huntington@garfield.utah.gov>; Kathy Davis
<kathydavis@agutah.gov>; Tess Davis <kaitlindavis@agutah.gov>; Roger Fairbanks
<RFAIRBANKS@agutah.gov>; mboshell@utah.gov <mboshell@utah.gov>
**Cc:** Steve Bloch <steve@suwa.org>; Trevor Lee <trevor@hlh.law>; Mitch Longson
<mlongson@mc2b.com>
**Subject:** G9000 Hole-in-the-Rock Road Maintenance & Improvements

Good evening,

On behalf of the Southern Utah Wilderness Alliance, please find attached a letter concerning Garfield County's current road work on the G9000 Hole-in-the-Rock Road.

Sincerely,

**Hanna Larsen**
Staff Attorney
Southern Utah Wilderness Alliance
425 E 100 S
Salt Lake City, UT 84111
801.428.3992 | hanna@suwa.org

IMPORTANT: The information in this email is confidential attorney communication and may be privileged. It is intended only for the use of the addressee. If you receive this communication and are not the intended recipient, you are hereby notified that the copying or distribution of this communication is prohibited. If you have received this communication in error, please notify us by telephone and return the message to us at the above address.

Proposed Amended and Supplemental Complaint

# EXHIBIT 5

**Wednesday, February 4, 2026 at 9:33:44 PM Mountain Standard Time**

**Subject:** FW: [EXTERNAL] Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road

**Date:** Wednesday, February 4, 2026 at 4:59:39 PM Mountain Standard Time

**From:** Steve Bloch

**To:** Landon Newell, Hanna Larsen, Kya Marienfeld, Grant Stevens

**From:** Steve Bloch
**Sent:** Wednesday, February 4, 2026 4:59 PM
**To:** 'Heinlein, Thomas' <theinlei@blm.gov>; Preston, Matthew A <mpreston@blm.gov>; Barber, Harry A <hbarber@blm.gov>; Nelson, Ade K <aknelson@blm.gov>; Mendez, Joseph C <jmendez@blm.gov>
**Cc:** Scott Braden <scottb@suwa.org>; Neal Clark <neal@suwa.org>
**Subject:** RE: [EXTERNAL] Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road

Tom,

Thank you for your response.

To close the loop on one front, I spoke this afternoon with David Russell – Paria River District LEO – about the situation earlier today on the Hole in the Rock Road. We left it that David was going to call the Garfield County Sheriff and relay the events that transpired. David indicated that he felt this event might be a 1-off situation. I appreciate his optimism and certainly hope that there are no further instances of County employees blocking the road or attempting to intimidate members of the public traveling on BLM-managed lands.

On the other front, I received an email from Joe Kim @ DOJ this afternoon confirming BLM's receipt of my email to you, Matt, Harry and Ade about the activities occurring on Hole in the Rock Road and indicating that in response BLM asked Joe to forward Ade's letter sent to Garfield County about this matter. Ade's decision not to require consultation before any further improvements proceed, not to follow the monument management plan as required by FLPMA, and not to prevent unnecessary or undue degradation, is contrary to law.

Steve
Stephen Bloch (*he/him*)
Legal Director
Southern Utah Wilderness Alliance
425 East 100 South
Salt Lake City, Utah 84111
Phone: 801 428 3981
Fax: 801 486 4233
steve@suwa.org
"Surely, in the light of history, it is more intelligent to hope rather than to fear, to try rather

than not to try. For one thing we know beyond all doubt: Nothing has ever been achieved by the person who says, 'It can't be done.'" – Eleanor Roosevelt

IMPORTANT: The information in this e-mail is attorney communication
and privileged.  It is intended only for the use of the addressee.
If you receive this communication and are not the intended
recipient, you are hereby notified that the copying or
distribution of this communication is prohibited.  If you have
received this communication in error, please notify us
by telephone and return the message to us at the above address.

**From:** Heinlein, Thomas <theinlei@blm.gov>
**Sent:** Wednesday, February 4, 2026 3:01 PM
**To:** Steve Bloch <steve@suwa.org>; Preston, Matthew A <mpreston@blm.gov>; Barber, Harry A <hbarber@blm.gov>; Nelson, Ade K <aknelson@blm.gov>; Mendez, Joseph C <jmendez@blm.gov>
**Cc:** Scott Braden <scottb@suwa.org>; Neal Clark <neal@suwa.org>
**Subject:** Re: [EXTERNAL] Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road

-----This email originated from outside the organization-----

Hi Steve,

I'm in Grand Junction at the moment tending to a few medical appointments and have your email in hand.

