Stephen H.M. Bloch (#7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

Mitch M. Longson (#15661)
MANNING CURTIS BRADSHAW
& BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
mlongson@mc2b.com

Trevor J. Lee (#16703)
HOGGAN LEE HUTCHINSON
257 East 200 South, #1050
Salt Lake City, UT 84111
Telephone: (435) 615-2264
trevor@hlh.law

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**,<br><br>    Plaintiff,<br><br>v.<br><br>**GARFIELD COUNTY, UTAH** *et al.*,<br><br>    Defendants. | **PLAINTIFF'S BRIEF IN SUPPORT OF ITS STANDING**<br><br>Case No. 2:26-cv-00096-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br>Magistrate Judge Paul Kohler |

In accordance with the Court's May 8, 2026 Minute Order, ECF No. 56, Plaintiff

Southern Utah Wilderness Alliance ("SUWA") respectfully submits this Brief in Support of its

Standing to pursue the claims alleged in its Proposed Amended and Supplemental Complaint,

ECF No. 54-1. For the reasons set forth below, SUWA has standing to pursue all claims alleged

in its Proposed Amended and Supplemental Complaint.

## BACKGROUND

SUWA's Proposed Amended and Supplemental Complaint challenges the issuance of the Bureau of Land Management's ("BLM") May 7, 2026 Reasonable and Necessary Determination ("Determination") authorizing Garfield County's proposal to chip seal the Hole-in-the-Rock Road ("the Road") on the grounds that BLM failed to adhere to its duties and obligations under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.*, and its implementing regulations, and binding Tenth Circuit precedent when issuing the Determination. ECF No. 54-1 ¶¶ 1, 16-17, 48-76. Specifically, SUWA brings three causes of action: (1) a NEPA violation alleging a failure to prepare any NEPA analysis prior to issuing the Determination; (2) a FLPMA violation alleging a failure to take any action necessary to prevent unnecessary or undue degradation of the Grand Staircase-Escalante National Monument ("GSENM") and its objects; and (3) a FLPMA violation alleging a failure to comply with the governing land use plan, the GSENM Resource Management Plan. SUWA brings each of these causes of action against the Federal Defendants pursuant to the jurisdiction granted by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and does not bring any claims against Garfield County or the State of Utah.[1]

---

[1] As such, they are no longer named as defendants in the Amended and Supplemental Complaint.

## ARGUMENT

**I.    SUWA Has Standing to Pursue the Claims in its Proposed Amended and Supplemental Complaint.**

To determine standing, the Court "asks whether [the plaintiffs] are the proper <u>parties</u> to bring the suit, thus focusing on the qualitative sufficiency of the injury and whether the complainant has personally suffered the harm." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1157 (10th Cir. 2013) (citations omitted) (emphasis in original). SUWA meets all standing requirements to bring the claims set forth in its Proposed Amended and Supplemental Complaint.

**A.    Article III Standing**

In the Tenth Circuit, when an organization sues on behalf of its members, the organization has constitutional standing if:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Diné Citizens Against Ruining Our Env't v. Bernhardt* ("*Diné CARE*"), 923 F.3d 831, 840 (10th Cir. 2019) (citation omitted). A member has standing to sue in their own right if:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (citation omitted). "The relevant showing for standing in environmental cases is not injury to the environment but injury to the plaintiff." *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 449 (10th Cir. 1996).

"When evaluating a plaintiff's standing at the [pleading] stage,…both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe

the complaint in favor of the complaining party." *Palma*, 707 F.3d at 1152 (citation and internal quotation marks omitted). Courts "also must construe the statements made in the affidavits in the light most favorable to the petitioner." *Id.* (citation omitted).

    i.      *BLM's Authorization of Improvements to the Road Has Caused SUWA to Suffer an Injury in Fact.*

The "injury in fact" prong of Article III standing requires SUWA to demonstrate harm that is (1) concrete and particularized, and (2) actual or imminent, not conjectural or hypothetical. *Diné CARE*, 923 F.3d at 840 (citation omitted). In this context, the Court's review of this standing prong "breaks down into two parts." *Id.* (citation omitted). SUWA must demonstrate that:

> (1) "in making its decision without following [NEPA's and FLPMA's] procedures, the agency created an increased risk of actual, threatened, or imminent environmental harm," and (2) "the increased risk of environmental harm injures [the litigant's] concrete interests by demonstrating either its geographical nexus to, or actual use of the site of the agency action."

