K. TESS DAVIS (15831)
JASON L. DEFOREST (14628)
DAVID A. REAY (14764)
LAUREN K. CORMANY (19494)
Assistant Attorneys General
kaitlindavis@agutah.gov
jdeforest@agutah.gov
dreay@agutah.gov
lcormany@agutah.gov

DEREK BROWN (10476)
UTAH ATTORNEY GENERAL
1594 W North Temple
Salt Lake City, UT 84116
(801) 537-7227

*Attorneys for Defendants State of Utah and Garfield County, Utah*

---

## IN THE UNITED STATES JUDICIAL DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>    Plaintiffs,<br><br>v.<br><br>GARFIELD COUNTY, UTAH, a political subdivision, the STATE OF UTAH, the U.S. BUREAU OF LAND MANAGEMENT, and the U.S. DEPARTMENT OF THE INTERIOR,<br><br>    Defendants. | Case No. 2:26-cv-00096<br><br><br>**STATE AND COUNTY DEFENDANTS' COMBINED BRIEF IN RESPONSE TO PLAINTIFF SUWA'S MEMORANDUM IN SUPPORT OF ITS STANDING AND IN RESPONSE TO SUWA'S REMAINING EMERGENCY MOTIONS**<br><br><br>Judge Ann Marie McIff Allen<br>Magistrate Judge Paul Kohler |

On May 8, 2026, the Court entered a Minute Order directing Plaintiff Southern Utah

Wilderness Alliance ("SUWA") to brief the Court on whether it has standing to pursue the claims

1

alleged in its Proposed Amended / Supplemental Complaint, and directing Defendants to file briefs as to the issue of standing, as well as to Plaintiff's Emergency Motion for Scheduling Conference, Notice of Supplemental Evidence, Motion to Amend Complaint, and Emergency Motion for Temporary Injunctive Relief Pursuant to the All Writs Act. Defendants State of Utah and Garfield County, Utah respectfully submit this combined brief in response to the issue of standing and SUWA's emergency motions.[1]

## BACKGROUND

SUWA's request for "emergency" action and Proposed Amended / Supplemental Complaint represent another effort, in a longstanding pattern of the same, to interfere with the property rights of the State, County, and Federal government. Of critical importance here, the State and County have an adjudicated right-of-way for Hole-in-the-Rock Road (the "Road" or "HITR").[2] In the spirit of mutual accommodation, the State and County have consulted with the Bureau of Land Management ("BLM") as the servient estate holder and have afforded the agency the opportunity to evaluate its proposed surface improvements on the Road. That consultation[3] resulted in a determination from the BLM that the proposed project is "reasonable and necessary, and, thus, within the scope of the County's ROW for [the Road]."[4] That should be the end of the inquiry here, as there is no dispute between the actual property holders. More importantly for

---

[1] The State and Garfield County address here the Court's request for additional briefing regarding SUWA's standing and SUWA's Motion for Temporary Injunctive Relief. As to Plaintiff's Motion to Amend and Supplement the Complaint, the State and County take no position. However, in the event the Court is inclined to allow SUWA to file its Amended / Supplemental Complaint, the State and County reserve the right to demonstrate through further briefing why they should continue to be included in the case, at a minimum, as intervenors as of right.

[2] *See* Memorandum Decision and Order re: House Rock Valley Road and Hole-in-the-Rock Road, *Kane County v. U.S.A.*, Case No. 2:11-cv-01045, Dkt. 369 (D. Utah 2026).

[3] Consultation here refers not only to correspondence about the project dating back to January of this year, but to a decade-long, ongoing consultation process that contemplated this exact chip-seal project. *See*, *infra*, note 8.

[4] BLM Determination Letter, Dkt. 52-1.

purposes of standing, SUWA has no property interest at issue and no standing to challenge BLM's determination or the State and County's pending actions.

SUWA's standing arguments ignore this reality and provide no articulable basis for maintaining this cause of action. Instead, SUWA attempts to rehabilitate its lack of standing by removing the State and County and suggesting it can maintain causes of action under the Administrative Procedure Act ("APA"), the National Environmental Policy Act ("NEPA"), and/or the Federal Land Policy and Management Act ("FLPMA"). Setting aside the merits of those claims for purposes of those arguments and reserving space for the Federal Defendants to make their arguments, there is no final agency action here that would trigger a review under the APA and no major federal action to invoke NEPA. SUWA's additional argument regarding the management plan for the Grand Staircase-Escalante National Monument ("GSENM") fares no better, because there is no final agency action, the dedication of the right-of-way pre-dates the monument (and SUWA's existence), and the issue has been resolved by the actual property owners. Indeed, if SUWA has standing to bring this case and ultimately enjoin the County's work, as requested, then it is in fact SUWA that is encroaching upon the adjudicated rights of the State and County.[5]

