Stephen H.M. Bloch (#7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

Mitch M. Longson (#15661)
MANNING CURTIS BRADSHAW
& BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
mlongson@mc2b.com

Trevor J. Lee (#16703)
HOGGAN LEE HUTCHINSON
257 E 200 S, #1050
Salt Lake City, UT 84111
Telephone: (435) 615-2264
trevor@hlh.law

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES BUREAU OF LAND MANAGEMENT**, and the **UNITED STATES DEPARTMENT OF THE INTERIOR**, <br><br> Defendants.[1] | **AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Case No. 2:26-cv-00096-AMA-PK <br><br> District Judge Ann Marie McIff Allen <br> Magistrate Judge Paul Kohler |

## INTRODUCTION

1.      This lawsuit challenges the Bureau of Land Management's and the Department of

the Interior's (collectively, "BLM") failure to comply with its obligations under the Federal Land

---

[1] This Amended and Supplemental Complaint does not bring any claims against Garfield County, Utah or the State of Utah. As such, both entities are no longer named defendants in this lawsuit.

Policy and Management Act, 43 U.S.C. §§ 1701 *et seq*. ("FLPMA"), the National Environmental

Policy Act, 42 U.S.C. §§ 4321 *et seq.* ("NEPA"), and binding Tenth Circuit precedent prior to

issuing its Reasonable and Necessary Determination (the "Determination") (attached as Ex. 1)

that authorizes Garfield County, Utah's road improvement activities on the Hole-in-the-Rock

Road. Consequently, BLM's Determination violates its duties to comply with its governing land

use plan, prevent unnecessary or undue degradation, and study the environmental impacts of and

alternatives to improving the Hole-in-the-Rock Road.

2.      The Hole-in-the-Rock Road is a 62-mile rugged, scenic dirt/gravel road that

traverses through the heart of Grand Staircase-Escalante National Monument. The last five miles

of the road are within the Glen Canyon National Recreation Area ("NRA"). For nearly its entire

length, the road is bounded on each side by BLM Wilderness Study Areas ("WSA") and/or

BLM-identified lands with wilderness characteristics ("LWC").

3.      As required by the Antiquities Act, 54 U.S.C. § 320321 *et seq.*, FLPMA, and their

implementing regulations, BLM manages the Hole-in-the-Rock Road and the surrounding lands

according to Presidential Proclamation 10286 and the Grand Staircase-Escalante National

Monument Approved Resource Management Plan, respectively. *See generally* Proclamation No.

10286, 86 Fed. Reg. 57335 (Oct. 15, 2021); Bureau of Land Mgmt., *Grand Staircase-Escalante*

*National Monument Record of Decision Approved Management Plan* (Jan. 2025) ("GSENM

RMP");[2] *see also* 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3(a). Among other things, a resource

management plan like the GSENM RMP establishes allowable resource uses, resource condition

---

[2] Available at: https://eplanning.blm.gov/Documents/?id=91d264cd-a7f2-f011-8406-001dd80ef717&spid=8fe7277f-a8f2-f011-8407-001dd80db62a# (last visited May 8, 2026). For convenience, relevant excerpts are attached as exhibits.

goals and objectives, program constraints and management practices needed to achieve such goals and objectives, and support actions such as resource protection that are needed to achieve resource condition goals and objectives. 43 C.F.R. § 1610.0-5(n).

4.      Garfield County holds a partially adjudicated R.S. 2477 right-of-way ("ROW") claim for the Hole-in-the-Rock Road. *Kane Cnty., Utah v. United States*, 2025 U.S. Dist. LEXIS 141248, *9 (D. Utah 2025). The ROW is only partially adjudicated because the *Kane County* court resolved the title portion of the claim, but "reserved for future proceedings" any decision "pertaining to scope" for the road. *Id.* at *8. That issue remains unresolved.

*5.*      The County's partially adjudicated ROW comes with many strings attached, including limitations on how, when, and where it can engage in road improvements on the Hole-in-the-Rock Road. Such limitations are informed by a mandatory consultation process between the County and BLM.

6.      Here, the County has completed or is intending to complete the following road work on the Hole-in-the-Rock Road:

- "Grading and reshaping the existing roadway";
- "Install[ing] . . . drainage features including culverts";
- "Plac[ing] . . . gravel where needed to stabilize the road surface"; and
- "Surfacing [the dirt road] with a double chip seal treatment . . . [for] approximately ten miles of the roadway."

