K. TESS DAVIS (15831)
JASON L. DEFOREST (14628)
DAVID A. REAY (14764)
LAUREN K. CORMANY (19494)
Assistant Attorneys General
kaitlindavis@agutah.gov
jdeforest@agutah.gov
dreay@agutah.gov
lcormany@agutah.gov

DEREK BROWN (10476)
UTAH ATTORNEY GENERAL
1594 W North Temple
Salt Lake City, UT 84116
(801) 537-7227

*Attorneys for Defendants State of Utah and Garfield County, Utah*

---

IN THE UNITED STATES JUDICIAL DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>　　　Plaintiffs,<br><br>v.<br><br>GARFIELD COUNTY, UTAH, a political subdivision, the STATE OF UTAH, the U.S. BUREAU OF LAND MANAGEMENT, and the U.S. DEPARTMENT OF THE INTERIOR,<br><br>　　　Defendants. | Case No. 2:26-cv-00096<br><br><br>**PROPOSED INTERVENOR - DEFENDANTS STATE OF UTAH AND GARFIELD COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTIVE RELIEF**<br><br><br>Judge Ann Marie McIff Allen<br>Magistrate Judge Paul Kohler |

1

**PROPOSED INTERVENOR-DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY INJUNCTIVE RELIEF**

## I. INTRODUCTION

Hole-in-the-Rock Road ("the Road") is an adjudicated right of way, belonging to the State and County, with consultation requirements for road projects arising solely because the servient estate belongs to the federal government. Consultation is not a final agency action under the APA and does not include a major federal action subject to NEPA. Despite this reality, Plaintiff Southern Utah Wilderness Alliance ("SUWA") once again seeks the extraordinary remedy of an emergency preliminary injunction to halt critical, safety-oriented infrastructure work on the G9000 portion of Hole-in-the-Rock Road. Specifically, SUWA asks this Court to enjoin the Bureau of Land Management's ("BLM") determination as to improvements on the Road, relying on a series of mischaracterizations regarding the nature of federal oversight and the historical and administrative reality of the Road, without meeting the stringent legal standards required for injunctive relief. The BLM engaged in a thorough consultation process before recognizing the County's chip-sealing project as "reasonable and necessary." That should be the end of any inquiry between two property holders and SUWA's request to restrain that action should be denied.

The core legal reality is that the Hole-in-the-Rock Road has been adjudicated as a valid existing R.S. 2477 right-of-way, establishing a vested legal property interest which the Grand Staircase-Escalante National Monument (GSENM) management plan expressly recognizes. Because this R.S. 2477 right-of-way on Hole-in-the-Rock Road pre-dates the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. §§ 1701–1787, and the GSENM monument plan, it is not subject to the management authority of those federal documents as described by SUWA.

Consequently, SUWA has no standing to challenge this roadwork. Because there is no federal jurisdiction over an adjudicated property right held exclusively by a non-federal actor, there

is no law to apply under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706 (authorizing review only of final agency action and excepting actions committed to agency discretion). Furthermore, the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4370h, does not apply because there is no "major Federal action." The Bureau of Land Management's (BLM) recent "Reasonable and Necessary" determination did not grant a new permission, issue a conditional permit, or alter the legal rights of any party. Rather, the BLM's determination simply recognized the status quo: that Garfield County's road improvement project falls within the scope of the State and County's valid, pre-existing R.S. 2477 right-of-way. Because it did not alter the legal rights of any party, APA review fails as there is no final agency action. Further, because the project was performed by a non-federal actor, upon a valid right-of-way, using non-federal funding, not subject to federal control, and staffed by non-federal employees, it does not meet NEPA's threshold for a "major federal action." SUWA has failed to meet the extremely heavy burden required to secure preliminary injunctive relief, and its motion must be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### The Historic Hole-in-the-Rock Road

SUWA's attempt to portray the Hole-in-the-Rock Road as an untouched, pristine ecosystem is misleading. It was constructed, improved, and heavily utilized by settlers, miners, cattlemen, and farmers for nearly 100 years before the passage of the Wilderness Act of 1964, the FLPMA of 1976, and the finalization of the Resource Management Plan for GSENM. Indeed, this is a historic route developed by pioneer labor and maintained in part by continuous, uninterrupted use. Title to this right-of-way was recently adjudicated in favor of the State and County pursuant to R.S. 2477.

