ADAM R. F. GUSTAFSON, Principal Deputy Assistant Attorney General
JOSEPH H. KIM, Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0207

Attorneys for Defendant United States of America

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. BUREAU OF LAND MANAGEMENT, and the U.S. DEPARTMENT OF THE INTERIOR,<br><br>    Defendants,<br><br>and<br><br>GARFIELD COUNTY, UTAH, et al.,<br><br>    Proposed Intervenor-Defendants. | **DEFENDANT UNITED STATES' RESPONSE TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Case No. 2:26-cv-00096-AMA-PK<br><br>Judge Ann Marie McIff Allen<br>Magistrate Judge Paul Kohler |

On May 18, 2026, Plaintiff Southern Utah Wilderness Alliance (SUWA) filed a Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. No. 62) (the "Motion"). Pursuant to the Court's direction, Federal Defendants (the United States Bureau of Land Management (BLM) and the United States Department of the Interior (DOI); collectively the United States) file this expedited response. *See* Minute Order dated May 19, 2026 (Dkt. No. 64). For the reasons noted below, the Court should deny this Motion. SUWA is unlikely to succeed

on the merits of any of its claims.  Moreover, SUWA is unlikely to suffer irreparable harm in the absence its requested preliminary relief, and the balance of equities is not in SUWA's favor.

## BACKGROUND

As the holder of an RS 2477 Right of Way for the Hole in the Rock Road, Garfield County was required to consult with BLM before making improvements to the Road beyond mere maintenance.  *See, e.g.*, *SUWA v. BLM*, 425 F.3d 735, 748 (10th Cir. 2005).  The County thus notified BLM of its desire to chip seal an approximately 10-mile segment of the Road.  *See* Dkt. No. 52-1 (BLM's May 7, 2026 Letter).  This proposed road work is not adjacent to any Wilderness Study Areas (WSA).  *Id*. (attached map).  BLM then undertook the requisite consultation and, on May 7, 2026, concluded that the proposed chip-seal project was "reasonable and necessary, and, thus, within the scope of the County's ROW for the HITR Road."  *Id*.; *see also* BLM Memorandum dated May 7, 2026 (Ex. 1 to the attached Declaration of Ade Nelson).  As part of that consultation process, BLM prepared an impacts analysis where it concluded, following a scoping analysis, that the proposed project was unlikely to impact any surrounding public lands or resources, and thus would not result in unnecessary or undue degradation.  *See* BLM's May 7, 2026 Letter; BLM May 2026 Hole-in-the-Rock Chip Sealing Impacts Analysis (part of Ex. 1 to the attached Declaration of Ade Nelson).  And BLM explained its rationale for concluding that its determination—that the proposed chip-seal project is within the scope of an adjudicated R.S. 2477 ROW—is not major federal action triggering compliance obligations under the National Environmental Policy Act (NEPA) or a federal undertaking triggering compliance under the National Historic Preservation Act (NHPA).  *See* BLM Memorandum dated May 7, 2026 (Ex. 2 to the attached Declaration of Ade Nelson) at 2-3.

On May 8, 2026, Plaintiff SUWA moved under the All Writs Act for a temporary restraining order to preserve the Court's jurisdiction.  Dkt. No. 55.  This Court denied the motion after concluding that All Writs Act relief was not necessary to preserve its jurisdiction, because even the completion of the chip seal project would not necessarily moot SUWA's claims.  Dkt. No. 60 at 5.  Instead, "[a]ssuming arguendo that BLM's review of the County's chip-sealing project were somehow deficient, the Court could still provide relief after the chip-sealing is done by ordering BLM to perform the requisite analysis."  *Id*.

Garfield County appears to have now completed the chip-seal project.  Instead of proceeding to the merits, SUWA again seeks a temporary restraining order and preliminary injunction, this time to "enjoin[]" BLM's May 7, 2026 Letter.  Motion at 1, 2, 10, 24, 26.  But each of the alleged harms SUWA contends it is suffering flow, not from that letter, but instead from the chip-seal project itself.  *See* Motion at 21-22.  SUWA contends that it "will suffer irreparable harm if the remaining roadwork is not enjoined and the Road is chip sealed and otherwise improved as scheduled."  Motion at 5; *see also id*. at 21-22.

