ADAM R. F. GUSTAFSON, Principal Deputy Assistant Attorney General
JOSEPH H. KIM, Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0207

Attorneys for Defendant United States of America

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, | **DECLARATION OF ADÉ K. NELSON** |
| Plaintiff, | |
| v. | Case No. 2:26-cv-00096-AMA-PK |
| U.S. BUREAU OF LAND MANAGEMENT, and the U.S. DEPARTMENT OF THE INTERIOR, | Judge Ann Marie McIff Allen |
| | Magistrate Judge Paul Kohler |
| Defendants, | |
| and | |
| GARFIELD COUNTY, UTAH, et al., | |
| Proposed Intervenor-Defendants. | |

---

I, Adé K. Nelson, in accordance with 28 U.S.C. § 1746, declare as follows:

1. I am the Grand Staircase-Escalante National Monument Manager (Monument Manager) for the Bureau of Land Management (BLM), an agency of the Department of the Interior. I have been in the position of Monument Manager since April 17, 2022. I have been with the BLM since 2020.

2. As the Monument Manager, I am responsible for directing employees assigned to the Monument and coordinating with many other professional staff in the management of approximately 1.87 million acres of federal public land and associated resources within Grand Staircase-Escalante National Monument (GSENM or Monument) in the State of Utah. My responsibilities include oversight of resource management, implementation of the Monument's land use plan, and serving as the primary point of contact for project coordination with state and local governments, as well as other federal agencies, and tribal governments, to address many complex resource management issues.

3. In my role as the Monument Manager, I am the primary point of contact with the County and have served as the lead on behalf of BLM during the recent consultation process relating to Garfield County's proposed chip sealing project on the Hole-in-the-Rock Road.

4. After considerable internal review and evaluation, on May 7, 2026, BLM sent the County its "Reasonable and Necessary Determination," as required, recognizing that the chip sealing project qualified as an improvement that was reasonable and necessary and within the scope of the adjudicated RS2477 right of way.

5. Since SUWA filed this litigation, I have reviewed the Plaintiff's Amended and Supplemental Complaint and Motion for Temporary Restraining Order and Preliminary Injunction concerning the BLM's reasonable and necessary determination on the proposed chip sealing of a portion of Hole-in-the-Rock (HITR) Road (G9000) and pertinent agency documents.

6. In support of BLM's Reasonable and Necessary Determination, on May 7, 2026, I provided a memo to Harry Barber, BLM District Manager, Paria River District, detailing why the proposed chip sealing project was reasonable and necessary and within the scope of Garfield County's R.S. 2477 right-of-way for the HITR Road. Attached to this memo was a copy of BLM's impacts analysis, which concluded, among other things, that the chip sealing project would not cause unnecessary or undue degradation. A true and correct copy of this memo, which includes the impacts analysis, is attached hereto as Exh. 1.

7. In addition, prior to finalizing its Determination, BLM also prepared an internal memo detailing why NEPA, among other statutes, and the RMP provisions were inapplicable to the proposed HITR improvements. A true and correct copy of that internal memo is attached hereto as Exh. 2.

8. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of May 2026.

_____

Adé K. Nelson
Monument Manager
Grand Staircase-Escalante National Monument
Bureau of Land Management

# Exhibit 1



# United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Paria River District
Grand Staircase-Escalante National Monument
669 S. Highway 89A
Kanab, UT  84741

May 7, 2026

In Reply Refer To:
2800 (UT-P01)

Memorandum

To:        Harry Barber, District Manager, Paria River District

From:      Adé Nelson, Monument Manager, Grand Staircase-Escalante National Monument

Subject:   Garfield County's Proposed Chip Seal Project for Hole-in-the-Rock Road

Garfield County (County) and the State of Utah hold an adjudicated Revised Statute (R.S.) 2477 right-of-way (ROW) for the Hole-in-the-Rock (HITR) Road, which crosses federal public lands located in Garfield County, Utah.[1] The district court's July 2025 decision quieted title in favor of Garfield County and the State of Utah, however, it reserved any decision regarding the scope of the ROW for future court proceedings.[2] The County, as a valid R.S. 2477 ROW holder, has advised the Bureau of Land Management (BLM) of its proposal to chip seal a natural and gravel surface for an approximately 10-mile segment of the HITR Road beginning at Highway 12 heading southeast to about 2 miles past the Zebra slot canyon trailhead.

This memorandum is intended to document the results of consultation as to the question of whether the County's proposed improvement to the HITR Road is reasonable and necessary. Under Tenth Circuit case law, the holder of an R.S. 2477 ROW crossing public land and the BLM, as the federal land manager of the servient estate, must exercise their respective rights and privileges in the spirit of mutual accommodation.[3] An R.S. 2477 holder is required to consult with the BLM "before making improvements 'beyond mere maintenance' to their rights-of-way."[4] Such consultation affords the BLM an opportunity to satisfy its obligation to evaluate the proposal, i.e., (1) "to determine whether the proposed improvement is reasonable and necessary

---

[1] *Kane Cnty. v. United States*, 2025 U.S. Dist. LEXIS 141248 (D. Utah, July 23, 2025) (consolidated "Memorandum Decision and Order Re: House Rock Valley Road and Hole-in-the-Rock Road").

[2] *Id.* at *9.

[3] Applicable court decisions include *Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988), *Southern Utah Wilderness Alliance (SUWA) v. Bureau of Land Management*, 425 F.3d 735 (10th Cir. 2005), *Kane Cty, Utah v. United States*, 772 F.3d 1205 (10th Cir. 2014) ("*Kane (1)*")*,* and *SUWA v. Dep't of the Interior*, 44 F.4th 1264 (10th Cir. 2022).

[4] *SUWA v. DOI*, 44 F.4th at 1268-69 (quoting *SUWA v. BLM*, 425 F.3d at 748).

INTERIOR REGION 7 • UPPER COLORADO BASIN

COLORADO, NEW MEXICO, UTAH, WYOMING

in light of the traditional uses of the rights of way as of October 21, 1976"; and (2) "to study the 'potential effects' of the improvements, and if needed, to 'formulate alternatives' that protect the land."[5] In this initial step, the BLM assesses information from the ROW holder and other sources to determine whether the nature of the proposed improvement is within the scope of the ROW.[6] If the BLM determines that the proposed improvement is within the scope of the ROW, the BLM examines whether the proposal may impact surrounding BLM-managed public lands or resources and, in particular, considers whether it may impact wilderness study areas (WSAs).[7] If the proposed improvement "will impact a WSA, the agency has the duty under FLPMA . . . to determine whether there are less degrading alternatives, and it has the responsibility to impose an alternative it deems less degrading upon the nonfederal actor."[8] In such a circumstance, the BLM cannot "deny the improvement altogether."[9]

For purposes of this memo, the BLM is evaluating the initial step to determine whether the County's proposed improvement to HITR Road is reasonable and necessary. Because the district court did not adjudicate the scope of HITR Road, this initial step also makes a non-binding determination regarding scope, as it existed in 1976, for the BLM's own purpose of considering the proposed improvement.

**Garfield County's Proposed Improvement to a Portion of HITR Road**

Garfield County proposes to improve the first approximately ten miles of HITR Road from the intersection with Highway 12 heading southeast to about 2 miles past the Zebra slot canyon trailhead. (*See* Attachment). Specifically, Garfield County's proposal seeks to apply a double chip seal surface treatment to this 10-mile segment within the existing roadway prism without expanding the alignment or footprint of the road. The chip sealed surface will be approximately 24 feet in width, but could range from 23 to 26 feet. Garfield County states that all road work will remain within the existing historically disturbed roadway footprint. The process for the double chip seal is expected to take one to two weeks and will consist of:

- Final shaping and compaction of the roadway surface;

---

[5] *Id.* at 1269 (quoting *SUWA v. BLM*, 425 F.3d at 748).

[6] The Tenth Circuit has defined an "improvement" of an R.S. 2477 ROW to include "the widening of the road, the horizontal or vertical alignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts, and other drainage structures, as well as any significant change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any 'improvement,' 'betterment,' or any other change in the nature of the road that may significantly impact [public lands], resources, or values." *SUWA v. BLM*, 425 F.3d at 749 (quoting *United States v. Garfield County*, 122 F. Supp. 2d 1201, 1253 (D. Utah 2000)).

[7] *Sierra Club v. Hodel*, 848 F.2d 1068, 1090-91 (10th Cir. 1988) (BLM has a mandatory obligation under Section 603(c) of the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1782(c), to analyze whether the proposal would cause "unnecessary or undue degradation" (Section 302(b) of FLPMA) to a designated Wilderness Study Area (WSA)); *SUWA v. BLM*, 551 F. Supp. 3d 1226, 1243 (D. Utah 2021) ("[F]or road projects bereft of a WSA, BLM can do very little to alter the project, and therefore, there is no major federal action") (citing *Hodel*, 848 F.2d at 1090, 1091)); *see also SUWA v. BLM*, 2021 U.S. Dist. LEXIS 63395, *30 (D. Utah, Mar. 31, 2021).

