K. TESS DAVIS (15831)
JASON L. DEFOREST (14628)
DAVID A. REAY (14764)
LAUREN K. CORMANY (19494)
Assistant Attorneys General
kaitlindavis@agutah.gov
jdeforest@agutah.gov
dreay@agutah.gov
lcormany@agutah.gov

DEREK BROWN (10476)
UTAH ATTORNEY GENERAL
1594 W North Temple
Salt Lake City, UT 84116
(801) 537-7227

*Attorneys for Intervenor-Defendants, State of Utah and Garfield County, Utah*

---

IN THE UNITED STATES JUDICIAL DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>     Plaintiff,<br><br>v.<br><br>the U.S. BUREAU OF LAND MANAGEMENT, and<br>the U.S. DEPARTMENT OF THE INTERIOR,<br><br>     Defendants,<br><br>AND<br><br>the STATE OF UTAH, and GARFIELD COUNTY, UTAH, a political subdivision of the State of Utah,<br><br>     Intervenor-Defendants. | Case No. 2:26-cv-00096<br><br>**MOTION TO DISMISS AMENDED AND SUPPLEMENTAL COMPLAINT AND MEMORANDUM IN SUPPORT**<br><br>Judge Ann Marie McIff Allen<br>Magistrate Judge Paul Kohler |

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ............................................................................................................... 1

RELIEF SOUGHT AND GROUNDS FOR RELIEF ....................................................... 1

STATEMENT OF RELEVANT FACTS & PROCEDURAL HISTORY ....................................... 2

LEGAL STANDARDS ........................................................................................................ 5

ARGUMENT ...................................................................................................................... 5

    I.    SUWA's case must be dismissed in its entirety for lack of jurisdiction, as it does not have standing to bring its claims. ...................................................................................... 5

        A.    SUWA lacks Constitutional standing because it fails to allege a concrete, particularized injury, traceable to Federal Defendants, and redressable by a favorable decision by this Court. ...................................................................................... 6

        B.    SUWA's claims fail under the prudential standing doctrine because they improperly rely on the legal rights and interests of the federal government. ........................................... 13

    II.    SUWA's FLPMA and NEPA claims must be dismissed for lack of jurisdiction and failure to state a claim, as they fail to identify reviewable agency actions required by law. .............. 16

        A.    SUWA fails to state a claim or invoke this Court's jurisdiction under the APA for its FLPMA claims. ........................................................................................... 16

        B.    SUWA fails to state a claim or invoke this Court's jurisdiction under the APA for its NEPA claim. .................................................................................................. 19

CONCLUSION ................................................................................................................... 21

## TABLE OF AUTHORITIES

### <u>CASES</u>

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009)..................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 555 (2007)..................................................................................... 5

*Burr Trail* case. *See S. Utah Wilderness All. v. U.S. Dep't of the Interior ("Burr Trail")*,
  44 F.4th 1264, 1272 (10th Cir. 2022)................................................................. 18

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398, 409 (2013)..................................................................................... 8

*Colorado Supreme Court*,
  87 F.3d at 1164................................................................................................... 5

*Food and Drug Admin. v. All. for Hippocratic Medicine*,
  602 U.S. 367, 381 (2024)................................................................................... 10

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333, 343 (1977)..................................................................................... 6

*Kane Cnty., Utah v. United States*,
  No. 2:10-cv-1073, (D. Utah July 23, 2025) .................................................... 2, 18

*Kane Cnty., Utah (2), (3), and (4) v. United States*,
  333 F.R.D. 225, 234 (D. Utah 2019)..................................................................... 7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 561 (1992)……………………………………………………………5

*Massachusetts v. E.P.A.*,
  549 U.S. 497, 516 (2007)..................................................................................... 6

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55, 61–62 (2004).................................................................................. 16

*Rocky Mountain Wild v. Dallas*,
  98 F.4th 1263, 1297 (10th Cir. 2024).................................................................. 19

*S. Utah Wilderness All. v. Palma*,
  707 F.3d 1143, 1153 (10th Cir. 2013) .............................................................. 7, 12

*Southern Utah Wilderness Alliance v. Bureau of Land Management*,
    425 F.3d 735 (10th Cir. 2005) ............................................................................... 13

*S. Utah Wilderness All. v. U.S. Bureau of Land Mgmt.*,
    551 F.Supp.3d 1226, 1241 (D. Utah 2021) ............................................................ 16

*S. Utah Wilderness All. v. U.S. Dep't of Interior*,
    44 F.4th 1264, 1272 (10th Cir. 2022)..................................................................... 17

*State of Utah v. Babbitt*,
    137 F.3d 1193, 1203 (1998) .................................................................................... 16

*The Wilderness Soc'y v. Kane Cnty., Utah*,
    632 F.3d 1162, 1170–71 (10th Cir. 2011) ......................................................... 6, 15

*Warth v. Seldin*,
    422 U.S. 490, 498 (1975).......................................................................................... 6

## STATUTES

42 U.S.C. § 4332 ............................................................................................................ 19

43 C.F.R. § 1610.5-3 ...................................................................................................... 19

43 U.S.C. § 1732 ............................................................................................................ 19

5 U.S.C. §§ 702, 704...................................................................................................... 16

Administrative Procedure Act ................................................................................ passim

