Stephen H.M. Bloch (#7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

Mitch M. Longson (#15661)
MANNING CURTIS BRADSHAW
& BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
mlongson@mc2b.com

Trevor J. Lee (#16703)
HOGGAN LEE HUTCHINSON
257 East 200 South, #1050
Salt Lake City, UT 84111
Telephone: (435) 615-2264
trevor@hlh.law

---

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION**

---

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES BUREAU OF LAND MANAGEMENT**, and the **UNITED STATES DEPARTMENT OF THE INTERIOR**, <br><br> Defendants <br><br> and <br><br> **GARFIELD COUNTY, UTAH**, a political subdivision, and the **STATE OF UTAH**, <br><br> Intervenor-Defendants. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO INTERVENOR-DEFENDANTS' MOTION TO DISMISS** <br><br> Case No. 2:26-cv-00096-AMA-PK <br><br> District Judge Ann Marie McIff Allen <br> Magistrate Judge Paul Kohler |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. III

GLOSSARY.................................................................................................................... VIII

INTRODUCTION ............................................................................................................... 1

ARGUMENT...................................................................................................................... 2

    I.      SUWA Has Constitutional and Prudential Standing to Bring its Claims...................... 3

          A.      Constitutional Standing...................................................................... 4

          B.      Prudential Standing ........................................................................ 10

    II.     The Determination is Reviewable Under the APA and SUWA Has Plausibly Alleged Facts Demonstrating the Determination Violates NEPA and FLPMA ....................... 12

          A.      The Determination is a Final Agency Action Reviewable Under the APA...... 13

          B.      SUWA Has Plausibly Alleged Reviewable FLPMA Violations....................... 19

          C.      SUWA Has Plausibly Alleged a Reviewable NEPA Violation.......................... 23

CONCLUSION................................................................................................................. 25

CERTIFICATE OF COMPLIANCE......................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Bd. of Cnty. Comm'rs of the Cnty. of San Miguel v. U.S. Bureau of Land Mgmt.*,
  584 F. Supp. 3d 949 (D. Colo. 2022) ...................................................................... 20

*Bell v. New Jersey*,
  462 U.S. 773 (1983) .............................................................................................. 15

*Bennett v. Spear,*
  520 U.S. 154 (1997) .......................................................................................... 14, 17

*Clapper v. Amnesty International USA*,
  568 U.S. 398 (2013) ................................................................................................ 7

*Comm. to Save the Rio Hondo v. Lucero*,
  102 F.3d 445 (10th Cir. 1996) .............................................................................. 4, 8

*Ctr. for Native Ecosystems v. Cables*,
  509 F.3d 1310 (10th Cir. 2007) ............................................................................. 15

*Diné Citizens Against Ruining Our Env't v. Bernhardt*,
  923 F.3d 831 (10th Cir. 2019) ........................................................................... 4, 8, 9

*FDA v. All. for Hippocratic Medicine*,
  602 U.S. 367 (2024) ................................................................................................ 7

*Friends of the Earth v. Laidlaw Env't Serv. Inc.*,
  528 U.S. 167 (2000) ............................................................................................. 6, 7

*FTC v. Standard Oil of Cal.*,
  449 U.S. 232 (1980) .............................................................................................. 15

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006) ................................................................................. 13

*Hill v. Warsewa*,
947 F.3d 1305 (10th Cir. 2020).......................................................................................... 10

*Hogan v. Winder*,
762 F.3d 1096 (10th Cir. 2014).......................................................................................... 13

*Holt v. United States*,
46 F.3d 1000 (10th Cir. 1995)................................................................................... 4, 13, 23

*Jacobsen v. Deseret Book Co.*,
287 F.3d 936 (10th Cir. 2002)............................................................................................ 6

*Kane Cnty. v. United States*,
2025 U.S. Dist. LEXIS 141248 (D. Utah 2025) ........................................................... 16

*Kane Cnty. v. United States*,
333 F.R.D. 225 (D. Utah 2019)........................................................................................... 5

*Kane Cnty. v. United States*,
928 F.3d 877 (10th Cir. 2019)............................................................................................ 5

*Kane Cnty. v. United States*,
94 F.4th 1017 (10th Cir. 2024)........................................................................................... 5

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)............................................................................................................ 13

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983).............................................................................................................. 21

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004).............................................................................................................. 10

*Robertson v. Methow Valley Citizens Council*,
490 U.S. 332 (1989)............................................................................................................ 23

*Rocky Mtn. Wild v. Dallas*,
98 F.4th 1263 (2024)........................................................................................................... 23

*Rural Water Dist. No. 2 v. City of Glenpool*,
    698 F.3d 1270 (10th Cir. 2012) ................................................................................ 3

*S. Utah Wilderness All. v. Bureau of Land Mgmt.*,
    147 F. Supp. 2d 1130 (D. Utah 2001) .......................................................................11

*S. Utah Wilderness All. v. Bureau of Land Mgmt.*,
    425 F.3d 735 (10th Cir. 2005) ...................................................................... passim

*S. Utah Wilderness All. v. Bureau of Land Mgmt.*,
    551 F. Supp. 3d 1226 (D. Utah 2021) ....................................... 18, 19, 20, 25

*S. Utah Wilderness All. v. Palma*,
    707 F.3d 1143 (10th Cir. 2013) ................................................................ 4, 6

*S. Utah Wilderness All. v. U.S. Dep't of the Interior*,
    2021 U.S. Dist. LEXIS 63395 (D. Utah March 31, 2021) ........................... 24

*S. Utah Wilderness All. v. U.S. Dep't of the Interior*,
    44 F.4th 1264 (10th Cir. 2022) .................................................................. passim

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*,
    605 U.S. 168 (2025) ................................................................................ 23

*Sierra Club v. Hodel*,
    848 F.2d 1068 (10th Cir. 1988) ................................................... 15, 24, 25

*Sierra Club v. Peterson*,
    717 F.2d 1409 (D.C. Cir. 1983) .............................................................. 24

*The Wilderness Soc'y v. Kane Cnty.*,
    632 F.3d 1162 (10th Cir. 2011) ............................................................ 10, 12

*United States v. Garfield Cnty.*,
    122 F. Supp. 2d 1201 (D. Utah 2000) ...................................................... 15

*Utah Native Plant Soc'y v. U.S. Forest Serv.*,
923 F.3d 860 (10th Cir. 2019) ................................................................................... 6

*Utah Shared Access All. v. Carpenter*,
463 F.3d 1125 (10th Cir. 2006) ............................................................................... 21

*Utah v. Babbitt*,
137 F.3d 1193 (10th Cir. 1998) ............................................................................. 8, 11

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
305 F.3d 1152 (10th Cir. 2002) ............................................................................... 24

*W. Watersheds Proj. v. Bureau of Land Mgmt.*,
721 F.3d 1264 (10th Cir. 2013) ........................................................................... 21, 23

