Stephen H.M. Bloch (#7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

Mitch M. Longson (#15661)
Trevor J. Lee (#16703)
MANNING CURTIS BRADSHAW & BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
mlongson@mc2b.com
tlee@mc2b.com

*Attorneys for Plaintiff Southern Utah Wilderness Alliance*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES BUREAU OF LAND MANAGEMENT** *et al.*,<br><br>Defendants,<br><br>and<br><br>**GARFIELD COUNTY, UTAH** *et al.*,<br><br>Intervenor-Defendants. | **PLAINTIFF'S RESPONSE TO FEDERAL DEFENDANTS' RESPONSE TO INTERVENORS' MOTION TO DISMISS**<br><br>Case No. 2:26-cv-00096-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br>Magistrate Judge Paul Kohler |

In accordance with the Court's November 9, 2026 docket text order, Plaintiff Southern Utah Wilderness Alliance ("SUWA") respectfully submits this Response to Federal Defendants' (collectively "BLM") Response to Intervenors' Motion to Dismiss (ECF No. 78).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

GLOSSARY ..... v

INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 3

I. FLPMA and its Implementing Regulations Apply to BLM's Reasonable and Necessary Determination. ..... 3

A. Land Encumbered by an R.S. 2477 ROW Is Subject to BLM's Statutory Duties Under FLPMA, Including Section 1732(b). ..... 4

B. BLM is Obligated to Prevent UUD When Determining Whether a Proposed Improvement is Reasonable and Necessary. ..... 7

II. NEPA Applies to BLM's Determination and Decision to Authorize Garfield County's Proposed Chip Sealing ..... 10

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases**

*Clouser v. Espy*,
42 F.3d 1522 (9th Cir. 1994) ........ 5

*Gardner v. U.S. Bureau of Land Mgmt.*,
638 F.3d 1217 (9th Cir. 2011) ........ 9

*Kane Cnty. (2) v. United States*,
No. 2:10-cv-1073-CW, 2024 U.S. Dist. LEXIS 142312 (D. Utah Aug. 9, 2024) ........ 7

*Kane Cnty. (2) v. United States*,
No. 2:10-cv-1073-CW, 2025 U.S. Dist. LEXIS 141248 (D. Utah 2025) ........ 2

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ........ 4

*Robertson v. Methow Valley Citizens Council*,
490 U.S. 332 (1989) ........ 11

*S. Utah Wilderness All. v. U.S. Bureau of Land Mgmt.*,
425 F.3d 735 (10th Cir. 2005) ........ passim

*S. Utah Wilderness All. v. U.S. Bureau of Land Mgmt.*,
551 F. Supp. 3d 1226 (D. Utah 2021) ........ 8

*S. Utah Wilderness All. v. U.S. Dep't of the Interior*,
No. 2:19-cv-297-DBB, 2021 U.S. Dist. LEXIS 63395 (D. Utah Mar. 31, 2021) ........ 8

*Sierra Club v. Hodel*,
848 F.2d 1068 (10th Cir. 1988) ........ passim

*United States v. Garfield Cnty.*,
122 F. Supp. 2d 1201 (D. Utah 2000) ........ passim

*United States v. Jenks*,
22 F.3d 1513 (10th Cir. 1994) ........................................ 5

*United States v. Vogler*,
859 F.2d 638 (9th Cir. 1988) ........................................ 5