First, you can expect outreach from BLM Law Enforcement (Paria District/GSENM) regarding the issue you described from earlier today on HITR Road.

I will be in touch as soon as I can regarding your concerns about the County's proposed activities you described.

Thank you,
Tom

Tom Heinlein
State Director (Acting)
Bureau of Land Management
Utah State Office
(970) 730-7450

**From:** Steve Bloch <steve@suwa.org>
**Sent:** Wednesday, February 4, 2026 1:36 PM
**To:** Heinlein, Thomas <theinlei@blm.gov>; Preston, Matthew A <mpreston@blm.gov>; Barber, Harry A <hbarber@blm.gov>; Nelson, Ade K <aknelson@blm.gov>
**Cc:** Scott Braden <scottb@suwa.org>; Neal Clark <neal@suwa.org>
**Subject:** [EXTERNAL] Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road

> **This email has been received from outside of DOI - Use caution before clicking on links, opening attachments, or responding.**

Dear Acting Director Heinlein,

I am writing to you regarding a dangerous, unfolding situation on the Hole in the Rock Road in Garfield County. Please contact me at your earliest convenience to discuss this matter: 801.859.1552.

As you know, on Monday, Feb. 3, the Department of Justice provided SUWA and others a copy of a letter sent by Garfield County on January 27 to Ade Nelson, the Grand Staircase-Escalante National Monument manager. As detailed in the letter and verified on-the-ground, Garfield County is currently conducting and plans to continue conducting unauthorized road improvements on the Hole in the Rock Road including installation of new culverts (where no culverts were previously located), changes to the vertical and horizontal alignment of the road, and chip sealing a 10 mile stretch of the road (changing the surface from dirt to chip seal). **As detailed in SUWA's February 3 letter to the County, <u>each</u> of these described activities constitute <u>improvements,</u> not maintenance, of the road and as such BLM must direct the county to cease its work immediately and consult with BLM before taking any further action. Among other things, the point of consultation is to allow BLM to fulfil its statutory obligations to protect monument objects and values and to determine if the County's proposed activities are both reasonable and necessary.**

Consulting with BLM is not only the law as detailed by the Tenth Circuit Court of Appeals in *SUWA v. BLM*, 425 F.3d 735 (10th Cir. 2005), it is also required by the Grand Staircase-Escalante Approved Monument Management Plan and Record of Decision. Specifically, the Plan/ROD states at 2-70 as follows:

| | |
|---|---|
| **TTM-07** | **Maintenance:** Designated routes could be maintained to meet public health and safety needs and/or to protect GSENM objects and |

resources. Deviations from current route maintenance levels on designated routes, to provide for public health and safety needs and/or to protect GSENM objects, will be considered on a case-by-case basis.

**Improvements:** Improvements to routes, including, but not limited to, Hole-in-the-Rock Road, Cottonwood Road, and House Rock Valley Road, to provide for public health and safety needs and/or to protect GSENM objects will be considered during plan implementation on a case-by-case basis, in accordance with applicable laws, regulations, and policy. The BLM's consideration of any proposed improvement will include an opportunity for public participation prior to the issuance of a final decision. **For purposes of this management action, an "improvement" goes beyond preserving the status quo of the road or trail and includes the widening of the road or trail; the horizontal or vertical alignment of the road or trial; the installation of (as distinguished from cleaning, repair, or replacement in kind of already existing) bridges, culverts, and other drainage structures; and any significant changes in the surface composition of the road or trail.**

**In addition, a SUWA staff member was traveling the Hole in the Rock Road this morning (Feb. 4) to assess the nature and extent of the County's work. During that trip he was confronted by two County workers who effectively blocked the road with their equipment, stepped out of their machines and our staff member reports that he felt threatened and intimidated by the County workers.** Our staff member was able to exit the situation by driving off the road and then make his way to Highway 12. **I urge you to immediately be in touch with County leadership and law enforcement to get a handle on this unsafe and unacceptable situation on BLM-managed lands.**

Thank you for your immediate attention to this matter.