*Id.* "As a general rule, 'environmental [association] plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity.'" *Palma*, 707 F.3d at 1155 (citing *Friends of the Earth v. Laidlaw Env't Serv. Inc.*, 528 U.S. 167, 183 (2000); *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). "[I]f that harm . . . affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice." *Palma*, 707 F.3d at 1155 (citation omitted). Thus, at the pleading stage, a party can satisfy these factors through an "affidavit or other evidence specific facts" and the statements contained therein "will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To this end, in support of its initial Ex Parte Motion for a Temporary Restraining Order, ECF No. 18, SUWA provided the declarations of Mr. Jack Hanley, ECF No. 18-1, and Ms. Kya Marienfeld, ECF No. 18-5. Both Mr. Hanley and Ms. Marienfeld explain SUWA's and its members' interest in BLM-managed lands, the GSENM and the objects and resources the Monument was established to protect, and most specifically, the Road and the wilderness-quality lands adjacent to the Road. *See* ECF No. 18-1 ¶¶ 3-6; ECF No. 18-5 ¶¶ 4-8. They also describe their personal experiences driving the Road and visiting the adjacent lands. ECF No. 18-1 ¶¶ 9-11; ECF No. 18-5 ¶¶ 9-14 Supp. Marienfeld Decl. ¶¶ 4-8 (attached as Ex. 1). Lastly, Mr. Hanley explains how the (then proposed and in now progress) improvements to the Road "have degraded and will continue to degrade naturalness, destroy vegetation and soils, destroy [wilderness-quality lands], and increase ambient background noise and pollution" such that his health, recreational, and aesthetic interests are irreparably harmed. ECF No. 18-1 ¶¶ 20-21. Likewise, Ms. Marienfeld explains how her use of the Road to explore remote and scenic areas for her "health, spiritual, educational, recreational, aesthetic, and other purposes…is dependent on quiet, natural settings without the sights, sounds and impacts associated with chip sealed/paved roads, including large vehicles like tour buses and ensuing crowds, and high speeds characteristic of chip sealed/paved backcountry roads." ECF No. 18-5 ¶¶ 14-15; *see also* Ex. 1, Supp. Marienfeld Decl. ¶¶ 6-8. The completed and planned improvements to the Road, such as widening and chip sealing will result in increased and faster traffic, wildlife collisions, spread of weeds, and vehicle noise such that "the wilderness-quality public lands bordering the [Road] will be degraded and [her] and SUWA's members' enjoyment of these areas will be significantly reduced or eliminated." ECF No. 18-5 ¶¶ 15-17.

5

Courts have routinely found similar allegations of harm to be sufficient to establish standing. *See, e.g.*, *Palma*, 707 F.3d at 1156 ("A plaintiff who has repeatedly visited a particular site, has imminent plans to do so again, and whose interests are harmed by a defendant's conduct has suffered injury in fact that is concrete and particularized."); *Diné CARE*, 923 F.3d at 840-44 (discussing numerous standing declarations containing similar statements to those made here by Mr. Hanley and Ms. Marienfeld and concluding that the plaintiffs had standing); *S. Utah Wilderness Alliance v. Off. of Surface Mining*, 620 F.3d 1227, 1234 (10th Cir. 2010) (concluding SUWA had standing and suffered an injury in fact sufficient to challenge agency's failure to prepare recommendation for new mining plan); *S. Utah Wilderness Alliance v. U.S. Bureau of Land Mgmt*, ("*Bull Valley Gorge*"), 551 F. Supp. 3d 1226, 1244 n.140 (D. Utah 2021) (concluding SUWA had Article III standing and suffered an injury in fact by alleging that BLM allowed Kane County to replace a bridge without first complying with NEPA and FLPMA). The declarations by Mr. Hanley and Ms. Marienfeld clearly demonstrate that SUWA has suffered an "'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth*, 528 U.S. at 180-81.

ii.     *SUWA's Injury is Fairly Traceable to BLM's Conduct.*

To establish causation, a plaintiff need only demonstrate that their injury "is fairly traceable to the challenged action of the defendant." *Diné CARE*, 923 F.3d at 840 (citation omitted). When BLM is the defendant, an environmental plaintiff "need only trace the risk of harm to the agency's alleged failure to follow [statutory] procedures." *Id.* at 843 (cleaned up); *see also Rio Hondo*, 102 F.3d at 452. Put differently, "standing exists when a plaintiff can show

that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Off. of Surface Mining*, 620 F.3d at 1234.