Additionally, SUWA's claims are not redressable as to the State and the County. SUWA is attempting to remove the State and County as Defendants to avoid the practical inevitability of a dismissal on jurisdictional grounds.[6] However, SUWA's relief remains the same – requesting that the BLM stop the County from doing work on its adjudicated right-of-way.[7] Even assuming,

---

[5] *Kane Cnty., Utah (2), (3), and (4) v. United States*, 333 F.R.D. 225, 234 (D. Utah 2019) (outlining the Court's reasoning for denying SUWA's motion for full-party participation in the case and stating: Just because SUWA "has taken sides in what is essentially a property dispute between two landowners . . . does not mean it has an injury supporting standing, much less that is traceable to Plaintiffs' conduct. Rather, if Plaintiffs prevail, then it is SUWA's interests that encroached upon Plaintiffs' rights, not vice versa.").

[6] Among other reasons, for instance, the State did not waive sovereign immunity under the Eleventh Amendment to the United States Constitution.

[7] Plaintiff's Proposed Amended / Supplemental Complaint, Dkt. 54-1, pp. 22-23.

arguendo, that the Court has jurisdiction to review SUWA's claims against the BLM, the BLM does not have the authority to stop the County from improving the right-of-way. At best, the Court could order BLM to reassess its determination, but that does not extend jurisdiction to the actions of the County or otherwise allow for the relief SUWA seeks – enjoining road resurfacing over the County's adjudicated right-of-way. Stated simply, the property holders in interest have taken all necessary steps related to the project and SUWA has no justiciable injury in this context.

Finally, because SUWA has failed to establish standing, its claims under the All Writs Act must also fail. The All Writs Act is not an independent grant of subject-matter jurisdiction; it is merely a residual tool that permits courts to issue writs strictly "in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). Accordingly, because this Court lacks underlying subject-matter jurisdiction, there is no existing jurisdiction for the All Writs Act to "aid" or protect.

## ARGUMENT

I. **SUWA lacks standing to bring the claims alleged in its Proposed Amended / Supplemental Complaint.**

The party attempting to invoke a court's jurisdiction bears the burden of establishing, and factually supporting, standing to bring its claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992). The federal standing doctrine incorporates two components: Constitutional standing and prudential standing. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Constitutional standing limits federal courts' jurisdiction in accordance with the "case and controversy" language included in Article III of the United States Constitution. *Id.* The business of federal courts is therefore expressly confined to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007).

4

Prudential standing limits a court's exercise of its federal jurisdiction in accordance with additional judicially imposed restrictions. *Warth*, 422 U.S. at 499. Specifically, prudential standing requires that "the plaintiff generally . . . assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* This prohibition includes attempts by private parties to assert the legal rights and interests of the federal government. *The Wilderness Soc'y v. Kane Cnty., Utah*, 632 F.3d 1162, 1170–71 (10th Cir. 2011). SUWA lacks standing to invoke this Court's jurisdiction for the claims alleged in its Proposed Amended and Supplemental Complaint under both the Constitutional and prudential standing doctrines.

**A. SUWA's claims fail under the prudential standing doctrine because they improperly rely on the legal rights and interests of the federal government.**

As the Court noted in its Order Denying Motion for Ex Parte Temporary Restraining Order, "SUWA's arguments hint at a potential question of prudential standing . . . SUWA suggests that it is trying to vindicate the government's rights with respect to Hole-in-the-Rock Road. SUWA's arguments under the FLPMA . . . also seem like attempts to enforce or compel the exercise of the government's rights." Dkt. No. 29 at 5. The Court's concerns regarding SUWA's original Complaint were well-founded and persist despite Plaintiff's efforts to amend its pleadings.

Like its initial complaint, the Proposed Amended / Supplemental Complaint is premised on the legal rights and interests of the federal government as established in *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735 (10th Cir. 2005) (finding that the holder of an R.S. 2477 right-of-way across federal land must advise the federal land management agency of that work in advance, but the agency "may not use its authority, either by delay or by unreasonable disapproval, to impair the rights of the holder of the R.S. 2477 right of way"). SUWA does not allege any sufficient interests or property rights of its own to support its request that this Court order the BLM to prevent the State and County from performing road work

on Hole-in-the-Rock Road. Indeed, SUWA's Proposed Amended / Supplemental Complaint is nothing more than a repackaged attempt to stand in the shoes of the BLM and vindicate its rights as the owner of the servient estate over which the State and County's right-of-way crosses.