*See generally* Letter from David Dodds, Garfield Cnty., Utah to Adé Nelson, Bureau of Land Mgmt., *Re: Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)* (Jan. 27, 2026) ("Notice") (attached as Ex. 2).

7.      These actions are road improvements, not routine maintenance, and therefore, even if the County had a fully adjudicated ROW, which it does not, the County was required to consult with BLM before starting work. It did not do so. However, after this lawsuit was filed, Garfield County and BLM changed course, representing to the Court that, at least with respect to chip sealing, consultation was ongoing and Garfield County did not plan to initiate the chip seal treatment until consultation with BLM concluded. *See* Hr'g Tr. 13-14 (Feb. 11, 2026).

8.      Neither Garfield County nor BLM made these same representations with respect to the County's other then-ongoing and planned improvements, such as the installation of culverts where none previously existed. In that regard, BLM idly stood by, allowing the County to engage in and complete activities that BLM acknowledges are improvements before determining whether the County's improvements are reasonable and necessary, whether there are alternatives to the County's proposed improvements, and whether BLM has met its obligation to ensure that the County's actions do not lead to unnecessary or undue degradation.

9.      BLM issued its Determination on May 7, 2026. This Determination is a final agency action that represents BLM's decision to allow the Hole-in-the-Rock Road to be chip sealed and authorizes Garfield County to do so.

10.     The Determination does not address Garfield County's other improvements to the Hole-in-the-Rock Road that were completed prior to the completion of consultation.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief), and 5 U.S.C. §§ 501-706 (Administrative Procedure Act, or "APA").

12.      Venue is proper in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(e)(1) because the statutory violations alleged herein all occurred within the state of Utah.

## PARTIES

13.      Plaintiff SOUTHERN UTAH WILDERNESS ALLIANCE ("SUWA") is a nonprofit environmental membership organization dedicated to the preservation of outstanding wilderness found throughout Utah, including in Grand Staircase-Escalante National Monument, the Glen Canyon NRA and the Hole-in-the-Rock Road and surrounding wilderness-caliber lands, and the management of wilderness-quality lands in their natural state for the benefit of all Americans. SUWA is headquartered in Salt Lake City, Utah with offices in Moab, Utah and Washington, D.C. SUWA's members use and enjoy public lands throughout Utah for a variety of purposes, including scientific study, recreation, wildlife viewing, aesthetic appreciation, viewing cultural and historic artifacts, and financial livelihood. This is particularly true in the Grand Staircase-Escalante National Monument where SUWA members enjoy and undertake all of these activities and often visit the public lands comprising the Monument. SUWA promotes local and national recognition of the region's unique character through research and public education and supports administrative and legislative initiatives to permanently protect Utah's wild places. SUWA brings this action on its own behalf and on behalf of its members.

14.      Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is the federal agency responsible for managing approximately five hundred million acres of federal public land across the United States for a variety of competing resources, including the protection of the natural and human environment.

5

15.     Defendant UNITED STATES BUREAU OF LAND MANAGEMENT is an agency within the Department of the Interior that is responsible for the management of approximately twenty-three million acres of federal public land in Utah, including the lands at issue in this litigation. All BLM authorizations and actions must be in accordance with FLPMA.

## LEGAL FRAMEWORK

### I.     Administrative Procedure Act

16.     Judicial review of agency actions under NEPA, FLPMA, and their implementing regulations and policies is governed by the APA, which provides judicial review for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Review is limited to "final agency action for which there is no other adequate remedy in a court." *Id.* § 704.

17.     Under the APA, a reviewing court "shall…hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency actions may also be set aside where the action is "without observance of procedure required by law." *Id.* § 706(2)(D).

### II.     National Environmental Policy Act

18.     Congress enacted NEPA "to promote efforts which prevent or eliminate damage to the environment." 42 U.S.C. § 4321.