To ensure public safety, minimize fugitive dust, and prevent erosion on this heavily traveled passage, Garfield County developed a plan to grade, replace and install necessary culverts, and apply a chip-seal treatment to a stretch of the Hole-in-the-Rock Road within its right-of-way. This is entirely consistent with the County's vested property interest in the route. *See, e.g.*, *SUWA. v. BLM*, 425 F.3d 735, 747 (10th Cir. 2005). Moreover, this plan was the culmination of years of consultation with the BLM, wherein the State and County repeatedly demonstrated the need for improvements to the Road to accommodate the increased traffic associated with the Monument. Following a comprehensive review of the proposed improvements, and consistent with Tenth Circuit precedent, the BLM issued a determination letter on May 7, 2026, finding that the proposed project was "reasonable and necessary." *See SUWA v. BLM*, 425 F.3d 735 (2005) ("…the holder of an R.S. 2477 right of way across federal land must consult with the appropriate federal lands management agency before it undertakes any improvements to an R.S. 2477 right of way…"). Moreover, the BLM determined that the project was entirely within the scope of the existing right-of-way and noted that it had undertaken a review of potential impacts before making its determination. Dkt. No. 61 at 8. At no point did the federal government assume operational or financial control over the project.

SUWA's request for injunctive relief ignores these realities and rests entirely on the erroneous premise that this is a final agency action subject to review under the APA or NEPA. There is no basis for such claims and the relief should be denied.

### III. LEGAL STANDARDS

A party seeking a preliminary injunction must establish 1) that they are "likely to suffer irreparable harm in the absence of preliminary relief," 2) that they are "likely to succeed on the merits," 3) that the balance of equities tips in their favor, and 4) that an injunction is in the public

interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (requiring a clear showing on all four factors). In the Tenth Circuit and the District of Utah, this standard is strictly enforced, and injunctions that alter the status quo or halt authorized government action are disfavored, requiring the movant to make a "strong showing" on all elements. *See O Centro Espirita Beneficente União do Vegetal v. Ashcro*ft, 389 F.3d 973, 975–76 (10th Cir. 2004) (en banc), aff'd, 546 U.S. 418 (2006) (heightened showing for disfavored injunctions); *Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258–59 (10th Cir. 2005) (status quo and disfavored injunction frameworks).. Under this standard, the Court cannot simply accept the Plaintiff's allegations as fact, because the merits require more.

## IV. ARGUMENT

### A.  SUWA Has No Standing and Cannot State a Claim Under the APA or NEPA Because Hole-in-the-Rock is an Adjudicated R.S. 2477 Right-of-Way.

Because Hole-in-the-Rock Road is adjudicated as a valid existing R.S. 2477 right-of-way, it operates as a legal property interest which is expressly recognized by the GSENM management plan. GSENM, Section I-6, "What the ROD and Approved RMP Does not Provide". Namely, the GSENM plan explicitly states, "The Approved RMP is subject to valid existing rights. The State of Utah and its counties may hold valid existing ROWs in the Planning Area pursuant to Revised Statute 2477 (R.S. 2477), Act of July 28, 1866, Chapter 262, 8,14; Stat. 252, 253, codified at 43 USC 932." *See also Kane Cnty., Utah v. United States*, 772 F.3d 1205, 1210–11 (10th Cir. 2014) (recognizing R.S. 2477 rights as vested property interests predating FLPMA); *San Juan Cnty., Utah v. United States*, 754 F.3d 787, 790–91 (10th Cir. 2014) (en banc) (plurality) (describing scope/title adjudication context and interplay with federal land planning). Because this R.S. 2477 right-of-way pre-dates FLPMA and the GSENM plan, and because it has been adjudicated under

the federal Quiet Title Act (Quiet Title Act, 28 U.S.C. § 2409a), it is not subject to the TTM-07 provision of the plan. *See id.*; *see also SUWA v. BLM*, 425 F.3d 735, 748–50 (10th Cir. 2005) (BLM acknowledges, but does not conclusively adjudicate, R.S. 2477 rights). Therefore, there is no law to apply under the APA where the alleged federal duty would require BLM to regulate a non-federal, vested property interest. *See Heckler v. Chaney,* 470 U.S. 821, 830 (1985) (agency action committed to discretion where there is no meaningful standard to apply). Consequently, SUWA lacks standing to challenge the BLM's "reasonable and necessary" determination. *See* Dkt. 58 at 4-14. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (injury-in-fact requires concrete, particularized, actual or imminent harm); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496–97 (2009) (organizational standing requires member-specific, imminent injury).