## ARGUMENT

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  SUWA correctly recognizes that its Motion "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20; *see also, e.g., Szymakowski v. Utah High Sch. Activities Ass'n*, 756 F. Supp. 3d 1238, 1246 (D. Utah 2024) ("A temporary restraining order and preliminary injunction share the same standard" (citation omitted)); Motion at 10.

SUWA's motion should be denied because SUWA has no likelihood of success on its claims under NEPA or the Federal Lands Policy and Management Act (FLPMA), and because SUWA has failed to explain how the injunction they seek would prevent the environmental injuries that they contend will be caused by the now-complete chip-seal project.

**I.      SUWA is Not Likely to Succeed on the Merits of its Claims**

SUWA's motion should be denied based entirely on the first *Winter* factor, because SUWA is not likely to succeed on the merits of its claims under the National Environmental Policy Act (NEPA) or the Federal Land Policy and Management Act (FLPMA).

**A.      Legal Background Regarding R.S. 2477 Rights-of-Way**

SUWA's NEPA and FLPMA arguments assume that BLM authorized the County to undertake its proposed roadwork project.  But BLM did not permit or otherwise authorize the project – it instead made "an internal, non-binding administrative determination" that the former co-defendants in this case (and now proposed intervenor-defendants) have the right to undertake the proposed chip sealing improvement, following a consultation process mandated by Tenth Circuit precedent.  *See SUWA v. BLM*, 425 F.3d at 750, 757-58.  Some context concerning R.S. 2477 and relevant case law is thus necessary to understand the errors in SUWA's arguments.

In 1866, Congress passed R.S. 2477 as an "open-ended grant of 'the right of way for the construction of highways over public lands, not reserved for public uses.'"  *SUWA v. BLM*, 425 F.3d at 740 (quoting Act of July 26, 1866, § 8, 14 Stat. 251, 253 (codified at 43 U.S.C. § 932, *repealed by*, FLPMA of 1976, Pub. L. No. 94-579, § 706(a), 90 Stat. 2743)).  In 1976, Congress repealed R.S. 2477 in FLPMA but explicitly "preserved [R.S. 2477 rights-of-way] 'as they existed on the date of passage' of the FLPMA, October 21, 1976."  *Kane County (2) v. United States*, 772 F.3d 1205, 1223 (10th Cir. 2014) (citation omitted), *abrogated on other grounds by Wilkins v. United States*, 598 U.S. 152 (2023); 43 U.S.C. § 1769(a).  FLPMA's repeal of R.S.

2477 "had the effect of 'freezing' R.S. 2477 rights as they were in 1976." *SUWA v. BLM*, 425 F.3d at 741 (quoting *Sierra Club v. Hodel*, 848 F.2d 1068, 1081 (10th Cir. 1988), *overruled on other grounds by Village of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970, 973 (10th Cir. 1992) (en banc)).  Implementation of the savings provision to "freeze" has "proven difficult" because of the "lack of administrative formalities needed to create R.S. 2477 rights-of-way[.]" *SUWA v. DOI ("Burr Trail")*, 44 F.4th 1264, 1268 (10th Cir. 2022).

In Utah, the scope of R.S. 2477 rights-of-way are described by the Tenth Circuit as involving more than the actual beaten path as of October 21, 1976.  Instead:

> [U]nder Utah law, the width of a public road is that which is "reasonable and necessary under all the facts and circumstances."  Thus, the road can be "widened to meet the exigencies of increased travel," including where necessary to ensure safety.  However, the "'reasonable and necessary' standard *must be read in the light of traditional uses to which the right-of-way was put.*"  Thus, the proper inquiry is what width is reasonable and necessary in light of the pre-1976 uses of the road.

*Kane County (2),* 772 F.3d at 1223 (citations omitted).

The Tenth Circuit in *SUWA v. BLM* established several relevant principles regarding R.S. 2477 rights-of-way.  First, BLM lacks "authority to make binding determinations" for R.S. 2477 rights-of-way, which is a judicial function.  *SUWA v. BLM*, 425 F.3d at 752, 757.  A claimant seeking to establish title must sue under the Quiet Title Act, 28 U.S.C. § 2409a.  *Burr Trail*, 44 F.4th at 1268 (citing *United States v. Wells*, 873 F.3d 1241, 1260 (10th Cir. 2017)).  However, *SUWA v. BLM* made clear that BLM may determine "the validity of R.S. 2477 rights of way for its own purposes" through "an internal, non-binding administrative determination."  *SUWA v. BLM,* 425 F.3d at 750, 757.