[8] *SUWA v. BLM*, 551 F. Supp. 3d at 1243 (quoting *Hodel*, 848 F.2d at 1090-91); *see also SUWA v. BLM*, 2021 U.S. Dist. LEXIS 63395, *30.

[9] *SUWA v. BLM*, 2021 U.S. Dist. LEXIS 63395, *30 (quoting *Hodel*, 848 F.2d at 1090-91).

- Application of a bituminous binder using a distributor truck;
- Placement of uniformly graded aggregate using a chip spreader;
- Rolling to embed aggregate into the binder;
- Application of a second bituminous binder layer;
- Placement of a second aggregate layer; and
- Final rolling and sweeping to remove loose material.

The County indicates that the chip sealing activity would utilize a chip spreader, one or more rollers, a spreader truck, and dump trucks. The loading area would also use a loader and a water truck. Further, all surfacing work would be contained within the existing traveled roadway (currently disturbed area) and loading operations would be conducted in previously disturbed staging areas on both federal and non-federal lands. There may be temporary disturbances in areas where equipment may need to pull off the side of the road or turn around.

Garfield County has explained that chip sealing the 10-mile segment is necessary to address public safety and an increase in traffic. In particular, it asserts an exponential increase in passenger vehicle traffic traveling to various points in the Grand Staircase-Escalante National Monument (and to the HITR historic site at the end of the road) is causing unsafe conditions on the road – including fugitive dust, washboarding, potholes, rutting, and washouts.[10] In turn, these increasingly unsafe conditions have led to vehicles getting stuck or damaged and also have created an unsustainable level of maintenance to safely reduce these negative road conditions.[11] The frequency of weather events together with the increase in vehicle traffic along HITR Road has exacerbated the unsafe travel conditions on the road. Garfield County's proposal to chip seal the first ten miles of HITR Road will make for easier and safer travel by preserving the road base and drainage, reducing long-term erosion, improving surface stability and driving safety, reducing the frequency of needed maintenance of the road, and reducing fugitive dust.[12]

For several years, Garfield County has communicated to BLM the increasing need to address the following safety threats to drivers along HITR Road: damage to road base materials, steep side slopes, varying road widths, washboard surfaces, inadequate wash crossings, and erosion damage.[13]

---

[10] Letter from David Dodds, Public Works Director, Garfield County to Adé Nelson, Grand Staircase-Escalante National Monument Manager, BLM (July 29, 2022).

[11] Letter from Jay Brooks, Road Crew Foreman, Garfield County to Tom Heinlein, Acting State Director, BLM Utah State Office (Mar. 3, 2026).

[12] Project Description, G9000 Hole-in-the-Rock Road, Garfield County (Mar. 3, 2026).

[13] Letter from David Dodds, Public Works Director, Garfield County to Adé Nelson, Grand Staircase-Escalante National Monument Manager, BLM (May 3, 2022). Garfield County also identified in a preliminary Environmental Assessment provided to BLM for a 2022 road work proposal on HITR Road that the road presents significant safety hazards due to its variable side slopes, inconsistent road surface, and inadequate drainage. Many roadside slopes are steep with little to no recovery area, increasing the risk of crashes—especially near curves, intersections, and areas with washboard or loose surface material. The roadway's uneven and unstable surface further contributes to loss-of-control incidents. Drainage problems compound these issues. HITR Road crosses numerous ephemeral washes, but many existing culverts within Garfield County are undersized and fail to carry stormwater effectively. During storm events, this leads to flooding, washouts, erosion, and displaced culverts. Travelers are occasionally stranded and require rescue. Given the region's extreme weather and sudden desert storms, proper drainage is essential for maintaining safe travel conditions.

4

Garfield County's road crew foreman affirms the "severe public safety crisis" of the current condition of HITR Road.[14] Due to these conditions, every significant rain or snow event produces washouts, deep mud, and road failures that regularly trap visitors on HITR Road.[15] The Garfield County Road Department repeatedly is required to rescue these visitors, approximately 25 times per year.[16] The road crew foreman stated that keeping HITR Road "minimally passable" requires a "disproportionate amount of time and resources."[17] Additionally, the Garfield County Engineer specified the road conditions on HITR Road require grading of the road 20 times every summer and when the road is graded it only maintains an "acceptable condition" for a few days.[18]

**The BLM's Process of Reviewing Garfield County's Proposed Improvement**

At multiple times over numerous years, Garfield County has proposed chip sealing portions of HITR Road. After receiving Garfield County's January 27, 2026, proposal, the BLM sought additional information about the project from Garfield County. The information collected and reviewed by the BLM for the proposed improvement included all of the information and data provided by Garfield County; historic information about HITR Road; information received during the Bellwether discovery period and trial; and historic and current aerial photography of HITR Road.

**Reasonable and Necessary Standard**

The standard for determining whether a proposed improvement to an R.S. 2477 ROW is within the scope of that ROW is whether it is both reasonable and necessary in light of the traditional uses existing as of October 21, 1976. Improvements may be permissible (i.e., considered within the rights of the holder) to accommodate the traditional uses, including as reasonable and necessary to ensure safe travel and, "as necessary to meet the exigencies of increased travel."[19] The BLM is evaluating the facts and information relating to HITR Road and the proposed improvement to determine:

(1) Whether the chosen design and form are "reasonable" to the meet the described need of the proposed improvement to HITR Road, and

(2) Whether the information demonstrates the proposed improvement is "necessary" to allow for the traditional users to continue using HITR Road. This question considers not only an increase of the traditional uses, but whether the increases have a corresponding impact to travel safety and whether the alleged risk to travel safety is significant enough to require the proposed change to the existing road conditions. The need to address safety

---

[14] Letter from Jay Brooks, Road Crew Foreman, Garfield County to Tom Heinlein, Acting State Director, BLM Utah State Office (Mar. 3, 2026).

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] Email from Brian Bremner, Garfield County Engineer to Jerry Taylor, Garfield County Commissioner (Nov. 10, 2020).

[19] *SUWA v. BLM*, 425 F.3d at 746.

may be due to an increase in use, deterioration of the condition of the road, prevention of detrimental impacts to the environment, or some combination thereof.[20]

Consideration of these questions relies on certain facts and/or assumptions, including: (a) the traditional uses of the road in 1976; (b) the scope (i.e., width of travel surface, the disturbed width, and other features) of the road in 1976; and (c) the changes to the road between 1976 and present. These facts and assumptions provide context for the BLM to assess whether the proposed improvement is within the scope of the ROW that was established by applicable traditional uses in 1976.

## RATIONALE FOR THE DETERMINATION

Based on the information described above, the BLM primarily relied on the following facts and assumptions to determine whether Garfield County's proposed improvement is within the scope[21] of its ROW for HITR Road.

### Relevant Factual Findings and Assumptions

1. Traditional Uses: The information reviewed provides evidence of various pre-1976 traditional uses including sight-seeing, recreation, and access to other roads. Numerous witnesses testified to sight-seeing on the road, specifically to Dance Hall Rock and the HITR historic site.[22] Multiple witnesses participated in celebrations and commemorations of the HITR pioneer trek or to learn about the history.[23] Witnesses also used HITR Road for recreation, such as Easter trips, camping, hiking, and scouting.[24] Several witnesses described accessing other roads that were only accessible from HITR Road.[25] One witness also guided others to view arches and artifacts that could be accessed from HITR Road.[26] The United States has acknowledged the traditional purposes of this road to visit sites such as the HITR historic site and Dance Hall Rock.[27]

2. Widths: BLM's analysis of aerial imagery from 1974 and 2021 estimates the width of the surface of this 10-mile segment as an average of approximately 24-feet and 27-feet wide,

---

[20] The question of whether the proposed improvement is "necessary" is a separate question from what is "reasonable." *Kane (1)*, 772 F.3d at 1223-24.

[21] The factual findings and assumptions in this section serves as the BLM's non-binding determination regarding the scope of HITR Road because, as noted above, the district court adjudicated title to HITR Road but not scope. As acknowledged in *SUWA v. BLM*, this scope determination is only for the BLM's own purpose of considering this proposed improvement and is narrowly focused on the proposed chip sealing of this 10-mile segment and does not consider other aspects of scope outside of this specific proposed improvement.

[22] *Kane Cty. v. United States*, Plaintiffs' Proposed Findings of Fact and Conclusions of Law, Case No. 2:10-cv-01073 (D. Utah July 3, 2020) (ECF No. 659), ¶¶ 1031, 1041, 1054, 1055, 1057, 1068, 1073, 1076, and 1088.

[23] *Id*. at ¶¶ 1039, 1041, 1068, and 1073.

[24] *Id*. at ¶¶ 1039, 1051, 1060, 1074, 1080, 1082, 1087, and 1089.