FLPMA ................................................................................................................... passim

R.S. 2477............................................................................................................... passim

## INTRODUCTION

Hole-in-the-Rock Road (the "Road") in Garfield County, Utah, is one of the main thoroughfares that provides access to those wishing to explore the scenic backcountry and popular recreation areas within Grand Staircase-Escalante National Monument ("GSENM"). Intervenor-Defendants State of Utah ("State") and Garfield County, Utah ("County") hold adjudicated title to an R.S. 2477 right-of-way for the Road and have been maintaining it for decades to ensure access and public safety. Since GSENM's designation in 1996, and due in part to the boom in the outdoor recreation and adventure tourism industry in Utah, the Road now sees more users than ever before. The County notified the Bureau of Land Management ("BLM") in late January 2026 that it would be performing maintenance and ultimately chip sealing the Road to accommodate this increased usage. This was a continuation of a consultation process that has been ongoing for years, and it culminated in a finding from the BLM that the maintenance and improvements were reasonable, necessary, and within the scope of the State and County's right-of-way. Southern Utah Wilderness Alliance ("SUWA") filed this case to insert itself into the relationship between the State, County, and BLM as the dominant and servient estate holders and to interfere with these critical improvements. However, there are several deficiencies in SUWA's claims that warrant dismissal.

## RELIEF SOUGHT AND GROUNDS FOR RELIEF

The State and County respectfully move this Court to dismiss SUWA's case with prejudice under Federal Rules of Civil Procedure 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted. SUWA fails to meet its burden of proving jurisdiction because it fails to satisfy both prudential and Constitutional standing requirements. It additionally fails to identify an agency action sufficient to state a claim upon which relief may be granted or invoke the Court's jurisdiction under FLPMA or NEPA.

1

## STATEMENT OF RELEVANT FACTS & PROCEDURAL HISTORY

Hole-in-the-Rock Road spans 62 miles across Southern Utah, beginning outside of Escalante and ending at Lake Powell in the Glen Canyon National Recreation Area ("GCNRA"). It crosses through both Garfield and Kane Counties and predates GSENM and all recreation area designations. The route follows much of the same path taken by Mormon pioneers beginning in 1879 as they sought to settle this remote and rugged region of Southeastern Utah. Today, the Road notably connects visitors to several of GSENM's most popular destinations for outdoor recreation, such as Zebra Canyon, Peekaboo and Spooky Gulch, Devil's Garden, and Dance Hall Rock. It is also a part of the National Register of Historic Places for its significance to Utah's history. If not for the Road, most visitors would be unable to reach these breathtaking slot canyons, sandstone formations, and expansive desert views of the area, or connect with local pioneer history.

This case concerns G9000 – the first approximately 16-mile stretch of Hole-in-the-Rock Road in Garfield County. In July 2025, the United States District Court for the District of Utah issued a Memorandum Decision and Order quieting title to an R.S. 2477 right-of-way ("ROW") over the G9000 Hole-in-the-Rock Road in favor of Garfield County and the State of Utah. *See Kane Cnty., Utah v. United States*, No. 2:10-cv-1073, 2025 WL 2061989 (D. Utah July 23, 2025). The court added the road to its Bellwether case[1] "to obtain a more expeditious title resolution due to [Hole-in-the-Rock Road's] alleged unsafe travel conditions." *Id.* at *1.

As it explained in its letter dated February 5, 2026, the County has a long history of consultation and coordination with the BLM on issues pertaining to the Road. *See* February 5,

---

[1] In 2015, the Federal District Court for the District of Utah established a Bellwether process to more efficiently process the more than 12,500 R.S. 2477 right-of-way claims throughout the State. *See* Case No. 2:10-cv-1073, ECF No. 238 (July 31, 2015). G9000 Hole-in-the-Rock Road is one of the 18 roads the court has jurisdiction over as a part of the Bellwether case.

2026, Letter from Garfield County to Monument Manager, Grand Staircase-Escalante National Monument, ECF No. 37-1. For decades, the County has performed routine maintenance on the Road to fulfill its responsibility as the local highway authority. *Id.* at 1. In May 2022, the County submitted a formal consultation request to BLM to explore chip sealing[2] the first five miles of the road to address safety concerns and increased travel through the area. *Id.* at 2. With its request, the County provided a detailed project description, traffic data, and maintenance costs, including stamped engineering plans and analysis. *Id.* These actions spurred a series of coordination calls and written correspondence between BLM and the County throughout 2022 and 2023, which culminated in a site visit in October 2023. *Id.* at 2–3. Plaintiff SUWA participated in some of the coordination efforts, including sending representatives to the October 2023 site visit. *Id.* at 3. After the site visit, the County, State, and BLM continued to hold virtual meetings to discuss road conditions and safety concerns in 2023 and 2024. *Id.*

On January 27, 2026, Garfield County continued consultation with BLM by sending notice of its latest planned project on the G9000. *See* Jan. 27, 2026, Letter from Garfield Cnty. to BLM, ECF No. 1-1. In its letter, the County stated its intention to engage in road maintenance activities including "grading and reshaping the existing roadway and road prism to restore and maintain a proper running surface and drainage; placement and cleaning of bar ditches; installation, replacement, and maintenance of drainage features including culverts; maintenance of lead off ditches, . . . ; and placement of gravel where needed to stabilize the road surface." *Id.* The letter also noted that "[s]urfacing with a double chip seal treatment will be applied to approximately ten

---

[2] "Chip seal" treatment is a common, cost-effective way to improve the durability and driving experience of rural roads. It is not pavement or the traditional asphalt used for highways or major roads in urban areas. "Chip sealing" refers to the process of aggregating smaller rocks and gravel together with a binder to create a hardened roadway more durable than dirt/gravel, but less smooth than asphalt.

miles of the roadway." *Id.* BLM responded to the County's letter on February 4, 2026, and the State, County, and BLM continued to consult on the proposed road project.