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ................................................................................................. 13

*Wilson v. Montano*,
715 F.3d 847 (10th Cir. 2013) ........................................................................... 13, 23

**Statutes**

42 U.S.C. § 4321 ....................................................................................................... 23

42 U.S.C. § 4332(2)(C) .............................................................................................. 23

42 U.S.C. § 4332(2)(H) .............................................................................................. 23

42 U.S.C. § 4336(a) ................................................................................................... 23

42 U.S.C. § 4336e(10) ............................................................................................... 23

42 U.S.C. § 4336e(7) ................................................................................................. 17

43 U.S.C. § 1701(a)(8) ............................................................................................... 19

43 U.S.C. § 1712(a) ................................................................................................... 21

43 U.S.C. § 1732(a) ................................................................................................... 21

43 U.S.C. § 1732(b) ....................................................................................... 20, 21, 25

43 U.S.C. § 1782(a) ..................................................................................................... 2

43 U.S.C. § 1782(c) ......................................................................................... 20, 21, 25

5 U.S.C. § 551(13) ...................................................................................................... 13

5 U.S.C. § 551(2) .........................................................................................................11

5 U.S.C. § 701(2) .........................................................................................................11

5 U.S.C. § 701(b)(2) .................................................................................................... 13

5 U.S.C. § 702...................................................................................................3, 10, 11

5 U.S.C. § 703................................................................................................................ 3

5 U.S.C. § 704.............................................................................................................. 13

5 U.S.C. § 706(1) ........................................................................................ 1, 3, 19, 20

5 U.S.C. § 706(2)(A)............................................................................................. passim

5 U.S.C. §§ 702-06 ................................................................................................ 2, 10

## Regulations

43 C.F.R. § 1610.5-3(a)............................................................................................... 21

43 C.F.R. § 1610.5-3(c)............................................................................................... 21

## Other Authorities

Bureau of Land Mgmt., *Grand Staircase-Escalante National Monument Record of Decision and Approved Resource Management Plan* (Jan. 2025).................................................. 2

Bureau of Land Mgmt., *Manual 6330 – Management of BLM Wilderness Study Areas* (July 2012) ................................................................................................................. 2

**GLOSSARY**

| | |
|---|---|
| APA | Administrative Procedures Act |
| BLM | Bureau of Land Management |
| FLPMA | Federal Land Policy and Management Act |
| FONSI | Finding of No Significant Impact |
| GSENM RMP | Grand Staircase-Escalante National Monument Resource Management Plan |
| ISA | Instant Study Area |
| LWC | Lands with Wilderness Characteristics |
| NEPA | National Environmental Policy Act |
| QTA | Quiet Title Act |
| ROW | Right-of-Way |
| R.S. | Revised Statute |
| SUWA | Southern Utah Wilderness Alliance |
| UUD | Unnecessary or Undue Degradation |
| WSA | Wilderness Study Area |

**INTRODUCTION**

Intervenor-Defendants Garfield County, Utah and the State of Utah (collectively, "Garfield County") have moved to dismiss this litigation under Rules 12(b)(1) and 12(b)(6) on the grounds that Plaintiff Southern Utah Wilderness Alliance ("SUWA") does not have standing and has not stated a claim upon which relief may be granted. *See* ECF No. 74 at 1. Specifically, Garfield County alleges that (1) SUWA has neither Article III nor prudential standing to pursue its claims and (2) SUWA has not "identif[ied] an agency action sufficient to state a claim upon which relief may be granted or invoke the Court's jurisdiction under [Federal Land Policy Management Act ('FLPMA')] or [the National Environmental Policy Act ('NEPA')]." *Id.* These arguments are premised on a fundamental misunderstanding of the nature of this case and its procedural posture.

*First*, as SUWA has repeatedly demonstrated, it has both constitutional and prudential standing to bring its claims because the Bureau of Land Management ("BLM") issued its Reasonable and Necessary Determination ("Determination") allowing Garfield County to proceed with chip-sealing the Hole-in-the-Rock Road ("Road") without BLM first complying with its statutory FLPMA and NEPA obligations. BLM's conduct directly harms SUWA's interests, so inherently SUWA cannot be "standing in BLM's shoes." *Second*, SUWA has stated a claim upon which relief may be granted because the Determination is a final agency action that may be challenged under the Administrative Procedures Act ("APA") and SUWA has properly brought its claims pursuant to 5 U.S.C. § 706(2)(A) (arbitrary and capricious agency action). Garfield County's argument to the contrary is entirely based on the erroneous belief that SUWA's claims are brought pursuant to 5 U.S.C. § 706(1) (compel agency action unlawfully withheld).

1

As alleged in its Amended and Supplemental Complaint ("Complaint"), ECF No. 61, the Determination does not comply with NEPA, FLPMA and its implementing regulations, and the APA. Consequently, the improved and chip-sealed Road will unnecessarily and unduly harm the instant study areas ("ISA"), wilderness study areas ("WSA"),[1] and BLM-identified lands with wilderness character ("LWC") (collectively, "wilderness-quality lands") surrounding and near the Road, such that the region's rugged and remote character, its dark night skies, and stunning natural quiet will be degraded.[2]

Garfield County's motion should be denied.

## ARGUMENT

Garfield County asserts that this case must be dismissed because SUWA lacks standing to bring its claims and has not identified a reviewable agency action. ECF No. 74 at 5, 16. In so arguing, Garfield County ignores that the posture of this case is that of a typical challenge seeking judicial review of an agency action as provided by the APA. 5 U.S.C. §§ 702-06.

Specifically, SUWA is "adversely affected" by an agency action (BLM's Determination) "within the meaning of a relevant statute" (NEPA and FLPMA) so it is "entitled to judicial

---

[1] Before FLPMA's enactment in 1976, BLM designated some lands as natural or primitive under other laws. *See* 43 U.S.C. § 1782(a). BLM refers to these areas as "instant study areas." Bureau of Land Mgmt., *Manual 6330 – Management of BLM Wilderness Study Areas*, Glossary-1 (July 2012) (last visited July 15, 2026) ("instant study area" definition). An ISA is considered a WSA and managed according to WSA standards. *Id.* at 1-1; 43 U.S.C. § 1782(c) (management standard for WSAs); Bureau of Land Mgmt., *Grand Staircase-Escalante National Monument Record of Decision and Approved Resource Management Plan* ("GSENM RMP"), 2-90 (Jan. 2025) (last visited July 15, 2026) (applying the same management directions to WSAs and ISAs).