**Statutes**

42 U.S.C. § 4321 ........................................ 10

42 U.S.C. § 4336e(10)(B)(i)(II) ........................................ 11

43 U.S.C. § 1701 ........................................ 3

43 U.S.C. § 1702(c) ........................................ 3

43 U.S.C. § 1732(a) ........................................ 3, 5

43 U.S.C. § 1732(b) ........................................ passim

43 U.S.C. § 1782(c) ........................................ passim

## GLOSSARY

| | |
|---|---|
| BLM | Bureau of Land Management |
| Determination | BLM's May 7, 2026 Reasonable and Necessary Determination (ECF No. 61-1) |
| FLPMA | Federal Land Policy and Management Act |
| General UUD Mandate | The provision of 43 U.S.C. § 1732(b) stating "[i]n managing the public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands." |
| NEPA | National Environmental Policy Act |
| Road | Hole-in-the-Rock Road |
| ROW | Right-of-Way |
| R.S. | Revised Statute |
| SUWA | Southern Utah Wilderness Alliance |
| UUD | Unnecessary or Undue Degradation |
| WSA | Wilderness Study Area |
| WSA UUD Mandate | The provision of 43 U.S.C. § 1782(c) stating "in managing the public lands the Secretary shall by regulation or otherwise take any action required to prevent unnecessary or undue degradation of the lands and their resources or to afford environmental protection." |

# INTRODUCTION

Intervenor-Defendants Garfield County, Utah *et al.* (collectively, "Garfield County") have moved to dismiss SUWA's Amended and Supplemental Complaint under Rules 12(b)(1) and 12(b)(6) alleging that Plaintiff SUWA does not have standing and has not stated a claim upon which relief may be granted. *See* ECF No. 74 at 1. BLM filed its Response to Garfield County's motion on July 20, 2026, wherein BLM stated that it "agree[s] that the [Amended and Supplemental] Complaint can be dismissed for failure to state a claim upon which relief can be granted," ECF No. 78 at 1, but then proceeded to make additional, distinct arguments beyond those raised by Garfield County under Rule 12(b)(6).[1] SUWA responds to those arguments here.

BLM argues that SUWA failed to state a claim because BLM was only required to comply with the consultation paradigm in *Southern Utah Wilderness Alliance v. U.S. Bureau of Land Management* ("*SUWA*"), 425 F.3d 735 (10th Cir. 2005), and not the substantive and procedural requirements in the Federal Land Policy and Management Act ("FLPMA") or the National Environmental Policy Act ("NEPA"). ECF No. 78 at 2-3. Regarding FLPMA, BLM argues that SUWA's FLPMA claim alleging a failure to prevent unnecessary or undue degradation, as required by 43 U.S.C. § 1732(b), fails because that requirement does not apply—at all—to an adjudicated Revised Statute ("R.S.") 2477 right-of-way ("ROW"). *Id.* at 4

Regarding NEPA, BLM argues that it did not need to comply with NEPA prior to issuing the Determination because NEPA does not apply to nondiscretionary agency actions and/or actions that are not "subject to substantial Federal control and responsibility." *Id.* at 6.

---

[1] Notably, unlike Garfield County, BLM does not assert that there is no final agency action under the Administrative Procedure Act to support SUWA's claims. *See generally* ECF No. 78.

BLM's arguments are unpersuasive, contrary to law, and do not warrant dismissal of SUWA's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND[2]

Garfield County holds a partially adjudicated R.S. 2477 ROW for a 15-mile stretch of the Hole-in-the-Rock Road ("the Road"), running from the junction with State Highway 12 south to the Kane County line. *See Kane County (2) v. United States*, Case No. 2:10-cv-1073-CW, 2025 U.S. Dist. LEXIS 141248, at *9 (D. Utah 2025). Relevant here, Garfield County proposed to improve the first ten miles of the Road by widening it, adding new road base, installing new culverts and other drainage features, changing vertical and horizontal alignment, and upgrading the road surface from dirt and gravel to chip seal. ECF No. 61 ¶¶ 6, 30.

Under the consultation paradigm established by the Tenth Circuit in *SUWA*, before it can lawfully construct those improvements, Garfield County (as the dominant estate holder) must first consult with BLM (the servient estate holder) and give BLM

> a fair opportunity to carry out its own duties to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the rights of way as of October 21, 1976, to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands.