Stephen Bloch (*he/him*)

4 of 5

Legal Director
Southern Utah Wilderness Alliance
425 East 100 South
Salt Lake City, Utah 84111
Phone: 801 428 3981
Fax: 801 486 4233
steve@suwa.org
"Surely, in the light of history, it is more intelligent to hope rather than to fear, to try rather than not to try. For one thing we know beyond all doubt: Nothing has ever been achieved by the person who says, 'It can't be done.'" – Eleanor Roosevelt

IMPORTANT: The information in this e-mail is attorney communication
and privileged.  It is intended only for the use of the addressee.
If you receive this communication and are not the intended
recipient, you are hereby notified that the copying or
distribution of this communication is prohibited.  If you have
received this communication in error, please notify us
by telephone and return the message to us at the above address.

Proposed Amended and Supplemental Complaint
# EXHIBIT 6

**Wednesday, February 4, 2026 at 9:31:37 PM Mountain Standard Time**

| | |
|---|---|
| **Subject:** | Hole in the Rock Road |
| **Date:** | Wednesday, February 4, 2026 at 3:42:20 PM Mountain Standard Time |
| **From:** | Kim, Joseph (ENRD) |
| **To:** | Steve Bloch |
| **CC:** | Hanna Larsen, michaelsmithsoldoi (Vendor), Schulte, Elizabeth A, Melinda Moffitt (mmoffitt@blm.gov) |
| **Attachments:** | 2026.02.04 HITR RS2477 Additional Info Request_signed.pdf |

-----This email originated from outside the organization-----

Steve:

BLM has received your email about the Hole in the Rock Road, and asked me to forward to you their attached response to the County's January 27 letter.

Please let us know if you have any questions.

Joe

Proposed Amended and Supplemental Complaint
# EXHIBIT 7




# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Paria River District
Grand Staircase-Escalante National Monument
669 S. Highway 89A
Kanab, UT  84741

February 4, 2026

In Reply Refer To:
2800 (UT-P01)

Garfield County
David Dodds
55 S. Main Street
Panguitch, UT 84759

Mr. Dodds,

The Bureau of Land Management (BLM), Grand Staircase-Escalante National Monument (GSENM), received Garfield County's January 27, 2026, letter regarding maintenance and improvements to portions of Hole-in-the-Rock (HITR) Road in Garfield County. On January 30, 2026, the BLM also discovered that Garfield County has begun some of the planned road work. We write to request additional details about Garfield County's proposed road work and to engage in consultation regarding any proposed road work that qualifies as an improvement to HITR Road.

On July 23, 2025, the U.S. District Court for the District of Utah issued an order quieting title to the Garfield County portion of HITR Road in favor of Garfield County and the State of Utah, *Garfield County, Utah v. United States*, Case No. 2:11-cv-01045 (Memorandum Decision and Order). However, the district court did not provide any explanation for its title adjudication and specifically indicated that it would determine the appropriate scope relating to this road later. The BLM acknowledges Garfield County's title to HITR Road, but we also highlight that scope has yet to be determined.

As you are aware, the holder of an R.S. 2477 right-of-way must consult with the BLM before conducting proposed improvements beyond routine maintenance, which is articulated in relevant, applicable court cases. In particular, when an R.S. 2477 right-of-way holder is proposing:

> to undertake any improvements in the road along its right of way, beyond mere maintenance, it must advise the federal land management agency of that work in advance, affording the agency a fair opportunity to carry out its own duties to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the rights of way as of October 21, 1976, to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands. The initial determination of whether the construction work falls within the scope of

INTERIOR REGION 7 • UPPER COLORADO BASIN

COLORADO, NEW MEXICO, UTAH, WYOMING

Garfield County                                                                                    2

an established right of way is to be made by the federal land management agency,
which has an obligation to render its decision in a timely and expeditious manner.

*SUWA v. BLM*, 425 F.3d 735, 748 (10th Cir. 2005). Such an obligation reflects the principle
that an easement holder should exercise its rights in a way that does not unreasonably
interfere with the underlying landowner.

Garfield County's January 27, 2026, letter seems to propose both maintenance and
improvement actions for HITR Road. To ensure we meet our mutual obligations, the BLM
would appreciate the opportunity to coordinate with Garfield County and to better understand
what is being proposed. Specifically, this coordination will allow the BLM to meet its
responsibilities to consult on those proposed activities qualifying as improvements. This
coordination is especially important because the district court has not determined the scope
of HITR Road.