Here, SUWA has alleged that BLM issued the Determination authorizing the chip sealing and stood by while the County made other unauthorized improvements without adhering to the procedural requirements of NEPA and FLPMA. *See* ECF No. 54-1 ¶¶ 40, 48-76. As a result, SUWA and its members were and continue to be harmed by BLM's uninformed and improper decisionmaking. *See id.*; Ex. 1, Supp. Marienfeld Decl. ¶¶ 9-11. "This is sufficient to establish causation." *Diné CARE*, 923 F.3d at 844.

iii.    *SUWA's Injuries are Redressable by the Court.*

Lastly, a plaintiff must demonstrate that "it is likely, as opposed to merely speculative, that [the plaintiff's] injury will be redressed by a favorable decision." *Diné CARE*, 923 F.3d at 840. Importantly, however, "a plaintiff need not establish that the ultimate agency decision would change upon NEPA [and/or FLPMA] compliance. Rather, the plaintiff must only show that its injury would be redressed by a favorable decision requiring compliance with NEPA [and FLPMA] procedures." *Id.* at 844 (cleaned up).

SUWA has done so here. SUWA's injuries caused by BLM's failure to adhere to NEPA and FLPMA requirements and are redressable because SUWA is seeking both declaratory and injunctive relief. *See* ECF No. 54-1 at 22-23 (prayer for relief). Ms. Marienfeld states that her and SUWA's injuries would be redressed by a favorable decision from the Court declaring that BLM violated NEPA and FLPMA in issuing the Determination, enjoining the Determination, and instructing BLM to prohibit the County from continuing to improve the Road unless and until BLM has complied with its duties under NEPA and FLPMA. Ex. 1, Supp. Marienfeld Decl. ¶ 12.

### B.      Prudential Standing

The prudential standing doctrine concerns the "the general prohibition on a litigant's raising another person's legal rights." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).[2] That is, "party may not rest its claims on the rights of third parties where it cannot assert a valid right to relief of its own." *Hill*, 947 F.3d at 1309-10 (internal quotation marks omitted). The prudential standing doctrine is typically not applicable to lawsuits challenging agency action pursuant to the APA because a plaintiff in an APA case "seeks to compel a federal agency to follow the law, not to stand in the place of the federal agency to compel a state to follow the law." *The Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1170 n.2 (10th Cir. 2011) (citing 5 U.S.C. §§ 702, 706(2); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004)).

That is precisely what SUWA seeks to do in this case. Each of SUWA's causes of action in its Proposed Amended and Supplemental Complaint are brought pursuant to the APA because they seek to compel BLM to comply with the requirements of NEPA and FLPMA. *See* ECF No. 54-1 ¶¶ 48-76. SUWA does not seek to compel Garfield County or the State of Utah to follow the law. Indeed, SUWA does not allege any cause of action against the State or County and consequently they are not named defendants. *See id.* at 1 n.1. Should the Court grant SUWA leave to file its Proposed Amended and Supplemental Complaint, the State and County will be voluntarily dismissed from this lawsuit. *See* 8 Moore's Federal Practice – Civil § 41.21(2)

---

[2] Traditionally, prudential standing also concerned the principles of generalized grievances and the zone-of-interests. However, *Lexmark* held that neither principle was properly part of a prudential standing analysis. As such, post-*Lexmark* prudential standing analyses focus solely on third-party standing. *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020).

(explaining that a plaintiff may remove a defendant by dismissing all claims against that defendant, and that a plaintiff intending to eliminate some but not all claims in a complaint should "amend the complaint under Rule 15(a) rather than dismiss under Rule 41(a)"). The claims alleged in SUWA's Proposed Amended and Supplemental Complaint do not present prudential standing concerns.

***

For these reasons, SUWA has standing to bring this lawsuit and the claims set forth in its Proposed Amended and Supplemental Complaint.