> i.    ***SUWA's claims rely on BLM's property rights and interests as the servient estate holder to the State and County's G9000 Hole-in-the-Rock Road right-of-way.***

SUWA asserts three causes of action in its Proposed Amended / Supplemental Complaint. First, SUWA alleges that BLM failed to act by not asserting its rights as the servient estate holder and requiring the State and County to halt road work until it completed an environmental review under NEPA. *See* Proposed Supp. / Amend. Compl. ¶¶ 50-51. Second, SUWA asserts a FLPMA claim, alleging that the BLM violated its statutory mandate to prevent undue degradation by failing to assert its right to consultation before road improvements. *Id.* ¶ 62, 65. It also alleges that BLM violated FLPMA by consulting with the State and County and concluding that the proposed chip sealing project is reasonable and necessary. *Id.* ¶ 65. Third, SUWA alleges a cause of action under the Grand Staircase-Escalante National Monument Resource Management Plan, claiming the BLM should have allowed for public input on the issuance of its determination. These causes of action all derive from the federal government's right to consultation before proposed improvements to rights-of-way crossing public land; they do not establish standing for the Plaintiff.

Moreover, even assuming SUWA has standing to make these assertions against the BLM, which it does not, these causes of action certainly do not give SUWA standing to pursue claims against the State and County. SUWA seemingly recognized this flaw and is now attempting to circumvent the same by removing the State and County from its amended pleadings. However, the issue remains squarely before the Court, as SUWA seeks the same result – to have this Court compel BLM to assert its property rights against the State and County as dominant estate holders

and prevent the County from resurfacing the road. Once again, SUWA is seeking to vindicate the rights of the BLM.

Injunctive relief for disputes involving proposed improvements to a right-of-way under the Tenth Circuit's holding in *SUWA v. BLM* is a right that belongs to the BLM, not SUWA. 425 F.3d at 749 ("If changes are contemplated, it is necessary to consult [with BLM], and the failure to do so will provide a basis for prompt injunctive relief."). The rationale behind the Tenth Circuit's decision in *SUWA v. BLM* undercuts the premise that any party other than the property owners may seek injunctive relief for failure to consult or disagreements regarding improvements to a right-of-way crossing federal lands.

The Tenth Circuit created this consultation paradigm based on its analysis of the common law of easements and the general rights of dominant estate holders in relation to servient estate holders. *Id.* at 746–48 ("The principle that the easement holder must exercise its rights so as not to interfere unreasonably with the rights of the owner of the servient estate, derives from general principles of the common law of easements. . ."). In reaching its decision, the court recognized that BLM had certain rights and obligations as the servient estate owner and federal public lands management agency, which included "responsibilities to determine whether the proposed changes are reasonable and necessary, whether they would impair or degrade the surrounding lands, and whether modifications in the plans should be proposed." *Id.* at 747. To balance the interests of BLM and the County, the court explained that parties holding title to rights-of-way crossing federal lands needed to consult with BLM before making improvements beyond routine maintenance. *Id.* at 748.

The Tenth Circuit announced the general consultation rule to balance the property interests of the dominant and servient estates, not to create enforceable rights for other parties. SUWA

nevertheless inserts itself between two property owners and seeks to compel the parties to exercise their property rights in the way it sees fit. If the Tenth Circuit meant to create rights for private groups through the consultation paradigm in *SUWA v. BLM*, it certainly could have — SUWA was a party in the case. However, the court did not include a public participation component, nor did it require the right-of-way holder to consult on proposed improvements with any party other than the owner of the servient estate. BLM's legal rights and interests as the servient estate holder, giving rise to the consultation requirement, are the exact rights that SUWA invokes in its claims. Proposed Amend. / Supp. Compl. ¶ 62. Since SUWA does not have rights separate and distinct from those of the federal government here, its claims must be dismissed for want of prudential standing.

> ***ii.***      ***In a similar case, the Tenth Circuit held that an organization in a position like SUWA's failed to overcome prudential standing concerns.***

In *The Wilderness Society v. Kane County, Utah*, the Tenth Circuit found that a nonprofit organization lacked prudential standing because its claims solely advanced the legal rights and interests of the federal government. *The Wilderness Soc'y*, 632 F.3d at 1170–71. The case also involved a dispute over R.S. 2477 rights-of-way in GSENM. *Id.* at 1165–66. The Wilderness Society argued, *inter alia*, that the County violated the federal government's property rights by removing road closure signs, posting road opening signs, and passing local ordinances with conflicting policies about permitted vehicle use on R.S. 2477 roads within GSENM. *Id.* at 1166–67. The Wilderness Society argued that it represented its own legal rights and interests apart from BLM by advancing its conservation interests. *Id.* at 1171. The court disagreed, finding that "[The Wilderness Society] has taken sides in what is essentially a property dispute between two landowners . . . But TWS lacks any independent property rights of its own." *Id.* As a result, the Tenth Circuit found The Wilderness Society lacked prudential standing to bring its claim. *Id.*