19.     NEPA "ensures that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental effects." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). Thus, NEPA requires

6

that, for any "major Federal action[][3] significantly affecting the quality of the human environment," federal agencies prepare an environmental impact statement ("EIS") addressing, among other things, reasonably foreseeable environmental impacts, a range of reasonable alternatives, and whether the proposed action will result in any irreversible and irretrievable commitments of resources. *Id.* § 4332(2)(C). Where a federal action "does not have a reasonably foreseeable significant effect on the quality of the human environment, or if the significance of such effect is unknown," federal agencies shall prepare a more concise environmental assessment ("EA"). *Id.* § 4336(b)(2). An agency is not exempt from preparing an EIS or EA unless the agency action is excluded pursuant to one of the agency's identified categorical exclusions. *Id.*

20.     An agency violates NEPA when it authorizes an action prior to completing its NEPA analysis. *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1162 (10th Cir. 2002); *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C. Cir. 1983).

III.    **Federal Land Policy and Management Act**

21.     FLPMA is the organic act governing BLM-managed lands. Congress enacted FLPMA to provide a comprehensive framework for the management, use, and protection of federal public lands. *See* 43 U.S.C. § 1701.

22.     FLPMA requires that BLM manage public lands under the principles of "multiple use and sustained yield" for a combination of uses, including recreation, range, timber, minerals, watershed, wildlife, fish, and natural, scenic, scientific, and historical values. 43 U.S.C. §§

---

[3] A "major Federal action" is defined as an action that the agency "determines is subject to substantial Federal control and responsibility." 42 U.S.C. § 4336e(10)(A). While there are several exclusions to this definition, none apply to BLM's Determination. *See id.* § 4336e(10)(B).

1702(c), 1732(a). In doing so, BLM must balance competing uses in a manner that best meets the present and future needs "to ensure a high level of valuable uses in the future." *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 58 (2004).

23.     To achieve these objectives, FLPMA mandates that BLM develop, maintain, and periodically revise land use plans, commonly referred to as resource management plans, to govern the public lands it manages. 43 U.S.C. §§ 1712(a), 1732(a). Indeed, "[a]ll future resource management authorizations and actions…shall conform to the approved [resource management] plan." 43 C.F.R. § 1610.5-3(a); *Utah Shared Access All. v. Carpenter*, 463 F.3d 1125, 1129 (10th Cir. 2006). An action conforms with the approved plan if it is "clearly consistent with the terms, conditions, and decision of the approved plan." *W. Watersheds Proj. v. Bureau of Land Mgmt.*, 721 F.3d 1264, 1268 (10th Cir. 2013).

24.     Actions that are not in conformance with the governing management plan are unlawful unless BLM issues a land use plan amendment addressing the proposed action. 43 C.F.R. § 1610.5-3(c); *Utah Shared Access All.*, 463 F.3d at 1129.

25.     Independent of the land use planning process, FLPMA imposes a non-discretionary duty on BLM to "take any action necessary…to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

## IV.     R.S. 2477 Right-of-Way Improvements

26.     In *Southern Utah Wilderness Alliance v. Bureau of Land Management* ("*SUWA*"), the Tenth Circuit held that a R.S. 2477 ROW "is not tantamount to fee simple ownership of a defined parcel of territory. Rather, it is an entitlement to use certain land in a particular way." 425 F.3d 735, 747 (10th Cir. 2005). A ROW holder "may sometimes be entitled to change the

8

character of the roadway when needed to accommodate traditional uses, but even legitimate changes in the character of the roadway require consultation when those changes go beyond routine maintenance." *Id.* at 748 (emphasis added). Thus,

> when the holder of an R.S. 2477 [ROW] across federal land proposes to undertake any improvements in the road along its [ROW], beyond mere maintenance, it must advise the federal land management agency of that work in advance, affording the agency a fair opportunity to carry out its own duties to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the [ROW], to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands. The initial determination of whether the construction work falls within the scope of an established [ROW] is to be made by the federal land management agency, which has an obligation to render its decision in a timely and expeditious manner.

*Id.* (emphases added).

27.     Road "improvements" that require pre-work consultation with BLM—that is, activities that go beyond routine maintenance—include

> the widening of the road, the horizontal or vertical realignment of the road, the installation . . . of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any "improvement," "betterment," or any change in the nature of the road that may significantly impact [public] lands, resources, or values.

*Id.* at 749 (citation omitted).

28.     The requirement that the ROW holder first consult with BLM before engaging in road improvements is mandatory "and the failure to do so will provide a basis for prompt injunctive relief." *Id.* Importantly, the consultation process requires (1) that BLM determine whether the proposed improvements are reasonable and necessary, and thus, within the scope of the ROW; (2) analyze the environmental impacts of the proposed improvements; and (3) "if appropriate, formulate alternatives that serve to protect the lands." *Id.* at 745-46, 748.