## B.  SUWA is Unlikely to Succeed on the Merits Because There is no Triggering Action.

SUWA's procedural challenges under the APA § 706(2), NEPA, and FLPMA fail because the BLM has not engaged in a final agency action. The BLM's May 7 Determination is a non-binding administrative process that does not trigger NEPA, FLPMA, or the APA.

### 1. *The BLM's Determination Simply Recognizes the Status Quo of a Valid Existing Right-of-Way.*

Under well-settled Tenth Circuit property law, an R.S. 2477 right-of-way is a vested, non-federal property interest held by the State and County. *SUWA v. BLM, 425 F.3d* at 747. While a county must consult with the federal land manager when an improvement goes beyond routine maintenance, the BLM's role in this consultation regarding the scope of the right-of-way is distinctly limited. *See id*. The BLM's May 7 finding that Garfield County's chip-seal project is "reasonable and necessary" is not an authorization, a conditional permit, or a discretionary license.

6

The BLM did not impose regulatory limitations or restrictions; it simply verified that the County's planned work did not exceed the scope of its existing property right. Importantly, the BLM cannot conclusively adjudicate R.S. 2477 title or scope; only federal courts can. *See SUWA v. Babbitt,* 200 F.3d 1197, 1206–07 (10th Cir. 2000) (explaining need for judicial adjudication because agency lacks authority to determine R.S. 2477 title); *see also SUWA*, 425 F.3d at 748–50. Because the BLM merely recognized the status quo within a legally adjudicated right-of-way, no new legal rights were created, meaning there is no final agency action subject to APA review. *See Bennett v. Spear, 520 U.S. 154, 177–78 (1997)*; and *see APA,* 5 U.S.C. § 551(13) (2018). The BLM did not impose regulatory limitations or restrictions; it simply verified that the County's planned work did not exceed the scope of its existing property right. Because the determination did not "change the legal status" of the parties, it fails the APA finality test. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (finality requires both consummation and legal consequences).

In its motion, SUWA relies heavily on cases where agencies either ignored their regulatory duty entirely or took affirmative steps to grant new rights to third parties. For example, SUWA attempts to analogize this case to *Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988). That reliance is entirely misplaced. In *Hodel*, the Tenth Circuit enjoined Garfield County from widening the Burr Trail, another R.S. 2477 right-of-way, precisely *because* the county sought to expand the road outside the historic footprint without first consulting the BLM to determine if the expansion was reasonable and necessary. *Id*. at 1084-85. Here, Garfield County did exactly what *Hodel* commands: it consulted with the BLM, and the BLM affirmatively determined the chip-sealing was within the scope of the existing adjudicated right-of-way. Because the BLM determined the chip seal project was within the scope of the right-of-way, the agency did not create new legal rights; instead, the BLM simply recognized the status quo.

Since no new legal rights were created, and no final agency action occurred, this matter is not subject to review under the APA. *Bennett v. Spear*, 520 U.S. 154, 177–78.