A second principle requires an R.S. 2477 right-of-way holder to consult with BLM when it proposes to make an improvement to the road along the right-of-way beyond routine

5

maintenance. *SUWA v. BLM*¸425 F.3d at 748. In order to make an improvement to an adjudicated R.S. 2477 right-of-way, the holder must:

> (1) advise "the federal land management agency of [such] work in advance"; (2) permit the agency a chance "to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the rights of way as of October 21, 1976"; and (3) allow the agency the opportunity to study the "potential effects" of the improvements, and if needed, to "formulate alternatives" that protect the land.

*Burr Trail*, 44 F.4th at 1269 (alteration in original) (quoting *SUWA v. BLM*, 425 F.3d at 748). Based at least in part on "common law principles governing easements," the consultation process ensures the R.S. 2477 right-of-way holder and BLM exercise their respective rights and privileges in a spirit of mutual accommodation. *SUWA v. BLM*, 425 F.3d at 747-48. *See also Kane County (2) v. United States*, No. 10-cv-1073, 2024 WL 3760024, at *17 (D. Utah Aug. 9, 2024), *supplemented*, 2024 WL 4285110 (D. Utah Sept. 25, 2024).

Both of these principles are relevant here. As SUWA recognizes, title has already been quieted in favor of the proposed intervenor-defendants Garfield County and the State of Utah. Motion at 2, 7 (citing *Kane County (2)*, No. 10-cv-1073, 2025 U.S. Dist. LEXIS 141248, at *9 (D. Utah July 23, 2025)). That Quiet Title Act case, however, remains pending because the court has not yet determined the scope of this right-of-way. *Id*. Chip sealing is a form of improvement, which may be within the scope of this right-of-way. *SUWA v. BLM*, 425 F.3d at 749. Thus, in order to undertake a chip-sealing project, proposed intervenor-defendants "must" first consult with the United States. *Id*. at 748. And once this consultation has begun, the United States "may not use its authority, either by delay or by unreasonable disapproval, to impair the rights of the holder of the R.S. 2477 right of way." *Id*. The United States' determination on consultation will only be "an internal, non-binding administrative determination," *id*. at 750, 758, with the final scope determination being a judicial function, *see id*. at 748 ("In the event of disagreement, the parties may resort to the courts").

SUWA incorrectly characterizes the result of this consultation process as an "authorization." *See* Motion at 3, 12, 14 n.8, 15-16, 16 n.10, 21-23 (using various forms of the word). As the case law makes clear, however, the improvement of an adjudicated R.S. 2477 right-of-way is already within the rights granted under R.S. 2477 if the improvement is both "reasonable and necessary" in the light of traditional uses to which the right-of-way was put. *See, e.g., Kane County (2)*, 772 F.3d at 1223 (citation omitted).

SUWA also incorrectly attempts to make the Motion about any possible improvements to the Hole-in-the-Rock Road other than the proposed chip sealing. *See, e.g.,* Motion at 12 (discussing the alleged "implicit decision not to consult"). It is proposed intervenor-defendants duty to initiate consultation for any proposed improvement to an adjudicated R.S. 2477 right-of-way. *See, e.g., SUWA v. BLM*, 425 F.3d at 748 ("[W]hen the holder of an R.S. 2477 right of way across federal land proposes to undertake any improvements in the road along its right of way, beyond mere maintenance, it must [consult]"); *accord Kane County (2)*, 2024 WL 3760024, at *17 ("[I]f the counties propose to change or improve an existing R.S. 2477 road, then they are required to consult with the United States . . . ."). The only duty imposed on the United States is to participate in any such consultation in good faith. *See, e.g., SUWA v. BLM*, 425 F.3d at 748; *Kane County (2)*, 2024 WL 3760024, at *17 ("The duty to consult is mutual in that the United States cannot avoid consulting about the proposed improvement").