[25] *Id*. at ¶¶ 1040, 1042, 1047, and 1052.

[26] *Id*. at ¶ 1035.

[27] *Kane Cty. v. United States*, Defendant United States' Proposed Findings of Fact and Conclusions of Law, Case No. 2:10-cv-01073 (D. Utah October 23, 2020) (ECF No. 677), ¶ 441.

6

respectively.[28] In 2015, Garfield County identified the width of HITR Road as 26-feet, plus ditches.[29]

3. Surface conditions and road features: HITR Road is a two-lane, compacted natural surface and gravel roadway. "Under the existing maintenance routine, the road is regularly graded by Garfield County to repair rutting and washboard surfaces. Frequent grading has contributed to downcutting, channelization, and widening of the roadway at several locations within the project area."[30] There are multiple culverts and other drainage features along this 10-mile segment. However, the BLM has not specifically evaluated any of these features and will assume only for purposes of this determination that any existing features are within the scope of Garfield County's ROW because the proposed improvement does not hinge on any road features. BLM's analysis of aerial imagery for this 10-mile segment identified thirteen places where there were minor realignments of the road in the 2021 imagery as compared to the 1974 imagery. Other than the realignment of the HITR Road where it intersects with Highway 12, these realignments reflected minor straightening of the road over time. Such realignments appear to be within Garfield County's historic maintenance of the road.

4. Traffic data: The BLM's traffic data indicates that the volume of traffic along HITR Road has increased in recent years from 58,430 visits (160 average daily traffic [ADT]) at Highway 12 intersection with HITR Road from October 1, 2011 to September 30, 2012, to 100,060 visits (274 ADT) from October 1, 2023 to September 30, 2024, which has increased the maintenance needs on the road. Data from Garfield County indicates there were 87,444 visits (594 ADT) from April 30, 2021, to September 23, 2021.[31, 32]

**Reasonable & Necessary Determination**

After considering these facts, the BLM determines that Garfield County's chip seal project is both reasonable *and* necessary to ensure safe travel and meet the exigencies of increased use and travel for the traditional uses and, thus, within the scope of its R.S. 2477 ROW for HITR Road.

The project, as proposed, is reasonable because it is of an appropriate scale to address Garfield County's safety concerns and desire to lower the maintenance expenditures along this section of HITR Road. According to the Federal Highway Administration, "serious consideration" should be given to paving, which includes chip sealing, a road when the ADT ranges from 50 to 500

---

[28] In 1974, where width measurements were taken, the minimum width measured was 17.2 feet and the maximum was 32 feet. In 2021, where width measurements were taken, the minimum width measured was 19.1 feet and the maximum was 42.7 feet.

[29] Hole in the Rock Road; Garfield County, Project No. STP-1862(2)15 – Team Meeting Notes. January 15, 2015.

[30] Preliminary Environmental Assessment (p. 4) provided to BLM by Garfield County for a 2022 road work proposal on HITR Road.

[31] Letter from David Dodds, Public Works Director, Garfield County to Adé Nelson, Grand Staircase-Escalante National Monument Manager, BLM (May 3, 2022).

[32] Garfield County's ADT is higher than the BLM's likely because Garfield County's data represents only the busiest visitation months, whereas the BLM's ADT is calculated using data from the entire year.

vehicles.[33] The ADT for HITR Road has reached between 274 and 594 and, based on recent trends, is likely to continue increasing. Most of this increase in traffic occurred after the designation of the Grand Staircase-Escalante National Monument and, thus, can be attributed to increases in recreation and sight-seeing. Garfield County has also determined that over the next 20 years, chip sealing the road will reduce maintenance costs and allow the County to maintain the road to a consistent, acceptable standard rather than performing reactive maintenance at greater intervals and with increasing and unsustainable County expense.[34]

Garfield County's proposal would chip seal approximately 24-feet in width, which is within the existing disturbed roadway and would be completed without any widening, realignment, or expansion beyond the historical travel surface. Based on the analysis of aerial imagery from 1974 and 2021, the disturbed width of this 10-mile segment was an average of approximately 24-feet and 27-feet wide, respectively. As such, the BLM determines the proposal to chip seal is reasonable because it would not change the alignment or increase the currently disturbed area of the 10-mile segment of the HITR Road and appears to be of a reasonable scale and size commensurate with Garfield County's stated need.

The BLM also determines that Garfield County's proposed improvement is necessary in light of the traditional uses of the ROW. The inconsistent surface and frequent washouts along HITR Road are creating serious safety issues for the public users of this road. Given the exponential increase of visitor traffic along this road for recreation and sight-seeing, it is no longer possible for Garfield County to maintain the road frequently enough in the current condition to keep it consistently safe for the public. Garfield County estimates it currently costs roughly $60,000 per year to maintain this 10-mile segment of HITR Road in a degraded condition.[35] Garfield County asserts it is "not able to maintain [HITR] Road to an all-weather, standard condition as a gravel facility, even with continued annual spending."[36] If it is not safe to travel the road then this will prevent the traditional uses of the road from continuing. If HITR Road is chip sealed, it will significantly reduce fugitive dust and eliminate washboarding, potholes, rutting, and washouts essentially eliminating most safety issues along the road, all at a lower cost per year for Garfield County.

Based on the foregoing, it is my determination that Garfield County's proposed 10-mile chip seal project is reasonable *and* necessary and, thus, within the scope of its R.S. 2477 ROW for the HITR Road. Consistent with this determination, the BLM completed the second step of examining whether the proposal may adversely affect surrounding BLM-managed public lands or resources, which is attached.

Attachments
    Map
    Impacts Analysis

---

[33] Skorseth, K., & Selim, A. A. (n.d.). *Gravel Roads: Maintenance and Design Manual*. U.S. Department of Transportation, Federal Highway Administration.

[34] Email from David Dodds, Public Works Director, Garfield County to Mark Boshell, Deputy Director, Policy, Utah Public Lands Policy Coordinating Office (Feb. 20, 2026).

[35] *Id*.

[36] *Id*.

Map



Garfield County Chip Seal Improvement



U.S. Department of the Interior
Bureau of Land Management

**May 2026**

# Hole-in-the-Rock Road Chip Sealing
## Impacts Analysis



**Paria River District/Grand Staircase-Escalante National Monument**
**669 S. Hwy 89A**
**Kanab, Utah 84741**
**(435) 644-1200**

## CHAPTER 1.INTRODUCTION

Garfield County, Utah ("Garfield County" or "County") and the State of Utah hold an adjudicated right-of-way (ROW) pursuant to Revised Statute (R.S.) 2477 for the Hole-in-the-Rock (HITR) Road[1] and propose to improve a portion of the road crossing over public lands. Specifically, Garfield County proposes to upgrade and chip seal the first approximately 10 miles of HITR Road from the intersection with Highway 12 heading southeast to about 2 miles past the Zebra slot canyon trailhead (see the project map in Appendix A). As examined in greater detail below, Garfield County believes these upgrades will increase safety for travelers on the road.

Under Tenth Circuit case law, the holder of an R.S. 2477 ROW crossing public land and the BLM, as the federal land manager of the servient estate, must exercise their respective rights and privileges in the spirit of mutual accommodation.[2] With respect to proposed improvements,[3] an R.S. 2477 ROW holder is required to consult with the BLM "before making improvements 'beyond mere maintenance' to their rights-of-way."[4] Such consultation affords the BLM an opportunity to satisfy its obligation to evaluate the proposal, requiring two steps. First, the BLM determines whether the proposed improvement is within the scope of the holder's ROW (i.e., reasonable and necessary in light of the traditional uses of the right-of-way as of October 21, 1976). This determination relates only to the question of what right the holder has or does not have relative to the proposed improvement. Second, if the BLM determines the proposed improvement is within the scope of the holder's ROW, then the BLM examines whether the proposal has the potential to impact surrounding BLM-managed public lands or resources and, in particular, considers whether it may result in unnecessary or undue degradation to wilderness study areas (WSAs).

This impact analysis documents the BLM's evaluation of the potential impacts of Garfield County's proposed improvement to HITR Road consistent with the consultation process.[5]

The BLM has determined that the County's proposed chip seal project is reasonable and necessary and, thus, within the scope of the County's ROW for HITR Road. As documented

---

[1] *Kane Cnty. v. United States*, 2025 U.S. Dist. LEXIS 141248 (D. Utah, July 23, 2025) (consolidated "Memorandum Decision and Order Re: House Rock Valley Road and Hole-in-the-Rock Road").

[2] Applicable court decisions include *Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988), *Southern Utah Wilderness Alliance (SUWA) v. Bureau of Land Management*, 425 F.3d 735 (10th Cir. 2005), *Kane Cty, Utah v. United States*, 772 F.3d 1205 (10th Cir. 2014) ("*Kane (1)*")*,* and *SUWA v. Dep't of the Interior*, 44 F.4th 1264 (10th Cir. 2022).