SUWA originally filed suit against the State, County, BLM, and DOI regarding road work on the Road. Compl., ECF No. 1. The Complaint and subsequent Ex Parte Motion for TRO and Preliminary Injunction contained allegations of road improvements going beyond routine maintenance without prior consultation. *See* Compl., ECF No. 1; Ex Parte Mot. for TRO and Prelim. Inj., ECF No. 18. This Court denied Plaintiff's Ex Parte Motion for TRO citing prudential standing concerns. Order Den. Mot. for Ex Parte TRO, ECF No. 29. After conversations with counsel for the State and County, SUWA determined that it had misunderstood the facts underlying its allegations, namely its assumption that the County had begun chip sealing and/or intended to chip seal ten miles of the road without continued consultation with BLM. *See* Plaintiff's Motion to Stay Proceedings, ECF No. 37, pp. 2, 5. Accordingly, it withdrew its Motion for Preliminary Injunction and filed for a Motion to Stay on February 17, 2026. Mot. to Stay, ECF No. 37 at 2; Withdrawal of Mot. for Prelim. Inj., ECF No. 36.

Defendants concluded consultation and BLM provided the State and County with a determination that its proposed project was reasonable, necessary and within the scope of the right-of-way. *See* ECF No. 61-1. SUWA filed several emergency motions to prevent the County from chip sealing the first ten miles of the Road. *See* ECF Nos. 51–52, 54–55. The Court denied SUWA's emergency motion for temporary injunctive relief, emergency motion for status conference, and its motion to stay, but granted its motion to amend its pleadings. ECF No. 60. SUWA then amended its pleadings and removed the State and County as Defendants, and filed another motion for injunctive relief, which it later withdrew. *See* Amend. Supp. Compl., ECF No. 61; ECF No. 72. The State and County moved to intervene, which the Court granted on June 8, 2026. ECF No. 73.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) permits a party to assert by motion a defense for lack of subject matter jurisdiction. The plaintiff bears the burden of pleading facts sufficient to establish federal jurisdiction. *U.S. v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In moving for dismissal based on lack of jurisdiction, the movant may make a facial or factual challenge to a plaintiff's claims. *U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001).

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion a defense for failure to state claim upon which relief can be granted. To survive a 12(b)(6) motion, the "[c]omplaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations included in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

I.    **SUWA's case must be dismissed in its entirety for lack of jurisdiction, as it does not have standing to bring its claims.**

Plaintiff SUWA bears the burden of proving that this Court has jurisdiction to hear its claims by affirmatively alleging, and factually supporting, subject matter jurisdiction. *Colorado Supreme Court*, 87 F.3d at 1164. SUWA cannot meet its burden because it lacks standing under both the prudential and Constitutional standing doctrines.[3] The federal standing doctrine incorporates two components: Constitutional standing and prudential standing. *Warth v. Seldin*,

---

[3] To the extent that a federal court has jurisdiction over issues related to the G9000 Hole-in-the-Rock Road, another court already has it. *See Kane Cnty., Utah v. United States*, No. 2:10-cv-1073. As discussed above, matters pertaining to title and scope of the G9000 Hole-in right-of-way are part of Judge Waddoups' jurisdiction in the R.S. 2477 Bellwether case.

422 U.S. 490, 498 (1975). Constitutional standing limits federal courts' jurisdiction in accordance with the "case and controversy" language included in Article III of the United States Constitution. *Id.* The business of federal courts is therefore expressly confined to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007).

Prudential standing limits a court's exercise of its federal jurisdiction in accordance with additional judicially imposed restrictions. *Warth*, 422 U.S. at 499. Specifically, prudential standing requires that "the plaintiff generally . . . assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* This prohibition includes attempts by private parties to assert the legal rights and interests of the federal government. *The Wilderness Soc'y v. Kane Cnty., Utah*, 632 F.3d 1162, 1170–71 (10th Cir. 2011). SUWA lacks standing to invoke this Court's jurisdiction for the claims alleged in its Amended and Supplemental Complaint under both components of standing.

### A. SUWA lacks Constitutional standing because it fails to allege a concrete, particularized injury, traceable to Federal Defendants, and redressable by a favorable decision by this Court.

For an organization to bring claims on behalf of its individual members, it must be the case that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). To establish Constitutional standing, "a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *S. Utah Wilderness All. v.*

*Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (citations omitted). When the plaintiff is not the "object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* at 1155 (internal quotations and citations omitted).