[2] On July 13, 2026, President Trump issued Presidential Proclamation No. 11044 which drastically reduced Grand Staircase-Escalante National Monument by 90% such that the Road and surrounding lands are no longer within Monument boundaries. This Proclamation does not change the nature or merits of SUWA's claims and the GSENM RMP remains in effect.

review thereof." *Id.* § 702. As such, SUWA sued BLM, *see id.* § 703, specifically asking this Court to "hold unlawful" the Determination on the grounds that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (*i.e.*, NEPA and FLPMA). *Id.* § 706(2)(A); *see also* ECF No. 61 ¶¶ 48-76, Prayer for Relief. Importantly, SUWA has <u>not</u> asked this Court to "compel agency action unlawfully withheld" pursuant to 5 U.S.C. § 706(1). Rather, SUWA has alleged that the Determination and its shortcomings are arbitrary and capricious. ECF No. 61 ¶¶ 57, 66, 76.

Understanding the nature and posture of this case, Garfield County's Motion to Dismiss should be denied.

## I.   SUWA Has Constitutional and Prudential Standing to Bring its Claims[3]

Garfield County argues that the Court must dismiss this case for a lack of subject matter jurisdiction because SUWA does not have constitutional or prudential standing to bring its claims. ECF No. 74 at 5. The County's arguments ignore well-settled organizational and associational standing principles and conflate a plaintiff's standing requirements in an APA case with those of an intervenor in a Quiet Title Act ("QTA") case. Importantly, the County's arguments constitute a facial attack on SUWA's claims because its motion does not include affidavits, or otherwise present evidence contesting jurisdiction. *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012). When evaluating a facial attack, the Court must accept the complaint's allegations as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th

---

[3] SUWA has already addressed its standing in its Brief in Support of Standing ("Standing Brief"), ECF No. 57, filed in response to the Court's May 8, 2026 Minute Order. SUWA incorporates by reference that brief in its entirety. For completeness, SUWA also provides the following responses, further demonstrating it has standing to pursue its claims in its Complaint.

Cir. 1995). As explained in its Standing Brief and herein, SUWA unquestionably has standing to bring this lawsuit.

### A.      Constitutional Standing

An organization that sues on behalf of its members has standing if:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Diné Citizens Against Ruining Our Env't v. Bernhardt* ("*Diné CARE*"), 923 F.3d 831, 840 (10th Cir. 2019) (citation omitted). A member has standing to sue in their own right if:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id*. (citation omitted). "The relevant showing for standing in environmental cases is not injury to the environment but injury to the plaintiff." *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 449 (10th Cir. 1996).

"When evaluating a plaintiff's standing at the stage of a motion to dismiss on the pleadings, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (citation and internal quotation marks omitted). Courts "also must construe the statements made in the affidavits in the light most favorable to the petitioner." *Id*. (citation omitted).

> i.      *SUWA's Standing in the Bellwether Case is Irrelevant to SUWA's Standing in this Case*

As an initial matter, Garfield County incorrectly conflates standing requirements for a plaintiff in an APA case with those of an intervenor in a QTA case. The County cites to *Kane County v. United States*, 333 F.R.D. 225 (D. Utah 2019), an intervention order in the pending "bellwether" case adjudicating several Revised Statute ("R.S.") 2477 rights-of-way ("ROW"), including the Road, under the QTA. There, the district court held that SUWA did not have standing to intervene because "it has no claim of title to any of the land at issue" and "has taken sides in what is essentially a property dispute between two landowners." *Id.* at 234 (citation omitted). But crucially, this holding was abrogated by *Kane County v. United States*, which held that SUWA <u>did</u> have constitutional standing and was entitled to intervene in a different R.S. 2477 QTA case. 928 F.3d 877, 889-90 (10th Cir. 2019); *see also Kane Cnty. v. United States*, 94 F.4th 1017 (10th Cir. 2024) (reaffirming SUWA's right to intervene in R.S. 2477 QTA cases).

And regardless, SUWA's standing in the bellwether case is irrelevant because the substance and procedural posture of this case is fundamentally different; SUWA is the plaintiff rather than an intervenor, and it is alleging injuries under NEPA, FLPMA, and APA, not seeking to defend the United States' title and scope to claimed ROWs under the QTA. The reasoning in that intervention order (discussing SUWA's rights *vis-a-vis* the United States' defense), even if it hadn't been abrogated, is entirely separate from the analysis here, where SUWA is the plaintiff and asserting its own claims.

> ii.      *Injury in fact*

Garfield County argues that SUWA "fails to adequately allege an injury in fact" because SUWA's injuries (1) "amount to little more than generalized opposition to BLM's land

5

management choices" that "simply conflict[] with their organization's ideology;" and (2) "require an untenable inferential chain." *Id*. at 7-9, 11. Garfield County is wrong for two reasons.

*First*, SUWA's injuries are not "generalized opposition;" they constitute judicially recognized, concrete, and particular injuries. *Id*. at 8. "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Friends of the Earth v. Laidlaw Env't Serv. Inc.*, 528 U.S. 167, 183 (2000). "[I]f that harm . . . affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice." *Palma*, 707 F.3d at 1155 (citation omitted). Mr. Hanley and Ms. Marienfeld's declarations make clear that they use the Road, but BLM's Determination and the resulting chip-sealing will lessen their aesthetic and recreational enjoyment of the surrounding wilderness-quality lands. ECF Nos. 18-1; 18-5; 57-1; 62-1; [4] *see also* ECF No. 57 at 5-6. These statements sufficiently describe a concrete and particularized injury in fact. *Palma*, 707 F.3d at 1156.

Garfield County mischaracterizes SUWA's injuries as "general ideological or policy concerns regarding BLM's decision-making," claiming that SUWA "do[es] not allege with particularity how BLM's consultation with [Garfield County] on roadwork causes a concrete injury to [it] as opposed to simply conflicting with [SUWA's] ideology and opinions on how GSENM should be managed." ECF No. 74 at 10-11 (citing *FDA v. All. for Hippocratic*

---

[4] Garfield County asserts that the declarations referenced extensively in the Complaint and Standing Brief are inapplicable because they were not attached to the Complaint. ECF No. 74 at 8. Well-established legal standards contradict this argument. *Utah Native Plant Soc'y v. U.S. Forest Serv.*, 923 F.3d 860, 865 (10th Cir. 2019) (explaining that when evaluating a 12(b)(1) facial attack the court may consider documents referred to in a well-pleaded complaint); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

*Medicine*, 602 U.S. 367, 381 (2024)). This assertion is demonstrably false and the County's reliance on *Hippocratic Medicine* is misplaced.