425 F.3d at 748. The consultation process concludes when BLM issues its determination as to whether the proposed improvements are reasonable and necessary and, thus, within the scope of the ROW. *Id.* If BLM concludes that they are, then it has effectively approved the proposal, and Garfield County may proceed with constructing the improvements. *See id.* However, if BLM

[2] For a more detailed account of the factual background, see ECF No. 62 at 7-9.

determines the proposed improvements are not reasonable and necessary, the County is not authorized to proceed and may seek review of BLM's determination in federal court. *Id.*

In this case, BLM issued its Reasonable and Necessary Determination (the "Determination") on May 7, 2026, concluding that Garfield County's proposal to chip seal the first ten miles of the Road was reasonable and necessary in light of the traditional uses of the Road and within the scope of the ROW. ECF No. 61 ¶ 9; *see generally* ECF No. 61-1. The Determination only addressed the County's proposed chip sealing improvement[3] and did not explain at all how BLM's decision to allow the chip sealing complies with BLM's duties and obligations under FLPMA and its implementing regulations or NEPA.

## ARGUMENT

### I. FLPMA and its Implementing Regulations Apply to BLM's Reasonable and Necessary Determination.

FLPMA is the organic act governing BLM-managed lands, enacted to provide a comprehensive framework for the management, use, and protection of federal public lands. *See* 43 U.S.C. § 1701. Under FLPMA, BLM is required to manage public lands under the principles of "multiple use and sustained yield" for a combination of uses, including recreation, range, timber, minerals, watershed, wildlife, fish, and natural, scenic, scientific, and historical values. 43 U.S.C. §§ 1702(c), 1732(a). This includes regulating "the use, occupancy, and development of the public lands" through "easements, permits, leases, licenses, published rules, or other instruments." *Id.* § 1732(b). In doing so, BLM must balance competing uses in a manner that

[3] BLM's Determination does not address the other improvements (*e.g.*, widening the road, new culvert installation), which were largely completed before BLM issued the Determination. ECF No. 61 ¶¶ 8-10.

best meets present and future needs "to ensure a high level of valuable uses in the future." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 58 (2004). Thus, FLPMA imposes a statutory floor and non-discretionary duty on BLM to "take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b); *cf. id.* § 1782(c). This mandate applies both with respect to BLM-managed lands generally (the "general UUD mandate"), *id.* § 1732(b), and to lands designated as wilderness study areas ("WSA") (the "WSA UUD mandate"). *Id.* § 1782(c).

**A. Land Encumbered by an R.S. 2477 ROW Is Subject to BLM's Statutory Duties Under FLPMA, Including Section 1732(b).**

An R.S. 2477 ROW is an easement across public lands, and BLM's statutory duties under FLPMA, including § 1732(b), apply to those lands. BLM argues that section 1732(b) "is not applicable here because this case involves an existing easement under R.S. 2477, rather than 'managing the public lands . . . through easements, permits, leases, licenses, published rules, or other instruments.'" ECF No. 78 at 4 (quoting 43 U.S.C. § 1732(b)). That argument is an overly narrow reading of section 1732(b) and *SUWA* that results in BLM misconstruing the relationship between FLPMA and R.S. 2477 ROWs for two reasons.

*First*, the land underlying an R.S. 2477 ROW remains public land managed by the BLM because an R.S. 2477 ROW "is not tantamount to fee simple ownership of a defined parcel of territory." *SUWA*, 425 F.3d at 747. It is "a species of easement across the public lands of the United States." *United States v. Garfield County*, 122 F. Supp. 2d 1201, 1242 (D. Utah 2000) (internal quotation marks omitted).

FLPMA directs BLM to manage public lands according to the principles of multiple use and sustained yield and in accordance with applicable land use plans, 43 U.S.C. § 1732(a),