To this end, the BLM is requesting further information it believes can help to fully evaluate
whether any proposed improvements are reasonable and necessary. Such information could
include any engineering plans and specifically what portion of the road is proposed to be chip
sealed.

Additionally, any information regarding the specific reasons for the proposed improvements
would assist with the consultation.

Finally, the BLM is willing to work with Garfield County to expeditiously engage in
consultation regarding any proposed improvements. Proposed improvements should wait
until after such consultation has occurred.

We look forward to coordinating with you. If you have any questions about the additional
information requested, please contact me at (435) 644-1244 or by e-mail at aknelson@blm.gov.

Sincerely,

Adé K. Nelson
Monument Manager

Proposed Amended and Supplemental Complaint
# EXHIBIT 8



55 South Main Street │·PO Box 77 │·Panguitch, Utah 84759

Phone: (435) 676-8826·│ Fax: (435) 676-8239

February 5, 2026

Adé Nelson
Monument Manager
Grand Staircase–Escalante National Monument
Bureau of Land Management
669 South Highway 89A
Kanab, Utah 84741

Re: Response to Request for Additional Information – G9000 Hole-in-the-Rock Road

Dear Ms. Nelson,

Garfield County acknowledges receipt of the Bureau of Land Management's correspondence regarding the County's January 27, 2026 notice concerning activities on the G9000 Hole-in-the-Rock Road.

Title to the G9000 Hole-in-the-Rock Road was quieted in favor of Garfield County and the State of Utah pursuant to the United States District Court for the District of Utah's Memorandum Decision and Order dated July 23, 2025, in Case No. 2:11-cv-01045. As a result, Garfield County holds ownership and responsibility for the operation and maintenance of this transportation corridor.

At present, Garfield County is conducting only routine maintenance activities on the G9000 Hole-in-the-Rock Road. These activities include grading and reshaping the existing roadway, maintenance of drainage features and culverts, cleaning of ditches, and gravel placement where necessary to stabilize the road surface. These are the same types of activities Garfield County has historically performed for decades in its role as highway authority. All work currently underway is occurring within the historical disturbed travel surface and does not expand the alignment, width, or footprint of the road.

No work currently underway constitutes an improvement, and consultation is not required for the maintenance activities presently being performed.

As reflected in the administrative record summarized below, Garfield County has engaged in ongoing coordination and consultation with BLM for several years regarding both routine maintenance and potential future improvements to the Hole-in-the-Rock Road. That coordination has included written notices, meetings, site visits, emergency response coordination, engineering plans, environmental analysis, and formal participation in land use

planning processes. Garfield County believes this history reflects a clear and sufficient understanding of the nature, purpose, and scope of the activities discussed.

By way of summary:

On May 13, 2022, Garfield County submitted a formal written request to BLM regarding surfacing and improvement of the first five miles of the Hole-in-the-Rock Road, including a detailed project description, traffic data, safety concerns, maintenance costs, and a request to initiate consultation.

On May 25, 2022, following a scheduled coordination call, Garfield County provided BLM with a written summary of that discussion, documenting BLM's acknowledgment of deteriorating road conditions, safety concerns, and potential administrative pathways discussed.

On June 2, 2022, BLM responded in writing, acknowledging receipt of the County's request and declining to engage in consultation at that time based on the pending Quiet Title Act litigation.

On July 29, 2022, Garfield County advised BLM that it had exhausted its ability to feasibly maintain the road as a gravel surface and that conditions would continue to degrade absent improvements.

In August 2022, Garfield County and BLM coordinated directly regarding deteriorated and unsafe road conditions following storm events, including joint decisions to temporarily close portions of the road, perform emergency maintenance, and reopen the route.

On October 4, 2022, Garfield County transmitted to BLM a draft Environmental Assessment prepared by the County's consultant and stamped engineering design plans addressing proposed improvements to the Hole-in-the-Rock Road, including drainage, profile corrections, bridge concepts, and potential surfacing within the existing travel surface. BLM confirmed on October 11, 2022 that these materials were added to the official record.

On November 15, 2022, Garfield County submitted formal scoping comments for the Grand Staircase–Escalante National Monument Resource Management Plan requesting analysis of improvements to the Hole-in-the-Rock Road, including surfacing and drainage improvements supported by traffic, safety, and maintenance data.