## II.    SUWA is Entitled to Challenge BLM's Actions Pursuant to the APA.

In the context of suit brought pursuant to the APA, a plaintiff must demonstrate that it is the proper party to challenge a federal agency action. *See* 5 U.S.C. § 702. Judicial review is available to a plaintiff "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C § 702. An agency action is subject to judicial review if it is a "final agency action." *Id.* § 704. An agency's action is final if two requirements are met: "[f]irst, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

The Tenth Circuit has specifically held that BLM's reasonable and necessary determination for a proposal to chip seal a road subject to an R.S. 2477 right-of-way is a final agency action. *S. Utah Wilderness All. v. U.S. Dep't of the Interior* ("*Burr Trail*"), 44 F.4th 1264, 1272 (10th Cir. 2022). *Burr Trail* is directly on point here. There, Garfield County had proposed to chip seal a 7.5-mile section of the Burr Trail. After consulting with the County, BLM

9

concluded that the chip sealing was reasonable and necessary in light of the traditional uses of

the Burr Trail and issued its determination authorizing the County to proceed. *Id.* at 1270-71. The

Circuit held that BLM's reasonable and necessary determination authorizing Garfield County to

chip seal the Burr Trail was final agency action because

> BLM's conclusion that Garfield County holds an R.S. 2477 right-of-way, that the project fell within the scope of the right-of-way, and that the improvement wouldn't significantly impact the environment marked the consummation of the agency's decisionmaking process. The decision was also legally consequential for Garfield County, given that BLM's conclusion allowed Garfield County to chip-seal the Stratton Segment. Thus,…BLM's approval of the chip-sealing project was a final agency action.

*Id.* at 1272 (internal quotation marks and citations omitted).

In this case, BLM's Determination likewise concluded that (1) the County holds an R.S.

2477 right-of-way for the Road, (2) the County's proposal to chip seal 10 miles of the Road was

within the scope of the right-of-way, and (3) the chip sealing would not significantly impact the

environment. ECF No. 52-1 at 1-2. Thus, the Determination marks the consummation of BLM's

decisionmaking process on the County's planned improvements and allows the County to chip

seal the Road. The Determination is therefore final agency action.

The Determination is also final agency action with respect to the completed

improvements other than chip sealing. Agency action is defined as "the whole or a part of an

agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or <u>failure to act</u>."

5 U.S.C. §§ 551(13), 701(b)(2) (emphasis added). As BLM is aware, road work such as

widening, realignment, and the installation of new culverts are defined as "improvements" for

which BLM needs to consult and determine whether such improvements are within the scope of

the County's right-of-way. *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 748-

49 (10th Cir. 2005). Thus, the Determination should have, but did not, address whether such improvements are reasonable and necessary and within the scope of the County's right-of-way for the Road. *See generally* ECF No. 52-1. Yet, BLM allowed the County to undertake these improvements anyway. *See* ECF No. 54-1 ¶¶ 38, 40, 44 (explaining how BLM took no action to prohibit the County from widening, realigning, and/or installing new culverts on the Road). Consequently, the Determination marks the consummation of BLM's decision to not take action for those improvements and, in doing so, has effectively authorized the County's activities in a legally consequential manner. *Burr Trail*, 44 F.4th at 1272; *see also Bull Valley Gorge*, 551 F. Supp. 3d at 1236-37 (holding that BLM's failure to comply with NEPA or FLPMA prior to letting Kane County install a bridge was arbitrary and capricious final agency action).

Because SUWA has suffered "legal wrong[s] because of [BLM's] actions," and is adversely affected by the agency's actions, it is entitled to seek judicial review pursuant to the APA. 5 U.S.C. § 702.

## CONCLUSION

For the foregoing reasons, SUWA has standing and is a proper party to pursue the claims alleged in its Proposed Amended and Supplemental Complaint. The Court should therefore grant SUWA's Motion for Leave to Filed its Amended and Supplemental Complaint, ECF No. 52.

DATED:        May 11, 2026

Respectfully,

*/s/ Hanna Larsen*
Stephen H.M. Bloch
Hanna Larsen
SOUTHERN UTAH WILDERNESS ALLIANCE

11

Trevor J. Lee
HOGGAN LEE HUTCHINSON

Mitch M. Longson
MANNING CURTIS BRADSHAW
& BEDNAR PLLC

*Attorneys for Plaintiff Southern Utah
Wilderness Alliance*

## CERTIFICATE OF COMPLIANCE

In accordance with DUCivR 7-1(a)(6)(C), I certify that **PLAINTIFF'S BRIEF IN SUPPORT OF ITS STANDING** contains 3,007 words in compliance with DUCivR 7-1(a)(4)(D)(i).

/s/ Hanna Larsen
Hanna Laresn