In the present case, SUWA also lacks any real property rights concerning the Road within

GSENM, and yet similarly attempts to insert itself into the relationship between the two landowner parties in interest. Like the plaintiff in *The Wilderness Society*, SUWA cannot demonstrate legal rights and interests separate from the federal government here, as it is not a landowner in this case. The Tenth Circuit made clear in its opinion in *The Wilderness Society* case that conservation interests, such as those SUWA asserts in its Proposed Amended / Supplemental Complaint, are insufficient to establish standing and a right to relief in a dispute involving the servient and dominant estates of a right-of-way crossing federal public lands. As a result, this Court must dismiss SUWA's claims for lack of jurisdiction due to the prudential standing doctrine.

**B. SUWA lacks Constitutional standing because it fails to allege a concrete, particularized injury, traceable to Federal Defendants, and redressable by a favorable decision by this Court.**

For an organization to bring claims on behalf of its individual members, it must be the case that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). To establish Constitutional standing, "a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (citations omitted).

SUWA has failed to establish Constitutional standing in this case. In the R.S. 2477 Bellwether proceedings, the court succinctly described the challenges SUWA faces in establishing

standing in cases related to the rights of the State, Counties, and Federal government regarding rights-of-way crossing federal lands:

> Just because SUWA 'has taken sides in what is essentially a property dispute between two landowners,' *Wilderness Soc'y*, 632 F.3d at 1171, does not mean it has an injury supporting standing, much less that it is traceable to [the State and County's] conduct. Rather, if [the State and County] prevail [in establishing title to the rights-of-way], then it is SUWA's interests that encroached upon [the State and County's] rights, not vice versa. If the United States prevails, SUWA suffers no injury. Either way, there is no injury to SUWA fairly traceable to [the State and County's] conduct that is at issue.

*Kane Cnty., Utah (2), (3), and (4) v. United States*, 333 F.R.D. 225, 234 (D. Utah 2019). In the case at hand, SUWA similarly fails to satisfy all three elements of Constitutional standing sufficient to sue on behalf of its members regarding the State and County's resurfacing of Hole-in-the-Rock Road.

To begin, SUWA fails to adequately allege an injury in fact. The requirement that an injury be "concrete and particularized" seeks to limit the jurisdiction of federal courts to "only those having a direct stake in the outcome, and not those having abstract concerns." *Palma*, 707 F.3d at 1155 (internal quotations and citations omitted). Plaintiffs asserting environmental harm must do more than describe "generalized harm to the forest or the environment." *Id.* (internal citations and quotations omitted). Instead, they must "aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Id.* (internal citations and quotations omitted).[8]

---

[8] Although the instant brief focuses largely on Plaintiff's lack of standing, Defendants do note — and can brief more fully later should the Court deem it necessary — that Plaintiff's declarations incorrectly characterize the environmental, aesthetic, and recreational impacts of the County's road resurfacing project. SUWA's declarations are highly speculative, but to the extent there are any such impacts, they are overwhelmingly positive (improved ease of access to recreation sites, better air quality due to reduction in fugitive dust, narrower road footprint, quieter travel surface, lower ongoing need for heavy machinery, etc.); as GSENM's own archaeologist wrote in 2017, "This is a beneficial project for cultural resources in that [...] it will stabilize the Hole in [the] Rock Road, lessen the need for impactive maintenance, and lessen the huge clouds of dust and erosion that effect the "setting and feel" of all sites in

Though SUWA's members claim in the Declarations supporting the Proposed Amended / Supplemental Complaint that chip-sealing and related road work will diminish their enjoyment of the area surrounding the Hole-in-the-Rock Road, those allegations amount to little more than generalized opposition to BLM's land-management choices and speculation about future public use. Specifically, the declarations largely express dissatisfaction with the possibility that the area may become more accessible, more visited, and less remote in the future. *See* Decl. of Jack Hanley, Dkt. No. 18-1; Supp. Decl. of Kya Marienfeld, Dkt. No. 57-1. A preference for a different land-management outcome, though, is not itself an injury in fact.