**FACTS GIVING RISE TO SUWA'S CAUSES OF ACTION**

29.    On January 27, 2026, Garfield County Public Works Director David Dodds sent a letter to Adé Nelson, the Grand Staircase-Escalante National Monument manager, notifying her that the County intended to imminently begin road improvement and maintenance activities on the Hole-in-the-Rock Road. *See generally* Notice.

30.    On February 2, 2026, SUWA received a copy of the County's letter and over the course of the next two days— February 3-4—SUWA confirmed that in fact the County was actively engaged in road improvement activities on the Hole-in-the-Rock Road, including road widening, changing the vertical and horizontal alignment of the road, and installing culverts where none previously existed.

31.    In its January 27 letter, the County wrongly claimed that all of its road-related activities were "maintenance" but then described the nature and scope of the work to include:

- Grading and reshaping the existing roadway and road prism to restore and maintain a proper running surface and drainage, including removal and reshaping of accumulated edge berms and restoration of proper cross slope[;]

- Placement and cleaning of bar ditches[;]

- Installation, replacement, and maintenance of drainage features including culverts[;]

- Maintenance of lead off ditches . . . to direct runoff away from the road prism[; and]

- Placement of gravel where needed to stabilize the road surface[.]

*Id.* at *1-2.

32.    Additionally, the County explained that the "roadway grading and road prism improvements described above will extend to the Garfield County and Kane County line.

10

Surfacing with a double chip seal treatment will be applied to approximately ten miles of the roadway." *Id.* at *2.

33.    Many of these road construction activities—specifically chip sealing, installation of culverts where none previously existed, and changing the road's alignment—are textbook examples of improvements, not maintenance. *See SUWA*, 425 F.3d at 749 (improvements include, *inter alia*, "widening of the road, . . . installation [of] culverts and other drainage structures, [and] . . . change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal. . .)").

34.    When the County proposes to undertake "any improvements in the road along its right of way, beyond mere maintenance" it must advise the BLM and provide BLM the opportunity to "carry out its own duties" and determine whether the improvement is reasonable and necessary." *SUWA*, 425 F.3d at 748; *see also Kane Cnty., Utah v. United States*, 772 F.3d 1205, 1224-25 (10th Cir. 2014) (the holder of a R.S. 2477 ROW must consult with BLM before it undertakes improvements to the ROW).

35.    On February 3, 2026, SUWA sent a cease-and-desist letter to the County. *See generally* Letter from Hanna Larsen, *et al.*, S. Utah Wilderness All. to David Dodds, *et al.*, Garfield County, *Re: Garfield County's January 27, 2026 "Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)"* (Feb. 3, 2026) (attached as Ex. 3). Among other things, SUWA explained that (1) the road construction activities were "improvements," not "maintenance," and (2) the County held only a partially adjudicated ROW because the *Kane County* court had deferred a decision as to scope of the ROW, and therefore the improvements being undertaken by the County were unauthorized and unlawful. *See id.* On

11

February 4, Ms. Tess Davis, an assistant Attorney General with the state of Utah, responded with a single sentence email to SUWA's letter: "The work presently being undertaken by Garfield County on the G9000 Hole-in-the-Rock Road does not differ from its historic maintenance and operation of the road." Email from K. Tess Davis, State of Utah, to Hanna Larsen *et al.*, S. Utah Wilderness All., *Re: G9000 Hole-in-the-Rock Road Maintenance & Improvements* (Feb. 4, 2026) (attached as Ex. 4). Ms. Davis's statement is incorrect at least insofar as the fact that Garfield County has <u>never</u> chip sealed the Hole-in-the-Rock Road, whose surface is dirt and gravel.