**2. *The BLM's determination did not require NEPA review because the Project is Administered and Funded by Non-Federal Actors.***

NEPA applies exclusively to "major Federal actions." 42 U.S.C. § 4332(2)(C). A project carried out by a non-federal entity does not become a federal action simply because it occurs on federal land or involves consultation with the federal government. *See Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 770 (2004) (no NEPA duty absent agency control over outcome); *Sierra Club v. U.S. Dep't of Energy*, 287 F.3d 1256, 1262–63 (10th Cir. 2002) (federal action requires sufficient control or responsibility over the project); *Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012, 1023–24 (10th Cir. 2002) (no major federal action where agency lacked power to prevent nonfederal activity). Here, the chip-seal placement is being performed entirely by Garfield County using non-federal funds. The federal government exercises no operational control, financial management, or structural oversight over the project's execution. *See Pub. Citizen*, 541 U.S. at 770 (no NEPA responsibility for effects agency cannot prevent). Because the BLM determined the project is within the valid existing right of way, there is no federal action to evaluate. *Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012, 1023–24 (10th Cir. 2002) (agency lacked power to prevent nonfederal activity). Consequently, the BLM is not required to produce an environmental document under the NEPA "hard look" standard.

**3. *The 2025 MMP Public Participation Requirement is Inapplicable.***

SUWA incorrectly argues that Management Action TTM-07 of the 2025 MMP mandates public comment before the County can "improve" the Road. However, the State and County's

right-of-way over the Road pre-dates the development of the 2025 MMP. When the BLM finalized the 2025 Monument Plan, it explicitly recognized that valid pre-existing rights-of-way were the baseline upon which its visual and travel management designations were structured. *See* GSENM, Section I-6, "What the ROD and Approved RMP Does not Provide". Because title to this R.S. 2477 right-of-way had not yet been formally adjudicated at the time the plan was published, the Road was carved out and placed into a category of interests that the plan acknowledges and protects. Once the Court adjudicated title to the Hole-in-the-Rock Road, the right-of-way did not merely retain its status as a protected, pre-existing valid right; it became functionally exempt from any regulatory restrictions of the plan which interfered with the valid existing right-of-way. Under well-settled federal law, a judicially recognized R.S. 2477 right-of-way carries a definition that inherently includes the right of the holder to improve, widen, or align the road to meet the exigencies of increased public travel. *See Sierra Club v. Hodel*, 848 F.2d 1068, 1083 (10th Cir. 1988) (holding that the scope of an R.S. 2477 right-of-way is measured by what is reasonable and necessary to accommodate safe public transit under the "exigencies of increased travel"); *see also SUWA. v. BLM*, 425 F.3d 735, 747 (10th Cir. 2005) (affirming that an R.S. 2477 right-of-way is a vested property interest that cannot be extinguished or unduly impaired by subsequent federal land management plans). The recent adjudication of title removes the Road from discretionary consideration under the 2025 MMP. The extent of the surface improvements within the historical footprint remains at the legal discretion of the dominant estate holders, subject only to the standard requirement to consult with the servient federal manager so long as the project is reasonable and necessary.

### C. SUWA Cannot Demonstrate Irreparable Harm or Particularized Injury.

The "single most important prerequisite" for a preliminary injunction is a showing of probable irreparable harm. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004); *See Winter*, 555 U.S. at 22 (noting that the likelihood of irreparable harm is required, not merely the possibility of harm). If a plaintiff fails to demonstrate a significant risk of irreparable injury, the court will deny the motion without considering the remaining elements. *Id*. To qualify as irreparable, the moving party must demonstrate an injury that is "both certain and great," and "merely serious or substantial" hurt will not suffice. *New Mexico Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1250 (10th Cir. 2017); *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016). Moreover, the alleged harm must be imminent, and the courts require the harm to be specific to the moving party's interests. *See Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282–83 (10th Cir. 2016) (finding no automatic injunction for alleged NEPA violation; specific, imminent harm required). In this case, SUWA acknowledges its harm is not irreparable by arguing its claims survive the chip-sealing.

If the court may still grant remedy, then the harm is not irreparable. The Court notes, "relief could still be granted after the chip-sealing is done by ordering BLM to perform the requisite analysis. SUWA's proposed amended and supplemental complaint seemingly acknowledges this reality, as it asks for relief in connection with portions of the roadwork that are already done." Dkt. 60 at 5. As this Court observed in its May 15 Order, "[c]learly SUWA felt that its injuries outlasted the chip-sealing in that case. And yet SUWA has not explained why this case is any different." *Id.*

In its motion, SUWA cites legacy cases such as *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987), for the proposition that environmental injury is inherently permanent and irreparable. However, under the Supreme Court's mandate in *Winter v. NRDC,*

10

courts may no longer presume irreparable harm simply because environmental regulations are invoked. *Winter v. NRDC,* 555 U.S. at 22. SUWA must show concrete, imminent harm. The Road's footprint is already established. Routine grading and surface hardening within that existing footprint does not introduce a novel aesthetic injury. Because the area is already actively used for transportation, any alleged visual changes from upgrading the surface to chip-seal do not irreparably harm SUWA's aesthetic interests. Moreover, the purpose of the Hole-in-the-Rock Road, as defined in the Plan, is met by this improvement project.