B.    SUWA is Not Likely to Succeed on the Merits of its NEPA Claim

Contrary to SUWA's claims, NEPA does not apply in this situation. An agency must prepare a NEPA analysis for proposed major federal actions that will have significant impacts on the environment. *Ross v. Federal Highway Admin.*, 162 F.3d 1046, 1051 (10th Cir. 1998). NEPA defines "major Federal action" as "an action that the agency carrying out such action

determines is subject to substantial Federal control and responsibility . . . [and] does not include – a non-Federal action . . . where a Federal agency cannot control the outcome of the project[.]" 42 U.S.C. § 4336e(10); *see also Village of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1482 (10th Cir. 1990) (concluding there was no major federal action and thus no NEPA requirement where "there [was] no evidence that the federal government had the actual power to control [a state sponsored bridge project]").  An agency must have the discretion to take the action in question for a "major federal action" to exist.  *See Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 763-64, 769-70 (2004).  In other words, where the agency takes no major federal action, there is no duty to conduct a NEPA analysis.

SUWA's argument that "[a]n agency violates NEPA when it authorizes an action prior to completing its NEPA analysis" is inapplicable where, as here, BLM took no "major federal action."  Motion at 14.  As noted above, and contrary to SUWA's repeated suggestion otherwise, BLM is not authorizing any action here, nor does it have any control or discretion over the outcome of Garfield County's proposal to chip seal a ten-mile segment of Hole-in-the-Rock Road.  Rather, under the circumstances at issue in this case, BLM has merely made "an internal, non-binding administrative determination" that the proposed intervenor-defendants' proposal is within the scope of their R.S. 2477 right-of-way, and they already have the right to undertake the proposed improvement.  *SUWA v. BLM*, 425 F.3d at 750, 757-58.

SUWA relies on three cases in support of their NEPA claim.  However, these cases are unhelpful to their claim and, under the present circumstances, strongly support BLM's position that NEPA (and FLPMA, as discussed below) does not apply.  SUWA was a plaintiff in all three cases, and thus they should understand and be aware of the distinguishing facts between those

8

cases and the present case, as well as the court decisions addressing their various NEPA arguments.

First, SUWA cites *Sierra Club v. Hodel*.  Motion at 15.  In that case, the Tenth Circuit, when discussing the applicability of NEPA, noted that NEPA requires "an agency's authority to influence significant nonfederal activity" and specifically noted that "[t]his influence must be more than the power to give nonbinding advice to the nonfederal actor."  848 F.2d at 1089.  It is not clear that this aspect of that case survives the Tenth Circuit's subsequent determination that BLM's scope determinations are "non-binding."  *See SUWA v. BLM*, 425 F.3d at 758.

Even if the NEPA holding in *Hodel* survives after *SUWA v. BLM*, it is not helpful to SUWA here.  In considering plaintiffs' argument that BLM was required to comply with NEPA when evaluating the proposed improvement to Burr Trail, the Tenth Circuit noted that there must be a major federal action, which in the context of BLM's consultation for a proposed improvement of an R.S. 2477 right-of-way is "an agency's authority to influence significant nonfederal activity."  *Hodel*, 848 F.2d at 1089.  That is, "the federal agency must possess actual power to control the nonfederal activity."  *Id.*  The Tenth Circuit first found that although "BLM undertook several actions to ensure that the County's construction proposal did not exceed the scope of the R.S. 2477 right-of-way through public lands[,]" that was insufficient to require NEPA, as "[t]hese activities were only consistent with BLM's duty to insure that the County does not act outside its authority or beyond the boundaries of its right-of-way."  *Id.* at 1090.  Next, the Tenth Circuit considered a scenario in which BLM's consultation related to how an R.S. 2477 right-of-way holder's proposed improvement might trigger an obligation under Section 603(c) of FLPMA, 43 U.S.C. § 1782(c); it concluded that this could "inject[] an element of federal control for required action that elevates this situation to one of major federal action."

*Hodel*, 848 F.2d at 1090.  On that basis, the Tenth Circuit concluded that a major Federal action existed because approximately thirty percent of the proposed improvement was bounded by two WSAs, i.e., land use designations established under Section 603(c) of FLPMA.  *Id.* at 1085.  But the court explained that NEPA applied only to the extent that BLM had a "duty under FLPMA § 603(c) and its regulations, to prevent unnecessary degradation of WSAs from these changes in the right-of-way[.]"  *Id.* at 1090.  *Hodel* provides no support for SUWA's arguments because the Hole-in-the-Rock Road at issue here does not border on any WSA.