[3] The Tenth Circuit has defined an "improvement" of an R.S. 2477 ROW to include "the widening of the road, the horizontal or vertical alignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts, and other drainage structures, as well as any significant change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any 'improvement,' 'betterment,' or any other change in the nature of the road that may significantly impact [public lands], resources, or values." *SUWA v. BLM*, 425 F.3d at 749 (quoting *United States v. Garfield County*, 122 F. Supp. 2d 1201, 1253 (D. Utah 2000)).

[4] *SUWA v. DOI*, 44 F.4th at 1268-69 (quoting *SUWA v. BLM*, 425 F.3d at 748).

[5] Under Tenth Circuit case law, the holder of an R.S. 2477 ROW does not need to obtain a BLM authorization to undertake a proposed improvement in a situation like the present in which the BLM has concluded that the improvement is within the scope of the ROW. As documented in this analysis, there are no impacts to WSAs and therefore no obligations under the Federal Land Policy and Management Act (FLPMA), i.e., no duty to prevent unnecessary or undue degradation. There is also no Federal action that triggers the requirements of the National Environmental Policy Act (NEPA).

*HITR Road Chip Sealing*　　　　　　　　　　　　　　　　　　　　　　　　　*May 2026*

below, the BLM has evaluated the potential impacts of the proposed improvement and determined that it will not cause impacts to public lands or resources. In particular, the proposed improvement would not impact designated WSAs and thus would not cause unnecessary or undue degradation. Consequently, the BLM does not need to propose any alternatives to Garfield County.

## 1.1.    Background

HITR Road is an adjudicated R.S. 2477 ROW in Garfield County, but the scope of this ROW remains undetermined. In 2011, Garfield County filed a lawsuit against the United States seeking to quiet title to HITR Road, among other claimed R.S. 2477 ROWs. In July 2025, the district court adjudicated title of an R.S. 2477 ROW for HITR Road in favor of Garfield County and the State of Utah.[6] The district court's July 2025 decision quieting title, however, reserved any decision regarding the scope of the ROW for future court proceedings.[7]

HITR Road begins at its northern intersection with Highway 12, outside the town of Escalante, and proceeds southeast for approximately 62 miles to its terminus at the HITR historic site within Glen Canyon National Recreation Area. HITR Road is a compacted natural surface and gravel roadway and is wide enough for two cars to pass without pulling over. Approximately 16.5 miles of the road are in Garfield County, with the remainder in Kane County. The proposed project is on the first approximately 10 miles of the road. HITR Road has long been in existence with ties to the 1879-1880 famed HITR pioneer expedition in which members of The Church of Jesus Christ of Latter-day Saints established a more direct route across the Colorado River to the southeastern corner of Utah to settle at Fort Bluff along the San Juan River. However, the current road does not precisely follow the same route as the historic HITR trail. This pioneer journey is noted in the GSENM Establishment Proclamation: "The monument has a long and dignified human history: it is a place where one can see how nature shapes human endeavors in the American West… Early Mormon pioneers left many historic objects…and built and traversed the renowned Hole-in-the-Rock Trail as part of their epic colonization efforts." Garfield County has maintained the road as a Class B road since at least 1938, as shown on Garfield County's general highway maps.[8]

Because the question of scope is unresolved at this point, the BLM is relying on various sources of information to examine the proposed improvement to HITR Road, including all of the information and data provided by Garfield County; historic information about the HITR Road; information the BLM received during the Bellwether discovery period and trial; and, historic and current aerial photography of HITR Road. The evidence considered demonstrates qualifying pre-1976 traditional uses, including sight-seeing, recreation, and access to other roads. The BLM's analysis of aerial imagery from 1974 and 2021 estimates the width of the surface of this 10-mile segment as an average of approximately 24-feet and 27-feet wide, respectively.

As described in Chapter 2, Garfield County seeks to double-chip seal the first approximately 10 miles of HITR Road from Highway 12. Garfield County points to an exponential increase in passenger vehicle traffic traveling to various points in the Grand Staircase-Escalante National

---

[6] *Kane Cnty. v. United States*, 2025 U.S. Dist. LEXIS 141248 (D. Utah, July 23, 2025) (consolidated "Memorandum Decision and Order Re: House Rock Valley Road and Hole-in-the-Rock Road")
[7] *Id.* at *9.
[8] Garfield County, General Highway Map, Approved Sept. 15, 1938, sheet 3 of 5.

*HITR Road Chip Sealing*                                                                 *May 2026*

Monument (and to the HITR historic site at the end of the road) as causing unsafe conditions on the road – including fugitive dust, washboarding, potholes, rutting, and washouts.[9] In turn, the County describes increased concern about safety due to dust reducing visibility and washboarding reducing driver control and making it unsafe for the volume of traffic on this road.[10] These increasingly unsafe conditions have led to vehicles getting stuck or damaged and also have created an unsustainable level of maintenance to safely reduce these negative road conditions. The BLM's traffic count data shows an increase from 160 to 274 average daily traffic (ADT) between 2012 to 2024. Data from Garfield County indicates there were 87,444 visits (594 ADT) from April 30, 2021, to September 23, 2021.[11]

The frequency of weather events together with the increase in vehicle traffic along HITR Road has exacerbated the unsafe travel conditions on the road. Garfield County's proposal to double chip seal the first 10 miles of HITR Road will make for easier and safer travel by preserving the road base and drainage, reducing long-term erosion, improving surface stability and driving safety, reducing the frequency of needed maintenance of the road, and reducing fugitive dust.[12]

### 1.2.    Issues

The BLM received the most recent notice from Garfield County of plans to double-chip seal approximately 10 miles of HITR Road on January 27, 2026. The project was presented to the interdisciplinary (ID) team in March 2026; the IDT checklist is included in Section 3.1.

The BLM's first step in completing this assessment process regarding the County's chip seal project on the 10-mile segment of HITR Road was to assemble an ID team to conduct internal scoping to identify what surrounding public lands or resources might be affected by the project. As a result of the internal scoping, the BLM determined that it is unlikely that any surrounding public lands or resources will be impacted by the project. Section 3.1 lists the resources considered in the ID team's internal scoping and its determinations with respect to such resources.

### CHAPTER 2. PROPOSED IMPROVEMENT

Garfield County's proposed improvements would upgrade and double chip seal the first approximately 10 miles of HITR Road from the intersection with Highway 12 to about 2 miles past the Zebra slot canyon trailhead. The BLM has determined that the proposed improvement is reasonable and necessary and, thus, within the scope of Garfield County's adjudicated R.S. 2477 ROW. The existing dirt road would be upgraded and double chip sealed to approximately 24 feet in width, but may range from 23 to 26 feet. The chip seal treatment will be applied within the existing roadway prism and will not expand the footprint of the road nor change the alignment. The process for the double chip seal is expected to take one to two weeks and will consist of:

- Final shaping and compaction of the roadway surface;
- Application of a bituminous binder using a distributor truck;

---

[9] Letter from David Dodds, Public Works Director, Garfield County to Adé Nelson, Grand Staircase-Escalante National Monument Manager, BLM (July 29, 2022).
[10] *Id.*
[11] Letter from David Dodds, Public Works Director, Garfield County to Adé Nelson, Grand Staircase-Escalante National Monument Manager, BLM (May 3, 2022).
[12] Project Description, G9000 Hole-in-the-Rock Road, Garfield County (Mar. 3, 2026).

*HITR Road Chip Sealing*                                                          *May 2026*

- Placement of uniformly graded aggregate using a chip spreader;
- Rolling to embed aggregate into the binder;
- Application of second bituminous binder layer;
- Placement of a second aggregate layer; and
- Final rolling and sweeping to remove loose material.

The County indicated that the chip sealing activity would utilize a chip spreader, one or more rollers, a spreader truck, and dump trucks. The loading area would also use a loader and a water truck. Further, all surfacing work would be contained within the existing traveled roadway (currently disturbed area). The County also indicated that they anticipate utilizing two primary staging areas for chip seal operations. The main staging location for chips and project equipment is situated on private property just off Cedar Wash Road. This area would serve as the central point for equipment, parking and material storage throughout the duration of the work. A secondary location for staging vehicles is anticipated in the existing disturbed area along HITR Road, this area is on BLM-managed lands and is often used as a parking area by the public for access to Big Horn Canyon. There may be temporary disturbances in areas where equipment may need to pull off the side of the road or turn around.

The speed limit for this section of road would be 35 mph, which allows for the smallest clear zone values.

## CHAPTER 3. IMPACTS TO PUBLIC LANDS AND RESOURCES

This chapter discloses the ID team's assessment of any potential impacts of the proposed improvement. No issues were identified that would require a detailed analysis of potential impacts. The BLM determined that it is unlikely that any surrounding public lands or resources will be impacted by the project, and thus, would not result in any unnecessary or undue degradation.