SUWA has failed to overcome its substantial burden to establish Constitutional standing in this case. In the R.S. 2477 Bellwether proceedings, the court succinctly described the challenges SUWA faces in establishing standing in cases related to the rights of the State, Counties, and Federal government regarding rights-of-way crossing federal lands:

> Just because SUWA 'has taken sides in what is essentially a property dispute between two landowners,' *Wilderness Soc'y*, 632 F.3d at 1171, does not mean it has an injury supporting standing, much less that it is traceable to [the State and County's] conduct. Rather, if [the State and County] prevail [in establishing title to the rights-of-way], then it is SUWA's interests that encroached upon [the State and County's] rights, not vice versa. If the United States prevails, SUWA suffers no injury. Either way, there is no injury to SUWA fairly traceable to [the State and County's] conduct that is at issue.

*Kane Cnty., Utah (2), (3), and (4) v. United States*, 333 F.R.D. 225, 234 (D. Utah 2019). In the case at hand, SUWA similarly fails to satisfy all three elements of Constitutional standing sufficient to sue on behalf of its members regarding the State and County's resurfacing of the Road.

First, SUWA fails to adequately allege an injury in fact under the first prong of Constitutional standing. The requirement that an injury be "concrete and particularized" seeks to limit the jurisdiction of federal courts to "only those having a direct stake in the outcome, and not those having abstract concerns." *Palma*, 707 F.3d at 1155 (internal quotations and citations omitted). Plaintiffs asserting environmental harm must do more than describe "generalized harm to the forest or the environment." *Id.* (internal citations and quotations omitted). Instead, they must "aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Id.* (internal citations and quotations

omitted). Plaintiffs' alleged harm must also be sufficiently "imminent," to not be "too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

In its Amended and Supplemental Complaint, SUWA does not clearly allege any specific injury to its members, other than simply stating, "[t]hese actions have caused and are causing immediate and irreparable harm to SUWA and its members." Amend. Supp. Compl., Dkt. No. 61, ¶ 40. In SUWA's briefing addressing standing issues, it referenced declarations filed with past emergency motions from both Ms. Kya Marienfeld and Mr. Jack Hanley as supporting an alleged injury to satisfy Constitutional standing requirements. *See* Dkt. No. 57 at 5; *see* Exhibits, Dkt. Nos. 3, 18, 57, 62. These declarations do not apply to the instant motion because they were not attached to the Amended and Supplemental Complaint, which is the operative pleading to which the State and County are now responding. Even assuming the Court is inclined to consider the declarations here, they still fail to demonstrate a cognizable injury for purposes of Constitutional standing. Though SUWA's members claim in their declarations that chip sealing and related road work will diminish their enjoyment of the area surrounding the Road, these are not environmental harms; they are allegations that amount to little more than generalized opposition to BLM's land management choices and speculation about future public use. The declarations largely express dissatisfaction with the possibility that the area may become more accessible, leading to more visitors (apart from SUWA's own members).[4] Such statements do not establish an injury for

---

[4] SUWA's Brief in Support of its Standing makes vague references to "degradation of wilderness-quality lands" as a potential basis for an injury in fact. *See* ECF No. 57 at 5–6. To be clear, this segment of the Road does not abut or pass through any WSAs, as the closest boundary to a WSA is nearly a third of a mile away. Additionally, the term "wilderness-quality lands" does not appear in the Wilderness Act of 1964, nor does it appear to be a legal term of art or a federal land designation with management mandates.

purposes of Constitutional standing, as they do not describe with particularity how improvements to the Road will concretely impact members' environmental, aesthetic, or recreational interests.

For example, the declarations state, "I do not want to see more development activities in this area and I do not want to see an engineered, high-speed chip sealed road . . . a widened and chip sealed road will increase the number of motor vehicles, traveling faster, and overall increase visitation." Decl. of Jack Hanley, Dkt. No 18-1 at 13. They also state, "My enjoyment of these activities, and that of SUWA's members, is dependent on quiet, natural settings without the sights, sounds and impacts associated with chipsealed/paved roads, . . . the wilderness-quality public lands bordering the Hole-in-the-Rock Road will be degraded and my and SUWA's members' enjoyment of these areas will be significantly reduced or eliminated." Decl. Kya Marienfeld, Dkt. 3-4 at 5. A wish to prevent people without the means to acquire a high-clearance four-wheel drive vehicle, or without the physical ability to hike the ten-mile segment by foot to access these public lands, is not itself an injury in fact; nor is a preference that BLM manage these public lands in a way that limits or discourages visitors.

To begin, SUWA's alleged injury caused by potential increased visitation to GSENM creates too attenuated a causal chain of events to constitute an injury in fact. The declarations of SUWA's members require an untenable inferential chain that does not provide SUWA with standing: first, they speculate that the County's road project will certainly increase tourism in GSENM; then, they suggest that the increased visitation will create noise and environmental damage to the Monument's resources because visitors will drive large noisy vehicles, not abide by the 35 MPH speed limit, and/or drive off the chip sealed road; next, they posit that SUWA's members will personally encounter these occurrences at all times while in GSENM; and finally,

they state that these actions together will diminish their aesthetic and recreational enjoyment of the area.