There, the Supreme Court distinguished plaintiffs who merely object to government policy from those whose own concrete interests are affected by governmental regulation, explaining that only the latter have standing to sue. *Hippocratic Medicine*, 602 U.S. at 381, 384-85. For example, "[w]hen the government regulates parks [or] national forests…the regulation may cause harm to individual users" in a manner that confers standing. *Id.* at 385; *see also Laidlaw*, 528 U.S. at 183. Unlike the *Hippocratic Medicine* plaintiffs, who asserted only "legal, moral, ideological, and policy objections" to regulations governing the conduct of others, *id.* at 385-86, SUWA alleges direct injuries to SUWA's and its' members recreational and aesthetic interests resulting from BLM's management decision affecting the Road and surrounding lands (*i.e.*, the Determination). *See* ECF Nos. 18-1; 18-5; 57-1; 62-1. SUWA's harm is thus not ideological but concrete and particularized. *See Laidlaw*, 528 U.S. at 183; *Hippocratic Medicine*, 602 U.S. at 385.

*Second,* SUWA's injuries are actual and imminent, notwithstanding the County's reliance on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013). In *Clapper*, the plaintiffs sued over "possible future injury" stemming from government surveillance actions that had not yet occurred. *Id*. at 409. Here, the relevant government action has already taken place—BLM issued the Determination that allowed the Road to be chip-sealed without first complying with NEPA and FLPMA. ECF No. 61-1. Garfield County has since completed the chip-sealing and other associated improvements (*e.g.*, installing culverts, realignment), that are the direct result of BLM's arbitrary and capricious action. ECF No. 61 ¶¶ 31-32.

This is not the "long, speculative causal chain" Garfield County claims. ECF No. 74 at 10. Instead, SUWA is alleging the Determination has and will continue to have direct, negative impacts on its members because the chip-sealed Road will degrade wilderness-quality lands and SUWA's members' enjoyment of these areas will be diminished. *See* ECF No. 18-1 ¶¶ 20-22; 18-5 ¶¶ 15-17. Additionally, SUWA and its members expect that BLM will follow the law (NEPA and FLPMA), including by analyzing and disclosing environmental impacts, so BLM's failure to do so here further injures SUWA's and its members' interests. *See* ECF Nos. 18-1 ¶ 4; 18-5 ¶ 5, 57-1 ¶¶ 10-12.

     *ii.*     *Causation and Redressability*

Garfield County further argues that SUWA failed to demonstrate causation and redressability. To establish causation, a plaintiff need only demonstrate that its injury "is fairly traceable to the challenged action of the defendant." *Diné CARE*, 923 F.3d at 840 (citation omitted). When BLM is the defendant, an environmental plaintiff "need only trace the risk of harm to the agency's alleged failure to follow [statutory] procedures." *Id*. at 843 (cleaned up); *see also Rio Hondo*, 102 F.3d at 452. Put differently, standing exists "when a plaintiff can show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Utah v. Babbitt*, 137 F.3d 1193, 1216 (10th Cir. 1998). Similarly, to demonstrate redressability, a plaintiff must demonstrate "it is likely, as opposed to merely speculative, that [the plaintiff's] injury will be redressed by a favorable decision." *Diné CARE*, 923 F.3d at 840. However, "a plaintiff need not establish that the ultimate agency decision would change upon NEPA [and/or FLPMA] compliance. Rather, the plaintiff must only show

that its injury would be redressed by a favorable decision requiring compliance with NEPA [and FLPMA] procedures." *Id*. at 844 (cleaned up).

The County contends causation and redressability are lacking because "SUWA has failed to identify a procedure that BLM was statutorily required to follow." ECF No. 74 at 13. To the contrary, SUWA has alleged that BLM has statutory obligations under NEPA and FLPMA, and BLM has not met those obligations.[5] ECF No. 61 ¶¶ 48-76. Indeed, SUWA alleges BLM issued the Determination authorizing the chip-sealing and idly stood by while the County made other unauthorized improvements, all without adhering to NEPA's procedural requirements and FLPMA's substantive requirements. *See* ECF No. 61 ¶¶ 40, 48-76. As a result, SUWA and its members were and continue to be harmed by BLM's uninformed and improper decisionmaking. *See id*.; ECF No. 57-1 ¶¶ 9-11. "This is sufficient to establish causation." *Diné CARE*, 923 F.3d at 844.

SUWA has likewise established redressability. SUWA's injuries are caused by BLM's failure to adhere to NEPA and FLPMA requirements and are redressable because SUWA is seeking both declaratory and injunctive relief. *See* ECF No. 61 at 22-23. Ms. Marienfeld states that her and SUWA's injuries would be redressed by a favorable decision from the Court

---

[5] Contrary to the County's assertions, SUWA is not requesting that the Court "compel BLM to exercise its property rights as the servient estate holder and limit[Garfield County's] ability to exercise [its] property rights as the dominant estate holder[]." ECF No. 74 at 12. Rather, SUWA is asking the Court to, *inter alia*, declare that BLM violated NEPA, FLPMA, and the APA and enjoin (*i.e.*, set aside) the Determination. ECF No. 61 at 22. This requested relief directly correlates with the type of relief provided by the APA. *See* 5 U.S.C. § 706(2)(A) (The court shall "hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

declaring that BLM violated NEPA and FLPMA in issuing the Determination and enjoining the Determination. ECF No. 57-1 ¶ 12.

There is no question that SUWA has constitutional standing to bring this lawsuit.

## B.    Prudential Standing

The prudential standing doctrine ensures that a party does not "rest its claims on the rights of third parties where it cannot assert a valid right to relief of its own." *Hill v. Warsewa*, 947 F.3d 1305, 1309-10 (10th Cir. 2020) (internal quotation marks omitted). It is generally not applicable to lawsuits challenging agency action pursuant to the APA because a plaintiff in an APA case "seeks to compel a federal agency to follow the law, not stand in the place of the federal agency to compel a state to follow the law." *The Wilderness Soc'y v. Kane Cnty.* ("*TWS*"), 632 F.3d 1162, 1170 n.2 (10th Cir. 2011) (citing 5 U.S.C. §§ 702, 706(2); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004)).

Garfield County wrongly asserts that SUWA's Complaint "is premised on the legal rights and interests of the federal government" as established in *S. Utah Wilderness All. v. Bureau of Land Mgmt.* ("*SUWA*"), 425 F.3d 735 (10th Cir. 2005). ECF No. 74 at 13. The County argues that SUWA "is not a property owner in this case," so it does not have "legal rights distinct from those of the federal government." *Id.* at 14. The County is confusing R.S. 2477 claims with APA claims. Indeed, this argument ignores the entire purpose of the APA's waiver of sovereign immunity and judicial review provisions, as well as the scope of review available under the APA. 5 U.S.C. §§ 702-06. The fact that SUWA is not a property owner has no bearing on SUWA's ability to hold the <u>federal government</u> accountable for its arbitrary and capricious actions under

10

NEPA, FLPMA, and the APA. The APA's entire purpose is to permit people who do <u>not</u> stand in the government's shoes to ensure it follows its proper procedures.[6]

Here, SUWA has alleged claims <u>solely against the federal government</u> for violations of NEPA and FLPMA on the basis that BLM's Determination was arbitrary, capricious, and not in accordance with law. *See* ECF No. 61 ¶¶ 48-76; 5 U.S.C. § 706(2)(A). SUWA does not assert a property interest in the Road, and its claims do not depend on one. Similarly, SUWA does not allege violations of the consultation process articulated in *SUWA*. Instead, SUWA's claims are grounded in BLM's <u>independent</u> obligations under NEPA and FLPMA. *See* ECF No. 61 ¶¶ 48-76. As such, SUWA is seeking to ensure BLM follows the law. Inherently, SUWA cannot "stand in the shoes of BLM," ECF No. 74 at 14, while also alleging that <u>BLM</u> violated the law.