including by regulating the "use, occupancy, and development of the public lands" through "easements, permits, leases, licenses, published rules, or other instruments." *Id.* § 1732(b). Additionally, BLM shall "take any action necessary to prevent unnecessary or undue degradation of the lands." *Id.* Congress also preserved valid R.S. 2477 ROWs as they existed at the time of FLPMA's passage (October 21, 1976). *See SUWA*, 425 F.3d at 741. Thus, BLM's management obligations prescribed by FLPMA coexist with the rights afforded by a valid R.S. 2477 ROW. As the Tenth Circuit has explained, BLM cannot impair the rights of the ROW holder, *id.* at 748, but the agency remains responsible for carrying out its statutory duties and managing the federal public lands underlying and surrounding the R.S. 2477 ROW in accordance with FLPMA. *See id.* at 746 ("changes in roads on R.S. 2477 [ROWs] across federal lands are subject to regulation by the relevant federal land management agencies"). Notably, the *SUWA* court cited approvingly to prior decisions from the Tenth and Ninth Circuits to confirm this point. *See id.* at 746-47 (discussing *Clouser v. Espy*, 42 F.3d 1522, 1538 (9th Cir. 1994) (holding that "regardless whether the trails in question are public highways under R.S.[] 2477, they are nonetheless subject to the Forest Service regulations"); *United States v. Vogler*, 859 F.2d 638, 642 (9th Cir. 1988) (holding that proposed improvements to an R.S. 2477 route in a National Preserve are subject to regulation by the National Park Service); *United States v. Jenks*, 22 F.3d 1513, 1518 (10th Cir. 1994) (holding that the owner of a patent or common law easement across national forest lands had to apply for a special use permit)).

*Second*, BLM's reading of section 1732(b) is belied by the Tenth Circuit's interpretation of the statute, specifically as it applies to R.S. 2477 ROWs. In *SUWA*, the court held that a county must consult with BLM before it improves an R.S. 2477 road, so BLM can "carry out its

own duties," and expressly tied those duties to section 1732(b). 425 F.3d at 747–48 (emphasis added). The court explained that "the BLM has obligations to protect the land over which the roads at issue here pass," citing section 1732(b) and quoting the same "through easements" sentence BLM now relies on. *Id.* at 747 (emphasis added). BLM's claim that FLPMA section 302(b) (43 U.S.C. § 1732(b)), including the general UUD mandate, "is not referenced in the cited portion of *SUWA*," ECF No. 78 at 4, ignores this passage.[4]

Additionally, as *SUWA* explains, without advance notice, BLM cannot determine whether proposed changes "are reasonable and necessary, whether they would impair or degrade the surrounding lands, and whether modifications in the plans should be proposed." 425 F.3d at 747. This is consistent with the general UUD mandate, which directs BLM to "take any action necessary to prevent unnecessary or undue degradation of the lands," 43 U.S.C. § 1732(b), while balancing BLM's obligations to the ROW holder. Under this consultation paradigm, BLM can propose and impose an alternative to the proposed improvement if needed to prevent unnecessary or undue degradation of the surrounding lands. *See Garfield Cnty.*, 122 F. Supp. 2d at 1245 n.72. Indeed, as this court has explained, FLPMA is "relevant when addressing an improvement," in part because FLPMA requires that BLM "take any action necessary to prevent unnecessary or undue degradation of the lands." *Kane Cnty. (2) v. United States*, No. 2:10-cv-

[4] There is no question that the *SUWA* court discussed BLM's duty to "protect the land" over which the claimed R.S. 2477 ROWs in that case passed and then summarized its holding that in situations like this one where "the holder of an R.S. 2477 [ROW] across federal land proposes to undertake any improvements in the road along its [ROW], beyond mere maintenance, it must advise the federal land management agency of that work in advance, affording the agency a fair opportunity to carry out its own duties." 425 F.3d at 747-48 (citing 43 U.S.C. § 1732(b)). BLM's argument that 43 U.S.C. § 1732(b) doesn't apply is both wrong on its face and seeks to elevate form over substance by focusing on the page (748) cited in SUWA's Amended and Supplemental Complaint and not *SUWA's* holding and rationale. *See* ECF No. 78 at 4.

1073-CW, 2024 U.S. Dist. LEXIS 142312, at *55, *56 (D. Utah Aug. 9, 2024) (quoting 43 U.S.C. § 1732(b)). Consequently, "the United States has a role" in enforcing the general UUD mandate. *Id.* at *56.