On October 5, 2023, Garfield County participated in an on-site field visit along the Hole-in-the-Rock Road with the Utah State Director of the Bureau of Land Management, Greg Sheehan, the Paria River District Manager, Harry Barber, representatives of the Public Lands Policy Coordinating Office, and representatives of the Southern Utah Wilderness Alliance. The site visit focused on existing road conditions, safety concerns, drainage failures, and the operational challenges associated with maintaining the route following storm events.

Following the October 5, 2023 field visit, Garfield County, BLM, and representatives of the Public Lands Policy Coordination Office participated in subsequent virtual coordination meetings, including Zoom meetings with BLM leadership and stakeholders, to further discuss road conditions, safety concerns, administrative pathways, and potential approaches to addressing necessary improvements within the existing roadway footprint.

Between October 2023 and June 2024, BLM staff were invited to participate in the Garfield County Transportation Master Plan Steering Committee, during which Hole-in-the-Rock Road conditions and upgrades were discussed as part of a broader countywide transportation planning effort.

Consistent with this history, the County's January 27, 2026 notice was intended to provide transparency and continued coordination regarding maintenance activities currently underway. That notice also reiterated a potential future improvement, namely surfacing with chip seal, which has been disclosed, discussed, engineered, and analyzed with BLM over multiple years. [1]

This understanding is consistent with, and supported by, the Grand Staircase–Escalante National Monument Record of Decision and Approved Resource Management Plan. The RMP expressly contemplates improvements to routes, including the Hole-in-the-Rock Road, where necessary to address public health and safety concerns or to protect monument resources, and defines improvements to include significant changes in surface composition. Surfacing treatments such as chip seal are therefore among the types of improvements anticipated during plan implementation.

With respect to NEPA, the County notes that NEPA applies to major federal actions. Routine maintenance conducted by Garfield County on a County-owned right-of-way does not constitute a major federal action, and consultation alone does not trigger NEPA. Upon review, none of the relevant in case law states or implies that the consultation process necessitates NEPA analysis.

Garfield County believes that the history summarized above constitutes meaningful and sufficient consultation regarding the proposed surfacing improvement. With title to the road now quieted in favor of the County and the State of Utah, Garfield County has provided notice and intends to proceed with the activities identified in its January 27, 2026 notice, consistent with its long-disclosed plans.

Garfield County remains willing to meet with BLM if the agency believes additional discussion would be helpful. However, the County believes the existing administrative record adequately reflects the history of coordination, the distinction between maintenance and improvements, and the scope of activities currently underway.

---

[1] The Tenth Circuit Court of Appeals held in *SUWA v. BLM*, 425 F.3d 735, 748 (10th Cir. 2005), that "the federal land management agency … has an obligation to render its decision in a timely and expeditious manner. The agency may not use its authority, either by delay or by unreasonable disapproval, to impair the rights of the holder of the R.S. 2477 right of way."

Please feel free to contact me if you have specific questions regarding current maintenance operations.

Sincerely,


Public Works Director
Garfield County

cc: Garfield County Commissioners

*County Commissioners*
Leland F. Pollock
Jerry A. Taylor
David B. Tebbs

Camille A. Moore, *Auditor/Clerk*
Brayton Talbot, *Recorder/Surveyor*
Joseph Thompson, *Assessor*
Gina Peterson, *Treasurer*

Gary D. Owens, *Justice Court Judge*
Barry L. Huntington, *Attorney*
James D. Perkins, *Sheriff*

Proposed Amended and Supplemental Complaint
# EXHIBIT 9

U.S. Department of the Interior
Bureau of Land Management

# Grand Staircase-Escalante

National Monument

January 2025

Record of Decision

Approved Resource Management Plan



## Mission statement

The Bureau of Land Management sustains the health, diversity, and productivity of the public lands for the use and enjoyment of present and future generations.

## Cover Photo

Hoodoo formations near Escalante, Utah in Grand Staircase-Escalante National Monument.

Photograph by Bob Wick, provided by the Bureau of Land Management.