Under *FDA v. Alliance for Hippocratic Medicine*, Article III requires a plaintiff to identify a concrete and particularized injury to themselves, not merely disagreement with government policy or "general legal, moral, ideological, and policy concerns" with agency action. 602 U.S. 367, 386 (2024). In that case, the Supreme Court rejected standing theories that amounted to objections to government policy framed as downstream personal harms. *Id*. at 368. The plaintiffs alleged that FDA actions could indirectly lead to future medical complications that might eventually burden doctors in some unspecified way. *Id*. at 390. The Supreme Court held those allegations were too abstract and speculative to constitute a concrete injury. *Id*. Likewise here, SUWA's members do not allege any present exclusion from the land, destruction or degradation of a specific site they use, or direct interferences with their activities on and use of the land. Instead, they speculate that chip sealing might increase tourism, traffic, noise, and future visitation in ways that could reduce their subjective enjoyment of the surrounding public lands. At bottom, SUWA alleges that its members will enjoy the area less because other people may use it more. This kind

---

the vicinity of this road." M. Zweifel & B. Storm, *Summary Report of Cultural Resources Inspection for Project No. U-17-BL-0847b* (Dec. 18, 2017).

of generalized dissatisfaction with a land-management decision is not the individualized injury Article III requires.

Additionally, SUWA cannot show an adequate causal link between the basis for its complaint and the alleged harm. SUWA's declarants speculate that the County's road project may increase visitation and road usage in ways that could impact their preference for how the lands are treated. *See* Dkt. Nos. 18-1, 57-1. However, their line of logic requires an untenable inferential chain: first, that the County's project will substantially increase tourism volume; second, that increased visitation will lead to more noise, crowds, and other disruptions; third, that those disruptions will materially alter the perceived character of the land; and finally, that SUWA's members will personally encounter the altered conditions, which will concretely diminish the members' subjective enjoyment of the area. This attenuated chain of possibilities is insufficient to establish standing under *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) (holding that speculation as to how government officials will wield discretion does not alone satisfy Article III's imminence requirement) and *Murthy v. Missouri*, 603 U.S. 43 (2024) (holding that, for Article III standing purposes, a court cannot redress an injury resulting from some independent action of a third party not before the court). The Supreme Court's standing jurisprudence overwhelmingly rejects standing theories resting on speculative predictions about the conduct of third parties.

Moreover, although the Proposed Amended / Supplemental Complaint no longer names the State and County as Defendants, the alleged injury and requested relief is the same — SUWA asks this Court to compel BLM to exercise its property rights as the servient estate holder and limit the State and County's ability to exercise their property rights as the dominant estate holders. However, to successfully establish causation and redressability as a part of the standing analysis, a plaintiff "must show that the defendant is responsible for the injury, rather than some other party not before

12

the court." *Palma*, 707 F.3d at 1153. SUWA seeks to circumvent this barrier by framing its claims as procedural violations of NEPA, FLPMA, and the GSENM Management Plan, rather than claims as to the State and County's performance of road work. As it explained in its briefing, "When the BLM is the defendant, an environmental plaintiff 'need only trace the risk of harm to the agency's alleged failure to follow [statutory procedures]." Plaintiff's Brief in Support of its Standing, Dkt. 57 at 6. (citing *Dine Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 843 (10th Cir. 2019)).

For the reasons discussed in depth below, however, BLM did not fail to perform any statutorily required procedures when it consulted with the State and County and ultimately agreed that the proposed project is reasonable and necessary, as there is no statutory authority governing this consultation process. BLM's determination does not constitute a major federal action for purposes of NEPA,[9] nor is it the sort of "final agency action" that would trigger judicial review under the APA. FLPMA likewise does not prescribe any procedures to which BLM must adhere before determining that a proposed project falls within the scope of a right-of-way crossing federal lands. The Monument Management Plan — also not a statute — does not bind the State and County's efforts regarding maintenance and improvements on a right-of-way to which it has title, nor does it subject BLM's determination to judicial review. The various "procedural requirements" SUWA points to are derived not from statute but from common law as established in *SUWA v. BLM*, in accordance with the United States' role as holder of the servient estate. Because SUWA

---

[9] With respect to NEPA, a County project on a County road does not trigger environmental review, particularly where no federal highway funds are involved. *See Kane Cnty., Utah (2), (3), and (4) v. United States*, 333 F.R.D. 225, 234 (D. Utah 2019) ("It does not involve a NEPA analysis or any other environmental or cost analysis because any dedication has already occurred.").

cannot trace its alleged injuries to any statutory obligation on the part of the BLM, or any other party for that matter, it is therefore unable to establish standing for its claims.

Finally, a favorable decision from this Court would not redress Plaintiff's purported procedural injuries. For procedural challenges, "the plaintiff must only show that its injury would be redressed by a favorable decision requiring compliance with NEPA [and similar required procedures]." *Id.* at 844. Again, SUWA has failed to identify a procedure that BLM was statutorily required to follow. BLM's reasonable and necessary determination did not "authorize" the County's road work in such a way that a favorable decision on procedural grounds from this Court would prevent the road work from continuing. Moreover, SUWA has proposed removing the State and County from the litigation entirely, which precludes SUWA from obtaining the relief it seeks. As a result, SUWA cannot meet the redressability element of standing.