36.    On February 4, SUWA sent an email to the acting BLM State Director, Mr. Tom Heinlein, which forwarded SUWA's February 3 letter to Garfield County, summarized the points raised therein, and identified that by not directing the County to immediately cease its work BLM had, among other things, failed to fulfill its statutory duties and acted contrary to law. Email from Stephen Bloch, S. Utah Wilderness All., to Thomas Heinlein *et al.*, Bureau of Land Mgmt., *Re: Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road* (Feb. 4, 2026) (attached as Ex. 5). Mr. Bloch explained that "BLM must direct the county to cease its work immediately and consult with BLM before taking any further action." *Id.*

37.    Later in the day on February 4, Mr. Heinlein instructed Mr. Joseph Kim, an attorney with the United States Department of Justice, to forward a copy of a February 4 letter from Ms. Nelson—which responded to the County's January 27 letter—to Mr. Bloch. *See generally* Email from Joseph Kim, U.S. Dep't of Justice, to Stephen Bloch *et al.*, S. Utah Wilderness All., *Re: Hole in the Rock Road* (Feb. 4, 2026) ("Kim Email") (attached as Ex. 6); Letter from Adé Nelson, Bureau of Land Mgmt., to David Dodds, Garfield Cnty. (Feb. 4, 2026) ("BLM Letter") (attached as Ex. 7). Mr. Kim's email conveyed BLM's decision rejecting

SUWA's request that BLM comply with FLPMA and other federal laws and obligations. It states in full: "BLM has received your email about the Hole in the Rock Road, and asked me to forward you their attached response to the County's January 27 letter. Please let us know if you have any questions." *See* Kim Email.

38.    For its part, Ms. Nelson's February 4 letter correctly notes that the County's proposed actions "seem to propose both maintenance and improvements," and stated that the County had not consulted with the BLM prior to beginning this work. *See* BLM Letter at 2. However, BLM took no action to stop the County's improvement activities on federal lands.

39.    On February 11, 2026 the Court held a status conference wherein SUWA learned the following:

- The County responded to Ms. Nelson's February 4 letter on February 5, 2026 reiterating that it believes the work it was conducting constituted maintenance, not improvements. *See* Letter from David Dodds, Garfield Cnty., to Adé Nelson, Bureau of Land Mgmt., *Re: Response to Request for Additional Information – G9000 Hole-in-the-Rock Road*, *1 (Feb. 5, 2026) ("County Response") (attached as Ex. 8).[4] The County admitted that "[s]urfacing treatments" such as chip seal, constitute an improvement. *Id.* at *3.

- BLM and the County were meeting on February 11, 2026 to learn more and discuss whether the County's activities were maintenance, improvements, or both.

40.    Since that hearing, Garfield County has continued to actively engage in road improvements on the Hole-in-the-Rock Road. On information and belief, BLM did nothing to prevent the County from continuing to improve the Hole-in-the-Rock Road while consultation was ongoing; most of the County's planned improvements other than chip sealing (*e.g.*, widening, realigning, installing culverts) were completed prior to the Determination; and

---

[4] SUWA requested, and counsel for Garfield County provided, a copy of the letter on February 11, 2026.

Garfield County is prepared to immediately begin chip sealing the Road, if it has not already begun. These actions have caused and are causing immediate and irreparable harm to SUWA and its members.

41.    The Determination found that the proposed chip sealing was reasonable and necessary in light of the traditional uses of the Hole-in-the-Rock Road (*i.e.*, chip sealing is within the scope of the County's ROW). Determination at 2. Though BLM stated that it "prepared an impacts analysis to assess the potential effects of the proposed project" and ultimately determined "the proposed project would not adversely affect the surrounding public lands or resources," the impacts analysis is not included in the Determination letter. *Id.* Nor does it appear on ePlanning, BLM's National NEPA Register.[5] On information and belief, BLM did not prepare any NEPA documents to inform or support its decision in the Determination.

42.    The Determination does not address BLM's compliance with FLPMA at all, let alone assert that BLM adhered to its mandate to prevent unnecessary or undue degradation of the lands. Importantly, FLPMA's unnecessary or undue degradation standard is separate and distinct from BLM's obligation to determine whether a proposed improvement is reasonable and necessary within the traditional uses of an R.S. 2477 road. *See SUWA*, 425 F.3d at 746 (explaining that the consultation process ensures that "both the County and the BLM may be satisfied that the proposed work on the R.S. 2477 highway is reasonable and necessary and that no unnecessary or undue degradation to the public lands would occur thereby" (emphasis added)).

---

[5] *See generally* https://eplanning.blm.gov/ (last visited May 8, 2026).

43.     Likewise, the Determination does not explain how BLM's decision complies with the governing land use plan, the GSENM RMP, in accordance with FLPMA.