### D. The Balance of Equities Weighs Decisively in Favor of Garfield County and the Public Interest.

To satisfy the third element for preliminary injunctive relief, SUWA must demonstrate that the balance of equities tips in its favor. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (finding equities and public interest require weighing concrete harms). In cases involving a disfavored injunction that halts authorized infrastructure projects, the movant must make a "strong showing" that their threatened injury outweighs the concrete hardships the injunction would impose on the opposing party. *Schrier*, 427 F.3d at 1258; *see Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) (public interest and balance of harms analysis guides equitable discretion). SUWA cannot meet this burden.

The balance of equities here does not turn on the question of whether the road is chip-sealed or left as dirt, as SUWA's alleged injuries will survive the physical construction. Instead, the Court must weigh the project's immediate benefits—improved travel, safety, erosion control, and the prevention of off-road excursions—against SUWA's subjective preference for an unpaved road. The equities therefore weigh in the BLM and County's favor.

The fourth element for injunctive relief requires the plaintiff to establish that "an injunction is in the public interest." *Winter*, 555 U.S. at 20. The Tenth Circuit strictly adheres to this standard, requiring all four elements to be met independently and discarding prior standards that allowed a strong showing in one area to compensate for weakness in another. *Dinol, N.V. v. Motor Wheel Corp.*, 732 F.2d 1360 (10th Cir. 1984). When evaluating the public interest prong, the court must weigh competing public equities. *See Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) (public interest and balance of harms analysis guides equitable discretion).

SUWA's stated goal is to keep the road rugged so that the landscape remains accessible to "only the most excited and dedicated visitors." Dkt. 57-1 at 6. The public interest, however, is not served by restricting access to public lands to a select few or by forcing the traveling public to endure hazardous, substandard road conditions for the duration of a protracted lawsuit.

As the court in *United States v. Garfield Cnty.* articulated, "present and future generations should be assured safe access to the Park's scenic vistas and rugged terrain on well-maintained, all-weather roads suitable for the vehicles they drive." *United States v. Garfield Cnty.*, 122 F. Supp. 2d 1201, 1258 (D. Utah 2000). The chip-seal project ensures this safe access while simultaneously fulfilling the purposes of the monument's designation by protecting the historic road from deterioration. The public has a vested interest in the safe, reliable, and environmentally responsible

maintenance of public infrastructure. Enjoining the project now would supplant the administrative judgment of the BLM and cause unjustified economic and logistical delay to Garfield County.

## V. CONCLUSION

Because Plaintiff has failed to identify a final agency action, this Court lacks subject-matter jurisdiction over the underlying claims. Consequently, injunctive relief is not warranted to enjoin the BLM or Garfield County. Moreover, even if there was a claim under the APA, FLPMA, or NEPA, SUWA fails the requirements necessary for preliminary injunctive relief. For the foregoing reasons, Proposed Intervenor-Defendants respectfully request that this Court deny Plaintiff's Emergency Motion for Temporary Injunctive Relief in its entirety.

DATED: May 28, 2026

Respectfully,

 /s/ Tess Davis
K. Tess Davis
Jason L. DeForest
*Attorneys for Proposed Intervenor-Defendants State of Utah and Garfield County*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 28th day of May, 2026, the foregoing **PROPOSED**

**INTERVENOR-DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR**

**TEMPORARY INJUNCTIVE RELIEF** was served by the Clerk of the U.S. District Court

for the District of Utah through the Court's CM/ECF system, which sent a notice of

electronic filing to all counsel of record.

/s/ David A. Reay
*Attorney for Proposed*
*Intervenor-Defendants*
*State of Utah and*
*Garfield County, Utah.*