The other two cases cited by SUWA, *SUWA v. DOI*, No. 19-cv-297, 2021 U.S. Dist. LEXIS 63395, at *31-32 (D. Utah Mar. 31, 2021), *affirmed by Burr Trail*, 44 F.4th 1264 (10th Cir. 2022), and *SUWA v. BLM* ("*Bull Valley Gorge*"), 551 F. Supp. 3d 1226, 1242-44 (D. Utah 2021), rely on *Hodel* in evaluating whether the circumstances of those cases triggered an obligation under FLPMA sufficient to require a NEPA analysis.  And, significant to BLM's consultation with Garfield County for the proposal to chip seal Hole-in-the-Rock Road, the decisions in the *Burr Trail* and *Bull Valley Gorge* cases similarly make clear that NEPA is triggered by consultation on a proposed improvement only if federal action is needed to prevent unnecessary or undue degradation of an adjacent WSA.  *Burr Trail* involved a different segment of the Burr Trail than that involved in *Hodel*, which had not been adjudicated for R.S. 2477 rights.  But, like the segment involved in *Hodel*, it was also "bordered" by a WSA.  *SUWA v. DOI*, 2021 U.S. Dist. LEXIS 63395, at *4.  And, following *Hodel*, NEPA applied only because the proposed improvement "will impact a [WSA]."  *SUWA v. DOI*, 2021 U.S. Dist. LEXIS 63395, at *30 (quoting *Sierra Club v. Hodel*, 848 F.2d at 1090-91).  *Accord* Motion at 15 (noting "impacts to the Mt. Pennell WSA").  *Bull Valley Gorge* is similar, citing to *Hodel*, and noting that "the relevant standard here is 'impact' to adjacent WSAs."  551 F. Supp. 3d at 1244.

Here, SUWA does not even allege that there are any adjacent WSAs, nor could it. Instead, it only offers general and conclusory allegations that the proposed improvement "has impacted and will continue to impact adjacent wilderness-quality lands, including the North Escalante Canyons/The Gulch ISA and BLM-identified LWC."  Motion at 15 (citations and footnote omitted).  BLM understands and acknowledges that Instant Study Areas (ISAs) are covered under Section 603 of FLPMA, i.e., areas "formally identified as natural or primitive areas" prior to November 1, 1975, 43 U.S.C. § 1782(a), and are managed as WSAs consistent with Section 603(c) of FLPMA.  *See Hodel*, 848 F.2d at 1073 n.3 (referring to North Escalante Canyons as a WSA, noting that it was "formally" an "instant study area" and that "[t]here is no substantive difference, for purposes of this case, between an [ISA] and a [WSA]"); *see also* BLM, Grand Staircase-Escalante National Monument January 2025 Record of Decision and Approved Resource Management Plan ("GSENM RMP") at 1-12 to -13.[1]  The deficiency in SUWA's allegations, however, is that the North Escalante Canyons/The Gulch WSA (or ISA) is not adjacent to Hole-in-the-Rock Road, as described above.  *See* GSENM RMP at Figure 2-16; BLM's May 7, 2026 Letter (attached map).

With respect to BLM-identified lands with wilderness characteristics (LWCs), none of the three cited cases support SUWA's contention that NEPA requirements are triggered for such designated areas.  Moreover, LWCs are not statutorily required designations under FLPMA, and the obligation to manage WSAs under Section 603(c) of FLPMA does not extend to LWCs.  *See* BLM, MS-6320 Manual "Considering Lands with Wilderness Characteristics in the BLM Land

---

[1]  The GSENM RMP may be accessed at https://www.blm.gov/programs/planning-and-nepa/plans-in-development/utah/gsenm-rmp (click the link under subheader "Record of Decision and Approved Resource Management Plan", and under subheader "Record of Decision and Approved RMP" download the document entitled "GSENM-ROD-ARMP_20250106_508 sf signed.pdf") (last accessed May 27, 2026).

Use Planning Process" (dated Oct. 15, 2024) at 1-1,

https://www.blm.gov/sites/default/files/docs/2024-11/MS%206320%20Rel.%206-143.pdf

(acknowledging FLPMA's management mandate for WSAs does not apply to LWCs).  Rather,

BLM uses its discretion under Section 202 of FLPMA, 43 U.S.C. § 1712, to manage areas as

LWCs through the land use planning process.  In any event, SUWA has not identified any

adjacent LWCs that they allege are impacted.

In sum, none of these three cited cases support SUWA's NEPA claim.  Those cases

instead show that there is no NEPA obligation under the facts presented here, and thus SUWA is

not likely to succeed on the merits of its NEPA claim.