### 3.1.    ID Team Checklist

**SPECIALIST DETERMINATIONS:**

NP = not present in the area impacted by the proposed improvement
NI = present, but not impacted to a degree that detailed analysis is required, project has been designed to remove impacts; project tiers to existing analysis that analyzes the effects of the resource already and is within the bounds of the analysis
PI = present with relevant impacts that need to be analyzed in detail

This checklist documents the BLM's analysis of effects to federal resources from the proposed improvement occurring within the existing road prism; it does not grant approval, denial, or modification of the County's proposal.

### RESOURCES AND USES CONSIDERED

| Resource | Determination | Rationale for Determination | Name and Title of Assigned Specialist | Date |
|---|---|---|---|---|
| | | **RESOURCES** | | |
| Air Quality | NI | Project activities such as surface preparation, vehicle travel, machinery, and chip seal application would generate short-term fugitive dust (PM10) and exhaust emissions (primarily NOx, PM2.5, CO). These construction-related emissions | Erik Vernon/Kati Chachere | 3/24/26 |

*HITR Road Chip Sealing*                                                    *May 2026*

4

**RESOURCES AND USES CONSIDERED**

| Resource | Determi-nation | Rationale for Determination | Name and Title of Assigned Specialist | Date |
|---|---|---|---|---|
| | | would be localized, temporary, and minor relative to existing emissions in the county and likely have a negligible impact (see 2025 BLM Air Monitoring Report for county level emissions). Emissions would also occur from vehicles traveling over the chip seal and lofting dust (PM10 and PM2.5) into the air, but dust emissions will be less on a chip sealed road than on current compact gravel/dirt road. Chip sealing will have a long-term benefit by reducing local dust emissions from vehicles travel over this section of the road. | | |
| Greenhouse Gas Emissions | NI | Construction activities would result in greenhouse gas emissions from equipment and vehicle use. The scale and duration of these emissions are limited, and the project would not meaningfully contribute to regional or global GHG emissions and atmospheric concentrations. | Erik Vernon/Kati Chachere | 3/24/26 |
| Cultural Heritage – Native American Religious Concerns | NI | The BLM is not aware of any Native American religious concerns. No cultural heritage or Native American religious concerns were identified through past consultation efforts. The BLM has no control over Garfield County's proposal, i.e., it is not developing federal policies nor is it making any decision, and thus no responsibility to conduct consultation with tribes or to conduct government-to-government consultation. See BLM Manual 1780 Tribal Relations at p. 1-4 through 1-7 (consultation generally required as part of compliance with various laws, e,g., NEPA and NHPA, for BLM policy, rules, or decisions). | Caitlyn McAllister, Archaeologist | 4/1/2026 |
| Cultural Heritage – Traditional Cultural Properties (TCP) | NP | There are no TCPs within the boundaries of the GSENM. However, the Hole-in-the-Rock Trail (42KA4180/42GA3795) is currently going through the nomination phase to be designated a TCP. The chip sealing of the HITR Road will not impact the viability of the nomination for the trail. If anything, the improvement of the road will allow for easier access for members of the Church of Jesus Christ of Latter-Day Saints and others to connect with the HITR Trail and their ancestors and pioneers who blazed the trail. | Caitlyn McAllister, Archaeologist | 4/1/2026 |
| Cultural Resources | NI | A literature review was conducted to search for historic properties that are eligible for the National Register of Historic Places (NRHP). This search consisted of the Utah State Historic Preservation Office Cultural Resource Online GIS Database, the GSENM Cultural Resource Inventory GIS Database, the GSENM IMACS Database, and digital and paper files on site at the Paria River District office for any archaeological sites within 30 meters of the HITR Road's first 10 miles. Per Conducting *Cultural Resource Fieldwork Bureau of Land Management - Utah* guidelines, historic properties are to be avoided by disturbance activities by at least 30 meters.<br><br>Four archaeological sites were located within 30 meters of the road: 42GA6089 and 42GA6090 were determined to be Not Eligible for the NRHP.<br><br>42GA8442 is a historic property that has been determined as **Eligible** for the NRHP. | Caitlyn McAllister, Archaeologist | 4/1/2026 |

**RESOURCES AND USES CONSIDERED**

| Resource | Determination | Rationale for Determination | Name and Title of Assigned Specialist | Date |
|---|---|---|---|---|
| | | 42KA4180/42GA3795, or the Hole-in-the-Rock Trail, is a historic property that was fully listed on the NRHP in 1982.<br><br>The proposed improvement will occur within the existing roadway prism and will not expand the already disturbed footprint of the road nor change the alignment. Of the places that the two NRHP-eligible sites and road coincide, the sites have already been impacted due to the existing road. For the NRHP-eligible trail specifically, the road has already impacted the trail to a degree that the trail and road cannot be distinguished from each other on the surface where the trail and road overlap. Due to the existing impact, the proposed improvement will not alter any of the characteristics qualifying the Hole-in-the-Rock Trail as eligible for the NRHP, including visual characteristics associated with the trail. The visual impacts associated with the proposed improvement also are considered in the context of the VRM Class II designation, which is addressed under the Visual Resources section.<br><br>The proposed improvement will not cause an adverse effect, as defined by 36 CFR 800.5(a)(1), to either NHPA-eligible sites. An adverse effect will not occur because the eligible sites have already been impacted from previous disturbance in the proposed project area. Therefore, any direct or indirect impact from the proposed improvements to the sites will not rise to the level that will cause undue or unnecessary degradation to the characteristics that qualify those two sites for inclusion on the NRHP.<br><br>The two sites not eligible for the NRHP are located within 30 meters of the road, but they are outside of the road prism. Therefore, they will not be directly or indirectly impacted from the proposed improvement.<br><br>Chip sealing the road may help mitigate the effects of road gravel on archaeological sites along the road. The HITR Road has been maintained by Garfield County since at least 1938, with maintenance activities including the periodic application of gravel to its surface. This practice has contributed to ongoing impacts on archaeological resources along the road. Chip sealing will help stabilize loose gravel, minimizing its displacement into archaeological areas and decrease future requirements for gravel placement. | | |
| Farmlands (prime or unique; EO 11990) | NP | Prime or unique farmlands in Garfield County as defined by the US Department of Agriculture Natural Resources Conservation Service (NRCS) are not found in the project area, nor is there any irrigation infrastructure present within the project area. | Jason Bybee, Rangeland Management Specialist | 3/25/2026 |
| Forestry & Woodland Products | NI | There is sparse tree cover within the Hole in The Rock corridor affected by this proposal. Woodland tree cover consists of only two species, pinyon pine and Utah juniper and the area is classified as a pinyon-juniper savannah, with very low density of trees. This area is not open to wood harvesting or post or Christmas tree permitting and this proposal would not change the current management. | Cameron McQuivey, Wildlife Biologist | 3/25/2026 |

*HITR Road Chip Sealing*                                                                                    *May 2026*

**RESOURCES AND USES CONSIDERED**

| Resource | Determi-nation | Rationale for Determination | Name and Title of Assigned Specialist | Date |
|---|---|---|---|---|
| | | Along the ephemeral washes which cross this corridor there are two non-native species, Russian Olive and tamarisk and a few pockets of native willow and cottonwood. Improvements to the road would not impact the woodland species (pinyon and juniper) nor the riparian species since the work would be conducted within the footprint of the existing road. | | |
| Fuels/Fire Management | NI | Improvements to Hole in the Rock Rd would not negatively impact fire and fuels management. Improvements would allow for faster response times to wildfire. No vegetation removal is included under the Proposed Improvement. | Abigail Barker, Fuels Planner | 3/25/2026 |
| Lands with Wilderness Characteristics | NI | The proposed improvement is not within but directly adjacent to two Lands with Wilderness Characteristics units that are managed to minimize impacts per the 2025 Monument Management Plan: Carcass Canyon Unit 7 on the west and North Escalante Canyons Unit 8 on the east. While chip-sealing could result in a slight increase in vehicle use, the work is limited to the existing, historically disturbed HITR Road prism and does not introduce new routes, expand access beyond current conditions, or alter the boundaries of either unit. Wilderness characteristics of naturalness and outstanding opportunities for solitude or primitive and unconfined recreation would remain largely unchanged from current conditions due to good topographic screening and the size of the units. During construction activities, any minor noticeable impacts from noise or dust would be temporary and localized. In the long term, chip-sealing will reduce observable road dust from within the LWC units, thereby reducing human-caused visual disturbance.