The Supreme Court has repeatedly held that a long, speculative causal chain is not enough to prove an injury in fact. *See e.g., Clapper*, 568 U.S.; *Lujan*, 504 U.S.; *Murthy v. Missouri*, 603 U.S. 43 (2024). For example, in *Clapper v. Amnesty International USA*, the court explained "allegations of *possible* future injury are not sufficient." 568 U.S. at 409. In that case, the plaintiffs' injury "rested on their highly speculative fear" that the government would target foreign individuals living abroad with whom they have a relationship; acquire the means and authorization to surveil such foreign individual's communications; succeed in intercepting the international communications; and acquire communications in which the plaintiffs participated. *Id.* at 410. The court held that this fear of future harm did not satisfy the need for imminent, non-speculative injury. The same is true in the case at hand. SUWA fears that the improved road conditions will lead to more travelers on the Road and more visitors in GSENM, which will lead to their decreased aesthetic and recreational interests. SUWA provides no concrete evidence that any of its members' speculative fears have come to pass, or that they ever will. Without more, SUWA fails to prove an injury in fact.

Further, SUWA's alleged injury is little more than general ideological or policy concerns regarding BLM's decision-making. Abstract and generalized concerns such as these do not meet the Article III injury in fact requirements. The Supreme Court has held that private citizens cannot sue the government "merely because their legal objection is accompanied by a strong moral, ideological, or policy objection to a government action." *Food and Drug Admin. v. All. for Hippocratic Medicine*, 602 U.S. 367, 381 (2024) (recognizing that the plaintiff's moral and ideological disagreements with an FDA policy decision do not alone satisfy Article III standing

10

requirements). In their declarations, SUWA's members describe strong ideological opposition to upgrading the surface of the Road, based on their belief that GSENM should not be equally accessible to everyone. *See* First Supp. Decl. of Kya Marienfeld, Dkt. 57-1 at 2 ("Because we live in Moab, we are used to throngs of other visitors at many of our most storied public lands and National Park locations, and long lines, pavement, and full parking lots are common . . . Because Grand Staircase-Escalante remains in a largely primitive state, unpaved, with very few developed recreation sites, *only the most excited and dedicated visitors make their way across the landscape*.") (emphasis added); Decl. of Jack Hanley, Dkt. 18-1 at 4, 13 ("While Hole-in-the-Rock Road is a rough and bumpy dirt road, it rewards those willing to drive it . . . I don't want to see more development activities in this area and I do not want to see an engineered, high-speed chip sealed road.").

SUWA's members do not allege with particularity how BLM's consultation with the Intervenor-Defendants on roadwork causes a concrete injury to them as opposed to simply conflicting with their organization's ideology and opinions on how GSENM should be managed. As explained in *Food and Drug Administration v. Alliance for Hippocratic Medicine*, "[a]n Article III court is not a legislative assembly, a town square, or a faculty lounge." 602 U.S. at 382. SUWA cannot support its invocation of this Court's jurisdiction based solely on its opinion that the roads in GSENM should not be maintained or improved. It must allege concrete environmental harm that Defendants' actions have caused to its interests. Since it fails to do so, SUWA does not satisfy the first element of Constitutional standing to pursue its claims.

For similar reasons, SUWA also cannot satisfy the second and third elements of the Constitutional standing test: causation and redressability. Although SUWA removed the State and County from its Amended and Supplemental Complaint, its requested relief is the same – SUWA

11

asks this Court to compel BLM to exercise its property rights as the servient estate holder and limit the State and County's ability to exercise their property rights as the dominant estate holders. However, to successfully establish causation and redressability, the plaintiff "must show that the defendant is responsible for the injury, rather than some other party not before the court." *Palma*, 707 F.3d at 1153. SUWA seeks to circumvent this obstacle by framing its claims as procedural violations of NEPA, FLPMA, and the GSENM Plan, rather than claims as to the State and County's roadwork. It does so to invoke a lower standard of redressability for NEPA claims that states, "[w]hen the BLM is the defendant, an environmental plaintiff need only trace the risk of harm to the agency's alleged failure to follow [statutory procedures]." Plaintiff's Brief in Support of its Standing, ECF No. 57 at 6 (citing *Dine Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 843 (10th Cir. 2019)).

For the reasons discussed in depth below, however, BLM did not fail to perform any statutorily required procedures when it consulted with the State and County on resurfacing and other roadwork on the Road. BLM's determination does not constitute a major federal action for purposes of NEPA, nor is it the sort of "final agency action" that would trigger judicial review under the APA. FLPMA likewise does not prescribe any procedures to which BLM must adhere before determining that a proposed project falls within the scope of a right-of-way crossing federal lands. The GSENM Plan — also not a statute — does not bind the State and County's efforts regarding maintenance and improvements on a right-of-way to which it has title, nor does it subject BLM's determination to judicial review. The various "procedural requirements" SUWA points to are all derived not from statute but from common law as established in *SUWA v. BLM*, in accordance with the United States' role as holder of the servient estate. As a result, SUWA cannot

12

trace its purported injury to any statutory obligations that BLM, or any party for that matter, failed to perform. It therefore fails to satisfy the element of causation.

Finally, a favorable decision by this Court would not redress Plaintiff's alleged injuries. For procedural challenges, "the plaintiff must only show that its injury would be redressed by a favorable decision requiring compliance with NEPA procedures." *Dine*, 923 F.3d at 844 (internal citations and quotations omitted). Again, SUWA has failed to identify a procedure that BLM was statutorily required to follow. BLM's reasonable and necessary determination did not "authorize" the County's roadwork in such a way that a favorable decision on procedural grounds from this Court would prevent the roadwork from continuing. As a result, SUWA cannot meet the redressability element of standing. Since it cannot satisfy the elements of Constitutional standing, SUWA's claims must be dismissed for lack of jurisdiction.