Garfield County's attempts to liken this case to *SUWA* and *TWS* are similarly unavailing. *SUWA* outlined an extensive framework for evaluating the merits of an R.S. 2477 claim and how the ROW holder, BLM, and the courts should review maintenance and improvement proposals. *See generally* 425 F.3d 735. Notably, the Tenth Circuit declined to opine whether SUWA had standing to bring its claims in that case. *Id.* at 744; *see also S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 147 F. Supp. 2d 1130 (D. Utah 2001) (the district court granted summary judgment in favor of SUWA, thereby determining that SUWA had standing. The Tenth Circuit remanded the district court's decision for reasons unrelated to standing).

---

[6] Neither NEPA nor FLPMA provides a private right of action so agency actions under NEPA and FLPMA are judicially reviewable under the APA. *Babbitt*, 137 F.3d at 1203. Judicial review is available to any person (including organizations) "adversely affected" by agency action. 5 U.S.C. §§ 551(2), 701(2), 702. There is no requirement that such persons must own the property implicated by an agency's action to be "adversely affected" by that action.

Garfield County's reliance on *TWS* fares no better. Unlike here, the *TWS* plaintiffs in that case did not bring their claims pursuant to the APA. 632 F.3d at 1170 n.2 (explaining that the plaintiffs expressly did <u>not</u> sue under the APA because they sought to compel the <u>state</u> to follow the law). Rather they sued pursuant to the Constitution's Supremacy Clause, alleging that various federal laws and regulations preempted Kane County's ordinance, removal of BLM signage, and installation of its own signage. *Id.* at 1165, 1167. Upon rehearing *en banc*, the 10th Circuit held that the *TWS* plaintiffs lacked prudential standing because their Supremacy Clause claims "turn on the superiority of the federal government's property claim" and sought to "enforce the federal government's property rights" by forcing <u>Kane County</u> to comply with federal law. *Id.* at 1171. For the reasons explained above, the claims and relief sought in *TWS* are thus markedly different from the claims and relief sought by SUWA here. Unlike in *TWS*, SUWA is not seeking to "enforce the federal government's property rights" but is seeking to remedy the harm to its own interests that were injured by <u>BLM's</u> failure to comply with NEPA, FLPMA, and the APA.

For these reasons, in addition to those in SUWA's Standing Brief, SUWA has prudential standing to bring the causes of action in its Complaint.

## II.     The Determination is Reviewable Under the APA and SUWA Has Plausibly Alleged Facts Demonstrating the Determination Violates NEPA and FLPMA

Garfield County also argues that this case must be dismissed for lack of jurisdiction and a failure to state a claim upon which relief can be granted. Specifically, the County claims that SUWA has not identified an agency action reviewable under the APA. ECF No. 74 at 16. The County's argument is fundamentally flawed because it erroneously assumes (1) SUWA's causes of action are brought pursuant to Section 706(1) of the APA (to compel agency action unlawfully withheld), and (2) SUWA is seeking to enforce the common law established in *SUWA* rather than

12

BLM's independent duties prescribed by NEPA and FLPMA. As explained below, the

Determination is a final agency action reviewable under the APA, and each of SUWA's claims

properly alleges violations of FLPMA and NEPA, pursuant to Section 706(2)(A) of the APA

(arbitrary and capricious agency action not in accordance with law). Accepting the complaint's

factual allegations as true, viewing them in the light most favorable to the plaintiff, and drawing

all reasonable inferences in the plaintiff's favor, as the Court must, *Wilson v. Montano*, 715 F.3d

847, 852 (10th Cir. 2013); *Holt*, 46 F.3d at 1002, it is clear that SUWA's Complaint properly

invokes the APA's jurisdiction and pleads plausible claims for relief. *See Hogan v. Winder*, 762

F.3d 1096, 1104 (10th Cir. 2014).

> A.    **The Determination is a Final Agency Action Reviewable Under the APA**

The section of the APA SUWA actually sued under authorizes courts to set aside agency

action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law." 5 U.S.C. § 706(2)(A). Agency action is defined as "the whole or a part of an agency rule,

order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§

551(13), 701(b)(2) (emphasis added). This definition "is expansive…[and] 'is meant to cover

comprehensively every manner in which an agency may exercise its power.'" *Fund for Animals,*

*Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006) (quoting *Whitman v. Am.*

*Trucking Ass'ns*, 531 U.S. 457, 479 (2001)).

Whenever judicial review is sought under the APA, "the 'agency action' in question must

be 'final agency action.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (citing 5

U.S.C. § 704). An agency's action is final if two requirements are met: "[f]irst, the action must

mark the consummation of the agency's decisionmaking process—it must not be of a merely

tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997).

Here, BLM's Determination is final agency action with respect to both (i) its decision to authorize the chip-sealing without any NEPA analysis or compliance with FLPMA; and (ii) its decision not to consult, conduct the requisite NEPA analysis, or ensure its decision complied with BLM's FLPMA duties prior to allowing the County to undertake other improvements such widening, realigning, and/or installing new culverts.

i.  *The Determination is Final Agency Action Regarding BLM's Decision to Authorize Garfield County's Chip-Sealing Proposal*

The Tenth Circuit has specifically held that a BLM reasonable and necessary determination is final agency action. *S. Utah Wilderness All. v. U.S. Dep't of the Interior* ("*Burr Trail*"), 44 F.4th 1264, 1272 (10th Cir. 2022). *Burr Trail* is directly on point. There, Garfield County proposed to chip-seal a 7.5-mile section of the Burr Trail. After consulting with the County, BLM concluded that chip-sealing was reasonable and necessary in light of the traditional uses of the Burr Trail and issued its determination authorizing the County to proceed. *Id.* at 1270-71. The Circuit held that BLM's reasonable and necessary determination was final agency action because:

> BLM's conclusion that Garfield County [1] holds an R.S. 2477 right-of-way, [2] that the project fell within the scope of the right-of-way, and [3] that the improvement wouldn't significantly impact the environment marked the consummation of the agency's decisionmaking process. The decision was also legally consequential for Garfield County, given that BLM's conclusion allowed Garfield County to chip-seal the Stratton Segment. Thus,…BLM's approval of the chip-sealing project was a final agency action.