For these reasons and contrary to what BLM asserts, BLM's duties under FLPMA, and specifically the general UUD mandate, 43 U.S.C. § 1732(b), apply when BLM is consulting over a proposed improvement to an R.S. 2477 ROW. The fact that an R.S. 2477 ROW pre-dates FLPMA is not a basis for dismissing SUWA's claims.

**B. BLM is Obligated to Prevent UUD When Determining Whether a Proposed Improvement is Reasonable and Necessary.**

BLM argues that dismissal under Rule 12(b)(6) is appropriate because its only affirmative obligation under FLPMA (in the context of R.S. 2477 ROW improvements) arises under 43 U.S.C. § 1782(c), which specifically applies to WSAs and states that BLM shall "take any action required to prevent unnecessary or undue degradation of the lands and their resources or to afford environmental protection." ECF No. 78 at 4 (citing 43 U.S.C. § 1782(c)). This is the case, according to BLM, because the Tenth Circuit held in *Sierra Club v. Hodel* that section 1782(c) applies when "a proposed road improvement will impact a WSA." *Id.* (citing 848 F.2d 1068, 1086, 1090 (10th Cir. 1988)).

But two things can be true. *Hodel* focused on FLPMA's WSA UUD mandate, 43 U.S.C. § 1782(c), because that provision was specifically raised by the plaintiffs and at issue in that case. 848 F.2d at 1078–79 (plaintiffs "contended that the improvements will cause the unnecessary and undue degradation of the Steep Creek and North Escalante Canyons WSAs and will impair their suitability for designation as wilderness, in violation of the Secretary's duties under FLPMA § 603(c) [the WSA UUD mandate]"). *Hodel* does not address FLPMA's general UUD mandate, 43

U.S.C. § 1732(b), which applies to all BLM-managed lands. Indeed, the language in both UUD provisions is virtually identical and there is nothing in *Hodel* to support the notion that BLM's duties under the general UUD mandate do not apply here (*i.e.*, when a WSA is not immediately adjacent).

BLM also cites *Southern Utah Wilderness Alliance v. U.S. Department of the Interior* ("*Burr Trail*"), No. 2:19-cv-297-DBB, 2021 U.S. Dist. LEXIS 63395 (D. Utah Mar. 31, 2021) and *Southern Utah Wilderness Alliance v. U.S. Bureau of Land Management* ("*Bull Valley Gorge*"), 551 F. Supp. 3d 1226 (D. Utah 2021) as other examples of when a court has concluded that BLM needs to comply with FLPMA because a WSA is affected. *See* ECF No. 78 at 4-5. Again, two things can be true. Just because *Burr Trail* and *Bull Valley Gorge* involved proposed improvements that impacted WSAs does not mean that such improvements are the <u>only</u> circumstance in which BLM must comply with FLPMA and take measures to ensure the surrounding lands are not unnecessarily or unduly degraded. Indeed, BLM's argument is contrary to both this court's decision in *Garfield County* and the Tenth Circuit's decision in *SUWA*.

In *Garfield County*, the court applied *Hodel's* holding to the National Park Service's ("NPS") duty to consult on proposed R.S. 2477 ROW improvements. 122 F. Supp. 2d at 1244-45. There, the court held that NPS, like BLM in *Hodel*, was obliged to evaluate whether the proposed improvement "would impair the value of the scenery and natural objects of the park" and, if so, "formulate less burdensome alternatives." *Id.* at 1244. The court supported its reliance on *Hodel* by explaining that even though the proposed improvement did not affect a WSA, it implicated "<u>other federal duties containing some measure of discretion</u>." *Id.* at 1244 n.70 (quoting *Hodel*, 848 F.2d at 1090) (emphasis in original); *see also id.* at 1245 n.72 (explaining

that while *Hodel* grounded its holding in FLPMA WSA UUD mandate, 43 U.S.C. § 1782(c), the relevant NPS statutes "impose an analogous duty upon [NPS], with a corresponding duty and responsibility to consider, formulate, and—if necessary—impose viable alternatives to proposed R.S. 2477 right-of-way construction that would impair or derogate park lands, resources, or values. At the very least, [NPS] need not authorize such work unless no viable alternative may be found.") (emphasis added). *Garfield County* therefore illustrates that *Hodel*'s holding is not limited to WSAs. Instead, the relevant question, for purposes of establishing whether a federal land management agency needed to consider (and authorize) less impactful alternatives to the proposed improvement, is whether the agency is subject to a "federal dut[y] containing some measure of discretion." *Id.* at 1244 n.70.