DOI-BLM-UT-P010-2022-0006-RMP-EIS

## For more Information

To request a copy of this publication please contact:

Paria River District
669 South Highway 89A, Kanab, Utah 84741
435-644-1200

# Grand Staircase-Escalante National Monument
# Record of Decision and Approved Resource Management Plan

Prepared by
**U.S. Department of the Interior**
**Bureau of Land Management**
**Paria River District Office**
**Kanab, Utah**

**Cooperating Agencies:**
Escalante City, Utah
Garfield County Commission
Hopi Tribe of Arizona
Kaibab Band of Paiute Indians
Kanab City, Utah
Kane County Commission
Kane County Water Conservancy District
National Park Service Intermountain Regional Office
Navajo Nation
Paiute Indian Tribe of Utah
Tropic Town, Utah
U.S. Forest Service, Dixie National Forest
Utah Public Lands Policy Coordinating Office
Washington County Water Conservancy District

**January 2025**

### 2.2.22  Travel and Transportation Management (TTM)

*Goal*

- Provide appropriate access to GSENM while ensuring the protection GSENM objects.

*Objective*

- Establish a transportation system that provides for appropriate access, protects GSENM objects and resources, provides for appropriate access, minimizes impacts on other resources, and minimizes user conflicts.

*Management Directions*

**Table 2-23. Management Directions for Travel and Transportation Management**

| Management No. | Management Directions |
|---|---|
| TTM-01 | Any land acquired by the BLM over the life of the RMP will be managed similarly to the existing OHV area designations of adjoining BLM-managed lands or as stated, or implied, in the transfer. Where clarification is absent, the BLM will manage acquired lands under the OHV limited area designation. The type of limitation will be set by implementation-level decisions; until these decisions are made, use may continue in the same manner and degree consistent with the purposes for which the acquisition was made. |
| TTM-02 | The BLM will complete TMPs for motorized, mechanized, and nonmechanized and nonmotorized travel. <br><br> Until new travel management planning for public OHV use is completed, the route designations in the 2000 MMP, as amended by the 2020 RMPs apply, unless otherwise modified by this plan (allocation of OHV closed areas result in the closure of the V-Road). <br><br> Any routes designated as available for public OHV use that are not designated for such use as of the date of this plan must protect and enhance GSENM objects and/or increase public safety. If a route is proposed for public OHV use for reasons of health and safety, the proposal must demonstrate that there is no other feasible way to address public health and safety. |
| TTM-03 | Delineate the planning area into the following travel management areas (Figure 2-12): <br> • Kaiparowits <br> • Escalante Canyons <br> • Grand Staircase <br><br> Adjustments to travel management area boundaries may be made prior to conducting travel management planning. |

| Management No. | Management Directions |
|---|---|
| TTM-04 | Manage OHV use as follows (Figure 2-13):<br>• Open: 0 acres<br>• Limited: 620,000 acres<br>  - Front country, passage, and outback areas<br>• Closed: 1,245,600 acres<br>  - Primitive area |
| TTM-05 | Limit mechanized travel to routes designated for public OHV use and/or routes designated specifically for such use. |
| TTM-06 | Consistent with the protection of GSENM objects, designate nonmotorized recreational trails (such as hiking, biking, and horseback riding) in OHV limited and OHV closed areas, according to the following parameters:<br><br>Front Country Area:<br>Allow a full range of recreational trails, including paved and nonpaved trails.<br><br>Passage and Outback Areas:<br>Allow a range of recreational trails, including only nonpaved trails.<br><br>Primitive Area:<br>Allow nonpaved, nonmechanized recreation trails only for resource protection and/or public safety. |
| TTM-07 | **Maintenance:** Designated routes could be maintained to meet public health and safety needs and/or to protect GSENM objects and resources. Deviations from current route maintenance levels on designated routes, to provide for public health and safety needs and/or to protect GSENM objects, will be considered on a case-by-case basis.<br><br>**Improvements:** Improvements to routes, including, but not limited to, Hole-in-the-Rock Road, Cottonwood Road, and House Rock Valley Road, to provide for public health and safety needs and/or to protect GSENM objects will be considered during plan implementation on a case-by-case basis, in accordance with applicable laws, regulations, and policy. The BLM's consideration of any proposed improvement will include an opportunity for public participation prior to the issuance of a final decision. For purposes of this management action, an "improvement" goes beyond preserving the status quo of the road or trail and includes the widening of the road or trail; the horizontal or vertical alignment of the road or trial; the installation of (as distinguished from cleaning, repair, or replacement in kind of already existing) bridges, culverts, and other drainage structures; and any significant changes in the surface composition of the road or trail. |