## II.    SUWA fails to identify a reviewable final agency action sufficient to support its claims.

SUWA's claims do not entitle it to relief under FLPMA, NEPA, or the APA. FLPMA does not create a private right of action, and claims for judicial review of an agency action pursuant to FLPMA must therefore be brought under the APA. 5 U.S.C. § 702 ("A person suffering a legal wrong because of an agency action, or adversely affected or aggrieved within the meaning of a relevant statute, is entitled to judicial review thereof."); *Sierra Club v. Hodel*, 848 F.2d 1068, 1076 (10th Cir. 1988) ("Thus [the plaintiff] has a right to sue BLM under § 702 even if it does not have a private right of action under FLPMA.").

However, the APA only permits judicial review of "final agency actions." 5 U.S.C. §§ 702, 704; *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61–62 (2004) ("Where no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'"). The Supreme Court has clarified that "[t]he APA provides relief for *failure to act* in §

14

706(1): 'The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.'" *Norton*, 542 U.S. at 62 (emphasis added). SUWA asks this Court to compel BLM to perform certain actions in consultation with State Defendants regarding work on the Road because its failure to do so violates its statutory mandate under FLPMA to "take any action necessary to prevent unnecessary or undue degradation of the lands." *See* Proposed Amend. / Supp. Compl. ¶ 40–42. BLM, however, has not failed to perform a discrete agency action as required by law, and the Court therefore has no jurisdiction under the APA or FLPMA.

To bring a claim for an agency's "failure to act" under the APA, a plaintiff must show that the "agency failed to take a discrete agency action that it is required to take." *Norton*, at 64-65 ("The limitation to *required* agency action rules out judicial direction of even a discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)."). The alleged action the agency failed to perform must be required by law, because "the common law cannot be enforced against an agency through the APA." *S. Utah Wilderness All. v. U.S. Bureau of Land Mgmt.*, 551 F.Supp.3d 1226, 1241 (D. Utah 2021).

SUWA argues that "[a]t a minimum, [BLM] was required to 'determine whether the proposed improvements were reasonable and necessary in light of the traditional uses of the [ROW], to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands,' and to do so before the County acted." Proposed Amend. / Supp. Compl. ¶ 62. However, the action SUWA seeks to compel does not give this Court jurisdiction because it is based in common law, not statute. *See SUWA v. BLM*, 425 F.3d 735, 748–49 (10th Cir. 2005). In doing so, Plaintiff improperly equates the common law consultation requirement with a statutory obligation that BLM allegedly failed to perform. As the court explained in a similar action involving Kane County's road work on an R.S.2477 right-of-way crossing public lands, "the consultation

obligation [established in *SUWA v. BLM*] between BLM and Kane County is a matter of common law, which this court cannot enforce through the APA." *S. Utah Wilderness All.*, 551 F.Supp.3d at 1241. As such, this common law consultation requirement is not subject to judicial review.

SUWA's FLPMA and APA claims fare no better when framed as a challenge to BLM's failure to act in accordance with its broad statutory mandate under FLPMA to prevent "unnecessary or undue degradation of the lands." SUWA argues that BLM's alleged failure to consult or prevent the County from performing road work on Hole-in-the-Rock Road violates FLPMA's mandate that the agency "take any action necessary to prevent unnecessary or undue degradation of the lands." Proposed Amend. / Supp. Compl. ¶¶ 40–41. However, the Tenth Circuit has repeatedly held that the APA does not permit reviewing courts to compel agency action according to broad statutory mandates like FLPMA's "undue degradation" standard. *See, e.g.*, *Norton*, 542 U.S. at 65–67.

The Supreme Court illustrated this point in *Norton*, where it held that the APA did not permit judicial review of BLM's failure to prohibit off-highway vehicle use in Wilderness Study Areas ("WSAs") under its broad statutory mandate to "continue to manage Wilderness Study Areas in a manner so as to not impair the suitability of such areas for preservation as wilderness." *Id.* at 65–66. The court reasoned that since Congress did not require BLM to take any specific action, but rather afforded it with broad discretion to make management decisions in a way that did not risk impairment to wilderness, its decision to not prohibit off-highway vehicle use did not constitute discrete agency action available for judicial review under the APA. *Id.* at 66–67 ("[The non-impairment provision] is mandatory as the object to be achieved, but it leaves BLM a great deal of discretion in deciding how to achieve it."). The court explained, "[i]f courts were empowered to enter general orders compelling compliance with broad statutory mandates, they