44.     Even assuming Tenth Circuit precedent allowed BLM to retroactively consult on already-completed improvements (it does not), BLM's Determination cannot cure its unlawful actions. The Determination does not address, at all, whether the improvements Garfield County completed before consultation concluded (*e.g.*, widening, realigning, and installing new culverts) are reasonable and necessary, and therefore within the (undefined) scope of the County's ROW, nor the does it analyze impacts to the surrounding public lands or resources or formulate alternatives that may better protect the surrounding lands, in violation of NEPA. Indeed, BLM's only effort to prevent Garfield County from constructing these improvements was to send a softly worded letter to the County expressing the agency's disappointment with the lack of pre-work consultation.

45.     And, for the one improvement BLM's Determination does address (chip sealing), BLM has failed to analyze the environmental impacts of chip sealing the Hole-in-the-Rock Road in violation of NEPA, failed to analyze alternatives to minimize such impacts in violation of NEPA and FLPMA, and failed to adhere to the requirements of the GSENM RMP, in violation of FLPMA.

46.     Directly owing to BLM's Determination regarding the chip seal treatment and its deliberate inaction with respect to other improvements, the County's ongoing work on Hole-in-the-Rock Road has resulted in and will continue to result in significant environmental impact to Grand Staircase-Escalante National Monument and its outstandingly remarkable objects and values, as well as BLM-identified LWC areas, among other resource values.

47.    Consequently, BLM has violated NEPA and its implementing regulations, FLPMA and its implementing regulations, and the APA.

**FIRST CAUSE OF ACTION**
*Violation of NEPA and the APA: Failure to Prepare NEPA Analysis*

48.    SUWA incorporates by reference all the preceding paragraphs.

49.    The Determination is a federal action that is subject to NEPA. 42 U.S.C. § 4336e(10)(A).

50.    BLM violated NEPA when it passively allowed the County to widen, realign, and install culverts on the Hole-in-the-Rock Road without first analyzing the environmental effects of those improvements in an environmental document.

51.    BLM further violated NEPA when it issued its Determination authorizing the County's plan to chip seal the Hole-in-the-Rock Road without first analyzing the environmental impacts of the County's proposal in an environmental document.

52.    BLM is required to prepare an environmental document (either an EIS or an EA)[6] with respect to a proposed action unless (1) "the proposed action is not a final agency action;" (2) the proposed action is categorically excluded pursuant to one of BLM's categorical exclusions; (3) the preparation of an environmental document would "clearly and fundamentally conflict" with another provision of law; or (4) the proposed action is a nondiscretionary action with respect to which such agency does not have authority to take environmental factors into consideration in determining whether to take the proposed action." 42 U.S.C. § 4336(a)(1)-(4).

---

[6] "Environmental document" is defined as "an environmental impact statement, an environmental assessment, or a finding of no significant impact." 42 U.S.C. § 4336e(5).

16

53.     BLM must prepare an EA with respect to a proposed action "that does not have a reasonably foreseeable significant effect on the quality of the human environment, or if the significance of such effect is unknown." 42 U.S.C. § 4336(b)(2). An EIS is required for proposed actions "that [have] a reasonably foreseeable significant effect on the quality of the human environment." *Id.* § 4336(b)(1).

54.     In either case, BLM is required to consider a range of reasonable alternatives to the proposed action. 42 U.S.C. § 4332(2)(H).

55.     In this instance, none of the environmental document exemptions apply to the Determination, and the Determination itself does not meet the definition of an environmental document. Therefore, to comply with NEPA, BLM was required to prepare either an EA or an EIS analyzing the environmental effects of the County's proposal to widen, realign, install culverts, and chip seal ten miles of the Hole-in-the-Rock Road prior to authorizing the improvements. In that environmental document, BLM was required to analyze a range of reasonable alternatives to the County's proposed improvements.