C.      SUWA is Not Likely to Succeed on the Merits of its FLPMA Claims

SUWA's two FLPMA claims do not apply to the circumstances of this case and therefore

SUWA is not likely to succeed on the merits of either claim.

1.      FLPMA's requirement to prevent unnecessary or undue degradation is inapplicable because Garfield County's chip seal proposal will not impact any adjacent WSA

SUWA's first FLPMA claim is already effectively discussed above.  As noted above,

SUWA is unlikely to succeed on the merits of its NEPA claim because there is no corresponding

FLPMA duty here, where the proposed improvement is not "adjacent" to any WSA (or ISA).

Indeed, for this claim, SUWA cites only to *Bull Valley Gorge*, which is explicit on this point.

*See* 551 F. Supp. 3d at 1244 ("Determining whether the project will impact a WSA is the first

analytical step that BLM must undertake in its FLPMA analysis" and noting that "the relevant

standard here is 'impact' to adjacent WSAs").  In *Bull Valley Gorge*, like *Hodel* and *Burr Trail*,

the WSA boundary was defined by the R.S. 2477 right-of-way where the county conducted road

work, i.e., a bridge replacement.  *Id.* at 1243 ("This bridge is mere feet from the WSA."); *see*

*also SUWA v. DOI*, 2021 U.S. Dist. LEXIS 63395, at *4 (the segment of Burr Trail at issue was

"bordered on the north and east by the Mount Pennell [WSA]").  Here, however, Garfield County's proposal to chip seal a of the Hole-in-the-Rock Road is neither bordered by nor adjacent to a WSA.

2.      The Grand Staircase-Escalante National Monument RMP is inapplicable to Garfield County's pre-existing rights

SUWA's second FLPMA claim is based on a fundamental misunderstanding of the cited Resource Management Plan (RMP).  SUWA is correct that the RMP has a provision (TTM-007) relevant to improvements to the Hole-in-the-Rock Road.  *See* Motion at 20.  But SUWA misunderstands the effect and applicability of this provision.  The RMP and the cited provision were written when Garfield County's and the State of Utah's claim to the Hole-in-the-Rock Road was unadjudicated.  And the provision applies in that context.  In other words, even without any R.S. 2477 rights, the RMP contemplates potentially allowing improvements to the Hole-in-the-Rock Road under the provisions of TTM-007.  But the RMP also recognizes the possibility of adjudicated R.S. 2477 rights-of-way.  "If it is determined that the State or counties possess a valid existing R.S. 2477 ROW . . . the management actions in this RMP are subject to that ROW."  GSENM RMP at 1-6.  *Accord* 43 U.S.C. § 1701(a) note ("Nothing in this Act, or in any amendment made by this Act . . . , shall be construed as terminating any valid lease, permit, patent, right-of-way, or other land use right or authorization existing on the date of approval of this Act . . . .").  And, as SUWA recognizes, title to the Hole-in-the-Rock Road has already been adjudicated.  *See* Motion at 7.  Thus, TTM-007 does not apply here.  Rather, the consultation process for improving an adjudicated R.S. 2477 right-of-way is dictated by *SUWA v. BLM*, and there is no dispute that this process was followed by Garfield County and BLM.  *See, e.g.*, Pl.'s Mot. to Stay Proceedings (Dkt. No. 37) at 4-5; Pl.'s Notice of Suppl. Evidence in Supp. of Emergency Mot. for a Status Conference (Dkt. No. 52-1), Ex. 1.

13

**II.    The Other *Winter* Factors Also Do Not Support an Injunction**

SUWA's motion should also be denied because they fail to show that they are likely to suffer irreparable harm in the absence of the requested injunction, or that the balance of the equities tip in their favor.