Although vehicle use may increase slightly along the improved segment, this would not translate into increased visitor days within the LWC units because the project does not change access points, create any new routes, or expand trailhead parking. Therefore, visitor capacity would not be increased. Any incremental changes in traffic are not expected to measurably affect LWC wilderness characteristics. | Clay Stewart, Outdoor Recreation Planner | 3/24/2026 |
| Paleontology | NI | No significant impacts to fossil resources are expected to occur from the proposed improvement because the road improvement would be largely confined to the existing footprint of the current, unimproved route and occur entirely within Holocene alluvium and Jurassic Carmel Formation deposits with a low to moderate potential for significant fossils (PFYC rating of 2 and 3, respectively). | Katja Knoll, Paleontology Lab Manager/ Physical Science Technician (Paleo) | 3/26/2026 |
| Soils (physical and biological) | NI | Physical soil and biological soil crust adjacent to the HITR Road are unlikely to be affected because activities will occur within the existing, historically disturbed road prism. Short-term equipment pull-offs or maneuvering may occur during construction; however, these activities are expected to remain within the previously disturbed edges of the roadway where soil structure and crusts are already compromised. No new ground disturbance outside this historical disturbance corridor is anticipated, and with adherence to staying on the | Marc Coles-Ritchie, Ecologist | 3/24/2026 |

**RESOURCES AND USES CONSIDERED**

| Resource | Determi-nation | Rationale for Determination | Name and Title of Assigned Specialist | Date |
|---|---|---|---|---|
| | | road surface within existing disturbance, measurable impacts to soils or biological soil crusts are not expected. | | |
| Vegetation – General | NI | Vegetation directly adjacent to the HITR Road will not be measurably impacted by this project, because construction activities are confined to the existing, historically disturbed road prism. Temporary equipment pull-offs may occur during construction, but such maneuvering is expected to remain within areas that have been previously disturbed by long-term road use. As long as project vehicles and machinery stay on the HITR Road or within existing disturbance, no new vegetation disturbance is anticipated. (or other approved routes). Avoid driving off approved routes except at the designated vehicle-staging locations identified in this analysis. | Marc Coles-Ritchie, Ecologist | 3/24/2026 |
| Vegetation – Special Status Species | NI | Rare (not ESA-listed) plant species have been documented near the HITR Road, outside of the historically disturbed road margins: Ferron milkvetch (*Astragalus musiniensis*), Barneby's milkvetch (*Astragalus barnebyi*) and Whipple's fishhook cactus (*Sclerocactus whipplei*). Construction activities will take place within the existing road prism, and any temporary pull-offs are expected to stay within historically disturbed areas that lack intact vegetation or suitable habitat. Therefore, no new impacts to special status plant species are anticipated, provided equipment remains on the road surface and within previously disturbed areas. | Marc Coles-Ritchie, Ecologist | 3/24/2026 |
| Vegetation – Non-native Invasive Species/Noxious Weeds | NI | Short-term equipment movement may occur along the disturbed shoulders of the road; however, these areas have long been impacted by road use and do not represent intact vegetation zones. Because activities are expected to remain within the historically disturbed road prism, new vegetation disturbance is unlikely. Standard equipment hygiene, use of weed-free gravel, and staying within the disturbed areas of the roadway will minimize the risk of spreading invasive species. Garfield County should be responsible for controlling weeds on its right-of-way. The proposed improvement is not expected to spread or introduce noxious weeds into the area. | Marc Coles-Ritchie, Ecologist | 3/24/2026 |
| Visual Resources | NI | The proposed improvement is within a VRM Class II designation. The objective of this class is to retain the existing character of the landscape, and the level of change should be low. Management activities may be visible but should not attract the attention of the casual observer, and any changes must repeat the basic elements of form, line, color, and texture found in the predominant natural features of the characteristic landscape.<br><br>The road already exists within the landscape, and no major changes to the alignment or width of disturbance are part of the proposed improvement. Chip-sealing would introduce a change in surface color compared to the current gravel and natural roadbed; however, this change would remain subtle, consistent with the existing road form and line, and not to a degree requiring detailed analysis. The form, line, and texture of chip-seal surface would be similar to the current graveled road. | Clay Stewart, Outdoor Recreation Planner | 3/24/2026 |

*HITR Road Chip Sealing*                                                       *May 2026*

**RESOURCES AND USES CONSIDERED**

| Resource | Determi-nation | Rationale for Determination | Name and Title of Assigned Specialist | Date |
|---|---|---|---|---|
| | | While the improved surface may result in a slight increase in vehicle use along the improved segment, increased visitation does not directly affect visual resources because it does not alter the physical landscape or create visual contrast. Such changes manifest as additional visits, not increased visitor days, and do not meaningfully change the duration or intensity of visual presence within the viewshed. As a result, the improvement would not measurably affect VRM Class II objectives. | | |
| Water Availability and Rights (quantity, timing, use of water resources) | NI | Construction water, if used, would be sourced from permitted supplies; no change to water rights or timing/availability is implicated by work confined to the prism. | Jared Dalebout, Hydrologist | 3/25/26 |
| Water Quality – (impaired water bodies, point/non-point source discharges) | NI | Minor increases in runoff volume from the double chip seal treatment and adjacent road areas from the shoulder of the road would likely occur but due to the ephemeral nature of the area no measurable impacts or increased erosion rates would occur that would have a measurable effect on water quality. No additional impairment to waterbodies or water quality would occur as a result. | Jared Dalebout, Hydrologist | 3/25/26 |
| Wetlands/Riparian Zones/Floodplains (EO 11988) | | No mapped wetlands or riparian areas occur along the proposed improved segment of the HITR road; floodplain function remains unchanged because the work is limited to the existing road prism and uses existing drainage infrastructure. | Jared Dalebout, Hydrologist | 3/25/26 |
| Wild Horses and Burros | NP | There are no active Wild Horse and Burro Herd Management Areas within Grand Staircase-Escalante National Monument. | Jason Bybee, Rangeland Management Specialist | 3/25/2026 |
| Wildlife – Aquatic incl. Fish | NP | There are no perennial streams, rivers, lakes or wetlands in proximity to this portion of the Hole in the Rock Road, resulting in there being no habitat for, nor populations of fish. The occasional flooding event in otherwise dry washes may result in temporary pools that provide ephemeral habitat for aquatic invertebrates. The scope of the project, however, would not create any additional meaningful impacts to these species. Impacts if any may be beneficial as runoff water into these washes would contain less sediment. | Cameron McQuivey, Wildlife Biologist | 3/24/2026 |
| Wildlife - Migratory Birds/Raptors | NI | There are very few trees of any kind in proximity to this portion of the Hole in the Rock Road, rendering the corridor of little value for nesting raptors, and there are none known to nest within the corridor. While migratory birds can also nest in shrubs, grasslands or even on the ground, the project is not likely to cause any additional impacts to migratory birds. The Hole in the Rock Road has been in continuous use since at least 1938, meaning the impacts from road construction and associated vehicle traffic have been occurring for at least 88 years. Whether the surface is roadbase, gravel, or chipseal makes little difference to birds and raptors and they are already accustomed to and likely avoid areas adjacent to the existing road. Any impacts would be negligible or even beneficial due to the reduction in dust. | Cameron McQuivey, Wildlife Biologist | 3/24/2026 |
| Wildlife – Special Status Species | NP | A review of the Utah Natural Heritage database, as well as local BLM files and data resources confirms that there are no individuals or populations of any federally listed threatened or endangered species, nor designated critical | Cameron McQuivey, Wildlife Biologist | 3/24/2026 |

*HITR Road Chip Sealing*                                                                 *May 2026*

9

**RESOURCES AND USES CONSIDERED**

| Resource | Determi-nation | Rationale for Determination | Name and Title of Assigned Specialist | Date |
|---|---|---|---|---|
| | | habitat for these species in proximity to the Hole in the Rock Road. There would be no effect to threatened and endangered species and no adverse modification to critical habitat. | | |
| Wildlife – Terrestrial | NI | This portion of Hole in the Rock Road lacks any special features that make this habitat unique or of particular importance. There are no sage-grouse, nor habitat for them within the corridor. The only large ungulate that may occasionally be seen within the corridor is mule deer, which would be very rare. Small mammals and reptiles would be present along the corridor, and some may succumb to vehicle collisions, but no more so than with the existing surface. Pollinators would be present on both sides of the corridor in suitable habitats that possess flowering plants. As pollinators cross back and forth across the road, some may be struck by vehicles, but no more so than with the existing road surface. Pollinators may benefit from the reduction in fugitive dust which currently reduces their vision and coats many flowering plants in the area. Any impact to wildlife would be negligible. | Cameron McQuivey, Wildlife Biologist | 3/24/2026 |
| | | **RESOURCE USES** | | |
| Geology & Minerals | NI | The Hole in the Rock Road is used to access a wide variety of unique geologic features and increases in visitation can sometimes lead to increased impacts on those resources. The present-day primitive gravel surface discourages some visitors from traveling this portion of the road to access these locations. While chip sealing the first 10 miles may make access more reliable and result in a slight increase in visitation to nearby geologic features, these changes would primarily manifest as additional visits rather than increases in visitor days, which are more closely tied to on‑site use intensity and potential impacts to geologic features. Because the improvement does not introduce new access routes, expand the disturbed footprint, or meaningfully increase the duration or intensity of visitor use, any incremental increase in visitation would remain within the range of current conditions and would not rise to the level requiring detailed analysis.<br><br>Grand Staircase-Escalante National Monument is withdrawn/closed to the disposal of Mineral Materials, the proposed improvement of chip-sealing a portion of the adjudicated ROW does not affect mineral access or status.<br><br>Grand Staircase-Escalante National Monument is withdrawn from mineral entry, subject to valid existing rights. There are no mining claims (active or otherwise) that would be impacted by the proposed improvement of the adjudicated ROW. | James R. Holland, Geologist | 3/25/2026 |
| Mineral Energy (i.e. Coal) | NP | Grand Staircase-Escalante National Monument is withdrawn/closed to leasable mineral extraction (i.e. coal), the proposed improvement within the adjudicated ROW does not affect mineral access or status. | James R. Holland, Geologist | 3/25/2026 |
| Fluid Minerals | NP | Grand Staircase-Escalante National Monument is withdrawn/closed to fluid mineral leasing (i.e. oil and gas), | James R. Holland, Geologist | 3/25/2026 |