**B. SUWA's claims fail under the prudential standing doctrine because they improperly rely on the legal rights and interests of the federal government.**

As the Court noted in its Order Denying Motion for Ex Parte Temporary Restraining Order, "SUWA's arguments hint at a potential question of prudential standing . . . SUWA suggests that it is trying to vindicate the government's rights with respect to Hole-in-the-Rock Road. SUWA's arguments under the FLPMA . . . also seem like attempts to enforce or compel the exercise of the government's rights." ECF No. 29 at 5. The Court's concerns regarding SUWA's original Complaint were well-founded and persist despite Plaintiff's efforts to cure the deficiencies in its pleadings.

Like its initial complaint, SUWA's Amended and Supplemental Complaint is premised on the legal rights and interests of the federal government as established in *SUWA v. BLM*, 425 F.3d 735 (10th Cir. 2005) (finding that the holder of an R.S. 2477 right-of-way across federal land must advise the federal land management agency of that work in advance, but the agency "may not use

13

its authority, either by delay or by unreasonable disapproval, to impair the rights of the holder of the R.S. 2477 right of way"). SUWA sought to remedy the flaw in its pleadings by removing all allegations other than the procedural violations under NEPA, FLPMA, and the GSENM Plan. However, for reasons discussed in depth below, there are no procedural requirements that BLM failed to follow that could potentially provide SUWA with legally protectable interests. Without an interest as a property owner in this case, SUWA still comes to this Court without its own legal rights distinct from those of the federal government. Indeed, the revised Complaint is nothing more than a repackaged attempt to stand in the shoes of BLM and vindicate its rights as the owner of the servient estate across which the State and County's right-of-way runs.

Injunctive relief for disputes involving improvements to a right-of-way under the Tenth Circuit's holding in *SUWA v. BLM* is a right that belongs to BLM, not SUWA. 425 F.3d at 749 ("If changes are contemplated, it is necessary to consult [with BLM], and the failure to do so will provide a basis for prompt injunctive relief."). The rationale behind the Tenth Circuit's decision in *SUWA v. BLM* undercuts the premise that any party other than the property owners may seek injunctive relief for failure to consult or disagreements regarding improvements to a right-of-way crossing federal lands. The Tenth Circuit created this consultation paradigm based on "[t]he principle that the easement holder must exercise its rights so as not to interfere unreasonably with the rights of the owner of the servient estate, derives from general principles of the common law of easements[.]" *Id.* at 747. In reaching its decision, the court recognized that BLM had certain rights and obligations as the servient estate owner and federal public lands management agency, which included "responsibilities to determine whether the proposed changes are reasonable and necessary, whether they would impair or degrade the surrounding lands, and whether modifications in the plans should be proposed." *Id*. To balance the interests of BLM and the County, the court

14

explained that parties holding title to rights-of-way crossing federal lands must consult with BLM before making improvements beyond routine maintenance. *Id.* at 748. The legal rights and interests implicated in *SUWA v. BLM* belong to the landowners. If the Tenth Circuit meant to create legally enforceable rights for private groups through the consultation paradigm, it certainly could have — SUWA was a party in that case. However, the court did not include a public participation component, nor did it require the right-of-way holder to consult on proposed improvements with any party other than the owner of the servient estate.

In *The Wilderness Society v. Kane County, Utah*, the Tenth Circuit similarly found that a nonprofit organization lacked prudential standing because its claims solely advanced the legal rights and interests of the federal government. *The Wilderness Soc'y*, 632 F.3d at 1170–71. The case also involved a dispute over R.S. 2477 rights-of-way in GSENM. *Id.* at 1165–66. The Wilderness Society argued, *inter alia*, that the County violated the federal government's property rights by removing road closure signs, posting road opening signs, and passing local ordinances with conflicting policies about permitted vehicle use on R.S. 2477 roads within GSENM. *Id.* at 1166–67. The Wilderness Society argued that it represented its own legal rights and interests apart from BLM by advancing its conservation interests. *Id.* at 1171. The court disagreed, finding that "[The Wilderness Society] has taken sides in what is essentially a property dispute between two landowners . . . But TWS lacks any independent property rights of its own." *Id.* As a result, the Tenth Circuit found The Wilderness Society lacked prudential standing to bring its claim. *Id.*

In the present case, SUWA also lacks any real property rights concerning the Road within GSENM, and yet similarly attempts to insert itself into the relationship between the landowner parties in interest. Like the plaintiff in *The Wilderness Society*, SUWA cannot demonstrate legal rights and interests separate from the federal government here, as it is not a landowner, nor does it

15

allege any procedural injuries reviewable under the Administrative Procedure Act ("APA"). As a result, this Court must dismiss SUWA's claims for lack of jurisdiction as it fails to overcome both prudential and Constitutional standing issues.

## II. SUWA's FLPMA and NEPA claims must be dismissed for lack of jurisdiction and failure to state a claim, as they fail to identify reviewable agency actions required by law.