*Id.* at 1272 (cleaned up).

In this case, BLM's Determination likewise concluded that (1) the County holds an R.S. 2477 ROW for the Road, (2) the County's proposal to chip-seal 10 miles of the Road was within the scope of the ROW, and (3) the chip-sealing would not significantly impact the environment. ECF No. 61-1 at 1-2. Thus, the Determination marks the consummation of BLM's decisionmaking process for the County's planned improvements and allows the County to chip-seal the Road. The Determination is therefore final agency action.

Garfield County argues the Determination is not the consummation of BLM's decisionmaking process because the County and BLM "have consulted on maintenance and proposed roadwork on the Road for the last decade or more and will likely continue as the need arises in the future." ECF No. 74 at 18. Not only is this argument directly refuted by the Tenth Circuit's final agency action conclusion in *Burr Trail*, it is contrary to the Supreme Court's "pragmatic" view of administrative finality. *See FTC v. Standard Oil of Cal.*, 449 U.S. 232, 239 (1980).

> If an agency has issued a "definitive statement of its position, determining the rights and obligations of the parties," the agency's action is final notwithstanding "[t]he possibility of further proceedings in the agency" on related issues, so long as "judicial review at the time [would not] disrupt the administrative process.

*Ctr. for Native Ecosystems v. Cables*, 509 F.3d 1310, 1329 (10th Cir. 2007) (quoting *Bell v. New Jersey*, 462 U.S. 773, 779-80 (1983) (emphasis added). Just like with the Road, Garfield County has consulted with BLM on maintenance and roadwork for the Burr Trail for decades. *see, e.g., Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988) (involving a proposed improvement project for a different segment of the Burr Trail); *United States v. Garfield Cnty.*, 122 F. Supp. 2d 1201 (D. Utah 2000) (involving the County's unauthorized improvements to another segment of the Burr Trail). Yet for the purpose of determining whether BLM's decision to approve the County's

15

chip-sealing proposal was final agency action, the Circuit looked only at BLM's approval of that specific project. *Burr Trail*, 44 F.4th at 1272. That decision governs here.

Garfield County further argues that "legal consequences do not flow" from BLM's Determination because, unlike in *Burr Trail*, BLM did not issue a Finding of No Significant Impact ("FONSI") or make a "determination as to the validity" of the County's ROW since it "had already been adjudicated in favor of [Garfield County]." ECF No. 74 at 18. This argument misrepresents the status of the County's ROW and the relevance of a FONSI. Despite Garfield County's characterization, the County's ROW is only <u>partially</u> adjudicated. The bellwether case is still pending; the district court granted title to Garfield County, affirming that they were joint title holders (along with the State) to an R.S. 2477 ROW for the Garfield County portion of the Road, but expressly reserved "[i]ssues pertaining to scope" for "future proceedings." *Kane Cnty. v. United States*, 2025 U.S. Dist. LEXIS 141248, *9 (D. Utah 2025). Such proceedings have not yet happened and, thus, Garfield County's ROW is not fully adjudicated. This is significant because it is the scope of the ROW that matters for BLM's purposes of determining whether to authorize the County's proposed chip-sealing.

Without an adjudicated scope, BLM may determine for its own administrative purposes the scope of the ROW and evaluate whether proposed road work is within that scope. *SUWA*, 425 F.3d at 757. If BLM determines that the proposed work is outside the scope of the ROW, then the ROW holder does not have any legal right to conduct the proposed road work, and BLM may deny the proposal. But if it is within the scope of the ROW, then BLM may either approve the work as proposed or coordinate with the County on developing a less impactful alternative. *See id.* at 748. Here, by determining the scope of Garfield County's ROW for its own purposes, BLM

16

was determining whether the County could proceed with proposed improvements to the Road. *See* ECF No. 61-1 at 2. In other words, contrary to Plaintiffs' contention, legal consequences <u>do</u> flow from BLM's determination. *Bennett,* 520 U.S. at 178.

Whether or not BLM issued a FONSI does not change that. A FONSI is a NEPA-specific document that an agency issues if, after analyzing a proposed project's environmental impacts, the agency concludes that an environmental impact statement is not warranted because the proposed action would not have a significant impact on the environment. *See* 42 U.S.C. § 4336e(7). A FONSI, by itself, does not approve or deny a proposed action. It simply represents an agency's decision not to issue an environmental impact statement. Indeed, the *Burr Trail* court did not hold that the <u>FONSI</u> was final agency action; it held that BLM's decision to allow Garfield County to chip-seal a segment of the Burr Trail (comprised of BLM's determinations that the County held a ROW for the Burr Trail, the proposed chip-sealing was within the scope of that ROW, and the chip-sealing would not significantly impact the environment) was a final agency action. 44 F.4th at 1272. BLM simply issued the FONSI to support its determination that the chip-sealing that specific segment would not significantly impact the environment.

In this case, BLM did not (and could not) issue a FONSI to support its Determination because it did no such NEPA analysis in the first place. ECF No. 61 ¶¶ 41, 44-45. Instead, BLM recognized that Garfield County held a ROW for the Road (as it must, given its partially adjudicated status) and determined, for its own purposes, that the chip-sealing was within the scope of the ROW. ECF No. 61-1 at 1-2. BLM also (arbitrarily) concluded that chip-sealing the first ten miles of the Road "would not adversely affect the surrounding public lands or resources." ECF No. 61-1 at 2. Collectively, these three conclusions, documented in the

17

Determination, constitute BLM's decision to approve the chip-sealing, just like in *Burr Trail*. As such, legal consequences flow from the Determination.

ii.      *The Determination is Final Agency Action Regarding BLM's Decision to Allow Garfield County to Make Other Improvements Without Adhering to NEPA and FLPMA*

The Determination is likewise final agency action with respect to the completed improvements other than chip-sealing (*e.g.*, additional culverts, realignment) because it represents the consummation of BLM's decisionmaking process to <u>not</u> take further action on those improvements pursuant to NEPA and FLPMA. *See S. Utah Wilderness All. v. Bureau of Land Mgmt.* ("*Bull Valley Gorge*"), 551 F. Supp. 3d 1226, 1236-37, 1242-44 (D. Utah 2021) (holding that BLM's failure to comply with NEPA or FLPMA prior to letting Kane County install a bridge was arbitrary and capricious final agency action); *see also* ECF No. 69-1 Ex. 2 (memorandum explaining why BLM believed it need not conduct analyses under NEPA and FLPMA). As the *Bull Valley Gorge* court explained, though R.S. 2477 consultation tends to coincide with BLM conducting an environmental analysis pursuant to NEPA and/or FLPMA,[7] BLM's obligations under NEPA and FLPMA apply irrespective of whether BLM completes consultation and determines whether the proposed road work constitutes improvements within the scope of the ROW. *Id.* at 1242. Thus, BLM's decision here to <u>not</u> (1) prepare a NEPA analysis studying the environmental effects of the improvements; (2) take any action necessary to