FLPMA's general UUD mandate is one such duty, because it directs BLM to "take any action necessary to prevent unnecessary or undue degradation of the lands," but leaves BLM the discretion to determine what action may be necessary. 43 U.S.C. § 1732(b).[5] As the Tenth Circuit explained in *SUWA*,

> we see no reason why consultation … is not equally required with respect to R.S. 2477 routes across BLM land…BLM has obligations to protect the land over which [R.S. 2477 ROWs] pass….Unless it knows in advance when [ROW] holders propose [to improve] roads across federal land[s], the BLM cannot effectively discharge its responsibilities to determine whether the proposed changes are reasonable and necessary, whether they would impair or degrade the surrounding lands, and whether modifications in the plans should be proposed.

425 F.3d at 747 (citing 43 U.S.C. § 1732(b)) (emphasis added). As the *Garfield County* court observed, a federal agency's duty to "formulate viable alternatives, and if need[] be, the

[5] *See e.g.*, *Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217, 1222 (9th Cir. 2011) (stating that section 1732(b) "leaves BLM a great deal of discretion in deciding how to achieve" its "objectives of preventing unnecessary or undue degradation of public lands").

responsibility to impose" a less degrading alternative, corresponds to BLM's duty to prevent unnecessary or undue degradation, which *Hodel* traced to FLPMA's WSA UUD mandate, 43 U.S.C. § 1782(c). *Garfield Cnty.*, 122 F. Supp. 2d at 1245 and n.72 (internal quotation marks omitted). Thus, by citing section 1732(b) to justify the need for BLM's duty to analyze impacts and consider alternatives (as opposed to section 1782(c)), *SUWA* highlights that FLPMA's general UUD mandate, 43 U.S.C. § 1732(b), likewise applies.[6]

For these reasons, BLM's argument that it did not need to "take any action necessary to prevent unnecessary or undue degradation" pursuant to FLPMA's general UUD mandate is unavailing and does not justify dismissal of SUWA's claims under Rule 12(b)(6).

## II. NEPA Applies to BLM's Determination and Decision to Authorize Garfield County's Proposed Chip Sealing.

Congress enacted NEPA "to promote efforts which prevent or eliminate damage to the environment." 42 U.S.C. § 4321. NEPA "ensures that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

---

[6] Of sixteen roads at issue in *SUWA*, only six impacted WSAs. 425 F.3d at 742. When discussing BLM's consultation obligations, including its responsibility to determine "whether [the proposed improvement] would impair or degrade the surrounding lands," the Tenth Circuit did not distinguish between FLPMA's general UUD mandate and its WSA UUD mandate or otherwise suggest that only the WSA UUD mandate imposed an affirmative duty on BLM to prevent unnecessary or undue degradation in the context of proposed improvements to R.S. 2477 ROWs. *Id.* at 747-48.

BLM contends that NEPA does not apply here, arguing that because the WSA UUD mandate is not implicated, NEPA is likewise not triggered.[7] ECF No. 78 at 7-8. BLM's NEPA argument fails for the same reason its FLPMA argument fails: as subsequent decisions have recognized, *Hodel's* reasoning applies even when a WSA may not be directly impacted.