16

would necessarily be empowered, as well, to determine whether compliance was achieved —

which would mean that it would ultimately become the task of the supervising court, rather than

the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-

to-day agency management." *Id.*

As in *Norton*, SUWA fails in this case to identify a discrete agency action required by law

that BLM failed to perform. FLPMA's mandate to manage public lands in a way that prevents

"undue degradation" provides BLM with broad discretion to make decisions related to day-to-day

land management. This includes decisions regarding road work on rights-of-way crossing federal

lands, as well as the evaluation of whether a holder's exercise of such rights conflicts with its broad

statutory mandate to prevent undue degradation. SUWA asks this Court to step into an area of

BLM's expertise as the federal land management agency and compel action that Congress has not

required it to take. However, the Court does not have jurisdiction under FLPMA or the APA to

compel BLM to act according to its common law rights as the servient estate.

Further, even if SUWA could enforce the common law through the APA, there is no final

agency action for this Court to review. An agency action is considered final when it "(1) marks the

consummation of the agency's decisionmaking process and (2) is one by which rights or

obligations have been determined, or from which legal consequences flow." *S. Utah Wilderness

All. v. U.S. Dep't of Interior*, 44 F.4th 1264, 1272 (10th Cir. 2022) First, BLM's determination

cannot be considered the end of the agency's decision-making process on Hole-in-the-Rock Road.

The parties have consulted on maintenance and proposed road work on the Road for the last decade

or more and will likely continue as the need arises in the future.[10] Just like the relationship between

---

[10] In addition to consultation by and among the BLM, State, and County, the consultation process has regularly included public participation, with members of SUWA touring the Road along with the State, County, and BLM to discuss necessary maintenance. The State and County stand ready to make these demonstrations, if necessary, through

any individuals or entities holding some shared property interest, the relationship between the BLM, State, and County as owners of overlapping property interests does not end at this project.

Second, legal consequences do not flow from the BLM's determination on the proposed project. SUWA's argument regarding final agency action misconstrues the consultation process between the State and County and outright ignores critical distinctions between this case and the *Burr Trail* case. *See S. Utah Wilderness All. v. U.S. Dep't of the Interior ("Burr Trail")*, 44 F.4th 1264, 1272 (10th Cir. 2022). Of most significance, the State and Garfield County hold an adjudicated R.S. 2477 right-of-way under the federal Quiet Title Act for Hole-in-the-Rock Road.[11] In *Burr Trail*, the State and County did not yet hold adjudicated title to the right-of-way. Thus, in the BLM's determination regarding road resurfacing on the Stratton Segment of the Burr Trail, it did more than make a "reasonable and necessary" determination as it did for Hole-in-the-Rock; to the extent there was a "final agency action" in *Burr Trail*, it was because BLM acknowledged the validity of the State and County's unadjudicated right-of-way claim under R.S. 2477 for purposes of authorizing the project.

## III.  Plaintiffs' All Writs Act claim fails for lack of jurisdiction.

Plaintiff comes before this Court seeking an extraordinary and drastic remedy: an emergency injunction under the All Writs Act ("AWA"), 28 U.S.C. § 1651, to immediately halt Garfield County's work on Hole-in-the-Rock Road. SUWA's motion is fundamentally flawed. The AWA is not an independent grant of subject-matter jurisdiction; it is merely a residual tool that permits courts to issue writs strictly "in aid of their respective jurisdictions." 28 U.S.C. § 1651(a).

---

the production of additional evidence. At this stage, however, the State and County focus briefing on the standing and injunctive issues directly before the Court.

[11]  *Kane Cnty. v. United*, 2025 U.S. Dist. LEXIS 14128 (D. Utah, July 23, 2025) (consolidated "Memorandum Decision and Order Re: House Rock Valley Road and Hole-in-the-Rock Road").

Because SUWA cannot establish underlying subject-matter jurisdiction, its AWA motion must fail as a matter of law.

The AWA is a residual source of authority, not a roving commission to bypass standard statutory frameworks. *See Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). It merely empowers courts to protect jurisdiction they already possess. Where a plaintiff cannot clear the preliminary hurdles of standing and actionable claims, it leaves the Court with no underlying jurisdiction to protect. *Id*. As demonstrated above, SUWA has failed to assert legal rights of its own in this matter and failed to establish standing. Accordingly, there is no jurisdiction to protect under the AWA in this case.