56.     Indeed, BLM's own actions confirm that it is aware of its NEPA obligations for proposed improvements to roads encumbered by an R.S. 2477 ROW. Previously, BLM had prepared EAs in conjunction with its reasonable and necessary determinations for other roads in and near the Grand Staircase-Escalante National Monument that supported its decision to either authorize or deny the proposed improvements. *See, e.g.*, Bureau of Land Mgmt., *Garfield County – Burr Trail Chip Seal Project Environmental Assessment*, DOI-BLM-UT-C020-2019-0006-EA (April 2019) (analyzing Garfield County's proposal to chip seal 7.5 miles of the Burr Trail. BLM determined this proposal was reasonable and necessary in light of the traditional uses of the Burr

17

Trail thereby authorizing the chip sealing);[7] Bureau of Land Mgmt., *Skutumpah Paving Environmental Assessment*, DOI-BLM-UT-P020-2022-014-EA (Sept. 2022) (analyzing Kane County's proposal to pave 3.4 miles of the Skutumpah Road bordering Grand Staircase-Escalante National Monument. BLM determined that the proposed paving was reasonable but not necessary, thereby denying the proposed paving).[8]

57.    BLM's failure to analyze the County's proposed improvements (including but not limited to widening, realigning, installing new culverts, and chip sealing) to the Hole-in-the-Rock Road in an environmental document violates NEPA and is arbitrary, capricious, or otherwise not in accordance with law in violation of the APA. 5 U.S.C. § 706(2)(A).

**SECOND CAUSE OF ACTION**
*Violation of FLPMA, Presidential Proclamation 10286, and the APA: Failure to Prevent Unnecessary or Undue Degradation to Monument Objects*

58.    SUWA incorporates by reference all preceding paragraphs.

59.    FLPMA and its implementing regulations require BLM to regulate the use, occupancy, and development of public lands. 43 U.S.C. § 1732(b).

60.    FLPMA also mandates that, "[i]n managing the public lands [BLM] shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

61.    Presidential Proclamation 10286 directs BLM to protect Grand Staircase-Escalante National Monument objects in accordance with the terms, conditions, and management

---

[7] Available at: https://eplanning.blm.gov/Documents/?id=eb3e88ab-a7f2-f011-8407-001dd80c29f3&spid=7889ee65-a8f2-f011-8407-001dd80db62a# (last visited May 8, 2026).
[8] Available at: https://eplanning.blm.gov/Documents/?id=01b17dd2-a7f2-f011-8406-001dd8008d46&spid=cd192a85-a8f2-f011-8407-001dd80db62a# (last visited May 8, 2026).

direction of Proclamation 10286, Proclamation 6920, and the GSENM RMP. 86 Fed. Reg. 57345.

62. Here, with respect to improvements other than chip sealing, BLM allowed the County to implement those improvements without taking any affirmative action to prevent unnecessary or undue degradation. At a minimum, the agency was required to "determine whether the proposed improvements [were] reasonable and necessary in light of the traditional uses of the [ROW], to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands," and to do so before the County acted. *SUWA*, 425 F.3d at 748.

63. However, the agency failed to do so. Without taking these actions, BLM had no way of complying with FLPMA nor any way to ensure compliance with Proclamation 10286. As the Tenth Circuit has held:

> Unless [the agency] knows in advance when [ROW] holders propose to change the width, alignment, configuration, surfacing, or type of roads across federal land, the BLM cannot effectively discharge its responsibilities to determine whether the proposed changes are reasonable and necessary, whether they would impair or degrade the surrounding lands, and whether modifications in the plans should be proposed.

*Id.* at 747 (emphasis added).

64. BLM's failure to prohibit the County from widening, vertically and horizontally realigning, and installing new culverts on the Hole-in-the-Rock Road before consultation was completed means it has not properly discharged its responsibilities under FLPMA. Because it did not properly discharge its responsibilities, BLM has failed "to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands." *Id.* at 748. And, because BLM failed to understand the environmental impacts of the County's road improvements or to formulate alternatives thereto that would reduce those impacts, it has sanctioned environmental

degradation and destruction that otherwise would not have occurred. Thus, the agency failed to "take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

65.    Likewise, with respect to chip sealing, BLM failed to "take any action necessary to prevent unnecessary or undue degradation of the lands" because BLM did not analyze alternatives to the proposed chip sealing that would avoid or minimize impacts to the surrounding environment and Monument objects prior to issuing its Determination and authorizing the County to chip seal the Hole-in-the-Rock Road. 43 U.S.C. § 1732(b); *SUWA*, 425 F.3d at 748.

66.    BLM's actions are arbitrary, capricious, or otherwise not in accordance with law in violation of the APA. 5 U.S.C. § 706(2)(A).