> A.    SUWA Cannot Establish That It is Likely to Suffer Irreparable Harm in the Absence of the Requested Preliminary Relief

The only relief SUWA requests in its motion for a PI/TRO is to "enjoin[] the [BLM's] Reasonable and Necessary Determination" pending a ruling on the merits.  *See* Motion at 1, 28. But the harm SUWA has alleged flows entirely from the chip-seal project itself.  SUWA contends that the "[t]he immediate and ongoing damage to protected wilderness-quality lands and monument objects in a national monument resulting *from chip sealing* is precisely the type of irreparable harm that courts routinely enjoin."  Motion at 21 (emphasis added).  And they contend that "SUWA's and its members' environmental and aesthetic interests will be irreparably harmed if the Road is chip sealed because doing so will cause long-term damage to the character of the Road and surrounding wilderness-quality lands."  *Id.* at 22.  Enjoining BLM's determination would not address any of these harms because it would have no effect on the County, who is the project proponent.  As explained above, BLM did not authorize any activity, but instead simply prepared an internal, non-binding determination, consistent with the consultation obligation under *SUWA v. BLM,* documenting that: the County had an adjudicated R.S. 2477 claim; the chip sealing activity fell within the scope of the County's right-of-way; and it was reasonable and necessary.

Even if an order enjoining BLM's May 7, 2026 Letter could somehow operate to stop the County's work, however, BLM understands that the chip sealing project that was the subject of the completed consultation has already been completed.  *See, e.g.,* Motion at 2-3 (SUWA noting

that "Garfield County . . . has already begun to improve the surface of the Road from dirt and gravel to chip seal" and that "the chip sealing[] will be completed before the Court can hear and resolve the merits of SUWA's Amended and Supplemental Complaint"); Pl.'s Motion for Expedited Briefing (Dkt. No. 63) at 2-3 (SUWA alleging "[t]hat chip sealing . . . will be complete or nearly complete before the PI Motion can be addressed").  Thus, even assuming SUWA could somehow show that BLM's May 7, 2026 Letter is the basis of the harm it alleges, an injunction from the Court "enjoining" that determination would not redress their alleged harm.

To the extent SUWA also expresses some concern that Garfield County may be looking to undertake improvements other than the chip sealing project, *see, e.g.*, Motion at 7 (discussing other "planned" or "inten[ded]" improvements), those arguments fail to satisfy its burden to show imminent irreparable harm because they are irrelevant to the claims at issue here.  SUWA has challenged a BLM "Determination" that pertains only to the proposed chip-seal project, and thus only that "Determination" is before the Court.  To the extent the County also hopes to undertake other improvements to the Hole-in-the-Rock Road, any challenge to the adequacy of the corresponding consultation process would be premature.  While BLM is under a duty to engage in good faith consultation with holders of R.S. 2477 rights-of-way, it does not have any duty to initiate consultation.  *See, e.g., SUWA v. BLM*, 425 F.3d at 748; *Kane County (2)*, 2024 WL 3760024, at *17.  That duty lies with the right-of-way holder.  Nor does BLM have any duty to consult over past or completed road work.  Instead, BLM has discretion to initiate enforcement actions if, for example, the right-of-way holder has failed to comply with its duty to consult.

B.     The Balance of Equities Does Not Favor SUWA, and an Injunction is Not in the Public Interest

SUWA also fails to demonstrate that a preliminary injunction would serve the public interest. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). In considering the balance of equities between the parties, courts traditionally "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences" that would issue from an injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Where, as here, an injunction is sought against the government, these inquiries largely merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). "[When] an injunction is asked [for] which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger*, 456 U.S. at 312-13 (citation omitted). Thus, a court may deny injunctive relief even when a plaintiff has demonstrated a likelihood of success on the merits and that it would suffer immediate irreparable harm, neither of which is true in this case.

Here, SUWA acknowledges that BLM has engaged in consultation, as required, once initiated by Garfield County for its proposed chip seal improvement. While SUWA also alleges that BLM improperly completed that consultation, because it has not yet completed asserted requirements under NEPA and FLPMA, that is simply a merits argument. And, as discussed above, SUWA is unlikely to succeed on the merits.

The United States, by contrast has an interest in timely completing a consultation, once properly initiated. Indeed, it has a duty to do so. *See, e.g., SUWA v. BLM*, 425 F.3d at 748; *Kane County (2)*, 2024 WL 3760024, at *17. This case law also suggests that this is in the public

16

interest.  For these reasons, the balance of equities and public interest factors weigh against

SUWA's Motion.


RESPECTFULLY SUBMITTED this 28th day of May, 2026.

ADAM R. F. GUSTAFSON
Principal Deputy Assistant Attorney General

/s/ Joseph H. Kim
JOSEPH H. KIM, Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0207

*Attorneys for the United States*

Of Counsel:
Michael D. Smith
Office of the Solicitor
Elizabeth A. Schulte
Office of the Regional Solicitor
U.S. Department of the Interior