**RESOURCES AND USES CONSIDERED**

| Resource | Determi-nation | Rationale for Determination | Name and Title of Assigned Specialist | Date |
|---|---|---|---|---|
| | | the proposed improvement within an adjudicated ROW does not affect mineral access or status. | | |
| Realty Authorizations/Land Use | NI | The HITRR provides access to several private inholdings, including one spur ROW located approximately three miles from where HITRR departs Highway 12. The proposed improvement stays within the existing, historically disturbed road prism and does not change or restrict access to these private inholdings or the existing ROW. Temporary construction activities may incidentally improve the condition of the spur junctions where they connect to the HITR Road, but any such effects would be minor and occur within areas already disturbed by long-term road use. Potential impacts to these access points would be minimal and do not rise to a level requiring detailed analysis. | Levi LeFevre, Realty Specialist | 03/25/2026 |
| Recreation and Access (incl. shooting sports [Dingell Act Title IV] | NI | The HITRR provides public access to many recreation destinations within GSENM and GCNRA, receiving approximately 85,000 visitors in 2025. The proposed improvement area serves the Bighorn Canyon and Zebra Canyon trailheads, with Devils Garden located 4.2 miles past the project's end point. Existing conditions range from smooth after maintenance to rough and washboarded, likely deterring some visitors from reaching these sites. Chip sealing the first 10 miles of HITRR may result in a modest increase in average daily trips (ADT) on this segment due to more reliable surface conditions. This increase would manifest primarily as additional visits (more people accessing the start of the corridor) rather than an increase in visitor days, because most recreational use at Bighorn and Zebra consists of short-duration day hiking. Devils Garden would still require traveling 4.2 miles of unimproved road, which continues to limit some use. Any increase in recreation use is expected to be incremental and within the range of existing patterns. The project does not create new routes or expand access beyond the historically disturbed road prism, and most of the 62-mile HITRR corridor remains unchanged. Ongoing monitoring at Bighorn and Zebra Canyon trailheads can address any site-specific concerns as needed. Given the limited scope and lack of a measurable impact pathway to federal recreation resources, therefore further analysis is not warranted. | Clay Stewart, Outdoor Recreation Planner | 3/24/2026 |
| Transportation/ Travel Management/ Public Access | NI | The proposed improvement occurs within the Escalante Canyons Travel Management Area on an existing open route (HITR Road). Because the work is limited to the historically disturbed road prism and does not change the designated status or function of the route, no effects to travel and transportation management are anticipated beyond the existing access conditions. Because the consultation process evaluates potential impacts to federal resources only and does not involve authorizing changes to route designation or travel management decisions, no detailed analysis is warranted. | Clay Stewart, Outdoor Recreation Planner | 3/24/2026 |
| Livestock Grazing | NI | Livestock use adjacent to the HITR Road; work within the road prism does not alter trailing or allotment access. Traffic control and posted speed limits reduce collision risk; no measurable adverse effect is anticipated. | Jason Bybee or Brandt Reese, Rangeland | 3/25/2026 |

*HITR Road Chip Sealing*                                                                 *May 2026*

11

**RESOURCES AND USES CONSIDERED**

| Resource | Determi-nation | Rationale for Determination | Name and Title of Assigned Specialist | Date |
|---|---|---|---|---|
| | | | Management Specialist | |
| **SPECIAL DESIGNATIONS AND OTHER CONSIDERATIONS** | | | | |
| Areas of Critical Environmental Concern | NP | The proposed improvement is not within or adjacent to any ACECs. | Clay Stewart, Outdoor Recreation Planner | 3/24/2026 |
| National Historic and Scenic Trails | NP | No National Historic or Scenic Trails are designated along the segment. The NRHP-listed Hole-in-the-Rock Trail is addressed under Cultural Resources/TCP. | Clay Stewart, Outdoor Recreation Planner | 3/24/2026 |
| National Monuments/National Conservation Areas | NI | The proposed improvement is within the GSENM. This consultation evaluates effects on Monument resources from the proposed improvement within a County-held RS 2477 ROW; the BLM is not authorizing an action. | Clay Stewart, Outdoor Recreation Planner | 3/25/2026 |
| Public Health and Safety | NI | The proposed improvement of chip-sealing the HITR Road will not result in adverse impacts on public health and safety. As described in Section 1.1 (Background), Chapter 2 (Proposed Improvement), and in the HITR Reasonable and Necessary Memo, this project is designed to alleviate hazards to the public by decreasing and/or eliminating fugitive dust, washboards, potholes, rutting, and washouts. This will allow for safer driving conditions by improving visibility when following other vehicles, providing a smoother and more stable road surface, reducing the likelihood of vehicles getting stuck due to washouts, and by limiting the amount of particulate matter people breathe from fugitive dust. Improving the driving surface is also not expected to increase hazards to the public because the posted 35-mph speed limit will help control vehicle speeds. <br><br> Potential public health and safety impacts from the chip-sealing operation include interactions between the public and heavy equipment. These impacts will be temporary and mitigated through the county's use of traffic control. Fugitive dust may also be generated during aggregate placement and sweeping; however, this dust will be limited to the active work period and is not expected to exceed the levels typically experienced when driving on the current HITR Road surface. | Bryce Franklin, Project Manager | 3/24/2026 |
| Social and Economic Conditions (Quality of Life considerations) | NI | There would be minimal impact relative to the overall economy of the planning area. According to the latest data from U.S. Department of Commerce Census Bureau, County Business Patterns (2023), accommodations and food services employment accounted for 45.4 per cent of total employment in Garfield County. This sector is typically most influenced by changes in recreational use. Although the improved road could attract additional visitation, any increase is expected to reflect more visits rather than substantial increases in visitor days (longer stays), which are more directly correlated with local economic spending and demand for service. As a result, effects on the county's already tourism-based economy are expected to be minor. <br><br> The construction activities would be done primarily by the Garfield County Road Department using existing resources, with minimal, if any, change in overall employment. | Bill Stevens, Outdoor Recreation Planner | 3/24/26 |

*HITR Road Chip Sealing*                                                      *May 2026*

12

**RESOURCES AND USES CONSIDERED**

| Resource | Determination | Rationale for Determination | Name and Title of Assigned Specialist | Date |
|---|---|---|---|---|
| | | Quality of life considerations relevant to the proposed improvement could include access to products, visitor experience, public services, and passive use of ecosystems. Improved road conditions may facilitate access to recreational opportunities and public land resources. Some visitors may experience improved access and reduced risk of vehicle difficulties, while others may perceive increased use as detracting from their experience. Approximately eighty percent of the HITR Road corridor would retain its primitive character, maintaining opportunities for backcountry recreation.<br><br>Public services may see efficiency improvements due to fewer stranded vehicles along the improved segment and potentially reduced response times for search and rescue within the first 10 miles, as well as reducing the time needed by search and rescue to reach travelers needing assistance in the remote backcountry accessed by most of this road.<br><br>Passive use values such as cultural, geological, paleontological, biological, hydrological, and aesthetic resources discussed in this document could be sensitive to increased visits rather than visitor days, no measurable changes to these valued resources or long-term ecosystem conditions are anticipated. As described in the resource sections in this document, the BLM does not expect the proposed improvement to result in undue impacts to these resources. | | |
| Wastes (hazardous or solid) | NI | Garfield County is legally required to follow hazardous materials and waste-handling regulations, and the County routinely performs chip-sealing and similar road work under these requirements. This project will be conducted with on-site oversight, including monitoring for spills and ensuring cleanup as needed. Any waste-related risks would be temporary, limited to the active work area, and are unlikely to result in unaddressed spills or residual contamination. Because activities occur within the existing, historically disturbed road prism and established procedures minimize risk, potential impacts do not rise to a level requiring further analysis. | Bryce Franklin, Project Manager | 3/24/2026 |
| Wild and Scenic Rivers | NP | No designated or suitable Wild and Scenic Rivers occur within the area of the proposed improvement. | Clay Stewart, Outdoor Recreation Planner | 3/24/2026 |
| Wilderness/WSA | NP | No designated Wilderness/WSA occurs within the area of the proposed improvement; the nearest WSA is the North Escalante Canyons WSA, ~0.33 miles away from the project area. Terrain within the WSA is dominated by tall sandstone buttes and deep narrow canyons, creating substantial topographic screening of noise and visual intrusions. Distance and broken topography, combined with the fact that work activities are expected to stay within the existing, historically disturbed road prism, will adequately minimize any direct or indirect effects to wilderness characteristics such as naturalness and outstanding opportunities for solitude or primitive recreation. Any minor noticeable | Clay Stewart, Outdoor Recreation Planner | 3/24/2026 |