SUWA relies on the APA to bring its claims under NEPA and FLPMA, as both statutes do not include their own private rights of action. *See State of Utah v. Babbitt*, 137 F.3d 1193, 1203 (1998). While the APA is most often utilized for review of an agency action, it may, in limited circumstances, also provide plaintiffs with the opportunity for judicial review of agency *inaction* or "failure to act." *Norton*, 542 U.S. at 61–62. To invoke the court's jurisdiction under § 706 for failure to act, the plaintiff must satisfy the APA's statutory standing requirements. *Babbitt*, 137 F.3d at 1203. The APA limits federal courts' jurisdiction to only "final agency actions." *See* 5 U.S.C. §§ 702, 704; *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61–62 (2004). SUWA fails to identify a "final agency action" or state a claim upon which relief may be granted under its FLPMA and NEPA claims. Accordingly, its case must be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A. SUWA fails to state a claim or invoke this Court's jurisdiction under the APA for its FLPMA claims.

To bring a claim for an agency's alleged "failure to act" under the APA, a plaintiff must show that the "agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, at 64-65. As the *Norton* court explained, the APA creates this limitation itself by stating in § 706(1) that the reviewing court may "compel agency action *unlawfully* withheld." *Id.* at 63. In other words, "the common law cannot be enforced against an agency through the APA." *S. Utah Wilderness All. v. U.S. Bureau of Land Mgmt.*, 551 F.Supp.3d 1226, 1241 (D. Utah 2021). In its

16

two FLPMA claims, SUWA fails to identify a statutorily required action that BLM failed to perform. As a result, its FLPMA claims are not reviewable under the APA.

In its first FLPMA claim, SUWA alleges that BLM "failed to 'take any action necessary to prevent unnecessary or undue degradation of the lands'" in violation of its statutory obligation under FLPMA. *See* Amend. Supp. Compl., ECF No. 61 at ¶¶ 58–66. However, the "required" actions it cites as the basis for its claim are not required by statute or regulation, but are derived from the opinion in *SUWA v. BLM*. *See* Amend. Supp. Compl. ¶ 62–65; *see also,* 425 F.3d 735, 748–49 (10th Cir. 2005). SUWA improperly equates the common law consultation requirement with a statutory obligation that BLM allegedly failed to perform.[5] As the court explained in a similar action involving Kane County's roadwork on an R.S. 2477 right-of-way crossing public lands, "the consultation obligation [established in *SUWA v. BLM*] between BLM and Kane County is a matter of common law, which this court cannot enforce through the APA." *S. Utah Wilderness All.*, 551 F.Supp.3d at 1241. Accordingly, SUWA's FLPMA claim for "unnecessary or undue degradation" does not meet the APA standing requirements to provide this Court with jurisdiction.

Even if SUWA could enforce the common law through the APA, there is no final agency action for this Court to review. An agency action is considered final when it "(1) marks the consummation of the agency's decisionmaking process and (2) is one by which rights or obligations have been determined, or from which legal consequences flow." *S. Utah Wilderness All. v. U.S. Dep't of Interior*, 44 F.4th 1264, 1272 (10th Cir. 2022). First, BLM's determination cannot be considered the end of the agency's decision-making process on Hole-in-the-Rock Road.

---

[5] The cause of action fares no better when framed as a challenge to BLM's failure to act in accordance with its broad statutory mandate under FLPMA to prevent "unnecessary or undue degradation of the lands." Amend. Supp. Compl., ECF No. 61 at ¶¶ 40–41. The Tenth Circuit has repeatedly held that the APA does not permit reviewing courts to compel agency action according to such broad statutory mandates *See, e.g., Norton*, 542 U.S. at 65–67.

17

The parties have consulted on maintenance and proposed roadwork on the Road for the last decade or more and will likely continue as the need arises in the future. Like the relationship between any individuals or entities holding some shared property interest, the relationship between the BLM, State, and County as owners of overlapping property interests does not end at this project.

Second, legal consequences do not flow from the BLM's determination on the proposed project. SUWA's argument regarding final agency action misconstrues the consultation process between the State and County and outright ignores critical distinctions between this case and the *Burr Trail* case. *See S. Utah Wilderness All. v. U.S. Dep't of the Interior ("Burr Trail")*, 44 F.4th 1264, 1272 (10th Cir. 2022). Of most significance, the State and County hold an adjudicated R.S. 2477 right-of-way under the federal Quiet Title Act ("QTA") for the Road. *See Kane Cnty., Utah v. United States*, No. 2:10-cv-1073, 2025 WL 2061989 (D. Utah July 23, 2025). In *Burr Trail*, the State and County did not yet hold adjudicated title to the right-of-way. *Id.* at 1270. Thus, in the BLM's determination regarding road resurfacing on the Stratton Segment of the Burr Trail, it did more than make a "reasonable and necessary" determination as it did for Hole-in-the-Rock. *Id.* at 1273–74. To the extent there was a "final agency action" in *Burr Trail*, it was because BLM acknowledged the validity of the State and County's unadjudicated right-of-way claim under R.S. 2477 for purposes of authorizing the project and issued a Finding of No Significant Impact ("FONSI"). *Id.* at 1272. Here, BLM made no such determination as to the validity of the ROW, as it had already been adjudicated in favor of the State and County, and there was no need for NEPA analysis in order to reach its internal determination.