---

[7] Logically, it makes sense for BLM to incorporate its duties under NEPA and FLPMA into the consultation process because that process, NEPA, and FLPMA all require some element of environmental analysis. *See SUWA*, 425 F.3d at 748 (explaining that the point of consultation is to, in part, "study potential effects, [*i.e.*, analyze environmental impacts pursuant to NEPA] and if appropriate, to formulate alternatives that serve to protect the lands [*i.e.*, consider a range of reasonable alternatives in accordance with NEPA and take action to prevent UUD under FLPMA]").

prevent unnecessary or undue degradation ("UUD") of the lands; or (3) adhere to binding management prescriptions in the GSENM RMP authorized the County's activities in a legally consequential manner. *Burr Trail*, 44 F.4th at 1272; *Bull Valley Gorge*, 551 F. Supp. 3d at 1236-37, 1242-44. As such, the Determination is final agency action both for the chip-sealing and other improvements.

**B.     SUWA Has Plausibly Alleged Reviewable FLPMA Violations**

Garfield County next argues that SUWA's "FLPMA claims are not reviewable under the APA" because SUWA has not "identif[ied] a statutorily required action that BLM failed to perform," and "the common law cannot be enforced against an agency through the APA." ECF No. 74 at 16-17 (quoting *Bull Valley Gorge*, 551 F. Supp. 3d at 1241). The County again misconstrues SUWA's claims as being brought under 5 U.S.C. § 706(1), when, in fact, they are brought under 5 U.S.C. § 706(2)(A). Moreover, the County conflates BLM's consultation obligations with the agency's independent duties under FLPMA. When viewed under the proper framework, SUWA's Complaint plausibly alleges BLM violated FLPMA's substantive mandates to (1) prevent UUD of the lands; and (2) conform to the approved resource management plan.

*i.     BLM Has Failed to Prevent UUD to the Surrounding Lands*

FLPMA is BLM's "organic act" and governs the agency's management of public lands and resources. There, Congress declared that the United States' policy is to manage the public lands "in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values." 43 U.S.C. § 1701(a)(8). FLPMA and its implementing regulations require BLM to regulate the use, occupancy, and development of public lands. *Id.* § 1732(b). In doing so, FLPMA imposes a

19

substantive mandate that BLM, "by regulation or otherwise, take any action necessary to prevent [UUD] of the lands." *Id.* §§ 1732(b), 1782(c); *see also Bd. of Cnty. Comm'rs of the Cnty. of San Miguel v. U.S. Bureau of Land Mgmt.*, 584 F. Supp. 3d 949, 978 (D. Colo. 2022) (explaining that FLPMA's UUD mandate is substantive and distinct from NEPA's procedural requirements). In the R.S. 2477 context, the consultation process tends to serve as the mechanism in which BLM ensures compliance with its FLPMA duties. *Bull Valley Gorge*, 551 F. Supp. 3d at 1242.

In this case, BLM failed to "take any action necessary to prevent [UUD] of the lands" because it did not analyze alternatives to the proposed improvements that would avoid or minimize impacts to the adjacent and nearby wilderness-quality lands prior to issuing its Determination and authorizing the County to chip-seal the Road. 43 U.S.C. §§ 1732(b), 1782(c); *SUWA*, 425 F.3d at 748. Garfield County incorrectly characterizes this obligation as one "derived from the opinion in [*SUWA*]." ECF No. 74 at 17. As explained above, however, BLM's obligations under FLPMA coincide with, but are separate from, its consultation duties under *SUWA*. So even if BLM did properly consult with the County over the proposed improvements, BLM is still required to "take any action necessary to prevent [UUD] of the lands." 43 U.S.C. §§ 1732(b), 1782(c); *Bull Valley Gorge*, 551 F. Supp. 3d at 1242. BLM did not do that here.[8] Indeed, the Determination is arbitrary and capricious because it does not even mention FLPMA or include the phrase "unnecessary or undue degradation." *See generally* ECF No. 61-1. BLM does not explain, at all, how its decision complies with FLPMA's mandate to prevent UUD or why the

---

[8] Garfield County briefly asserts that "the APA does not permit reviewing courts to compel agency action according to "broad statutory mandates" like FLPMA's mandate to "prevent [UUD]." ECF No. 74 at 17 n.5. But this assertion is immaterial because, again, SUWA is not asking the Court to compel agency action unlawfully withheld pursuant to 5 U.S.C. § 706(1).

20

chip-sealing "would not impair or degrade the surrounding lands." *SUWA*, 425 F.3d at 747; *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("[A]n agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made"). And because the Determination does not even mention improvements besides the chip-sealing (*e.g.*, new culvert installation), BLM has "entirely failed to consider an important aspect of the problem." *Id.*

Consequently, SUWA has plausibly alleged that the agency has failed to "take any action necessary to prevent [UUD]" to nearby wilderness-quality lands, 43 U.S.C. §§ 1732(b), 1782(c), and that the Determination is arbitrary and capricious. SUWA does not seek to "enforce the common law" but has instead alleged statutory violations.

ii.    *BLM Did Not Provide an Opportunity for Public Involvement Prior to Issuing the Determination in Violation of FLPMA*

Separate from, and in addition to, its obligation to prevent UUD, BLM is required to develop, maintain, and periodically revise land use plans, commonly referred to as resource management plans, to govern the public lands it manages and ensure that all resource management authorizations and actions "conform to the approved [resource management] plan." 43 U.S.C. §§ 1712(a), 1732(a); 43 C.F.R. § 1610.5-3(a); *Utah Shared Access All. v. Carpenter*, 463 F.3d 1125, 1129 (10th Cir. 2006). An action conforms with the approved plan if it is "clearly consistent with the terms, conditions, and decision" of that plan. *W. Watersheds Proj. v. Bureau of Land Mgmt.*, 721 F.3d 1264, 1268 (10th Cir. 2013). Actions that are not in conformance with the governing plan are arbitrary, capricious, and unlawful. 43 C.F.R. § 1610.5-3(c); *Carpenter*, 463 F.3d at 1129; 5 U.S.C. § 706(2)(A).

21

The GSENM RMP is the approved resource management plan governing the Road and surrounding lands. It includes a variety of management decisions that set forth both the process and substance regarding how BLM must manage those lands. GSENM RMP at 1-1. Relevant here, management decision TTM-007 states

> [i]mprovements to…Hole-in-the-Rock Road…to provide for public health and safety needs…will be considered during plan implementation on a case-by-case basis, in accordance with applicable laws, regulations, and policy. The BLM's consideration of any proposed improvement will include an opportunity for public participation prior to the issuance of a final decision. For purposes of this management action, an "improvement" goes beyond preserving the status quo of the road or trail and includes…any significant changes in the surface composition of the road or trail.