As explained *supra*, *Hodel* focused solely on FLPMA's WSA UUD mandate, 43 U.S.C. § 1782(c), because the applicability of that particular provision was at issue. 848 F.2d at 1078–79. Relevant to NEPA, the court held that BLM's duties under the WSA UUD mandate, "to prevent unnecessary degradation of WSAs from these changes in the [ROW], injects an element of federal control for required action that elevates this situation to one of major federal action" sufficient to invoke NEPA. *Id.* at 1090, 1091. At the same time, the court recognized that proposed improvements to R.S. 2477 ROWs do not necessarily "inject[] an element of federal control" sufficient to invoke NEPA if the proposed improvements "do not affect WSAs <u>or</u>

[7] BLM also argues that NEPA does not apply because the Determination is not a major Federal action and BLM does not have discretion to deny the County's proposed improvements. ECF No. 78 at 6-7. Garfield County made a similar argument in its Motion to Dismiss, *see* ECF No. 74 at 19-21, to which SUWA responded. *See* ECF No. 79 at 23-25. Thus, SUWA does not further address whether the Determination is a major Federal action in this filing except to note that BLM's characterization of the statutory definition of "major Federal action" is misleading. ECF No. 78 at 6-7 (stating that a major Federal action "does not include – a non-Federal action . . . where a Federal agency cannot control the outcome of the project[.]") (alterations by BLM). BLM's quotation omits the following relevant language (underlined): "…[t]he term 'major Federal action' does not include - a non-Federal action…<u>with no or minimal Federal involvement</u> where a Federal agency cannot control the outcome of the project." 42 U.S.C. § 4336e(10)(B)(i)(II) (emphasis added). As *SUWA* makes clear, BLM is a mandatory participant in the consultation process and is, in fact, obligated to make a decision regarding the proposed improvement. 425 F.3d at 748. Thus, it can hardly be said that BLM's decision to issue the Determination and authorize the chip sealing is a non-Federal action with "no or minimal Federal involvement." 42 U.S.C. § 4336e(10)(B)(i)(II).

implicate other federal duties containing some measure of discretion." *Id.* at 1090 (emphasis added).

And as the Tenth Circuit made clear in *SUWA*, the general UUD mandate does give BLM "some measure of discretion," including in the context of R.S. 2477 improvements; it is BLM's duty to study the environmental effects, decide whether alternatives to the proposed improvement are needed in the first place to prevent unnecessary or undue degradation, and if so, what those alternatives should be. 425 F.3d at 747 (citing 43 U.S.C. § 1732(b)); *see also Garfield Cnty.*, 122 F. Supp. 2d at 1244 & n.70 (pointing out that the relevant question for whether a federal agency needs to "evaluat[e] the environmental impact[s]" of a proposed improvement and "formulate less burdensome alternatives" is whether the agency's duties "contain[] some measure of discretion" to protect the lands and resources). By citing section 1732(b) to justify the need for BLM to analyze impacts and consider alternatives, *SUWA* confirms that section 1732(b) likewise triggers this duty, 425 F.3d at 747, and, under *Hodel's* logic, "invoke[s] NEPA requirements." 848 F.2d at 1091.[8]

In summary, BLM was required to comply with NEPA when issuing the Determination for the same reasons that it was required to comply with FLPMA. BLM's argument to the contrary is foreclosed by *Hodel* and *SUWA*. SUWA's NEPA claim should not be dismissed pursuant to Rule 12(b)(6).

---

[8] This point is further supported by the fact that sections 1732(b) and 1782(c) contain nearly identical language mandating that BLM prevent unnecessary or undue degradation to public lands. *Compare* 43 U.S.C. § 1732(b) ("the Secretary shall,...take any action necessary to prevent unnecessary or undue degradation of the lands") *with id.* § 1782(c) ("the Secretary shall...take any action required to prevent unnecessary or undue degradation of the lands and their resources or to afford environmental protection").

**CONCLUSION**

For the foregoing reasons, SUWA has sufficiently alleged its claims under FLPMA and NEPA. The Court should reject BLM's arguments and deny Garfield County's Motion to Dismiss.

DATED: November 16, 2026

Respectfully,

*/s/ Hanna Larsen*
Stephen H.M. Bloch
Hanna Larsen
SOUTHERN UTAH WILDERNESS ALLIANCE

Mitch M. Longson
Trevor J. Lee
MANNING CURTIS BRADSHAW
& BEDNAR PLLC

*Attorneys for Plaintiff Southern Utah Wilderness Alliance*