SUWA relies on *United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977), to argue that the AWA allows injunctions against third parties to maintain the status quo. However, *N.Y. Tel.* is readily distinguishable. In that case, the district court had firmly established underlying jurisdiction over an ongoing criminal investigation via a valid search warrant, and the AWA was invoked solely to compel a third-party utility to assist in effectuating that existing, lawful court order. *See id.* at 171–74. Here, there is no underlying jurisdiction and no pre-existing court order to effectuate. SUWA is not asking the Court to enforce an existing mandate; it is attempting to manufacture jurisdiction to preemptively enjoin the State and County from exercising their rights over an adjudicated R.S. 2477 right-of-way. Because the foundational requirement of an existing, threatened jurisdiction is absent here, *N.Y. Tel.* provides no support for SUWA's position.

Furthermore, *N.Y. Tel.* requires the court to weigh the burden on the third party enjoined by the AWA. In the present case, the burden analysis heavily favors the State and County. In *N.Y. Tel.*, the burden of compliance with an AWA writ was negligible: it required minimal technical effort, fully compensated the utility, and caused zero disruption to the company's day-to-day operations

19

or service to the public. *See id.* at 174–75. Here, SUWA seeks an AWA writ that would completely halt a critical, State- and County-funded infrastructure project during the brief operational window suitable for chip-sealing. This injunction would not merely inconvenience the County; it would directly interfere with its duty to maintain a heavily used R.S. 2477 right-of-way, at significant financial cost to the State and County,[12] and would perpetuate unsafe, degraded road conditions for hundreds of daily motorists. This interference with core State and local government functions far exceeds the minimal burden contemplated in *N.Y. Tel*. Rather, it is precisely the type of "roving commission" and improper use of the AWA that the Supreme Court expressly rejected in *Pa. Bureau of Corr.*, 474 U.S. at 43.

SUWA's reliance on *Southern Utah Wilderness Alliance v. Bernhardt*, No. 1:20-cv-03654-RC (D.D.C. Dec. 22, 2020), is similarly unavailing. In *Bernhardt*, the district court invoked the AWA to temporarily enjoin "ground disturbing work" for a brand-new commercial enterprise — the Twin Bridges Bowknot Helium Project — which included the construction of "initial roadwork" into previously undisturbed areas. *See Bernhardt*, slip op. at 2. The Hole-in-the-Rock Road, by contrast, is not a newly minted extraction project; it is a historic transportation corridor that has been used, maintained, and repaired for over a century. Furthermore, Garfield County operates the Road under an adjudicated R.S. 2477 right-of-way, and the BLM specifically determined that the proposed project falls squarely within the scope of that existing right. Thus, unlike the initial land disturbance at issue in *Bernhardt*, the chip-sealing of the Road confines traffic to an existing footprint, reduces fugitive dust, and prevents further environmental degradation. *See* note 8, *supra*. Finally, the GSENM Proclamation describes Hole-in-the-Rock as

---

[12] The County has expended significant resources on labor and material to prepare the road prism for application of chip-seal. In the event the project is delayed beyond the narrow window of time available for the work, the road prism will degrade and the County will be back to ground zero, suffering significant financial loss.

a cultural and heritage resource, expressly protected to "[p]rovide opportunities to connect to pioneer heritage." Bureau of Land Mgmt., Grand Staircase-Escalante National Monument Record of Decision Approved Management Plan (Jan. 2025) ("GSENM RMP"), pp. 2-7. Accordingly, this project is easily distinguishable from the project in *Bernhardt*, which required new ground disturbance, and which did not fulfill a stated purpose of a presidential proclamation. Consequently, this project poses no irreparable harm to enjoin, and *Bernhardt* provides no factual or legal basis for the extraordinary relief SUWA seeks here.

In short, there is no existing jurisdiction that would justify the extraordinary relief contemplated under AWA and no basis for enjoining the actions of the State and County. SUWA's request for temporary injunctive relief should be denied.

## CONCLUSION

Based on the foregoing, the State and County respectfully request the Court deny Plaintiff's emergency motions, dismiss Plaintiff's claims for lack of jurisdiction, and grant any additional relief the Court deems appropriate.

DATED this 13th day of May, 2026

Respectfully,

*/s/ Tess Davis*
K. Tess Davis
Jason L. DeForest
Assistant Utah Attorneys General

*Attorneys for Defendants State of Utah and Garfield County, Utah*

## CERTIFICATE OF SERVICE

I certify that on May 13, 2026, the undersigned electronically filed the foregoing **STATE AND COUNTY DEFENDANTS' COMBINED BRIEF IN RESPONSE TO PLAINTIFF SUWA'S MEMORANDUM IN SUPPORT OF ITS STANDING AND IN RESPONSE TO SUWA'S REMAINING EMERGENCY MOTIONS** with the Clerk of the Court using the CM/ECF system which will send notification of this filing to all counsel of record.

*/s/ Tess Davis*
K. Tess Davis
Assistant Utah Attorney General

*Attorney for Plaintiffs*