**THIRD CAUSE OF ACTION**
*Violation of FLPMA, Presidential Proclamation 10286, and the APA: Failure to Conform to the Governing Land Use Plan*

67.    SUWA incorporates by reference all preceding paragraphs.

68.    FLPMA and its implementing regulations requires that, "[a]ll future resource management authorizations and actions…shall conform to the approved [resource management] plan." 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3(a); *Utah Shared Access All. v. Carpenter*, 463 F.3d 1125, 1129 (10th Cir. 2006).

69.    An action conforms with the approved plan if it is "clearly consistent with the terms, conditions, and decision of the approved plan." *W. Watersheds Proj. v. Bureau of Land Mgmt.*, 721 F.3d 1264, 1268 (10th Cir. 2013).

70.    The GSENM RMP is the approved resource management plan governing Grand Staircase-Escalante National Monument. It includes management decisions that dictate what is and is not allowed within the Monument.

71.    Management decision TTM-07 states

[i]mprovements to routes, including, but not limited to, Hole-in-the-Rock Road…to provide for public health and safety needs and/or to protect GSENM objects will be considered during plan implementation on a case-by-case basis, in accordance with applicable laws, regulations, and policy. <u>The BLM's consideration of any proposed improvement will include an opportunity for public participation prior to the issuance of a final decision</u>. For purposes of this management action, an "improvement" goes beyond preserving the status quo of the road or trail and includes the <u>widening of the road or trail; the horizontal or vertical alignment of the road or trial; the installation of (as distinguished from cleaning, repair, or replacement in kind of already existing) bridges, culverts, and other drainage structures; and any significant changes in the surface composition of the road or trail</u>.

GSENM RMP at 2-70 (emphases added) (excerpt attached as Ex. 9).

72.    The County states that the purpose of its proposed improvements to the Hole-in-the-Rock Road is to improve the safety of the Road. *See* Notice at *2. Thus, TTM-07 applies.

73.    As part of the consultation process, BLM considered the County's chip sealing proposal. The Determination authorized the County to commence chip sealing and represents BLM's final decision on that proposal.

74.    However, in violation of TTM-07, BLM did not provide any opportunity for public participation prior to issuing the Determination, nor did it make any effort to notify the public of the County's proposal.

75.    Consequently, BLM's actions are not in conformance with the GSENM RMP. As such, BLM has violated FLPMA and its implementing regulations, and Proclamation 10286. 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3(a); 86 Fed. Reg. 57345.

76.    BLM's actions are arbitrary, capricious, or otherwise not in accordance with law in violation of the APA. 5 U.S.C. § 706(2)(A).

**PRAYER FOR RELIEF**

WHEREFORE, SUWA respectfully requests that the Court enters judgment in SUWA's favor and against Defendants, and that the Court:

(1)    Declare that Defendants violated NEPA and the APA when they failed to conduct any NEPA analysis at all, including failing to, at a minimum, prepare an environmental assessment for Garfield County's planned improvements Hole-in-the-Rock Road;

(2)    Declare that Defendants violated FLPMA and its implementing regulations, Presidential Proclamation 10286, and the APA when they failed to take any action necessary to prevent unnecessary or undue degradation of the public lands;

(3)    Declare that Defendants violated FLPMA and its implementing regulations, and the APA when they failed to comply with the Grand Staircase-Escalante Approved Resource Management Plan;

(4)    Enjoin BLM's Determination and decision authorizing Garfield County to chip seal the Hole-in-the-Rock Road;

(5)    Award injunctive relief instructing BLM to prohibit Garfield County from proceeding with further road improvements on the Hole-in-the-Rock Road until BLM has complied with its duties under FLPMA, NEPA, federal common law, and the APA;

(6)    Award injunctive relief instructing BLM to remove any unauthorized improvements or other such equitable relief as the Court deems proper;

(7)    Retain jurisdiction of this action to ensure compliance with its decree;

22

(8)    Award SUWA costs incurred in pursuing this action, including attorney's fees, as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable provisions; and

(9) Grant such other and further relief as is proper.


DATED:        May 18, 2026        Respectfully,

*/s/Hanna Larsen*
Stephen H.M. Bloch
Hanna Larsen
SOUTHERN UTAH WILDERNESS ALLIANCE

Trevor J. Lee
HOGGAN LEE HUTCHINSON

Mitch M. Longson
MANNING CURTIS BRADSHAW
& BEDNAR PLLC

*Attorneys for Plaintiff Southern Utah*
*Wilderness Alliance*