*HITR Road Chip Sealing*                                                                                    *May 2026*

**RESOURCES AND USES CONSIDERED**

| Resource | Determi-nation | Rationale for Determination | Name and Title of Assigned Specialist | Date |
|---|---|---|---|---|
| | | indirect impacts from noise or dust would be localized and temporary during the construction phase. In the long term, chip-sealing will reduce observable road dust from within the WSA, thereby reducing visual intrusions.<br><br>Although vehicle use may increase slightly along the improved segment, this would not translate into increased visitor days within the WSAs located near the Hole in the Rock road because the project does not change access points to WSAs, create any new routes, or expand trailhead parking. Therefore, visitor capacity would not be increased as a result of the proposed project. Any incremental changes in traffic are not expected to measurably affect wilderness characteristics in WSAs. The proposed improvement meets the WSA non-impairment standard described in BLM Manual 6330: the construction would not create any new surface disturbance, and any minor indirect impacts to wilderness characteristics such as noise or dust would be temporary. | | |

## Appendix A. Map



*HITR Road Chip Sealing*                                                                 *May 2026*

# Exhibit 2





# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Utah State Office
440 West 200 South, Suite 500
Salt Lake City, UT  84101-1434

May 7, 2026

Memorandum

To:         Hole in the Rock Proposed Chip Seal File

From:       Melinda Moffitt
            R.S. 2477 Project Manager

Subject:    Compliance with the National Environmental Policy Act, Section 106, Endangered Species Act, Tribal Consultation, and the Grand Staircase-Escalante National Monument Resource Management Plan

Garfield County (County) and the State of Utah hold an adjudicated Revised Statute (R.S.) 2477 right-of-way (ROW) for the Hole-in-the-Rock (HITR) Road, which crosses federal public lands located in Garfield County, Utah.[1] The district court's July 2025 decision quieted title in favor of Garfield County and the State of Utah, however, it reserved any decision regarding the scope of the ROW for future court proceedings.[2] The County, as a valid R.S. 2477 ROW holder, has advised the Bureau of Land Management (BLM) of its proposal to chip seal a natural surface for an approximately 10-mile segment of the HITR Road beginning at Highway 12 heading southeast to about 2 miles past the Zebra slot canyon trailhead. After considering all the facts, the BLM determined that Garfield County's chip seal project is both reasonable and necessary to ensure safe travel and meet the exigencies of increased use and travel for the traditional uses and, thus, within the scope of its R.S. 2477 ROW for the HITR Road.

This memorandum documents why Tribal consultation and compliance with the National Environmental Policy Act (NEPA), Section 106 of the National Historic Preservation Act (NHPA), the Endangered Species Act (ESA), and the Grand Staircase-Escalante National Monument Resource Management Plan (RMP) are not necessary for this proposed improvement of HITR Road.

The BLM must comply with NEPA when carrying out a "major federal action," defined as "an action that the agency carrying out such action determines is subject to substantial Federal control and responsibility. . . [and] does not include – a non-Federal action . . . where a Federal

---

[1] *Kane Cnty. v. United States*, 2025 U.S. Dist. LEXIS 141248 (D. Utah, July 23, 2025) (consolidated "Memorandum Decision and Order Re: House Rock Valley Road and Hole-in-the-Rock Road").
[2] *Id.* at *9.

agency cannot control the outcome of the project." 42 U.S.C. § 4336e(10); *see also* DOI's NEPA Handbook at Section 1.1(a)(6)(i)-(ii) (516 DM 1). Consistent with controlling Tenth Circuit caselaw, the BLM's determination that proposed activities are within the scope of an adjudicated R.S. 2477 ROW is not a "major federal action" triggering NEPA compliance, particularly when there are no impacts on Wilderness Study Areas (WSAs) designated under Section 603 of the Federal Land Policy and Management Act (FLPMA). *See Sierra Club v. Hodel*, 848 F.2d 1068, 1090-91 (10th Cir. 1988). "[W]hen BLM is 'dealing with defining boundaries of . . . existing rights-of-way' that do not affect WSAs, then 'BLM has no power to designate alternatives or deny nonfederal actors a court of action.' Consequently, for road projects bereft of a WSA, BLM can do very little to alter the project, and therefore, there is no major federal action." *SUWA v. BLM*, 551 F. Supp. 3d 1226, 1243 (D. Utah 2021) (quoting *Hodel*, 848 F.2d at 1090, 1091); *see also SUWA v. BLM*, 2021 U.S. Dist. LEXIS 63395, *30 (D. Utah, Mar. 31, 2021).

Here, the BLM conducted an impact analysis in part to consider whether Garfield County's proposed improvement would potentially impact WSAs identified through Section 603 of FLPMA. That impact analysis concludes there are no WSAs that would be impacted by the proposed improvement. As a result, the BLM has no duty under FLPMA and thus no control or discretion over Garfield County's proposal. Therefore, the proposal is not a major federal action triggering NEPA compliance.

Similarly, the BLM's role in the consultation process relating to Garfield County's proposed improvement does not trigger compliance with Section 106 of the NHPA. An agency must take into account the effects of an "undertaking" on historic properties eligible for or listed on the National Register of Historic Places. 54 U.S.C. § 306108. This requirement applies to federal "undertakings" which are defined as:

> A project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including those carried out by or on behalf of a Federal agency; those carried out with Federal financial assistance; and those requiring a Federal permit, license or approval.

36 C.F.R. § 800.16(y). Here, the BLM has no authority or discretion to grant, approve, permit, or authorize Garfield County's proposed improvement and therefore the proposal is not an undertaking within the BLM's direct or indirect jurisdiction. Consequently, Section 106 of the NHPA is inapplicable.

Likewise, Garfield County's proposed improvement does not trigger an obligation for the BLM to comply with the ESA. The ESA requires federal agencies, in consultation with and with the assistance of the Secretary, to ensure that actions they authorize, fund, or carry out are not likely to jeopardize the continued existence of any listed species or result in the destruction or adverse modification of designated critical habitat of such species. 16 U.S.C. § 1536; 50 C.F.R. § 402.01. For reasons similar to the discussion of NEPA and Section 106 of the NHPA above, the BLM lacks control or discretion over Garfield County's proposal sufficient to trigger compliance with the ESA.

The Grand Staircase-Escalante National Monument RMP acknowledges that its provisions are subject to valid existing rights. The RMP specifically states that "[i]f it is determined that the State or counties possess a valid existing R.S. 2477 ROW . . . the management actions in this RMP are subject to that ROW." Grand Staircase-Escalante National Monument, Record of Decision and Approved RMP, January 2025, p. I-6. Additionally, under FLPMA § 701(a), valid existing rights are preserved and not subject to discretionary management decisions in the RMP. Because the HITR Road is now adjudicated as a valid R.S. 2477 ROW and the RMP is subject to that valid ROW, GSENM RMP's Travel and Transportation Management (TTM) direction No. TTM-07 does not apply to Garfield County's proposed improvement, notwithstanding the current reservation as to the scope of HITR Road.

Similarly, the BLM has no control over Garfield County's proposal, i.e., it is not developing federal policies nor is it making any decision, and thus no responsibility to conduct consultation with tribes or to conduct government-to-government consultation. *See* BLM Manual 1780 Tribal Relations at p. 1-4 through 1-7 (consultation generally required as part of compliance with various laws, e,g., NEPA and NHPA, for BLM policy, rules, or decisions).

In sum, the project is not an undertaking or major federal action, nor does the BLM have any discretion or authority because the proposed chip sealing of the 10-mile segment of HITR Road is within the scope of Garfield County's R.S. 2477 ROW. The BLM is not authorizing, carrying out, or funding this project. Rather the project is part of Garfield County's valid existing right which means there is no discretionary decision for the BLM to make. The project is a non-federal action, and the BLM's only involvement is to fulfill its duty to consult under R.S. 2477 case law as the servient estate holder. Because there is no decision-making space for the BLM on this project, the need for Tribal consultation, NEPA, Section 106, ESA, or RMP compliance are not triggered.