SUWA likewise fails to identify a discrete agency action required by law sufficient to support APA standing or to state a claim for its second FLPMA cause of action for "failure to conform with the governing land use plan." *See* Amend. Supp. Compl., ECF No. 61 at ¶¶ 67–76.

SUWA cites the GSENM Plan provision TTM-007 as its basis to assert that BLM failed to act in accordance with its statutory mandate to adhere to the approved resource management plan. *See* 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3(a). However, in doing so, SUWA misunderstands and misapplies the management plan provision. TTM-007 contemplated a situation in which the parties sought to make improvements to the Road *prior to* QTA adjudication. Now that the State and County hold title to the Road, a different provision applies, which reads, "[i]f it is determined that the State or counties possess a valid existing R.S. 2477 ROW . . . the management actions in this RMP are subject to that ROW." Bureau of Land Mgmt., *Grand Staircase-Escalante National Monument Approved Resource Management Plan* (Jan. 2025), at 1-6. Without a discrete agency action BLM is required by law to take, or some final agency action, this Court does not have jurisdiction to "compel agency action *unlawfully* withheld" under FLPMA through the APA. Accordingly, both of SUWA's FLPMA claims must be dismissed for lack of jurisdiction and failure to state a claim.

**B. SUWA fails to state a claim or invoke this Court's jurisdiction under the APA for its NEPA claim.**

NEPA requires that all federal agencies prepare an environmental report for "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(c). The term "major federal action" includes "nonfederal actions with effects that may be major and which are potentially subject to Federal control and responsibility." *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1297 (10th Cir. 2024) (internal citations and quotations omitted). The federal government must have "actual power to control the project" of the non-federal actor for NEPA obligations to attach. *Id.* (internal citations and quotations omitted). As the Tenth Circuit explained in *Sierra Club v. Hodel*, "[t]he touchstone of major federal action, in the context of [a case involving State and County improvements to a right-of-way on BLM land], is an agency's

19

authority to influence significant nonfederal activity." 848 F.2d 1068, 1089 (10th Cir. 1988). In the present case, BLM does not have authority to control the project or influence the County's roadwork on Hole-in-the-Rock Road, as nothing about the project constitutes a "major federal action" as contemplated by *Hodel*. Moreover, the project is within the scope of the State and County's right-of-way, and the State and County performed the roadwork with their own funding. Without a final agency action, or a major federal action, SUWA fails to state claim under NEPA that this Court has jurisdiction to review under APA § 706.

In *Hodel*, the Tenth Circuit considered a similar issue of whether the State and County's roadwork on the Burr Trail implicated BLM's NEPA obligations. *See id.* The Tenth Circuit overturned the district court's decision that BLM's "monitoring activities to prevent the County from exceeding its authority to improve or constructing outside its right-of-way" constituted a major federal action triggering the need for NEPA review. *Id.* at 1090. The Court held that BLM's effort to monitor the road work to ensure the County stayed within the scope of its ROW did not qualify as major federal action triggering NEPA. *Id.* ("The monitoring activities to prevent the County from exceeding its authority to improve or constructing outside its right-of-way do not amount to authority to regulate or approve significant aspects of the Burr Trail construction.").

Although *Hodel* predated the consultation paradigm established in *SUWA v. BLM*, its principles are still applicable to the case at hand. BLM's internal "non-binding" determination in this case does not "regulate" or "authorize" the project. Like in *Hodel*, BLM's limited engagement in the project, only to ensure that the roadwork falls within the scope of the State and County's ROW, does not constitute a major federal action for purposes of NEPA. SUWA does not, for example, allege that the project affects a WSA (nor could it, as the Road is not in or near a WSA). Thus, BLM does not have the authority to exercise control over the County's roadwork. Without

20

such authority, there is no major federal action requiring NEPA compliance. As with its FLPMA claims, there is likewise no final agency action for this Court to review under the APA for SUWA's NEPA claim. Accordingly, SUWA's NEPA claim must be dismissed for lack of jurisdiction and failure to state a claim upon which relief may be granted.

**CONCLUSION**

For the foregoing reasons, this Court must dismiss SUWA's claims for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). SUWA cannot meet its burden of showing Constitutional or prudential standing, nor can it meet its burden of establishing standing under the APA for its FLPMA and NEPA claims. Its Amended and Supplemental Complaint additionally fails to state a claim upon which relief may be granted under FLPMA or NEPA. Therefore, this action should be dismissed in its entirety with prejudice.

RESPECTFULLY SUBMITTED this 22nd day of June 2026.

*/s/ Lauren K. Cormany*

Lauren K. Cormany
K. Tess Davis
Jason L. DeForest
David A. Reay
Assistant Attorneys General
Utah Attorney General's Office

*Attorneys for Intervenor-Defendants State of Utah and Garfield County, Utah*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2026, the undersigned electronically filed the foregoing

**MOTION TO DISMISS AMENDED & SUPPLEMENTAL COMPLAINT AND**

**MEMORANDUM IN SUPPORT** with the Clerk of the Court using the CM/ECF system which

will send notification of this filing to all counsel of record.

*/s/ Lauren K. Cormany*

Lauren K. Cormany
Assistant Attorney General
Utah Attorney General's Office

*Attorney for Intervenor-
Defendants State of Utah and
Garfield County, Utah*