*Id.* at 2-70 (emphasis added).

Chip-sealing a dirt/gravel road constitutes a "significant change[] in the surface composition of the road." *Id.*; *see also SUWA*, 425 F.3d at 749. And the County asserts that the purpose of chip-sealing the Road is to address public safety by improving the Road. ECF Nos. 61-2 at 2, 61-7 at *2-3. Therefore, TTM-007 applies to the County's chip-sealing proposal.

Garfield County now argues, without citation, that TTM-007 is inapplicable because it "contemplated a situation in which the parties sought to make improvements to the Road prior to QTA adjudication" and now that the County "hold[s] title to the Road, a different provision applies." ECF No. 74 at 19 (citing GSENM RMP at 1-6) (emphasis in original). But that is a merits argument, not an argument that SUWA failed to plead a claim. And it is incorrect; as SUWA has alleged (which is all it is required to do at this stage) and will later argue in detail, TTM-007 requires public participation before any improvements.

At the merits stage, Garfield County is free to argue that its ROW claim has been fully adjudicated (it has not), and that adjudication somehow obviates TTM-007's requirement for

22

public participation. But for now, accepting the facts in the Complaint as true and construing all reasonably alleged inferences in SUWA's favor, *Wilson*, 715 F.3d at 852; *Holt*, 46 F.3d at 1002, SUWA has plausibly alleged that issuing the Determination without first providing for public involvement does not comply with the GSENM RMP. *See W. Watersheds Proj.*, 721 F.3d at 1268.

> **C.      SUWA Has Plausibly Alleged a Reviewable NEPA Violation**

NEPA was enacted "to promote efforts which will prevent or eliminate damage to the environment." 42 U.S.C. § 4321. "NEPA . . . prescribes the necessary process[] for an agency's environmental review of a project." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 605 U.S. 168, 177 (2025) and "ensures that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental effects." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989) (citations omitted).

NEPA applies to "major federal actions."42 U.S.C. § 4332(2)(C). A "major federal action" includes nonfederal actions "potentially subject to Federal control and responsibility." *Rocky Mtn. Wild v. Dallas*, 98 F.4th 1263, 1297 (2024); 42 U.S.C. § 4336e(10). With four limited exceptions,[9] NEPA requires that an agency prepare an environmental document (either an environmental impact statement or an environmental assessment) to evaluate the impacts of a proposed major federal action. 42 U.S.C. § 4336(a). BLM also must consider a range of reasonable alternatives to the proposed action in the environmental document. *Id.* § 4332(2)(H). An agency violates NEPA when it authorizes an action prior to completing its NEPA analysis.

---

[9] None of which apply to the Determination.

*Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1162 (10th Cir. 2002); *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C. Cir. 1983).

Garfield County argues that the Determination is not a "major federal action" because "BLM does not have authority to control the project or influence the County's roadwork" on the Road "as contemplated by [*Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988)]." ECF No. 74 at 20. This argument fails because it is premised on an overly narrow reading of *Hodel* and a fundamental misunderstanding of BLM's role in assessing proposed improvements to an R.S. 2477 ROW.

Contrary to the County's argument, BLM does have authority to influence the County's roadwork and control the outcome of the proposed project under the consultation paradigm outlined in *SUWA*. *See* 425 F.3d at 748 (holding that consultation requires "affording the agency a fair opportunity to…study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands"). And, specifically in the R.S. 2477 context, the Tenth Circuit has held that BLM's decision to authorize proposed improvements to ROW is a major Federal action when the proposed improvements may impact a WSA because those potential impacts trigger BLM's duty under FLPMA to prevent UUD. *Hodel*, 848 F.2d at 1090-91 (10th Cir. 1988);[10] *see also S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 2021 U.S. Dist. LEXIS 63395, *31-32 (D. Utah March 31, 2021) (explaining that the indirect impacts to the Mt. Pennell WSA caused by 7.5-mile chip-sealing project obligated BLM to first analyze the proposal under NEPA, which

---

[10] Garfield County erroneously suggests that *Hodel* concluded BLM's involvement in the project at issue there did not rise to the level of a major federal action. *See* ECF No 74 at 20 ("[l]ike in *Hodel*, BLM's limited engagement in the project…does not constitute a major federal action for purposes of NEPA"); *contra Hodel*, 848 F.2d at 1090 (holding that BLM's responsibilities under FLPMA to prevent UUD to WSAs constituted a major federal action).

it did); *Bull Valley Gorge*, 551 F. Supp. 3d at 1242-44 (holding that BLM was required to, but did not, analyze the impacts of a proposed bridge installation on the adjacent Paria-Hackberry WSA).

Here, SUWA alleges that Garfield County's proposal to chip-seal and otherwise improve the Road has impacted and will continue to impact adjacent and nearby wilderness-quality lands, *see* ECF Nos. 61 ¶ 46, 18-1 ¶¶ 15-22; 18-5 ¶¶ 14-17; 57-1 ¶¶ 5-12, including the North Escalante Canyons/The Gulch ISA. *See* ECF No. 18-3; GSENM RMP at 2-15, 2-16, 2-90. Taking these allegations as true, BLM is required to manage the lands surrounding and near the Road according to a heightened standard, triggering its duty under FLPMA to "take any action necessary to prevent [UUD]," *id.* §§ 1732(b), 1782(c), and thereby making BLM's consideration of the County's proposal a major federal action under NEPA. *Hodel*, 848 F.2d at 1090-91. NEPA therefore required BLM to prepare an environmental document with analysis and reasonable alternatives, and it did not.

SUWA has plausibly alleged that BLM violated NEPA and the APA.

## CONCLUSION

For the foregoing reasons, it is clear that (1) SUWA has both constitutional and prudential standing to bring each of its claims and (2) SUWA's Complaint meets all pleading standards and sufficiently alleges claims upon which the Court may grant relief. The Court should deny Garfield County's Motion to Dismiss.

Respectfully submitted July 20, 2026.

*/s/ Hanna Larsen*
Stephen H.M. Bloch
Hanna Larsen
SOUTHERN UTAH WILDERNESS ALLIANCE

25

Trevor J. Lee
HOGGAN LEE HUTCHINSON

Mitch M. Longson
MANNING CURTIS BRADSHAW
& BEDNAR PLLC

*Attorneys for Plaintiff Southern Utah
Wilderness Alliance*

26

## CERTIFICATE OF COMPLIANCE

I hereby certify that Plaintiff Southern Utah Wilderness Alliance's **RESPONSE IN OPPOSITION TO INTERVENOR-DEFENDANTS' MOTION TO DISMISS** complies with the type-volume limitations in DUCivR 7-1(a)(4)(A)(i) because it is 25 pages and contains 7,748 words.

*/s/ Hanna Larsen*
Hanna Larsen